**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MAURICE SHNAIDER et al.,

      Plaintiffs.

v.                                                            Case No. 8:24-cv-1067

AMERICAN MUSLIMS FOR
PALESTINE et al.,

      Defendants.

_____

**DEFENDANT UNITED STATES PALESTINIAN COMMUNITY
NETWORK'S MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

      Defendant United States Palestinian Community Network ("USPCN"), by

and through its undersigned counsel, moves to dismiss Plaintiffs' Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and respectfully

submits this incorporated memorandum of law in support of its motion.

## INTRODUCTION

      Plaintiffs are United States citizens who claim injuries as a result of Hamas's

attack on October 7, 2023 and subsequent violence. The Amended Complaint

glaringly omits any mention of Israel's ongoing genocide in Gaza, which provides

essential context for Defendants' alleged speech and advocacy in support of the

Palestinian people and undermines the plausibility of Plaintiffs' claims.

Within hours of the attack on October 7, Israel began bombing civilian infrastructure and population centers across Gaza, and its leaders openly proclaimed their genocidal intent. Minister of Defense Gallant declared that "no electricity, no food, no water, no fuel" would be allowed to the "human animals" in Gaza.[1] Israeli Major General Alian, stated "[h]uman animals must be treated as such. There will be no electricity and no water [in Gaza], there will only be destruction."[2] On October 13, President Herzog announced that "an entire nation… is responsible."[3]

The United States Palestinian Community Network ("USPCN") is one of hundreds of community organizations across the world that mobilized almost immediately, hoping to use speech and advocacy to prevent the genocide promised by Israeli leadership.[4] The amended complaint alleges nothing more.

***

Plaintiffs have no grounds whatsoever on which to sue USPCN, and their two-hundred-and-nine page pleading utterly fails to allege specific facts that could render USPCN liable under any of the three causes of action. Instead, Plaintiffs rely entirely on bald, conclusory claims that USPCN is an "affiliate" or "intermediary" of

---

[1] Sanjana Karanth, "Israeli Defense Minister Announces Siege on Gaza to Fight 'Human Animals,'" Huffington Post (October 9, 2023), https://perma.cc/HXN5-DQRJ.
[2] Gianluca Pacchiani, "COGAT Chief Addresses Gazans: 'You Wanted Hell, You Will Get Hell,'" Times of Israel (October 10, 2023), https://perma.cc/6J5E-SYKH.
[3] Chris McGreal, "The Language Being Used to Describe Palestinians is Genocidal," The Guardian (October 16, 2023), https://perma.cc/XT6C-7FSC.
[4] By now, even the leading Israeli human rights organizations have recognized that Israel is committing genocide against the Palestinians in Gaza. *See e.g.* "Our Genocide", B'Tselem (July 2025) <https://www.btselem.org/sites/default/files/publications/202507_our_genocide_eng.pdf>; "Destruction of Conditions of Life: A Health Analysis of the Gaza Genocide," Physicians for Human Rights – Israel (July 28, 2025) <https://www.phr.org.il/en/genocide-in-gaza-eng/>.

Hamas or other foreign terrorist organizations ("FTOs") or is—in some unexplained manner—"linked" to these organizations. *See e.g.* Dkt. 6, ¶¶ 48, 50, 130, 154, 184, 407. Plaintiffs apparently hope that repeating this conclusory and slanderous accusation ad nauseum, without offering any specific facts in support, will eventually render it plausible in the eyes of the Court through sheer cumulative effect.

In their 452 paragraphs of pleadings, Plaintiffs fail to allege a single specific fact that could plausibly show any contact between USPCN and Hamas—nor any other FTO—much less intentional or purposeful "association" or "affiliation." Instead, Plaintiffs simply allege that USPCN has supported a handful of Palestine-related protests and conferences over the past fifteen years. *See* Dkt. 6, ¶ 154, 189, 201, 258, 382, 384. Plaintiffs seem to suggest that speech, association, and advocacy in support of Palestine is sufficient to permit an inference of direct connection between Defendants and designated Foreign Terrorist Organizations ("FTO"). They are wrong, and this lawsuit is a dangerous attempt to penalize protected speech and advocacy on an urgent matter of public interest: the ongoing genocide in Gaza.

