## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

----------------------------------------------------------------X

MAURICE SHNAIDER, *et al.*,

     Plaintiffs

    v.

AMERICAN MUSLIMS FOR PALESTINE, *et al.*

     Defendants.

Case No: 8:24-cv-01067-MSS-SPF

----------------------------------------------------------------X

### PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS ODEH, ABUDAYYEH, AND USPCN'S MOTION TO DISMISS

The Court should deny the Motions to Dismiss of Defendants Hatem Abudayyeh ("Abudayyeh"), Magdi Odeh ("Odeh"), and the US Palestinian Community Network ("USPCN") (collectively "Moving Defendants").

These motions distort Plaintiffs' allegations and disregard the First Amended Complaint's ("FAC") detailed factual allegations. When read as a whole, the FAC sets forth a coherent narrative of a multi-year, coordinated campaign in which Abudayyeh and Odeh, acting through and alongside USPCN, played integral leadership roles in establishing, sustaining, and directing US-based operations that materially supported Hamas, a designated Foreign Terrorist Organization ("FTO"). The FAC further pleads with specificity that USPCN was a prime initiator in importing Hamas's student arm to the US and that all three Defendants'

activities were integral to Hamas's campaign of violence, not only enabling October 7 to occur but also succeeding as an act of terrorism. The attacks' coercive impact depended on Defendants' infrastructure, which amplified, justified, and mobilized around Hamas's violence, ensuring it achieved its intended effect of intimidating civilians and influencing governments.

Plaintiffs do not rely on conclusory attributions or mere ideological sympathy. The FAC pleads concrete, defendant-specific conduct—such as founding National SJP, building Hamas-aligned infrastructure, and directing coordinated propaganda and mobilization campaigns—that transformed October 7 from a localized massacre into international terrorism by ensuring its atrocities were broadcast, defended, and operationalized nationwide to coerce and intimidate.

## **INTRODUCTION**

Plaintiffs, survivors and family members of victims of the October 7, 2023 Hamas terrorist attacks and their aftermath (the "October 7 Attacks"), bring this action under the Anti-Terrorism Act ("ATA"), 18 USC. § 2333(a) and (d), to hold Moving Defendants civilly liable for knowingly aiding and abetting Hamas, providing it with material support and resources, and conspiring in furtherance of acts of international terrorism.

The FAC (Dkt. 6) must be read as a whole, not parsed into fragments or measured by how often a Defendant's name appears. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (the plausibility

inquiry requires courts to assess allegations collectively, not in isolation). When so considered, the allegations set forth a coherent and detailed narrative of a decades-long conspiracy in which all of the defendants acted together to build and sustain Hamas's US-based infrastructure.

Moving Defendants rely on the same flawed strategy: a selective and misleading portrayal of the FAC. Abudayyeh insists his name appears only "three" times, Odeh claims only "four," and USPCN dismisses the allegations as "conclusory" or mere "speech," accompanied by political commentary that has no bearing on Rule 12(b)(6). USPCN in particular devotes paragraphs to inflammatory rhetoric accusing Israel of "genocide" in Gaza. Such allegations have no connection to the claims or injuries at issue in this case, are immaterial to whether Plaintiffs have stated a claim under the ATA, and serve only to prejudice and distract. The Court should disregard these portions of USPCN's Motion as irrelevant to the Rule 12(b)(6) analysis.

The FAC specifically alleges that Odeh co-founded USPCN and American Muslims for Palestine ("AMP"), successor organizations to the Islamic Association for Palestine ("IAP") and the American Muslim Society ("AMS")—both adjudicated Hamas fronts—and that these entities jointly established National Students for Justice in Palestine ("National SJP") as Hamas's student arm in the US. (FAC ¶¶ 48, 50, 56, 98–101, 114–131, 150, 189, 201, 406–16.) Abudayyeh is alleged to have co-founded and directed

USPCN, and to this day serves as its national chair, positioning him at the center of a coordinated effort to support Hamas alongside AMP and related organizations. USPCN itself is alleged to have played a prime initiating role in importing Hamas's student arm into the US and sustaining the infrastructure through which Hamas's objectives were advanced. (FAC ¶¶ 48, 50, 58, 98–101, 114–131, 150, 189, 201, 406–16.)

The number of times the FAC names Moving Defendants is immaterial. Those allegations are part of a broader, factually specific record showing each Defendant's foundational role in structuring organizations that coordinated with Hamas and its operatives. At the pleading stage, the Court's task is to consider the full factual picture created by the FAC, not to tally references to individual names. *Tellabs*, 551 U.S. at 322–23.

