UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAURICE SHNAIDER, *et al.*,

      Plaintiffs,

v.

AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

      Defendants.

Case No. 8:24-cv-01067-MSS-SPF

## ZAREFAH BAROUD'S OPPOSED MOTION TO DISMISS

Pursuant to Rule 12(b)(6) and Local Rule 3.01(c), Defendant Zarefah

Baroud moves to dismiss Plaintiffs' First Amended Complaint ("FAC"). (Doc. 6).

Plaintiffs' sole allegation against Ms. Baroud is that, because of her role

managing American Muslims for Palestine's ("AMP") social media activity, she

has conspired with, aided and abetted, and provided material support to Hamas,

a foreign terrorist organization. Because those facts are insufficient to state a

claim under the Anti-Terrorism Act, and no set of facts exist that could create a

claim against Ms. Baroud, the FAC should be dismissed with prejudice.

## I.    FACTUAL BACKGROUND

Plaintiffs are individuals and the relatives of individuals who allege harm resulting from Hamas' October 7, 2023 terrorist attack in Israel, and other subsequent terrorist attacks in Israel. *See* FAC at ¶¶ 417–452.  Plaintiffs allege Ms. Baroud "serves as the Digital Media Associate of AMP, producing propaganda for later dissemination among SJP chapters." *Id.* ¶ 55; *see also id.* ¶ 158 (also alleging that Ms. Baroud "assists National SJP with its social media activity"). They plead no other specific facts about Ms. Baroud (other than guilt by association by rendering allegations against her father, who is not a defendant here, *see id.* ¶ 55), or the contents of any "social media activity" or "propaganda."

Indeed, aside from these two paragraphs, Ms. Baroud is only mentioned four other times in the FAC, where she is lumped with the remaining defendants in conclusory fashion.[1] *Id.* at ¶¶ 2, 8, 406, 407. Plaintiffs allege that all defendants, including Ms. Baroud, must be "accountable … for their egregious acts in conspiring with, aiding and abetting, and providing material support to [Hamas]." *Id.* ¶ 2. They allege that "[i]ndividual defendants," including Ms. Baroud, "have all conspired with Hamas's terrorist enterprise through their

---

[1] This is the hallmark of a shotgun pleading under *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015).

establishment of or participation in activities with one or more of the

Defendants." *Id.* ¶ 8. Plaintiffs conclude that "Defendants AMP and AJP became

the successors of IAP/AMS and HLF following the *Boim* Judgment," and

subsequently sought to "infiltrate the minds of the young and easily influenced,"

facilitated by individual Defendants, including Ms. Baroud. *Id.* ¶ 406. Finally,

Plaintiffs allege that "the twelve individual defendants," including Ms. Baroud,

"are also part of the Hamas Conspiracy by virtue of their active involvement

with and support of Hamas." *Id.* ¶ 407.

## II.    MEMORANDUM OF LAW

### A. Legal Standard

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more

than labels and conclusions" or "a formulaic recitation of the elements of a cause

of action," but she "does not need detailed factual allegations." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a

complaint must contain "enough facts to state a claim to relief that is plausible on

its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation

omitted), which can allow the court to draw the reasonable inference that the

defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283,

1289 (11th Cir. 2017).

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## B. Overview of the Anti-Terrorism Act

The Anti-Terrorism Act ("ATA") creates a cause of action for U.S. nationals injured in their "person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). An injured person may also bring suit against "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with" a designated foreign terrorist organization that committed the act of international terrorism. *Id.* § 2333(d)(2). U.S. national plaintiffs must first establish themselves as "injured in his or her person, property, or business by reason of an act of international terrorism." *Id.* § 2333(a); *see also* 18 U.S.C. § 2331(1) (defining an act of "international terrorism" as used in the statute).  To establish aiding and abetting liability under the ATA, plaintiffs

4

must allege their injury arose "from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization," and that the alleged aider/abettor "knowingly provided substantial assistance" to that act. *Id.* § 2333(d); *see also Colon v. Twitter, Inc.*, 14 F.4th 1213, 1222 (11th Cir. 2021).

