UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAURICE SHNAIDER, *et al.*,

      Plaintiffs,

v.

                    Case No. 8:24-cv-01067-MSS-SPF

AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

      Defendants.

## TAHER HERZALLAH'S[1] OPPOSED MOTION TO DISMISS

Pursuant to Rule 12(b)(6) and Local Rule 3.01(c), Defendant Taher

Herzallah moves to dismiss Plaintiffs' First Amended Complaint ("FAC"). (Doc.

6). Plaintiffs' allegations against Mr. Herzallah are that because of his role in

---

[1] In their first motion for alternate service, Plaintiffs referenced attempting to serve Mr. Herzallah individually and "in his capacity as campus liaison for Defendant National Students for Justice in Palestine ("NSJP"), as well as on behalf of all named SJP chapters identified as Defendants in this action." (Doc. 26 at 3). This Court can take judicial notice from the docket that Plaintiffs have not served Mr. Herzallah in a representative capacity for these organizations. *See* Fed. R. Civ. P. 201. Further, Plaintiffs have filed a renewed motion for alternate service, where they abandon this flawed notion that Mr. Herzallah could be served in a representative capacity as "campus liaison." (*See* Doc. 78). While there is no allegation in the FAC that suggests Mr. Herzallah is being sued as a representative of any organization, and thus the argument in the first motion for alternate service is meritless, in an abundance of caution, Mr. Herzallah affirmatively states that he appears in this matter and responds to the operative complaint solely in his individual capacity and not on behalf of any organization.

outreach and organizing efforts for American Muslims for Palestine ("AMP"),

and his public statements at conferences about Palestine, he has conspired with,

aided and abetted, and provided material support to Hamas, a foreign terrorist

organization. Because those facts are insufficient to state a claim under the Anti-

Terrorism Act, and no set of facts exist that could create a claim against Mr.

Herzallah, the FAC should be dismissed with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are individuals and the relatives of individuals who allege harm

resulting from Hamas' October 7, 2023 terrorist attack in Israel, and other

subsequent terrorist attacks in Israel. *See* FAC at ¶¶ 417–452.  Plaintiffs allege Mr.

Herzallah "is the Associate Director of Outreach and Community Organizing for

AMP and serves as AMP's liaison to SJP and as a liaison between SJP chapters

across the country." *Id.* ¶ 59; *see also id.* ¶ 156 (describing that Mr. Herzallah helps

campus groups "procure grants, materials and speakers").

To support their claims that Mr. Herzallah is liable here, Plaintiffs collect

various statements he has made at conferences, other fora, and on social media.

For example, they quote him pondering "What if, as Muslims, we wanted to use

violent means to resist occupation? Is that wrong?" *Id.* ¶ 121.[2] At one conference,

Plaintiffs allege Mr. Herzallah attended with "terrorist-affiliated speakers." *Id.* ¶

122. There, Munjed Ahmad is alleged to discuss a "free Palestine." *Id*.[3] Plaintiffs

allege Mr. Herzallah hosted a virtual event during which he is alleged to discuss

the political history of Palestine, stating "Hamas plays an integral role in policy

and society I think that is just the reality that we have to acknowledge. . . when

the dust settles and when the history of Palestine is written in a hundred years,

Hamas will play an integral role in that history." *Id*. ¶ 123.[4] Finally, Plaintiffs

allege that Mr. Herzallah made a speech at a mosque in 2023 where he

purportedly stated: "This is the time to agitate to make Zionists feel very

uncomfortable on campus – we're not here for their comfort." *Id*. ¶ 124.

Plaintiffs further allege that Mr. Herzallah "has called for violence against

Israel and was twice arrested for anti-Israel activity, including disrupting a U.S.

---

[2] The hyperlink in the FAC at footnote 33, which would purportedly contain the video where Mr. Herzallah made this statement and therefore provide its context, returns a "Not Found" error. As explained below, out-of-context rhetorical statements about resistance to oppression cannot establish violations of the Anti-Terrorism Act.

[3] The hyperlink is also broken for the alleged video of this conference at footnote 34.