Plaintiffs have utterly failed to plausibly plead their invoked causes of action, and this case must be dismissed under Rule 12(b)(6). Plaintiffs' "extreme" allegations—that nearly any organization or individual who advocates in support of the Palestinian people is "affiliat[ing]" with or aiding and abetting international terrorism—are clearly meant to silence and chill public discourse. *Nat'l Grp. for Communs. & Computs., Ltd.*, 2004 U.S. Dist. LEXIS 25265, at *11-12. "[T]he extreme nature of the charge of terrorism," *Burnett*, 349 F. Supp. 2d at 831, has an "inevitable

3

stigmatizing effect" on Defendants, many of whom have not even begun their professional careers. *Nat'l Grp. for Communs. & Computs., Ltd.*, 2004 U.S. Dist. LEXIS 25265, at *11-12. For these reasons, it is even more urgent that this Court "flush out [these] frivolous allegations" at this stage and dismiss them. *Id.*

Because Plaintiffs have already amended their pleading, and the Amended Complaint represents their best effort to state a claim, the complaint should be dismissed with prejudice. No further amendment could cure the defects USPCN identifies in this Motion, and any amendment would be in bad faith as this lawsuit was brought primarily for the purpose of defaming Palestinians and their allies and taxing the resources of the Palestine solidarity movement in the United States.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotation marks and citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013); *Mamani v.*

4

*Berzaín*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth."); *Womack v. Carroll Cty., Ga.*, 840 F. App'x 404, 405 (11th Cir. 2020) ("[W]e need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations").

## FACTUAL BACKGROUND

Plaintiffs assert three separate causes of action under the Anti-Terrorism Act: Conspiracy Liability (18 U.S.C. § 2333(a) and (d)); Aiding and Abetting Liability (18 U.S.C. § 2333(a) and (d)); and Material Support Liability (18 U.S.C. § 2339B and § 2333(a)). *Id.*, ¶¶ 453-484. Plaintiffs have not identified a single statement or act by USPCN that could plausibly render the organization liable under any of these three causes of action. Rather, Plaintiffs' apparent theory of the case is that the Defendants aided and abetted the October 7 attacks, not by providing any type of practical support for the October 7 attacks, but by engaging in protected speech, independent advocacy, and association in support of Palestinians and against genocide.

Plaintiffs fail to allege any specific acts whatsoever by USPCN that could possibly render the organization liable for aiding and abetting the particular attacks that injured them, conspiring with Hamas to commit the attacks, or providing material support to Hamas in furtherance of the attacks. Plaintiffs have failed to plead a claim for aiding and abetting because they allege no facts that plausibly show USPCN provided knowing and substantial assistance to Hamas. Similarly, Plaintiffs' failure to plausibly allege any communication or agreement between Hamas and USPCN is fatal to their conspiracy and material support claims.

The only specific facts Plaintiffs have alleged are that USPCN: is a community organization founded in 2007 (Dkt. 6, ¶ 48); lists Magdi Odeh and Rafeeq Jaber on its incorporation documents (Dkt. 6, ¶ 130); "sponsored" one of "over 70 presentations, activities, and workshops" about justice for Palestinians at the 2010 U.S. Social Forum conference (Dkt. 6, ¶ 189); was listed as a "convening organization" at the People's Conference for Palestine in 2024, intended as an opportunity for Palestine solidarity activists to "strengthen our relationships, our strategies, our tactics, and our unity for the struggle ahead" (Dkt. 6, ¶ 201); "co-sponsored" a rally called "Hands Off Palestine" at the Israeli Consulate in 2022, where a student called for "a tremendous, organized effort for our people in Palestine" (Dkt. 6, ¶ 258); and was listed as an "endorser" of a 2024 protest called "National Mobilization: Surround the White House for Gaza" which called for "an immediate ceasefire, an immediate end to the siege on Gaza, the freedom of all Palestinian prisoners, and an end to the occupation of Palestine," and where unidentified people chanted "in support of Hamas" (Dkt. 6, ¶ 382).

Not a single one of these facts could plausibly show practical assistance to, coordination with, or an intent to support the underlying torts that allegedly harmed Plaintiffs. Plaintiffs allege no facts that could render USPCN responsible for chants allegedly overheard at a protest of tens of thousands of people, nor any facts that could plausibly turn chants, conference sponsorship, and political speech in America into practical support for Hamas, as required for civil liability under the ATA.

6

Every other allegation against USPCN is presented as a conclusory statement, with no specific factual support to render it plausible. *See e.g.* Dkt. 6, ¶¶ 48, 50, 98, 130, 131, 384. Plaintiffs' claims against USPCN should be dismissed on this basis alone. *See, e.g., Franklin v. Curry*, 738 F.3d 1246, 1250-52 (11th Cir. 2013) ("Had the district court followed the Supreme Court's 'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief,' the insufficiency of Franklin's allegations would have been obvious."); *Mamani v. Berzaín*, 654 F.3d 1148, 1152-56 (11th Cir. 2011) (dismissing Alien Tort Statute claim where the conclusory allegations were "entitled to no assumption of truth" and the non-conclusory allegations did not plausibly suggest an entitlement to relief).