Far from being conclusory, the FAC pleads particularized historical, organizational, and operational facts—drawn from publicly available records—tying Moving Defendants to Hamas's US-based infrastructure and operational campaigns, including those culminating in the October 7 Attacks. Whether discovery uncovers additional direct interactions between these Defendants and Hamas is a matter for later stages. At this juncture, Plaintiffs have more than plausibly stated claims for aiding-and-abetting, conspiracy, and material support liability under the ATA.

## SUMMARY OF FACTS

Hamas was designated a Foreign Terrorist Organization under Executive Order 13224 on October 31, 2001, *see* https://www.state.gov/executive-order-13224/#state. Hamas is responsible for the October 7, 2023 terrorist attacks and their aftermath, during which its operatives murdered, injured, raped, mutilated, burned alive, and kidnapped civilians, including US citizens. As alleged, Hamas's campaign of violence depends not only on fighters and weapons but also on a global network of organizations and individuals furnishing logistical coordination, recruitment pipelines, propaganda platforms, financial resources, and other forms of material support designed to intimidate civilians and influence government policy. (FAC ¶¶ 3–5.)

Within the US, Defendants Abudayyeh and Odeh played central roles in building that network by founding and leading two successor organizations to Hamas fronts: IAP and AMS. After those predecessors were shut down in the wake of the *Boim* litigation,[1] Defendants and their associates launched USPCN and AMP as the "transition" structures through which Hamas's operations could continue in the US. (FAC ¶¶ 56, 58, 115, 130.) Odeh was a founder and early leader of both USPCN and AMP, while Abudayyeh co-founded USPCN and has remained its national chair since inception. These organizations, operating in tandem, extended the Hamas-affiliated enterprise into new spheres of activity.

---

[1] *Boim v. Holy Land Foundation for Relief & Development*, 549 F.3d 685, 693–94 (7th Cir. 2008) (Court held that IAP/AMS's fundraising and propaganda in the U.S. constituted material support to Hamas, making them liable under the ATA.

A central initiative of this US-based network was the creation of National SJP, established in 2010 as a joint project of USPCN and AMP. National SJP quickly expanded into a nationwide student movement coordinating more than 200 campus SJP chapters. Its launch was facilitated through the Palestine Program at the US Social Forum, partially sponsored by the BDS National Committee ("BNC"), whose leading constituent is the Palestinian National and Islamic Forces, a coalition that includes Hamas, the Popular Front for the Liberation of Palestine ("PFLP"), the Palestine Liberation Front ("PLF"), and Palestine Islamic Jihad ("PIJ"). (FAC ¶¶ 150–51, 187, 189, 201, 406–07.) By founding and directing AMP and USPCN, Defendants created the infrastructure through which Hamas's student arm was organized in the US.

The FAC further alleges that USPCN, under Abudayyeh's leadership, continued to operate as a convening hub for Hamas-linked coalitions. For example, in 2024, USPCN co-sponsored the People's Conference for Palestine alongside National SJP and other pro-Hamas groups, coordinating unified action in support of Hamas in the US. (FAC ¶ 201.) Such resource-mobilizing activities provided tangible support, coordination, and infrastructure to entities and individuals known to be connected to Hamas.

Taken together, these allegations show that Moving Defendants knowingly founded and led organizations that served as intermediaries between Hamas and its US-based network, structured successor entities to maintain continuity after IAP and AMS were dismantled, and facilitated the creation of National SJP as Hamas's student arm. Their conduct was a substantial factor in strengthening Hamas's

operational capabilities and ensuring that the October 7 Attacks succeeded as terrorism. Without Defendants' coordinated propaganda, infrastructure, and mobilization, the atrocities might have remained isolated and little-known acts of brutality. Instead, by structuring networks that justified, amplified, and broadcast Hamas's violence, Defendants enabled the October 7 Attacks to achieve their intended coercive impact on civilian populations, Jewish communities, Israel, international opinion, and public policy.

This is not simply aftermath advocacy. Plaintiffs allege that Defendants' structuring of coordinated infrastructure—both in the years leading up to October 7, 2023, and in its immediate and ongoing aftermath—was an integral part of Hamas's operational design. For years, Defendants amplified Hamas's messaging, normalized its rhetoric, and built the organizational platforms that would ensure any mass attack resonated far beyond Israel. Violence on the ground could achieve its intended coercive effect only if it was immediately broadcast, legitimized, and harnessed abroad. By building and directing the very organizations that performed this function, Defendants ensured that October 7 succeeded as terrorism under the ATA.

## STANDARD OF REVIEW

A complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "is not akin to a 'probability requirement,'" but simply requires "more than a sheer possibility

that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient, *id.*, a complaint need only plead enough facts to allow the court to draw the reasonable inference that the defendant is liable.