A plaintiff must establish that the defendant who allegedly aided or abetted took "some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). The plaintiffs also bear the burden to establish that defendants were "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Leisrael v. Educ. for a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). Plaintiffs must show that each defendant must "knowingly and substantially assist[ed] the principal violation." *Id.* Finally, plaintiffs must allege facts showing the relevant assistance to be both substantial and that it significantly enhanced the terrorist organization's ability to carry out those activities. *Taamneh*, 598 U.S. at 495 (finding insufficient the claim that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that

constitute it").

### C.  Plaintiffs' ATA Claims Against Ms. Baroud Fail

Here, Plaintiffs seek to hold Ms. Baroud liable under the ATA on theories of aiding and abetting, conspiracy, and material support liability. Each claim is addressed in turn.

### 1.  Plaintiffs cannot demonstrate aiding and abetting liability.

Ms. Baroud begins with Plaintiffs' second cause of action for aiding and abetting liability. To plausibly assert a claim for aiding and abetting liability under section 2333(d)(2), Plaintiffs must show "(1) that the defendant knowingly provided substantial assistance to a foreign terrorist organization, (2) that the foreign terrorist organization committed an act of international terrorism, and (3) that plaintiff was injured in their person, property, or business by the act of international terrorism." *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *21 (E.D. Va. Aug. 15, 2025) (citing § 2333(d)(2)) & (dismissing ATA claims against Ms. Baroud based on the same social media activities alleged here).

While Plaintiffs fail to allege facts sufficient to meet at least the second two of those three requirements—that acts of international terrorism harmed them—, they do not allege a single act by Ms. Baroud that provided any assistance in

those acts. This failure proves fatal to Plaintiffs' ATA aiding and abetting claim.
*See Parizer*, 2025 WL 2382933, at *23 ("Plaintiffs' broad assertion that 'Defendants'
support has been so systematic that Defendants aid and abet every wrongful act
committed by Hamas and its affiliates'" does not "circumvent the necessity to
sufficiently allege 'defendants actually aided and abetted each tort of that
enterprise,'" quoting *Taamneh*, 598 U.S. at 506). Indeed, the Supreme Court limits
aiding and abetting liability under the ATA to "truly culpable conduct," meaning
"conscious, voluntary, and culpable participation in another's wrongdoing."
*Taamneh*, 598 U.S. at 490.  Thus, a defendant must have aided and abetted a
specific tortious act by knowingly providing substantial assistance to the
principal wrongdoer. *See id.* at 494 (quoting *Halberstam v. Welch*, 705 F.2d 472, 484
(D.C. Cir. 1983)).

　　To demonstrate aiding and abetting liability, courts look to *Halberstam*'s
"legal framework," *see Taamneh*, 598 U.S. at 485, which requires: "(1) a wrongful
act by the primary actor causing injury; (2) the defendant's general awareness of
their role in the illegal or tortious activity at the time they provided assistance;
and (3) the defendant's  knowing and substantial assistance to the principal
violation." *Parizer*, 2025 WL 2382933, at *21 (citing *Halberstam*, 705 F.2d at 484). In

addition, the *Halberstam* framework provides six more factors for consideration of whether assistance is "substantial," which are: "(1) the nature of the act assisted; (2) the amount of assistance; (3) the defendant's presence at the time of the act; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the duration of assistance." *Parizer*, 2025 WL 2382933, at *21 (citing *Halberstam*, 705 F.2d at 488). The importance of these factors, as explained by the Supreme court in *Taamneh*, is to help "capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor." *Taamneh*, 598 U.S. at 504.

Here, the FAC is devoid of any nonconclusory allegations to support aiding and abetting liability as to Ms. Baroud. The sole allegations against Ms. Baroud—that she managed social media activities for AMP and has assisted National SJP with its unspecified social media activities—are insufficient to establish "knowing and substantial" assistance or "general awareness" of any role in any tortious activity.