[4] The content at the Facebook link for this video in footnote 36 is "not available." Without the video, the Court is left to analyze this statement without its full context, and on that basis this statement (and the others) should not be considered.

congressional hearing." *Id.* ¶¶ 156, 228. That he has allegedly stated "Israelis have to be bombed, they are a threat to the legitimacy of Palestine, and it is wrong to maintain the State of Israel. It is an illegitimate creation born from colonialism and racism." *Id.* ¶ 157. And that he has celebrated attacks on the Israeli Defense Forces. *Id.*

Finally, without any support, Plaintiffs accuse Mr. Herzallah of "hav[ing] terrorist affiliations or outwardly support Hamas's terrorist agenda." *Id.* ¶ 198.

Aside from these paragraphs, the only substantive allegations centered on Mr. Herzallah is where he is lumped with the remaining defendants in conclusory fashion.[5] *Id.* at ¶¶ 2, 8, 406, 407. Plaintiffs allege that all defendants, including Mr. Herzallah, must be "accountable … for their egregious acts in conspiring with, aiding and abetting, and providing material support to [Hamas]." *Id.* ¶ 2. They allege that "[i]ndividual defendants," including Mr. Herzallah, "have all conspired with Hamas's terrorist enterprise through their establishment of or participation in activities with one or more of the Defendants." *Id.* ¶ 8. Plaintiffs conclude that "Defendants AMP and AJP became the successors of IAP/AMS and HLF following the *Boim* Judgment," and

---

[5] This is the hallmark of a shotgun pleading under *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015).

subsequently sought to "infiltrate the minds of the young and easily influenced," facilitated by individual Defendants, including Mr. Herzallah. *Id.* ¶ 406. Finally, Plaintiffs allege that "the twelve individual defendants," including Mr. Herzallah, "are also part of the Hamas Conspiracy by virtue of their active involvement with and support of Hamas." *Id.* ¶ 407.

Plaintiffs filed this lawsuit on May 2, 2024. The affidavit of service in this case reflects that Mr. Herzallah was served on September 8, 2025. [6]

## II.    MEMORANDUM OF LAW

### A. Legal Standard

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more

---

[6] Mr. Herzallah was served according to the affidavit of service after the Court "tolled" the deadline under Rule 4 to serve him pending a renewed motion for alternate service. (Doc. 61). That said, Mr. Herzallah—who was served in Minnesota, where he resides— challenges whether Plaintiffs demonstrated good cause to extend the deadline to serve him under Rule 4(m). According to Plaintiffs' motion, they had only ever sought to serve him in California (*see id.* at 3–4), but even cursory internet search shows that Mr. Herzallah has resided in Minnesota during the entire pendency of this lawsuit. *See, e.g.*, Kenneth Seaton, *Herzallah, Meisner seek Anoka county seat*, Northeaster Newspaper (Oct. 23, 2024), https://www.mynortheaster.com/news/herzallah-meisner-seek-anoka-county-seat/ (noting that Mr. Herzallah has matriculated at the University of Minnesota since moving there in 2022 and that he served on a county parks and recreation commission in Minnesota). Indeed, a simple PACER search of Mr. Herzallah would have informed Plaintiffs that in October 2024 he declared under oath that he has resided in Minnesota since 2022. *See* Declaration of Taher Herzallah, attached as **Exhibit 1**. Accordingly, notwithstanding the Court's order tolling the Rule 4 deadline, the Court should dismiss Mr. Herzallah because there was no good cause for the delay in serving him, as any such delays were solely attributed to Plaintiffs' lack of diligence.

than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but she "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015), which can allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017).

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## B.  Overview of the Anti-Terrorism Act

The Anti-Terrorism Act ("ATA") creates a cause of action for U.S. nationals injured in their "person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). An injured person may also bring suit against "any person who aids and abets, by knowingly providing substantial assistance,

or who conspires with" a designated foreign terrorist organization that
committed the act of international terrorism. *Id.* § 2333(d)(2). U.S. national
plaintiffs must first establish themselves as "injured in his or her person,
property, or business by reason of an act of international terrorism." *Id.* § 2333(a);
*see also* 18 U.S.C. § 2331(1) (defining an act of "international terrorism" as used in
the statute).  To establish aiding and abetting liability under the ATA, plaintiffs
must allege their injury arose "from an act of international terrorism committed,
planned, or authorized by an organization that had been designated as a foreign
terrorist organization," and that the alleged aider/abettor "knowingly provided
substantial assistance" to that act. *Id.* § 2333(d); *see also Colon v. Twitter, Inc.*, 14
F.4th 1213, 1222 (11th Cir. 2021).