## ARGUMENT

### I.    Plaintiffs Seek to Punish Protected Speech, Association, and Advocacy in Support of Palestinians

Plaintiffs seek to hold USPCN liable based on its participation in national conferences and coordination of protests in support of Palestine. This activity constitutes protected speech and association under the First Amendment of the U.S. Constitution, which cannot be infringed upon or penalized simply because Plaintiffs were harmed by an FTO that allegedly uses similar rhetoric or has overlapping goals. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 24 (2010) (clarifying that "independent advocacy" is not prohibited, even if it is "in support of a terrorist

group", and that "independently advocating for a cause is different from providing a service to a group that is advocating for that cause"). Because Plaintiffs only allege independent advocacy, they fail to plead culpable conduct by USPCN.

## II.    The Amended Complaint Does Not Plausibly Allege Aiding and Abetting Liability Under the ATA Against USPCN

Section 2333(d) of the ATA imposes civil liability on a defendant "who aids and abets, by knowingly providing substantial assistance" to "an act of international terrorism" committed by an FTO. 18 U.S.C. § 2333(d)(2). To plead a claim under § 2333(d)(2), a plaintiff must allege that the defendant's conduct (1) amounted to aiding and abetting, (2) by providing "substantial" assistance to the underlying tort, (3) through "conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023). Plaintiffs have failed to plausibly allege these three elements against USPCN. The Amended Complaint is devoid of non-conclusory allegations that USPCN provided *any* assistance to Hamas—even unknowingly—much less that it "consciously, voluntarily, and culpably" provided substantial assistance to the specific attacks that injured Plaintiffs. *Twitter*, 598 U.S. at 489-90, 505.

When Congress enacted Section 2333(d), it pointed to *Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983), as "provid[ing] the proper legal framework" for "civil aiding and abetting and conspiracy liability." Justice Against Sponsors of Terrorism Act ("JASTA") § 2(a)(5), 130 Stat. 852. To state a claim for aiding and abetting, *Halberstam* requires that: "(1) the party whom the defendant aids [performed] a

wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; [and] (3) the defendant . . . knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477.[5] Plaintiffs fail to plead the last two elements.

### A.   Plaintiffs Have Failed To Allege That USPCN Provided Substantial Assistance To Hamas Nor To The Attacks That Harmed Them

To state an ATA aiding-and-abetting claim, it is not enough for a plaintiff to allege that a defendant gave "assistance to [the FTO's] activities in general." *Id.* at 503; *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("Aiding and abetting requires more than the provision of material support to a terrorist organization.") (internal quotation marks omitted). It is "not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter*, 598 U.S. at 495. Rather, the defendant must have specifically "aided and abetted the act of international terrorism that injured the plaintiffs." *Id.* at 497. Plaintiffs must therefore allege a "concrete nexus" between USPCN's alleged aid to Hamas and the specific attacks that injured them. *Id.*, at 501.

To plead aiding and abetting under the ATA, Plaintiffs must plausibly allege that Defendants provided substantial assistance to the *specific tort* that injured them,

---

[5] While *Twitter* warned courts against "hew[ing] too tightly to the precise formulations *Halberstam* used," it did not invalidate that test. 598 U.S. at 493. Rather, the Court explained that "both JASTA and *Halberstam*'s elements and factors rest on the same conceptual core that has animated aiding-and-abetting liability for centuries: that the defendant consciously and culpably "participate[d]" in a wrongful act so as to help make it succeed." *Id.*

with the intent to facilitate the commission of that offense; it is not enough to allege that they aided Hamas more generally. Even if Plaintiffs could plausibly allege that USPCN provided inadvertent support to Hamas, that would be insufficient to state a claim under Section 2333(d). *Twitter*, 598 U.S. at 489, 499-500 (aiding-and-abetting liability does not attach to inadvertent support); *id.* at 503 (general provision of aid to an FTO insufficient to establish aiding and abetting); *Ofisi*, 77 F.4th at 675 (mere provision of "material support" to FTO insufficient to state a claim).