Defendants cite *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013), *Mamani v. Berzaín*, 654 F.3d 1148, 1153 (11th Cir. 2011), and *Womack v. Carroll Cty., Ga.*, 840 F. App'x 404, 405 (11th Cir. 2020), for the unremarkable proposition that legal conclusions without factual support are not entitled to the assumption of truth, which Plaintiffs do not dispute. But here, the FAC pleads far more than conclusory assertions; it alleges specific historical, organizational, and operational facts—supported by public sources—that tie Defendants to Hamas's US-based infrastructure and to the chain of events culminating in the October 7 Attacks.

At this stage, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiffs' favor. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). Whether Plaintiffs can prove those allegations with admissible evidence is a question for later stages of the case. For now, Rule 12(b)(6) requires only plausibility, not proof.

## MOVING DEFENDANTS' "FACTUAL BACKGROUND" SECTIONS OF THEIR BRIEFS ARE ARGUMENTATIVE, NOT NEUTRAL OR FACTUAL

Defendants' "Factual Background" sections are not neutral recitations but argumentative narratives that minimize and mischaracterize the FAC. Their focus

on the number of times their names appear ignores the broader factual record alleging their foundational roles in structuring the US-based entities that served as successors to adjudicated Hamas fronts and as intermediaries between Hamas and its American affiliates. See FAC ¶¶ 48–50, 56–59, 97–99, 115, 130–32, 145–50, 154, 182–90, 200–01, 258, 382, 406–16.

The Complaint details how USPCN and AMP were organized in the wake of the *Boim* judgment to carry forward the activities of Hamas-linked predecessors, and how Odeh and Abudayyeh themselves described this as a "transition" into the new entities. *Id*. ¶¶ 115, 130. It further pleads that USPCN, under Abudayyeh's leadership, engaged in joint initiatives with coalitions that included Hamas, such as the BDS National Committee, and that USPCN and AMP together established National SJP as a US-based extension of Hamas's network. *Id.* ¶¶ 150–51, 187, 189, 406–07. These are not bare conclusions; they are specific allegations supported by detailed organizational history and public records. *Tellabs,* 551 U.S. at 322–23 (plausibility must be assessed holistically, not by isolating allegations).

Defendants' suggestion that Plaintiffs cannot recover for injuries sustained in Hamas attacks after October 7, 2023, fares no better. The ATA imposes liability for injuries suffered "by reason of" acts of international terrorism "committed, planned, or authorized" by the foreign terrorist organization the defendant aided, abetted, or conspired with. 18 USC. § 2333(a), (d). Plaintiffs allege that each of the post–October 7 attacks identified in the FAC was carried out by Hamas or by actors within Hamas's coordinated campaign of violence, and that such attacks were foreseeable consequences of the infrastructure Defendants helped establish.

Anti-Terrorism Act ("ATA") liability extends to subsequent terrorist acts carried out as part of an FTO's broader campaign. In *Boim* 549 F.3d at 693–94, the Seventh Circuit explained that donors to Hamas, knowing its aims, necessarily understood that their support would enable Hamas to continue killing or injuring more people, including US nationals in Israel. *Id.,* 549 F.3d at 693–94. The D.C. Circuit similarly held in *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 275–76 (D.C. Cir. 2018), that proximate cause is satisfied where the defendant's support was a substantial factor in the sequence of events leading to an attack and where the attack was a reasonably foreseeable consequence of that support.

Here, Defendants' contributions to Hamas's infrastructure foreseeably enhanced its capacity to execute not only the October 7 Attacks but also the wave of subsequent attacks carried out as part of the same campaign. The causal connection between Defendants' conduct and Plaintiffs' injuries—whether sustained on October 7 or in later Hamas operations—is legally sufficient under the ATA. October 7 itself was inseparable from Defendants' role: the violence became terrorism only because it was publicized, amplified, legitimized, and mobilized through the networks they built. Unlike the age-old paradox about whether a tree falling in the forest that nobody hears makes a noise, with terrorism the whole point is for people to hear of it and be influenced and intimidated. Publicity is the *sine qua non* of terrorism. By ensuring Hamas's atrocities were reinforced and disseminated through these structures, Defendants' amplification efforts not only secured the coercive success of the October 7 Attacks but also helped precipitate the subsequent campaign of violence.