<u>No Allegations of Knowing and Substantial Assistance</u>

First, Plaintiffs fail to demonstrate the requisite degree of mens rea for knowing and substantial assistance—that Ms. Baroud disseminated materials on social media "knowingly" and "with the intent of facilitating" the October 7 Hamas terrorist attacks. *Taamneh*, 598 U.S. at 490. The FAC is similarly devoid of any allegations that Ms. Baroud "sought by [her] action to make [the October 7 attacks] succeed." *Id.* at 498 (citation omitted). While the FAC references certain publications, including those that Plaintiffs contend "sum[] up the entire covert conspiracy that has transpired over the last 20 years," *see* FAC ¶ 206, nowhere does the FAC *specifically* connect any of these alleged statements or publications with Ms. Baroud other than broadly referencing her social-media role at AMP. And nowhere does the FAC explain how anyone, let alone Ms. Baroud, published these statements "with the intent of facilitating" the October 7 attacks.

Because the FAC does not allege the requisite degree of mens rea, the Court need not consider the six *Halberstam* factors for whether the alleged assistance was also "substantial." Even so, none of the allegations in the FAC provide any factual support for the contention that Ms. Baroud specifically aided Hamas (for any duration), provided any assistance to Hamas, was present in

either Israel or Palestine at the time of the October 7, 2023 attacks, has any relationship with Hamas, or what her state of mind was in connection to any aid or support to Hamas. Even if Plaintiffs could allege some relationship, there is no evidence of any "arm's-length relationship" with the organization. *See, e.g.*, *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1372–73 (S.D. Fla. 2024) (no arm's-length relationship with Hamas based on purchase of certain photographs from the organization for media purposes). Thus, under the *Halberstam* framework, Plaintiffs cannot demonstrate that Ms. Baroud provided any "knowing and substantial" assistance to Hamas.

Second, the FAC does not allege a "concrete nexus between [these] services" and the October 7 attacks. *Taamneh*, 598 U.S. at 501. The FAC is devoid of facts showing that Ms. Baroud knew or understood that her social media role at a nonprofit organization in the United States was in any way used to support terrorism, nor does the FAC draw any "concrete nexus" between such activities and the October 7 attacks. Plaintiffs cannot hold Ms. Baroud liable under the ATA for her speech alone, her association with an organization that operates lawfully and entirely within the United States, nor for her family background or

makeup. Even if Plaintiffs could suggest some inadvertent support by Ms. Baroud, that is not enough for ATA liability under section 2333(d). *See id.* at 489.

Another court recently determined that Ms. Baroud's social media activities for AMP did not constitute ATA liability "for injuries stemming from the October 7, 2023 attack," as the plaintiffs there could not "plausibly allege that [she and other defendants] aided and abetted Hamas in carrying out that attack." *Parizer*, 2025 WL 2382933, at *22. There, as here, Plaintiffs failed "to plead sufficient facts showing a 'definable nexus' between [Ms. Baroud's alleged] conduct and Hamas's October 7, 2023 attack or subsequent international law violations." *Id*. In *Parizer*, the court found that even if those plaintiffs had alleged an "attenuated nexus," they had not shown "intentional aid that substantially furthered the tort" or even prior knowledge of the attack. *Id.* This Court should reach the same conclusion.

<u>No Allegations of General Awareness</u>

Finally, the FAC fails to demonstrate Ms. Baroud's "general awareness" of her alleged role in Hamas's terrorist activities. Here, Plaintiffs must demonstrate more than an individual's general support for an organization, but that Ms. Baroud understood and was actually aware she was "assuming a role" in

Hamas's terrorist activities. *See Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), aff'd, 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness: "Because actual awareness is required, the inquiry is not whether a defendant should have been aware of its role."); *Newman*, 758 F. Supp. 3d at 1367–68 (this "element requires an allegation that the [defendant] was 'aware that, by assisting the principal, it is itself assuming a role in terrorist activities,'" quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)).

For this element, Plaintiffs allege no more than Ms. Baroud's affiliation with an American nonprofit organization engaged in protected First Amendment activities and her father—who is mentioned more than her in the FAC and is not a defendant. But the ATA does not permit guilt-by-association liability. And Plaintiffs fail to demonstrate how Ms. Baroud, who did not create or operate AMP or any other defendant-entity, had any "general awareness" of a role in Hamas rather than a desire to advocate in support of Palestinians' rights.