A plaintiff must establish that the defendant who allegedly aided or
abetted took "some 'affirmative act' 'with the intent of facilitating the offense's
commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond
v. United States*, 572 U.S. 65, 71 (2014)). The plaintiffs also bear the burden to
establish that defendants were "generally aware of his role as part of an overall
illegal or tortious activity at the time that he provides the assistance." *Leisrael v.
Educ. for a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). Plaintiffs

must show that each defendant must "knowingly and substantially assist[ed] the principal violation." *Id.* Finally, plaintiffs must allege facts showing the relevant assistance to be both substantial and that it significantly enhanced the terrorist organization's ability to carry out those activities. *Taamneh*, 598 U.S. at 495 (insufficient that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it").

## C. Plaintiffs' ATA Claims Against Mr. Herzallah Fail

Plaintiffs seek to hold Mr. Herzallah liable under the ATA for aiding and abetting, conspiracy, and material support. Each claim is addressed in turn.

### 1. Plaintiffs cannot demonstrate aiding and abetting liability.

Mr. Herzallah begins with Plaintiffs' second cause of action for aiding and abetting liability. To plausibly assert a claim for aiding and abetting liability under section 2333(d)(2), Plaintiffs must show "(1) that the defendant knowingly provided substantial assistance to a foreign terrorist organization, (2) that the foreign terrorist organization committed an act of international terrorism, and (3) that plaintiff was injured in their person, property, or business by the act of international terrorism." *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *21 (E.D. Va. Aug. 15, 2025) (citing § 2333(d)(2)); *see also id.* at *3 (dismissing ATA

claims against Mr. Herzallah for alleged acts as liaison between AMP and NSJP).

While Plaintiffs fail to allege facts sufficient to meet at least the second two of those three requirements—that acts of international terrorism harmed them—, they do not allege a single act by Mr. Herzallah that provided any assistance in those acts. This failure proves fatal to Plaintiffs' ATA aiding and abetting claim. *See Parizer*, 2025 WL 2382933, at *23 ("Plaintiffs' broad assertion that 'Defendants' support has been so systematic that Defendants aid and abet every wrongful act committed by Hamas and its affiliates'" does not "circumvent the necessity to sufficiently allege 'defendants actually aided and abetted each tort of that enterprise,'" quoting *Taamneh*, 598 U.S. at 506). Indeed, the Supreme Court limits aiding and abetting liability to "truly culpable conduct," meaning "conscious, voluntary, and culpable participation in another's wrongdoing." *Taamneh*, 598 U.S. at 490.  Thus, a defendant must have aided and abetted a specific tortious act by knowingly providing substantial assistance to the principal wrongdoer. *See id.* at 494 (quoting *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)).

To demonstrate aiding and abetting liability, courts look to *Halberstam*'s "legal framework," *see Taamneh*, 598 U.S. at 485, which requires: "(1) a wrongful act by the primary actor causing injury; (2) the defendant's general awareness of

their role in the illegal or tortious activity at the time they provided assistance;

and (3) the defendant's knowing and substantial assistance to the principal

violation." *Parizer*, 2025 WL 2382933, at *21 (citing *Halberstam*, 705 F.2d at 484). In

addition, the *Halberstam* framework provides six more factors for consideration

of whether assistance is "substantial," which are: "(1) the nature of the act

assisted; (2) the amount of assistance; (3) the defendant's presence at the time of

the act; (4) the defendant's relation to the principal; (5) the defendant's state of

mind; and (6) the duration of assistance." *Parizer*, 2025 WL 2382933, at *21 (citing

*Halberstam*, 705 F.2d at 488). The importance of these factors, as explained by the

Supreme court in *Taamneh*, is to help "capture the essence of aiding and abetting:

participation in another's wrongdoing that is both significant and culpable

enough to justify attributing the principal wrongdoing to the aider and abettor."

*Taamneh*, 598 U.S. at 504.

Here, the FAC is devoid of any nonconclusory allegations to support

aiding and abetting liability as to Mr. Herzallah. The sole allegations against Mr.