Plaintiffs articulate no coherent legal theory that could transform USPCN's general activism and advocacy on issues affecting the Palestinian people (*see e.g.*, Dkt. 6, ¶¶ 154, 189, 201, 258, 382, 384) into "substantial assistance" for the specific tort that injured them—in this case, Hamas's October 7 attack and subsequent violence in Gaza. Because Plaintiffs fail to allege any nexus whatsoever between speech and advocacy in the United States and Hamas's military operations in Gaza, they fail to plausibly plead the concrete nexus required to state their claim.

Where Plaintiffs' claim relies instead on generalized encouragement or assistance to Hamas's activities, without a direct nexus to the particular tort that injured Plaintiffs, they must meet the much higher threshold of alleging "that defendants so systematically and pervasively assisted [Hamas] that defendants could be said to aid and abet every single" Hamas attack. *Twitter*, 598 U.S. at 501. Indeed, "the more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through intention aid that substantially furthered the tort." *Id.*, at 506. Plaintiffs clearly fail to allege such "pervasive, systemic, and culpable"

assistance—the Amended Complaint comes nowhere close to plausibly alleging that USPCN systematically and pervasively assisted every single Hamas operation, nor that Hamas's activities relied upon USPCN's alleged aid. *Id.* at 501-2, 506. Where Plaintiffs fail to plead a concrete nexus, and fail to allege systemic, intentional, pervasive assistance, they fail to state a claim for aiding and abetting under the ATA.

Plaintiffs separately fail to plausibly plead that the alleged assistance was "substantial". The Amended Complaint alleges scarce specific facts against USPCN, and no facts whatsoever that plausibly show "substantial" assistance to Hamas's attacks. Plaintiffs allege no specific nor even approximate quantity of resources, personnel, tactical or logistical support, strategic advice, funding, lobbying, or any other assistance provided by USPCN to Hamas. As explained above, the only allegations against USPCN aside from bald declarations that it is "affiliated" or "linked" with terrorists (see above) are that it helped organize Palestine-related conference programming and protests in support of Palestinians and their rights.

Given Plaintiffs' glaring failure to allege any culpable assistance to Hamas whatsoever, the Court need not consider the six-part test that *Halberstam* articulated to determine whether aid was "substantial." *Halberstam*, 705 F.2d at 484-85; *see Twitter*, 598 U.S. at 493, 497, 504 (eliminating the requirement that courts rigidly adhere to the six-factor test). Nonetheless, Plaintiffs' allegations fail that test as well:

1) <u>"Nature of the Act Assisted"</u>. *Halberstam*, 705 F.2d at 488. This first factor asks "whether the alleged aid . . . would be important to the nature of the injury-causing act." *Honickman*, 6 F.4th at 500. Plaintiffs do not allege that

USPCN committed any specific act that aided Hamas, let alone any specific act that was important to or otherwise used in the attacks that injured them.

2) "[A]mount of assistance provided". *Halberstam*, 705 F.2d at 488. This factor also weighs heavily against liability because USPCN is not alleged to have provided *any* specific form of quantifiable assistance to Hamas's attacks.

3) Whether USPCN was present at the time of the principal tort. *Id.*. Plaintiffs do not allege that USPCN was present during the Hamas attacks.

4) USPCN's "relation to" Hamas. *Id.*. This factor is designed to ascertain whether the defendant occupied a "position of authority [that gives] greater force to his power of suggestion." *Id.* at 484. The Amended Complaint does not plausibly allege any current relationship between USPCN and Hamas, much less one that would give USPCN any power of persuasion over Hamas's military operations in Gaza. At most, Plaintiffs attempt to allege some relationship between Hamas and USPCN's alleged founders, but that does not render plausible the inference of any current relationship—decades later— much less one that is significant to Hamas's operations. *See Bernhardt*, 47 F.4th at 872 (plaintiff "does not allege a connection between the foreign banks and al-Qaeda sufficient to infer any relationship, much less a close one.").

5) USPCN's "state of mind". *Halberstam*, 705 F.2d at 488. This factor is intended to determine whether the defendant provided aid with the "intent and desire to make the [unlawful] venture succeed." *Id.*; *Twitter*, 598 U.S. at 496-97. As argued below, the Amended Complaint is devoid of non-conclusory

12

allegations about the intention behind USPCN's speech and advocacy activity, and fails to plausibly allege an intent to support the attacks against Plaintiffs.

6) "[D]uration of the assistance given". *Id.*, at 488. This factor is inapplicable because Plaintiffs fail to identify any specific aid given by UPCN to Hamas or its operations, nor any specific time period when such aid was rendered. S*ee Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (25-year banking relationship did not support aiding-and-abetting liability where complaint failed to allege assistance to FTO's terrorist operations).