## ARGUMENT

I.  **The FAC Plausibly Alleges That Defendants Themselves Committed Acts of International Terrorism**

The ATA provides a civil remedy to "[a]ny national of the US injured…by reason of an act of international terrorism." 18 USC. § 2333(a). Congress deliberately defined "international terrorism" broadly. 18 USC. § 2331(1). Liability attaches not only to those who physically commit murder, bombings, or kidnappings, but also to conduct that "involve[s] violent acts or acts dangerous to human life" and is intended to intimidate or coerce. § 2331(1)(A)–(B). The Supreme Court has explained that even non-violent activities coordinated with an FTO are inseparable from its violent acts. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 26–27 (2010).

Terrorism is not defined solely by atrocities on the battlefield; it is equally defined by the exploitation of those atrocities to achieve political goals. The October 7 Attacks were designed to terrorize Americans, Israelis and Jews worldwide, coerce Israel and the American government, and shape international opinion. That coercive impact depended on networks—including Defendants and their organizations—that amplified, justified, and mobilized Hamas's violence. Without this coordination, October 7 might have been a bloody crime; with it, the attacks became effective terrorism, achieving their intended coercive impact. That coordination is not incidental. It was foreseeable, deliberate, and defendant-specific. Plaintiffs allege that USPCN orchestrated demonstrations glorifying October 7; that Abudayyeh, as national chair, oversaw networks that mobilized resources and defended Hamas's atrocities; and that Odeh, through AMP and

USPCN, carried Hamas's messaging into American student movements. As the Supreme Court emphasized in *Holder*, it is practically impossible to distinguish between support for a group's violent and non-violent activities, as such support ultimately aids the terrorist organization as a whole, including its violent operations. These allegations are pleaded with factual specificity, not inference, and show how each Defendant contributed directly to ensuring the October 7 Attacks achieved their coercive reach:

**USPCN.** The FAC alleges that USPCN coordinated propaganda and student networks that glorified Hamas's violence and used it to intimidate and sway public opinion, both in the years leading up to the October 7 Attacks and in their aftermath. (FAC ¶¶ 6, 50, 98, 130–31, 150, 184, 187, 189, 201, 258, 382, 384, 406–07).

**Abudayyeh.** The FAC alleges that as USPCN's national chair, Abudayyeh oversaw networks that furnished personnel, facilities, and messaging campaigns that presented Hamas's atrocities as "resistance" and mobilized support for them in the US, both in the years leading up to the October 7 Attacks and in their aftermath. (FAC ¶ 8, 58, 130, 406-07).

**Odeh.** The FAC alleges that Odeh helped structure the networks that carried forward Hamas's US operations, and those networks amplified Hamas's attacks through organized propaganda and intimidation of American Jews, both in the years leading up to the October 7 Attacks and in their aftermath. (FAC ¶ 8, 56, 115, 130, 406-07).

Defendants' reliance on *Stansell v. BGP, Inc.*, 2011 WL 1296881 (M.D. Fla.

Mar. 31, 2011), and *Newman v. Motorola, Inc.*, 758 F. Supp. 3d 1375 (N.D. Ga. 2024), is misplaced. In *Stansell*, the court explained that the allegations would not lead an objective observer to conclude defendants intended such an outcome. In *Newman*, the court emphasized that material support alone does not automatically qualify as international terrorism; the conduct must involve violence and appear intended to intimidate or coerce a civilian population or influence government policy. Here, Plaintiffs allege sufficient facts to show that Defendants themselves committed acts of international terrorism intended to coerce and influence.

The ATA does not limit liability to those wielding the weapons. Those who publicize, justify, promote, and mobilize in coordination with terrorist atrocities commit acts that "*involve* violent acts" under § 2331(1) (emphasis added). Such promoters help to accomplish the "intimidate[ion] or coerc[ion] of a civilian population," and "influen[ing] the policy of a government by intimidation or coercion. 18 U.S.C. § 2331(1)(B)(i) and (ii). Plaintiffs' allegations therefore plausibly state claims that Defendants themselves committed acts of international terrorism.

## II.    The FAC Plausibly Alleges Aiding and Abetting

The ATA imposes secondary liability on anyone who "aids and abets, by knowingly providing substantial assistance" to acts of international terrorism. 18 USC. § 2333(d)(2). Courts assess such claims under the framework set out in *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983), as explained in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). Plaintiffs must plausibly allege: (1) a principal

committed an act of international terrorism; (2) the defendant was generally aware of its role in an unlawful activity from which such acts were foreseeable; and (3) the defendant knowingly and substantially assisted the principal. *Taamneh*, 598 U.S. at 495–97. In evaluating substantial assistance, courts consider the six factors identified in *Halberstam*, 705 F.2d at 483–84.