Plaintiffs' claim for aiding and abetting fails entirely and warrants dismissal with prejudice.

### 2. Plaintiffs cannot demonstrate conspiracy liability.

Just as Plaintiffs' aiding and abetting claim fails, so too does their conspiracy claim.

Section 2333(d) imposes liability on anyone "who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d). Conspiracy requires: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. (citation omitted). "The element of agreement is a key distinguishing factor" between claims for conspiracy and aiding and abetting. *Id.* Like above, the *Halberstam* framework and factors apply. *Taamneh*, 598 U.S. at 485.

Here, the FAC fails to plausibly allege "an agreement" to participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough

factual matter (taken as true) to suggest that an agreement was made," and

noting that "a conclusory allegation of agreement at some unidentified point

does not supply facts adequate to show illegality."). To establish an "agreement,"

Plaintiffs must plausibly allege that the conspirators—that is Ms. Baroud and

Hamas—were "pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*,

47 F.4th 856, 873 (D.C. Cir. 2022); *Newman*, 758 F. Supp. 3d at 1374 ("Although

courts may 'infer an agreement from indirect evidence in most civil conspiracy

cases,' a complaint must nonetheless allege that the coconspirators were

'pursuing the same object,'" quoting *Halberstam*, 702 F.2d at 486–87). Plaintiffs fail

to meet that threshold requirement, as nowhere in the FAC do they allege in any

nonconclusory manner the existence of any agreement between Ms. Baroud and

Hamas related to any alleged mutual pursuit in the October 7 terrorist attacks.

When considering whether the Associated Press's payments to Hamas for

photographs and images of the October 7 attacks constituted the "pursu[it] of the

same object" under the ATA, the court in *Newman* looked to the Second Circuit's

decision in *Freeman v. HSBC Holdings PLC* to support its conclusion that plaintiffs

had not established conspiracy liability against the AP.  In *Freeman*, the plaintiffs

alleged that certain terrorist organizations were "actively engaged in planning

and perpetrating the murder and maiming of hundreds of Americans in Iraq." 57

F.4th 66, 80 (2d Cir.), *cert. denied*, — U.S. —, 144 S. Ct. 83 (2023). They asserted the

defendants provided terrorist affiliated banks the ability to unlawfully transfer

funds to the United States. *Id.* The Second Circuit concluded that the complaint

was devoid of any assertion that the defendants were in any way engaged in the

planning and murder of Americans in Iraq, nor did the terrorists agree to help

the transfer of money into the United States. *Id.* ("Nowhere in the Complaint,

however, do Plaintiffs plead that the Banks intended to kill or injure U.S. service

members in Iraq."). Thus, there was no "common pursuit" as required under the

*Halberstam* framework. *Id.* (quoting *Halberstam*, 705 F.2d at 481); *see also Bernhardt*,

47 F.4th at 873 ("Bernhardt's conspiracy claim [against HSBC] is inadequate"

because "[t]he complaint states that HSBC was trying to make substantial profits

by evading sanctions, whereas al-Qaeda sought to terrorize the U.S. into

retreating from the world stage").

Taking guidance from *Newman* and *Freeman*, even if Plaintiffs could

articulate some degree of relationship here between Ms. Baroud and Hamas

(they cannot), there are simply no set of facts to support an allegation that Ms.

Baroud was engaged in a common pursuit with Hamas to commit the October 7 terrorist attacks. Thus, the conspiracy claim should be dismissed with prejudice.

### 3. Plaintiffs cannot demonstrate material support liability.

Finally, Plaintiffs assert a direct liability claim against Ms. Baroud for material support of Hamas under 18 U.S.C. § 2339B and § 2333(a). To establish such liability under the ATA, Plaintiffs must demonstrate "(1) unlawful action, *i.e.* an 'act of international terrorism;' (2) the requisite mental state, and (3) causation." *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018). Nowhere in the FAC do Plaintiffs allege with supporting facts that Ms. Baroud committed an act of terrorism or provided material support to Hamas. Nor do they demonstrate the requisite scienter or causation for such act. Each defect is addressed in turn.