Herzallah are that he was "AMP's liaison to SJP and as a liaison between SJP

chapters," attended conferences where he discussed how political history would

look back on Hamas's role in Gaza and other matters concerning Palestinians'

10

rights, engaged in protest against the actions of a foreign state, and made

statements critical of a foreign military during its occupation of Gaza. The

allegations center on activities and speech protected by the First Amendment,

and the substance of the various conferences and panels should not even be

considered because Plaintiffs' fail to provide the full context of any of Mr.

Herzallah's statements at those conferences and panels. These alleged acts and

statements are insufficient to establish "knowing and substantial" assistance or

"general awareness" of any role in any tortious activity.

<u>No Allegations of Knowing and Substantial Assistance</u>

<u>First</u>, Plaintiffs fail to demonstrate the requisite degree of mens rea for

knowing and substantial assistance—that Mr. Herzallah acted "knowingly" and

"with the intent of facilitating" the October 7 Hamas terrorist attacks. *Taamneh*,

598 U.S. at 490. The FAC is similarly devoid of any allegations that Mr. Herzallah

"sought by [her] action to make [the October 7 attacks] succeed." *Id.* at 498

(citation omitted). While the FAC references certain publications and activities,

including those that Plaintiffs contend "sum[] up the entire covert conspiracy

that has transpired over the last 20 years," *see* FAC ¶ 206, nowhere does the FAC

*specifically* connect any of these alleged statements, publications, or activities with

11

Mr. Herzallah other than broadly referencing his role for AMP, discussing his

attendance at conferences where he is alleged to have made statements that are

clearly protected speech, and a single Twitter post where Mr. Herzallah spoke

critically and negatively of a foreign military. Nowhere does the FAC explain

how anyone, let alone Mr. Herzallah, made statements online or at conferences

"with the intent of facilitating" the October 7 attacks specifically.

Because the FAC does not allege the requisite degree of mens rea, the

Court need not consider the six *Halberstam* factors for whether the alleged

assistance was also "substantial." Even so, none of the allegations in the FAC

provide any factual support for the contention that Mr. Herzallah specifically

aided Hamas (for any duration), provided any assistance to Hamas, was present

in either Israel or Palestine at the time of the October 7, 2023 attacks, has any

relationship with Hamas, or what his state of mind was in connection to any aid

or support to Hamas. Even if Plaintiffs could allege some relationship, there is no

evidence of any "arm's-length relationship" with the organization. *See, e.g.*,

*Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1372–73 (S.D. Fla. 2024) (no

arm's-length relationship with Hamas based on purchase of certain photographs

from the organization for media purposes). Thus, under the *Halberstam*

12

framework, Plaintiffs cannot demonstrate that Mr. Herzallah provided any

"knowing and substantial" assistance to Hamas. Indeed, the only statement in

the FAC attributable to Mr. Herzallah that says anything about Hamas is a

statement about how scholars and historians will need to grapple with its

influence in the Israeli-Palestinian conflict: "Hamas plays an integral role in

policy and society I think that is just the reality that we have to acknowledge. . .

when the dust settles and when the history of Palestine is written in a hundred

years, Hamas will play an integral role in that history." FAC ¶ 123. No possible

reading of this statement could support Plaintiff's theory.

Second, the FAC does not allege a "concrete nexus between [these]

services" and the October 7 attacks. *Taamneh*, 598 U.S. at 501. The FAC is devoid

of facts showing that Mr. Herzallah knew or understood that his liaison role at a

nonprofit organization in the United States, or his attendance at conferences on

Palestinians' rights, was in any way used to support terrorism, nor does the FAC

draw any "concrete nexus" between such activities and the October 7 attacks.

Plaintiffs cannot hold Mr. Herzallah liable under the ATA for his speech or

association with an organization that operates lawfully and entirely within the

United States. Even if Plaintiffs could suggest some inadvertent support by Mr.

Herzallah (the complaint explains none), that is not enough for ATA liability

under section 2333(d). *See id.* at 489.