Not only have Plaintiffs failed to plausibly allege that USPCN provided any assistance to Hamas, nor specifically to the attacks that harmed them, but they have additionally failed to plead that any theorized assistance was "substantial" as required under the ATA. As such, this claim must be dismissed under Rule 12(b)(6).

## B.    Plaintiffs Have Failed To Allege That USPCN Was Aware Of Any Role That It Was Allegedly Playing In The Underlying Illegal Act

In order to satisfy the *Halberstam* requirements, Plaintiffs must also separately allege that USPCN was "generally aware" that it was playing a role in Hamas's attacks. *Halberstam*, 705 F.2d at 477. To satisfy this general awareness requirement, it is not enough to allege that USPCN understood that they were broadly supporting a terrorist organization; rather, they must have been cognizant of "assuming a role in terrorist activities." *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), *aff'd* 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is

insufficient to satisfy JASTA's scienter requirement"). The "inquiry is not whether a defendant should have been aware of its role"—rather, the plaintiff must establish "actual awareness." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness).

Plaintiffs fail to plausibly allege this element of the offense. Not a single fact specifically alleged against USPCN could permit the Court to plausibly infer that it was "aware" of playing some "role" in Hamas's military activities in Gaza, much less in the specific attacks that harmed Plaintiffs. *Id.* Instead, Plaintiffs rely entirely on conclusory statements that USPCN is "affiliated" with or "linked" to Hamas, with no facts whatsoever to render those legal conclusions plausible. Dkt. 6, ¶¶ 48, 50, 130, 154, 184, 407. These are the exact type of "naked assertions devoid of further factual development" that must be disregarded. *Iqbal*, 556 U.S. at 678. Where not a single fact alleged against USPCN could plausibly show awareness of the purported connection between the organization's lawful speech and advocacy in the US and the military operations of an FTO in Gaza, the Amended Complaint fails to state a claim for aiding and abetting under the ATA and must be dismissed.

## C. Plaintiffs Have Failed To Allege USPCN Consciously, Voluntarily, and Culpably Participated In The Underlying Attack

Because Plaintiffs fail to allege even general awareness, they certainly fail to allege the requisite culpable *mens rea* under the ATA, which requires "conscious, voluntary, and culpable participation" in the wrongful act. *Twitter*, 598 U.S. at 493. Aiding and abetting liability does not attach to "omissions, inactions, or

14

nonfeasance." *Id.* at 489. Rather, a plaintiff must plausibly allege that the defendants "culpably associated themselves with the [relevant] attack, participated in it as something that they wished to bring about, or sought by their action to make it succeed." *Id.* at 490 (internal quotation marks omitted). Culpable participation in this context requires Plaintiffs to allege that USPCN acted "with the intent of facilitating" Hamas's attacks. *Id.*, at 490. The Amended Complaint contains no facts to plausibly show that USPCN "wished" for the attacks that harmed Plaintiffs "to succeed." *Id.*.

The closest Plaintiffs come to alleging an intent to support Hamas by USPCN is where they claim—again as a bald conclusion bereft of factual support—that USPCN is a "co-founder of National Students for Justice in Palestine ('National SJP'), which was established to facilitate the spread of Hamas's influence[.]" Dkt. 6, ¶ 6. Plaintiffs allege no facts that could render this conclusory statement plausible.

First, Plaintiffs do not explain how USPCN "co-founded" National SJP. Plaintiffs do not allege that USPCN proposed the idea for the organization, provided start-up funding, contributed to the bylaws or mission statement, or had any other involvement in the founding of National SJP aside from participating in the 2010 conference where the organization was allegedly created. Dkt. 6, ¶ 154. Absent any specific factual allegation or elaboration, Plaintiffs' naked assertion that USPCN is a co-founder of National SJP—based solely on mutual involvement with a conference—is not plausibly plead. Plaintiffs undermine their own claim when they plead that USPCN was simply one among the many "[d]ifferent organizations" that "sponsored sessions in the 'Palestine Program'" at the 2010 Conference. Dkt. 6, ¶

15

189. According to the Amended Complaint, "[t]here were over 70 presentations, activities, and workshops devoted to BDS and Palestinian issues at the three-day conference." Dkt. 6, ¶ 189. Given these facts pleaded in the Amended Complaint, it is not plausible to conclude that USPCN had any significant role in "co-founding" National SJP, simply because it was one of the many organizations that collaborated on the conference and contributed to the Palestine-related programming, of which there were *more than 70* different "presentations, activities, and workshops." *Id.*.