Moving Defendants argue Plaintiffs allege only "assistance to Hamas in general," citing *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667 (D.C. Cir. 2023), *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019), and *Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d 144 (2d Cir. 2021). In *Ofisi*, the court found no direct connection between BNPP's financial services and the terrorist acts; in *Siegel*, the complaint failed to allege assistance to an FTO's terrorist operations; and in *Weiss*, banking services to an FTO, without more, were deemed insufficient. Here, by contrast, the FAC alleges more than routine banking: it pleads deliberate, coordinated efforts—well before October 7 and continuing afterward—to amplify Hamas's violence and ensure the attacks succeeded as terrorism, including organizing infrastructure to glorify that violence, mobilizing student networks to defend it, and providing resources and platforms that gave the atrocities their intended coercive impact. (FAC ¶¶ 6, 50, 98, 130–31, 150, 184, 187, 189, 201, 258, 382, 384, 406–07). That conduct goes well beyond neutral services; it is purposeful alignment with Hamas's violent campaign. Crucially, Plaintiffs allege not that Defendants were sympathetic to Hamas in the abstract, but that they knowingly provided the organizational capacity and propaganda machinery that allowed October 7 to function as terrorism. Under *Halberstam* and *Taamneh*, that kind of

deliberate amplification—turning killings into terrorism by broadcasting and legitimizing them—constitutes "knowing and substantial assistance."

Courts have sustained ATA aiding-and-abetting claims on allegations far less direct than those here. See, e.g., *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860–61 (2d Cir. 2021) (upholding claims where bank knowingly provided financial services to Hezbollah-linked entities); *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 218–21 (D.C. Cir. 2022) (finding plausibility where companies provided goods and payments that foreseeably assisted terrorist groups). And in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) the Supreme Cour held that even providing non-violent conflict resolution training to Hamas would violate the ATA. These authorities confirm that Plaintiffs' allegations—detailing propaganda, mobilization, and organizational structuring in direct alignment with Hamas— comfortably meet the aiding-and-abetting standard.

The same distinction defeats Moving Defendants' reliance on *Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013), and *Mamani v. Berzaín*, 654 F.3d 1148 (11th Cir. 2011). Those cases rejected complaints that offered only conclusory assertions without specific facts. Plaintiffs here plead concrete allegations—naming events, coalitions, and initiatives in which Defendants used Hamas's atrocities to intimidate and influence. Under *Tellabs, Inc.,* 551 U.S. at 322–23, the FAC must be read holistically, not by isolating references to individual Defendants.

Moving Defendants also invoke *Bernhardt v. Islamic Rep. of Iran*, 47 F.4th 856 (D.C. Cir. 2022), arguing Plaintiffs must show "actual awareness," not that they should have been aware. That standard is easily satisfied. Defendants' own

rhetoric, organizational activities, and coalitions with Hamas-linked entities demonstrate actual knowledge of Hamas's role and of their own function in legitimizing and amplifying its violence.

In addition to propaganda campaigns surrounding October 7, Plaintiffs allege that Defendants created and led the very entities that established National SJP, which functioned as Hamas's US-based student arm. (FAC ¶¶ 130–31, 406–07). That organizational infrastructure—established well before October 7—ensured Hamas's atrocities were not isolated acts of violence but became terrorism by being justified, amplified, and mobilized on hundreds of American campuses. This type of deliberate structuring and coordination is far from incidental; it is exactly the kind of "knowing and substantial assistance" that *Halberstam* and *Taamneh* contemplate. The FAC alleges more than shared ideology: it details how Defendants built the structures through which Hamas's violence was operationalized on US soil. That is the circumstantial evidence of "unity of purpose" that suffices at the pleading stage:

**USPCN.** Alleged to have orchestrated demonstrations and propaganda campaigns glorifying Hamas's attacks, USPCN directly leveraged October 7 to intimidate Jewish communities and influence US opinion. It also played a central role in creating the organizational infrastructure—most notably by co-founding National SJP—that ensured Hamas's atrocities were amplified and mobilized across campuses.

**Abudayyeh.** As USPCN's founder and national chair, Abudayyeh oversaw and led these efforts, including coordinated defenses of Hamas's atrocities and

resource mobilization through coalitions tied to Hamas. His leadership ensured that October 7's violence succeeded as terrorism by being justified and used to intimidate.

**Odeh.** Through leadership roles in AMP and USPCN, Odeh facilitated networks that carried Hamas's messaging into US student and activist movements. By helping build and sustain the entities that organized National SJP, Odeh ensured Hamas's attacks were not isolated acts of violence but became terrorism through coordinated mobilization use to intimidate Jews and coerce public opinion and policy.