First, the FAC does not plead facts that could establish that Ms. Baroud committed "an act of international terrorism," as section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (i) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, *see* 18 U.S.C. § 2331(1)(A), and (ii) "appear to be intended" to achieve certain specified terrorist purposes, that is to "to intimidate or coerce a

civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B). To satisfy these requirements, Plaintiffs must demonstrate how *Ms. Baroud*'s conduct constitutes international terrorism. Instead, they allege the opposite, that Hamas, not Ms. Baroud, "committed, planned, and authorized activities that involved violence or acts dangerous to human life." FAC ¶ 456; *see also id.* ¶ 472 (alleging that "acts … committed, planned, and authorized" by *Hamas* were intended to achieve terrorist purposes). Armed with the singular allegation that Ms. Baroud managed AMP's social media activities, no "objective observer" could "conclude" that Ms. Baroud intended the October 7 terrorist attacks by virtue of unspecific social media activities. *See Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011); *Chiquita*, 284 F. Supp. 3d at 1305 ("Because § 2333(a) supports only primary liability, a successful ATA plaintiff must allege and prove that the defendant directly committed an "act of international terrorism" which caused the plaintiff's injuries.").

To be sure, even the publication of "information that may have been helpful to [Hamas] in achieving its organizational goals" cannot form the basis of

a direct liability claim without facts that could show how broadcasting public

information or news "would in all likelihood assist the organization in

accomplishing its violent goals." *Kaplan v. Jazeera*, 2011 WL 2314783, at *4, 6

(S.D.N.Y. June 7, 2011); *see also Newman*, 758 F. Supp. 3d at 1376 (dismissing

direct liability claim against the AP for purchasing images from Hamas).

Construing the FAC in the most favorable light to Plaintiffs, their claims against

Ms. Baroud, at best, are that she managed social media activities for AMP and

National SJP. But even if those acts were helpful to Hamas, that is insufficient for

direct liability under the ATA. Further, nothing in the FAC points to any specific

posts or statements made by Ms. Baroud, and thus it is unclear how Plaintiffs

could hold her liable for unspecified social media activities.

Indeed, when removing the conclusory allegation that Ms. Baroud

managed social media activities, the only facts attributed to her in the FAC are

her association with her father—a scholar at a think tank that allegedly hosts

conferences attended by Hamas and whose editorial publication is purportedly

controlled by an entity that allegedly employed a Hamas operative. *See* FAC ¶

55. Congress did not create the ATA to hold individuals liable solely based on

their nationality, family makeup, or DNA. While Plaintiffs' allegations about Ms.

Baroud's association with her father are irrelevant, they help demonstrate the improper purpose of Plaintiffs' complaint—to attack and silence Ms. Baroud for her association with her father and groups that support Palestinians' rights.[2] *See Manhart v. WESPAC Found., Inc.*, 2025 WL 2257408, at *15 (N.D. Ill. Aug. 7, 2025) (ordering sanctions under Rule 11 where the complaint was "rife with allegations that are irrelevant to Plaintiff's stated causes of action and which are only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet."); *see also United States v. Hammoud*, 381 F.3d 316, 329 (4th Cir. 2004) (section 2339B "does not prohibit mere association"); *see Holder v. Humanitarian L. Project*, 561 U.S. 1, 39 (2010) (same).

Second, Plaintiffs fail to demonstrate the scienter requirement for material support, which requires that defendants are "knowing or intending that they are to be used in preparation for, or in carrying out," a violation of one or more of the terrorism-related crimes enumerated in the statute. 18 U.S.C. § 2339A. To satisfy section 2339A's scienter requirement, a plaintiff must prove "that the defendant acted with the specific knowledge or intent that its support would be

---

[2] To the extent the Court does not grant this motion, it should strike the allegations concerning Ms. Baroud's father as immaterial and scandalous under Rule 12(f). *See S.D. v. St. Johns Cnty. Sch. Dist.*, 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009).

used in preparation for, or in carrying out, one of the enumerated terrorism-related crimes." *Chiquita*, 284 F. Supp. 3d at 1309. The Supreme Court has read this provision stringently, requiring that a defendant act "under the direction of, or in coordination with" a group that it "knows to be" a terrorist organization. *Holder*, 561 U.S. at 26.