Another court recently determined that Mr. Herzallah's activities for AMP,

as described here in the FAC, did not constitute ATA liability "for injuries

stemming from the October 7, 2023 attack," as the plaintiffs there could not

"plausibly allege that [he and other defendants] aided and abetted Hamas in

carrying out that attack." *Parizer*, 2025 WL 2382933, at *22. There, as here,

Plaintiffs failed "to plead sufficient facts showing a 'definable nexus' between

[Mr. Herzallah's alleged] conduct and Hamas's October 7, 2023 attack or

subsequent international law violations." *Id*. In *Parizer*, the court found that even

if those plaintiffs had alleged an "attenuated nexus," they had not shown

"intentional aid that substantially furthered the tort" or even prior knowledge of

the attack. *Id.* This Court should reach the same conclusion.

<u>No Allegations of General Awareness</u>

Finally, the FAC fails to demonstrate Mr. Herzallah's "general awareness"

of his alleged role in Hamas's terrorist activities. Here, Plaintiffs must

demonstrate more than an individual's general support for an organization, but

that Mr. Herzallah understood and was actually aware he was "assuming a role"

in Hamas's terrorist activities. *See Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), aff'd, 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness: "Because actual awareness is required, the inquiry is not whether a defendant should have been aware of its role."); *Newman*, 758 F. Supp. 3d at 1367–68 (this "element requires an allegation that the [defendant] was 'aware that, by assisting the principal, it is itself assuming a role in terrorist activities,'" quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)).

For this element, Plaintiffs allege no more than Mr. Herzallah's affiliation with an American nonprofit organization engaged in protected First Amendment activities and his speech at conferences and panels on Palestinians' rights. Plaintiffs fail to demonstrate how Mr. Herzallah, who did not create or operate AMP or any other defendant-entity, had any "general awareness" of a role in Hamas rather than a desire to advocate in support of Palestinians' rights.

Plaintiffs' claim for aiding and abetting warrants dismissal with prejudice.

## 2. Plaintiffs cannot demonstrate conspiracy liability.

Just as Plaintiffs' aiding and abetting claim fails, so too does their conspiracy claim.

Section 2333(d) imposes liability on anyone "who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d). Conspiracy requires: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. (citation omitted). "The element of agreement is a key distinguishing factor" between claims for conspiracy and aiding and abetting. *Id*. Like above, the *Halberstam* framework and factors apply. *Taamneh*, 598 U.S. at 485.

Here, the FAC fails to plausibly allege "an agreement" to participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point

16

does not supply facts adequate to show illegality."). To establish an "agreement,"
Plaintiffs must plausibly allege that the conspirators—that is Mr. Herzallah and
Hamas—were "pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*,
47 F.4th 856, 873 (D.C. Cir. 2022); *Newman*, 758 F. Supp. 3d at 1374 ("Although
courts may 'infer an agreement from indirect evidence in most civil conspiracy
cases,' a complaint must nonetheless allege that the coconspirators were
'pursuing the same object,'" quoting *Halberstam*, 702 F.2d at 486–87). Plaintiffs fail
to meet that threshold requirement, as nowhere in the FAC do they allege in any
nonconclusory manner the existence of any agreement between Mr. Herzallah
and Hamas related to any alleged mutual pursuit in the October 7 terrorist
attacks.

When considering whether the Associated Press's payments to Hamas for
photographs and images of the October 7 attacks constituted the "pursu[it] of the
same object" under the ATA, the court in *Newman* looked to the Second Circuit's
decision in *Freeman v. HSBC Holdings PLC* to support its conclusion that plaintiffs
had not established conspiracy liability against the AP.  In *Freeman*, the plaintiffs
alleged that certain terrorist organizations were "actively engaged in planning
and perpetrating the murder and maiming of hundreds of Americans in Iraq." 57

F.4th 66, 80 (2d Cir.), *cert. denied*, — U.S. —, 144 S. Ct. 83 (2023). They asserted the

defendants provided terrorist affiliated banks the ability to unlawfully transfer

funds to the United States. *Id.* The Second Circuit concluded that the complaint

was devoid of any assertion that the defendants were in any way engaged in the

planning and murder of Americans in Iraq, nor did the terrorists agree to help

the transfer of money into the United States. *Id.* ("Nowhere in the Complaint,

however, do Plaintiffs plead that the Banks intended to kill or injure U.S. service

members in Iraq."). Thus, there was no "common pursuit" as required under the

*Halberstam* framework. *Id.* (quoting *Halberstam*, 705 F.2d at 481); *see also Bernhardt*,

47 F.4th at 873 ("Bernhardt's conspiracy claim [against HSBC] is inadequate"

because "[t]he complaint states that HSBC was trying to make substantial profits

by evading sanctions, whereas al-Qaeda sought to terrorize the U.S. into

retreating from the world stage").