Second, even if Plaintiffs could plausibly allege that USPCN "co-founde[d]" National SJP, they still fail to plausibly allege that it did so for the purposes they claim. In fact, the Amended Complaint includes a quote that pleads a far more plausible purpose behind USPCN's actions: "According to the U.S. Social Forum's website, the goal of the Palestine Program was '[to] seed divestment on every campus, educate our fellow students, and build meaningful relationships with social justice movements all across our campuses.'" *Id.*. Plaintiffs have not made sufficient factual allegations to permit this Court to plausibly infer that *any* of USPCN's alleged conduct was undertaken for the purpose of supporting Hamas, and in fact have provided the Court with a far more plausible purpose: mobilizing the American people to demand an end to genocide and justice for the Palestinian people.

## III. The Amended Complaint Does Not Plausibly Allege That USPCN Conspired With Hamas To Commit An Act Of International Terrorism

Section 2333(d) imposes liability on anyone "who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d). To state

this claim, Plaintiffs must allege "(1) an agreement between two or more persons; (2) to participate in an unlawful act"; "(3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477.

The Amended Complaint fails to plausibly allege "an agreement" to participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). To establish an "agreement," Plaintiffs must plausibly allege that the conspirators—*i.e.,* USPCN and Hamas— were "pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022); *Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d Cir. 1987) ("[C]onspirators [must have] a unity of purpose or a common design and understanding."); *Newman v. AP*, 758 F. Supp. 3d 1357, 1374 (S.D. Fla. 2024). In the ATA context, the object of the conspiracy is to commit an act of international terrorism. *See, e.g.*, *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) (ATA conspiracy claim required that the parties to "share[] the common goal of committing an act of international terrorism").[6]

---

[6] *See also Bernhardt v. Islamic Republic of Iran*, 2020 WL 6743066, at *7 (D.D.C. Nov. 16, 2020), *aff'd* 47 F.4th 856 (D.C. Cir. 2022) ("[T]o be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism.") (internal quotation marks omitted); *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar.

Here, the Amended Complaint does not adequately allege that USPCN conspired with Hamas—directly or indirectly—to commit an act of international terrorism. It alleges no facts about any specific communications, agreements, or acts performed by USPCN that plausibly show agreement to the "Hamas Conspiracy." The conclusory allegation of contact at some unidentified point in the past does not render plausible the inference that USPCN agreed with Hamas to commit an act of international terrorism, as required to state a claim under the ATA. *See Newman*, 758 F. Supp. 3d at 1374-75 (dismissing ATA conspiracy claim because plaintiffs failed to plausibly allege any agreement to commit an act of international terrorism). The conclusory assertion of an original purpose behind USPCN's founding does not render plausible an inference that either (1) the attacks that harmed Plaintiffs were in furtherance of a conspiracy USPCN had agreed to, nor that (2) USPCN's advocacy and speech in America was in furtherance of a conspiracy to commit the attacks. *See, e.g.*, *Lavi v. Unrwa USA Nat'l Comm., Inc.*, 2025 U.S. Dist. LEXIS 153757, at *9-24 (D. Del. Aug. 8, 2025) (dismissing similar ATA aiding and abetting and conspiracy claims where Plaintiffs "overstate[d] the conclusions for which the factual allegations in the Complaint can plausibly provide support", failed to show a nexus between Defendant's aid and the October 7th attack, and failed to plausibly allege an agreement between Defendant and Hamas).

---

28, 2019) (ATA conspiracy claim required the parties to "share[] the common goal of committing an act of international terrorism"); *Cain v. Twitter Inc.*, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (dismissing conspiracy claim where plaintiffs pled no agreement "to commit terrorist attacks.").

The Amended Complaint fails to plead an agreement for another reason: the ATA limits conspiracy liability to one "who conspires with the person who committed [the] act of international terrorism." 18 U.S.C. § 2333(d)(2) (emphasis added). The plain text of the statute requires the defendant to have directly interacted with the group that caused a plaintiff's injuries. *See also Twitter*, 598 U.S. at 489-90 (conspiracy requires an "agreement with the primary wrongdoer to commit wrongful acts"); *Halberstam*, 705 F.2d at 481 (to infer existence of a conspiracy "courts must initially look to see if the alleged joint tortfeasors are . . . in contact with one another."). The Amended Complaint does not allege any direct interaction whatsoever—Plaintiffs allege no particular time, place, forum, nor content of any communications or contact between Hamas and USPCN.