Defendants' reliance on *Parizer v. AJP Educational Foundation, Inc.*, No. 1:24-cv-00724 (E.D. Va. Aug. 15, 2025) (Dkt. 67), is misplaced. Unlike in *Parizer*, where the court dismissed "public relations" allegations largely focused on post–October 7 conduct, Plaintiffs here plead a detailed pre–October 7 record. The FAC devotes 116 of 210 pages—266 paragraphs—to the infrastructure Defendants created in the US before October 7. It further documents, over pages 94-116, SJP's years-long alignment with Hamas and its intimidation of Jewish students on US campuses, culminating in the October 7 Attacks. That historical scaffolding is absent in *Parizer*. Moreover, the ATA does not limit liability to the triggermen. As stated above, under *Halberstam* and *Taamneh*, Plaintiffs need only plead general awareness of Defendants' role in Hamas's enterprise and knowing, substantial assistance—not foreknowledge of the precise attack. The FAC alleges both pre- and post-October 7 conduct: Defendants built and maintained the US infrastructure that ensured Hamas's violence would resonate, and then used that same machinery to amplify,

justify, and operationalize the atrocities—turning a mass killing into terrorism intended to intimidate civilians and influence governments. If a bomb goes off in the forest and no one hears it, it is not terrorism; October 7 became terrorism because Defendants supplied the mechanism that made Hamas's violence reverberate worldwide. Finally, the FAC pleads contemporaneous facts supporting scienter: after a five-month dormancy, Columbia SJP's Instagram reactivated on October 5, 2023—two days before the attacks—with "We are back!!" and an image of Israel in red, supporting a plausible inference of awareness of their role in amplifying Hamas's campaign and of imminent escalation consistent with that role. (FAC ¶ 297.) *Parizer* confirms only that conclusory allegations of 'systemic support' untethered to the October 7 Attacks are insufficient; here, by contrast, Plaintiffs plead specific pre-attack acts by these Defendants that substantially assisted Hamas's campaign culminating in October 7.

Taken together, these allegations satisfy *Halberstam*'s factors. The nature of the acts encouraged was grave; the assistance was sustained and deliberate; the relationship to Hamas was direct; and Defendants acted with awareness of their roles. Their contributions were substantial factors in ensuring that Hamas's violence succeeded as terrorism, including the October 7 Attacks.

## III.   The FAC Plausibly Alleges Conspiracy

ATA § 2333(d)(2) imposes secondary liability on "any person who conspires with the person who committed" an act of international terrorism. To plead such a claim, Plaintiffs need only allege facts that plausibly support the inference that Defendants knowingly entered into an agreement—formal or informal—with

Hamas to participate in acts of international terrorism. See *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). An agreement may be shown through circumstantial evidence reflecting a unity of purpose or a common design and understanding. *United States v Hartley,* 678 F2d 961 (11th Cir 1982).

The FAC plausibly alleges such an agreement. Plaintiffs allege that USPCN and AMP jointly founded National SJP, coordinated events with Hamas-linked coalitions, shared resources, and amplified Hamas's violence through coordinated infrastructure. (FAC ¶¶ 6, 50, 56–59, 130–31, 150, 189, 201, 258, 382, 384, 406–07). That infrastructure—established well before October 7—ensured Hamas's atrocities were not isolated acts of violence but became terrorism by being justified, amplified, and mobilized on hundreds of American campuses. Such deliberate structuring and advance coordination are precisely the kind of circumstantial facts that support an inference of agreement under *Halberstam*.

Defendants cite *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019), and *Cain v. Twitter Inc.*, 2018 WL 4657275 (N.D. Cal. Sept. 24, 2018), to argue Plaintiffs must plead an agreement to share the common goal of committing terrorist attacks. But the ATA requires only that Defendants conspired "with the person who committed" an act of international terrorism—not that Plaintiffs allege Defendants agreed on the precise time, place, or form of the attack. 18 USC. § 2333(d)(2). Courts recognize that circumstantial allegations of collaboration and shared objectives suffice. *See Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 220–21 (D.C. Cir. 2022); *Freeman v. HSBC Holdings PLC*, 413 F. Supp.

3d 67, 93 (E.D.N.Y. 2019).

Moving Defendants also argue that the FAC is a "shotgun pleading" that improperly lumps defendants together. *See Morris v. Hillsborough Cty. Sheriff's Office*, 2025 US Dist. LEXIS 20720 (M.D. Fla. Feb. 5, 2025); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). That mischaracterizes the FAC, which contains defendant-specific allegations (FAC ¶¶ 56, 58, 115, 130–31, 406–07) detailing each Defendant's role in establishing, directing, and leveraging US-based entities to advance Hamas's objectives. Courts have rejected "shotgun pleading" challenges where, as here, the FAC provides sufficient detail about each defendant's conduct. *See Pinson v JPMorgan Chase Bank, N.A.,* 942 F3d 1200 (11th Cir 2019) (noting the worst examples of shotgun pleadings contain "rambling irrelevancies") Plaintiffs' allegations are specific and relevant to each Defendant.