Here, the FAC is devoid of any nonconclusory allegation demonstrating that Ms. Baroud acted under the direction or in coordination with Hamas. Absent such factual support, Plaintiffs' claim must fail. *See Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) ("repeated conclusory statements in the complaint that [banks] 'conspired' with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda," failed to plead scienter), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *see also Newman*, 758 F. Supp. 3d at 1378–80 (dismissing ATA material support claim because plaintiffs failed to plead the requisite scienter); *cf. Linde*, 384 F. Supp. 2d at 588 ("[P]laintiffs allege both that the Bank plays a central role in a well-publicized plan to reward terrorists killed and injured in Palestinian suicide attacks in Israel and that the Bank knows that the groups to which it provides services are engaged in terrorist activities.").

Third, Plaintiffs have failed to plead the element of proximate cause necessary for a direct liability claim. *See* 18 U.S.C. § 2333(a) (redress to victims who demonstrate that they were injured "*by reason* of an act of international terrorism.") (emphasis supplied); *see also Newman*, 758 F. Supp. 3d at 1380 ("The Supreme Court has repeatedly held that when Congress uses the language 'by reason of,' it requires a showing of proximate cause," citing *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018)). There are two articulations of proximate cause under the ATA: the "direct relationship" approach between the injuries suffered and defendant's alleged acts; and the "substantial factor" approach, that the defendant's alleged acts were a substantial factor in the sequence of events leading to the injuries, and such injuries were reasonably foreseeable or anticipated as a result of the alleged conduct. *See Newman*, 758 F. Supp. 3d at 1380 (collecting cases). The Eleventh Circuit has not decided which approach should apply, *see Colon*, 14 F.4th at 1223, but sister courts have adopted the less burdensome "substantial factor" approach. *See Newman*, 758 F. Supp. 3d at 1380 (quoting *Chiquita*, 284 F. Supp. 3d at 1314).

Irrespective of which approach the Court applies here, Plaintiffs cannot satisfy the ATA's pleading requirements. Their vague and conclusory allegations

against Ms. Baroud—that she participated in unspecified social media activities—cannot establish proximate cause for the alleged injuries to Plaintiffs as a result of Hamas's terrorist attacks on October 7, 2023. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting conclusory allegations that provision of "routine banking services" to customers affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or plaintiffs' injuries"); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018) (currency processed by BNPP for Sudan was not alleged to be sent to al Qaeda or necessary for Sudan to fund bombings, and therefore not a substantial factor); *see also id.* at 275 ("[W]hen a defendant is more than one step removed from a terrorist act or organization, plaintiffs suing under the ATA must allege some facts demonstrating a substantial connection between the defendant and terrorism."). Even if Ms. Baroud's social media activities in some way related to Hamas, which is not evident from the FAC, Plaintiffs would need to show that her activities were substantially connected to Hamas's undertaking of the October 7 attacks. They cannot.

For all these reasons, Plaintiff's direct liability claims against Ms. Baroud should be dismissed with prejudice.

**D. Plaintiffs Seek to Silence Ms. Baroud's Protected Speech**

Plaintiffs' failure to allege any specific speech by Ms. Baroud—despite the

sole allegation against her based on her social media activities for AMP—much

less speech that exceeds the protections of the First Amendment, further

supports dismissal of their claims. *See Snyder v. Phelps*, 562 U.S. 443 (2011);

*NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982). The only plausible inference

that can be drawn from the allegations against Ms. Baroud is that the unspecified

"social media activity" Plaintiffs complain about is speech protected by the First

Amendment. On this basis, the FAC should be dismissed in its entirety.

## III.    CONCLUSION

For all these reasons, the FAC should be dismissed. Because amendment

would be futile, the FAC should be dismissed with prejudice.

## <u>Local Rule 3.01(g) Certificate</u>

I hereby certify that I conferred with counsel for Plaintiffs on the relief

sought herein. Plaintiffs oppose Ms. Baroud's requested relief.

Dated: September 5, 2025

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC

2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

*Lead Counsel for Defendant Zarefah Baroud*