Taking guidance from *Newman* and *Freeman*, even if Plaintiffs could

articulate some degree of relationship here between Mr. Herzallah and Hamas

(they cannot), there are simply no set of facts to support an allegation that Mr.

Herzallah was engaged in a common pursuit with Hamas to commit the October

7 terrorist attacks. At best, they point to his criticism of the Israeli occupation of

Gaza. But those opinions and criticisms are fully protected by the First Amendment. Thus, the conspiracy claim should be dismissed with prejudice.

### 3. Plaintiffs cannot demonstrate material support liability.

Finally, Plaintiffs assert a direct liability claim against Mr. Herzallah for material support of Hamas under 18 U.S.C. § 2339B and § 2333(a). To establish such liability under the ATA, Plaintiffs must demonstrate "(1) unlawful action, *i.e.* an 'act of international terrorism;' (2) the requisite mental state, and (3) causation." *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018). Nowhere in the FAC do Plaintiffs allege with supporting facts that Mr. Herzallah committed an act of terrorism or provided material support to Hamas. Nor do they demonstrate the requisite scienter or causation for such act. Each defect is addressed in turn.

First, the FAC does not plead facts that could establish that Mr. Herzallah committed "an act of international terrorism," as section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (i) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, *see* 18 U.S.C. § 2331(1)(A), and (ii) "appear to be intended" to achieve certain specified terrorist purposes, that is to "to intimidate or coerce a

civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B). To satisfy these requirements, Plaintiffs must demonstrate how *Mr. Herzallah's* conduct constitutes international terrorism. Instead, they allege the opposite, that Hamas, not Mr. Herzallah, "committed, planned, and authorized activities that involved violence or acts dangerous to human life." FAC ¶ 456; *see also id.* ¶ 472 (alleging that "acts … committed, planned, and authorized" by *Hamas* were intended to achieve terrorist purposes). Armed with the allegations that Mr. Herzallah served as a liaison between AMP and SJP and attended various conferences where he is alleged to have criticized Israel, Zionist ideology, and supported Palestinian self-determination, no "objective observer" could "conclude" that Mr. Herzallah intended the October 7 terrorist attacks by virtue of unspecific activities and discussions on topics squarely protected by the First Amendment. *See Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011); *Chiquita*, 284 F. Supp. 3d at 1305 ("Because § 2333(a) supports only primary liability, a successful ATA plaintiff must allege and prove that the defendant directly committed an "act of international terrorism" which caused the plaintiff's injuries.").

To be sure, even the publication of "information that may have been
helpful to [Hamas] in achieving its organizational goals" cannot form the basis of
a direct liability claim without facts that could show how broadcasting public
information or news "would in all likelihood assist the organization in
accomplishing its violent goals." *Kaplan v. Jazeera*, 2011 WL 2314783, at *4, 6
(S.D.N.Y. June 7, 2011); *see also Newman*, 758 F. Supp. 3d at 1376 (dismissing
direct liability claim against the AP for purchasing images from Hamas).
Construing the FAC in the most favorable light to Plaintiffs, their claims against
Mr. Herzallah, at best, are that he coordinated on-campus conferences and events
to discuss Palestinians' rights and criticism of Israeli policy vis-à-vis Palestine
and Gaza. But even if those acts were helpful to Hamas, that is insufficient for
direct liability under the ATA.

Second, Plaintiffs fail to demonstrate the scienter requirement for material
support, which requires that defendants are "knowing or intending that they are
to be used in preparation for, or in carrying out," a violation of one or more of
the terrorism-related crimes enumerated in the statute. 18 U.S.C. § 2339A. To
satisfy section 2339A's scienter requirement, a plaintiff must prove "that the
defendant acted with the specific knowledge or intent that its support would be

used in preparation for, or in carrying out, one of the enumerated terrorism-

related crimes." *Chiquita*, 284 F. Supp. 3d at 1309. The Supreme Court has read

this provision stringently, requiring that a defendant act "under the direction of,

or in coordination with" a group that it "knows to be" a terrorist organization.

*Holder*, 561 U.S. at 26.