Moreover, the conspiracy claim against USPCN constitutes quintessential and impermissible shotgun pleading because it incorporates by reference the allegations made in all previous sections (Dkt. 6, ¶ 453), is based on conclusory and vague facts not obviously connected to the cause of action, and lumps together each of the defendants without specifying which defendants are responsible for which acts (Dkt. 6, 458-64). *See Morris v. Hillsborough Cty. Sheriff's Office*, 2025 U.S. Dist. LEXIS 20720, at *5-6 (M.D. Fla. Feb. 5, 2025) (dismissing complaint based on shotgun pleading where, *inter alia*, the plaintiff "fails to identify which defendant committed which conduct"); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (Rejecting complaint as "quintessential shotgun pleading of the kind we have condemned repeatedly," where, *inter alia*, "the complaint is replete with allegations that 'the

19

defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged" and where "each count incorporates by reference the allegations made in a section entitled 'General Factual Allegations' … while also incorporating the allegations of any count or counts that precede it.") Pleading the conspiracy claim in this manner fails to give USPCN adequate notice of the grounds upon which the claim rests. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) ("Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of these rules' because they are 'calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked.'") (citation omitted). Because Plaintiffs cannot plead a cause of action against USPCN through reliance on vague and undifferentiated group pleadings, they have failed to state a claim under Rule 12(b)(6).

## IV.    The Amended Complaint Does Not Plausibly Allege Material Support In Violation Of The Anti-Terrorism Act

In addition to their secondary liability claims against USPCN, Plaintiffs assert a direct liability claim under the ATA, which permits a civil cause of action for injury "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). As noted above, nowhere does the Amended Complaint allege that USPCN committed an act of terrorism that harmed Plaintiffs. Instead, Plaintiffs' theory appears to be that USPCN provided material support to Hamas in violation of 18 U.S.C. § 2339B. Section 2339B makes it a criminal offense to "knowingly provide[] material support or resources to a foreign terrorist organization." Not only have Plaintiffs failed to

adequately allege civil liability under § 2333(a), but they have failed to even allege a violation of § 2339B. Plaintiffs have not alleged that USPCN committed "an act of international terrorism" under § 2333(a), nor that USPCN acted with the requisite scienter for this provision, nor that any act by USPCN caused their injuries. Plaintiffs' third cause of action must be dismissed on these independent grounds.

Furthermore, Plaintiffs' material support claim against USPCN, like their conspiracy claim, constitutes impermissible group pleading for the same reasons discussed above. *Morris*, 2025 U.S. Dist. LEXIS 20720, at *5-6; *Magluta*, 256 F.3d at 1284. These group pleadings cannot plausibly support an inference of liability against USPCN in particular, as required to plead Plaintiffs' cause of action.

### A. The Amended Complaint Does Not Allege That USPCN Committed An Act Of International Terrorism

First, the Amended Complaint does not plead facts that plausibly show that USPCN committed "an act of international terrorism," as Section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (a) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, 18 U.S.C. § 2331(1)(A), and (b) "appear to be intended" to achieve certain specified terrorist purposes, *i.e.*, "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B). It is the defendant's conduct, not that of the person or entity allegedly receiving material support, which must satisfy the definition of

21

international terrorism. Plaintiffs do not allege that USPCN committed any terrorist acts. *See* Am. Compl. ¶ 456 (alleging that Hamas – not USPCN – "committed, planned, and authorized activities that involved violence or acts dangerous to human life"). They also do not allege that USPCN's actions were "intended" to achieve one of the specified purposes under Section 2331(1)(B). *See id.* ¶ 472 (alleging that "acts … committed, planned, and authorized" by Hamas – not USPCN – were intended to achieve terrorist purposes). The question is whether the factual allegations "would [] lead an objective observer to conclude" that USPCN intended such an outcome. *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011).

Plaintiffs' allegations against USPCN are so perfunctory and conclusory that they cannot plausibly show nor support an inference that USPCN intended to achieve any of the illicit goals that would render it liable for a violation of § 2333 through material support. *See, e.g., Newman*, 758 F. Supp. 3d at 1375-78 (dismissing ATA material support claim because plaintiffs failed to plausibly allege that the plaintiff committed an international act of terrorism).