The conspiracy claim also satisfies proximate cause. As *Halberstam* explains, "once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy," regardless of whether they personally carried out or knew about each injurious act. 705 F.2d at 481. Thus, whether Defendants personally orchestrated the October 7 atrocities is immaterial; Plaintiffs plausibly allege they knowingly joined a conspiracy, well before October 7, with Hamas whose purpose was to advance terrorist violence.

At the pleading stage, Plaintiffs are not required to allege the exact mechanics of the agreement. *See Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268 (M.D. Ala. 1999) (recognizing that when defendants act in concert, plaintiffs may plead group conduct and develop individual liability through discovery). Plaintiffs

plausibly allege sustained collaboration, shared objectives, and continuity of leadership such that Defendants' participation was not incidental but part of an enduring conspiracy to advance Hamas's strategic aims, including October 7. That is sufficient to state a claim under § 2333(d)(2).

## IV.    The FAC Plausibly Alleges Material Support in Violation of the ATA

ATA § 2333(a) provides a civil remedy to "[a]ny national of the United States injured…by reason of an act of international terrorism." 18 USC. § 2333(a). That requirement is satisfied where a defendant violates 18 USC. § 2339B by "knowingly provid[ing] material support or resources to a foreign terrorist organization." § 2339B(a)(1). "Material support" includes "any service, personnel…or other physical assets." § 2339A(b)(1). The Supreme Court in *Holder* made clear that such support—even if styled as advocacy—is not protected speech when undertaken "in coordination with or at the direction of" a designated FTO. *Holder*, 561 U.S. at 26–27, 39

### A.    Defendants' Conduct Constitutes Material Support

The FAC alleges that Moving Defendants knowingly furnished services, personnel, and organizational capacity to Hamas. Among other things, they co-founded and directed national networks that coordinated events with Hamas-linked actors, provided platforms for Hamas propaganda, and mobilized financial and human resources in the US to advance Hamas's objectives of intimidation and coercion. (FAC ¶¶ 5–6, 48, 50, 56, 58, 98, 114–31, 150, 184, 187, 189, 201, 258, 382, 384, 406–07.) These are precisely the types of activities courts have recognized as actionable "material support." *See Boim,* 549 F.3d at 698–99.

### B.    Moving Defendants Acted with the Requisite Scienter

Moving Defendants argue Plaintiffs failed to plead knowledge or intent. But § 2339B requires only that the defendant know the organization is a designated FTO or has engaged in terrorism, not that the defendant intends to further any particular terrorist attack. *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329–30 (2d Cir. 2018). Here, the FAC pleads knowledge by showing that Defendants occupied leadership positions in organizations repeatedly linked to Hamas, worked in coalition with Hamas-affiliated partners, and publicly aligned themselves with individuals convicted of terrorist crimes. See *United States v Suarez,* 893 F3d 1330 (11th Cir 2018) (upholding conviction under § 2339B where defendant knowingly directed services to ISIS through propaganda, recruitment, and coordination with perceived ISIS members).

### C.    Plaintiffs Plausibly Plead Proximate Cause

Defendants' insistence that Plaintiffs must allege direct participation in the October 7 Attacks misstates the law. ATA liability extends to conduct that qualifies as "international terrorism" under § 2331(1), including coordinated material support to Hamas. *Holder*, 561 U.S. at 26–27; *Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d 144, 162–63 (2d Cir. 2021).

The FAC alleges Defendants' sustained US-based provision of infrastructure, services, personnel, and propaganda capacity strengthened Hamas's ability to carry out the October 7 Attacks. These activities were a substantial factor in Hamas's campaign because the coercive impact of terrorist violence depends not only on the violence itself, but on its amplification through propaganda,

mobilization, and networks of support deliberately constructed over years. That is precisely what Moving Defendants furnished: US-based platforms and an organizational structure that amplified Hamas's messaging and mobilized support to maximize the psychological and political effect of its violence. The FAC pleads that Defendants' material support was not fungible or passive. It was tailored to Hamas's strategy of using global intimidation to magnify its battlefield violence. By furnishing the infrastructure, personnel, organizational services, and propaganda platforms, Defendants provided the precise form of support Hamas required for October 7 to succeed as terrorism. See In *In re Chiquita Brands Int'l, Inc., 284 F. Supp. 3d 1284 (2018)* (finding proximate cause sufficiently pled where financial support foreseeably enhanced a terrorist group's capacity and was a substantial factor in the resulting harm).