Here, the FAC is devoid of any nonconclusory allegation demonstrating

that Mr. Herzallah acted under the direction or in coordination with Hamas.

Absent such factual support, Plaintiffs' claim must fail. *See Owens v. BNP Paribas

S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) ("repeated conclusory statements in the

complaint that [banks] 'conspired' with Sudan to provide financial services to al

Qaeda, and that defendants knew the money they processed for Sudan would

end up with al Qaeda," failed to plead scienter), *aff'd*, 897 F.3d 266 (D.C. Cir.

2018); *see also Newman*, 758 F. Supp. 3d at 1378–80 (dismissing ATA material

support claim because plaintiffs failed to plead the requisite scienter); *cf. Linde*,

384 F. Supp. 2d at 588 ("[P]laintiffs allege both that the Bank plays a central role

in a well-publicized plan to reward terrorists killed and injured in Palestinian

suicide attacks in Israel and that the Bank knows that the groups to which it

provides services are engaged in terrorist activities.").

Third, Plaintiffs have failed to plead the element of proximate cause necessary for a direct liability claim. *See* 18 U.S.C. § 2333(a) (redress to victims who demonstrate that they were injured "*by reason* of an act of international terrorism.") (emphasis supplied); *see also Newman*, 758 F. Supp. 3d at 1380 ("The Supreme Court has repeatedly held that when Congress uses the language 'by reason of,' it requires a showing of proximate cause," citing *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018)). There are two articulations of proximate cause under the ATA: the "direct relationship" approach between the injuries suffered and defendant's alleged acts; and the "substantial factor" approach, that the defendant's alleged acts were a substantial factor in the sequence of events leading to the injuries, and such injuries were reasonably foreseeable or anticipated as a result of the alleged conduct. *See Newman*, 758 F. Supp. 3d at 1380 (collecting cases). The Eleventh Circuit has not decided which approach should apply, *see Colon*, 14 F.4th at 1223, but sister courts have adopted the less burdensome "substantial factor" approach. *See Newman*, 758 F. Supp. 3d at 1380 (quoting *Chiquita*, 284 F. Supp. 3d at 1314).

Irrespective of which approach the Court applies here, Plaintiffs cannot satisfy the ATA's pleading requirements. Their vague and conclusory allegations

against Mr. Herzallah cannot establish proximate cause for the alleged injuries to
Plaintiffs as a result of Hamas's terrorist attacks on October 7, 2023. *See, e.g., In re
Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting
conclusory allegations that provision of "routine banking services" to customers
affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or
plaintiffs' injuries"); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018)
(currency processed by BNPP for Sudan was not alleged to be sent to al Qaeda or
necessary for Sudan to fund bombings, and therefore not a substantial factor); *see
also id.* at 275 ("[W]hen a defendant is more than one step removed from a
terrorist act or organization, plaintiffs suing under the ATA must allege some
facts demonstrating a substantial connection between the defendant and
terrorism."). Even if Mr. Herzallah's activities in some way related to Hamas,
which is not evident from the FAC other than his statements about how scholars
or historians may perceive or grapple with its role in Gaza, Plaintiffs would need
to show that his activities were substantially connected to Hamas's undertaking
of the October 7 attacks. They cannot.

    For all these reasons, Plaintiff's direct liability claims against Mr. Herzallah
should be dismissed with prejudice.

**D. Plaintiffs Seek to Silence Mr. Herzallah's Protected Speech**

Plaintiffs' focus on Mr. Herzallah's statements at conferences and speech about Palestine and the Israeli-Palestinian conflict demonstrates that this lawsuit is nothing more than an attack on speech that Plaintiffs disfavor. *See Snyder v. Phelps*, 562 U.S. 443 (2011); *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982). On this basis, the FAC should be dismissed in its entirety.

## III.    CONCLUSION

For all these reasons, the FAC should be dismissed. Because amendment would be futile, the FAC should be dismissed with prejudice.

### Local Rule 3.01(g) Certificate

I hereby certify that I conferred with counsel for Plaintiffs on the relief sought herein. Plaintiffs oppose Mr. Herzallah's requested relief.

Dated: September 16, 2025

Respectfully submitted,

/s/ James M. Slater
James M. Slater (FBN 111779)
Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

*Lead Counsel for Defendant Taher Herzallah*