## B.    The Amended Complaint Does Not Allege That USPCN Knowingly Provided Material Support To Hamas

Second, the Amended Complaint does not plead the required scienter. To plead material support to a terrorist organization in violation of the ATA, Plaintiffs must plausibly allege that USPCN "knowingly provide[d] material support or resources to a foreign terrorist organization." 18 USCA § 2339B(a)(1). The Supreme Court has read this provision stringently, requiring that a defendant act "under the

direction of, or in coordination with" a group that it "knows to be" an FTO. *Humanitarian Law Project*, 561 U.S. at 26. Indeed, Congress clearly anticipated that a claimant under this statute might bring an impermissible action arising from protected expressive conduct, as Plaintiffs have in this case, and chose to include an explicit limitation in the statute: "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(i). Independent, First Amendment-protected speech and advocacy, which an FTO may nonetheless portray to its constituencies as favorable to its mission, does not meet the scienter requirement for material support under § 2339B. *Humanitarian Law Project*, 561 U.S. at 36 ("Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by" and FTO).

Here, the Amended Complaint is completely devoid of any non-conclusory allegations that plausibly show that USPCN's alleged activities were undertaken in coordination with Hamas, nor directed by Hamas. *See Iqbal*, 556 U.S. at 686 (conclusory allegations of intent without factual support are insufficient); *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) ("repeated conclusory statements in the complaint that [banks] 'conspired' with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda," failed to plead scienter), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *Newman*, 758 F. Supp. 3d at 1378-80 (dismissing ATA material support claim because plaintiffs failed to plead the requisite scienter). USPCN's alleged speech and

advocacy remains firmly protected by the First Amendment, and does not constitute a violation of the ATA's prohibition on material support under § 2339B, nor certainly actionable conduct under the civil remedies provision in § 2333(a).

### C. The Amended Complaint Does Not Allege Injuries Proximately Caused By USPCN's Conduct

Finally, Plaintiffs' material support claim additionally fails because the Amended Complaint does not plausibly plead proximate cause, as federal courts have uniformly required under § 2333(a). *See, e.g.*, *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 677 (D.C. Cir. 2023); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019); *Fields v. Twitter, Inc.*, 881 F.3d 739, 748 (9th Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013). The Supreme Court and the Eleventh Circuit have not defined the precise contours of proximate cause for direct liability claims under the ATA. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223 (11th Cir. 2021) (noting that "federal courts have set out conflicting versions of proximate cause" in this context, without deciding the issue). Some courts have required "a direct relationship, rather than foreseeability," to establish proximate cause. *Fields*, 881 F.3d at 748. Others have held that a plaintiff must show the defendant's "acts were a substantial factor in the sequence of events that led to their injuries," and that their injuries were "reasonably foreseeable or anticipated as a natural consequence" of the defendant's conduct. *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *see also, e.g.*, *In re Chiquita Brands Int'l*, 284 F. Supp. at 1314.

24

Even under the latter, less demanding formulation, Plaintiffs fail to meet their pleading burden. The vague and conclusory allegations against USPCN, unsupported by pleaded facts showing any specific actions that it took to support Hamas, much less the attacks that injured them, do not satisfy the proximate cause requirement under § 2333(a). *See, e.g.*, *Ofisi*, 77 F.4th at 667 (no proximate cause where plaintiffs "failed to make any non-conclusory allegations that funds from [bank] were actually transferred to al-Qaeda and aided in the bombings or that the funds were necessary for Sudan to fund the attacks by al-Qaeda"); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting conclusory allegations that provision of "routine banking services" to customers affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or plaintiffs' injuries"); *Newman*, 758 F. Supp. 3d at 1380-81 (dismissing ATA material support claim because plaintiffs failed to plead proximate cause).

Even if Plaintiffs could somehow plausibly plead that USPCN knowingly provided material support coordinated with or at the direction of Hamas, and that said material support *itself* constituted an act of international terrorism, they still fail to plead their third cause of action because they articulate no nexus whatsoever between the alleged material support and the specific injuries they sustained. Because Plaintiffs fail to plead a nexus, Rule 12(b)(6) requires dismissal of their claim.

## CONCLUSION

For all of the foregoing reasons, Defendant USPCN respectfully requests that the Court dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that he conferred with counsel for the opposing party by email on July 31, 2025, and the parties were unable to agree on a resolution of all or part of the motion.

Dated: August 11, 2025                           Respectfully submitted,

*/s/ Ben H. Elson*
Ben H. Elson (*pro hac vice*)
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
Tel: (773) 235-0070 Ext. 116
Email: ben@peopleslawoffice.com
*\*Lead Counsel for Defendant United States
Palestinian Community Network*

Collin Poirot (*pro hac vice*)
2603 Oak Lawn Ave.
Dallas, TX 75219
Tel: (214) 392-2281
Email: cpoirot.law@gmail.com
*Counsel for Defendant United States
Palestinian Community Network*