This case is unlike those involving routine banking services or neutral platforms providing social media accounts and messaging services. *See Rothstein,* 708 F.3d at 95; *Fields v. Twitter, Inc.,* 881 F.3d 739, 748 (9th Cir. 2018). Plaintiffs allege not passive commercial relationships but a deliberate, organized pipeline of mobilization designed to reinforce Hamas's terrorist campaign.

### D.    *The Allegations More Than Suffice at the Pleading Stage*

At this stage Plaintiffs need not detail every operational step between Defendants' conduct and the October 7 Attacks. The FAC pleads facts showing that Defendants' knowing provision of infrastructure, services, personnel, and operational capacity materially enhanced Hamas's ability to execute its campaign of violence. See *Colon v. Twitter, Inc.,* 14 F.4th 1213, 1223 (11th Cir. 2021) (noting

conflicting formulations of proximate cause). Plaintiffs' allegations satisfy either formulation: they allege a direct relationship between Defendants' conduct and Hamas's campaign, and they allege that Defendants' support was a substantial factor in the sequence of events leading to the October 7 Attacks and that the resulting injuries were reasonably foreseeable. See *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *In re Chiquita Brands Int'l*, 284 F. Supp. 3d 1284, 1314 (S.D. Fla. 2018).

## V.   Plaintiffs' Claims Target Unprotected Conduct, Not Protected Speech

Defendants seek dismissal by framing this case as an attack on political expression and association. That framing mischaracterizes the FAC. Plaintiffs do not allege liability for independent advocacy "in support of Palestinians." Rather, the claims focus on Defendants' deliberate, coordinated provision of services, personnel, and organizational capacity to Hamas, a designated FTO. These acts are not shielded by the First Amendment.

The Supreme Court has drawn a clear line: abstract advocacy is protected, but the "knowing provision of material support to a foreign terrorist organization" is not—even when such support takes the form of coordinated messaging or training. *Holder*, 561 U.S. at 26–27, 39. Defendants' reliance on *Snyder v. Phelps*, 562 U.S. 443 (2011), *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), and *Brandenburg v. Ohio*, 395 U.S. 444 (1969), is misplaced. Those cases involved independent advocacy or protest divorced from coordination with terrorist organizations. None immunize services, personnel, or organizational infrastructure knowingly provided to Hamas.

The FAC pleads that USPCN, under the leadership of Abudayyeh and Odeh, did not merely "participate in protests." It alleges that Defendants co-founded and directed National SJP as Hamas's US student arm, organized conferences and coalitions with Hamas-linked partners, and furnished platforms and resources for campaigns defending and glorifying Hamas violence. (FAC ¶¶ 5–9, 48, 50, 56–59, 99, 115, 130–31, 150, 187, 189, 201, 258, 382, 384, 406–16.) These are actionable contributions of personnel, services, and infrastructure—not "independent advocacy." As *Holder* and the Eleventh Circuit's decision in *US v. Jayyousi*, 657 F.3d 1085, 1102–03 (11th Cir. 2011), make clear, coordinated activity with an FTO falls outside First Amendment protection. *See also US v. Mehanna*, 735 F.3d 32, 45 (1st Cir. 2013).

The distinction matters. Terrorism's coercive power depends not only on the violent act itself but also on amplification and mobilization that extend its psychological and political reach. By building and directing the very networks that performed that function, Defendants ensured that Hamas's atrocities—including the October 7 Attacks—were not isolated crimes but effective acts of international terrorism. Plaintiffs thus do not seek to punish dissent but to hold Defendants liable for providing the infrastructure that enabled Hamas to weaponize October 7 and its aftermath into coercive terrorism.

## CONCLUSION

For the foregoing reasons, Moving Defendants' motions should be denied in their entirety, and permit Plaintiffs to proceed with their claims under the ATA.

Dated:     Brooklyn, New York
           August 29, 2025

                              Yours,

                              THE BERKMAN LAW OFFICE, LLC
                              *Attorneys for Plaintiffs*

                              by:    /s/ Robert J. Tolchin
                                     Robert J. Tolchin

                              829 East 15th Street, Box 7
                              Brooklyn, New York 11230
                              718-855-3627

Of Counsel:

NITSANA DARSHAN-LEITNER & CO.
Nitsana Darshan-Leitner
*Israeli Attorney for Plaintiffs*
10 Hata'as Street, Ramat Gan, 52512 Israel
Israeli #: 011-972-523-837-020
US #: (212) 591-0073

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Motion filed through the ECF system is expected to

be sent electronically to the registered participants as identified on the court's

docket.

Dated:    Brooklyn, New York
          August 29, 2025

                              /s/Robert J. Tolchin
                              Robert J. Tolchin