# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MAURICE SHNAIDER et al.,

     Plaintiffs,

v.                                   Case No. 8:24-cv-1067

AMERICAN MUSLIMS FOR
PALESTINE et al.,

     Defendants.

_____

## DEFENDANT HATEM ABUDAYYEH'S MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND INCORPORATED MEMORANDUM OF LAW

Defendant Hatem Abudayyeh ("Mr. Abudayyeh"), by and through his undersigned counsel, and pursuant to Rule 11 of the Federal Rules of Civil Procedure, hereby respectfully moves this Court for sanctions against Plaintiffs' counsel and submits this incorporated memorandum of law in support of his motion.

## INTRODUCTION

Mr. Abudayyeh files this motion for sanctions against Plaintiffs' counsel at The Berkman Law Office ("Plaintiffs' Counsel") because the Amended Complaint was filed in violation of Rule 11. Plaintiffs' Counsel has violated Rule 11 in two independent but related ways: (1) in violation of Rule 11(b)(2) and 11(b)(3), they filed frivolous legal and factual claims against Mr. Abudayyeh that are not grounded in existing law or supported by a nonfrivolous argument for extending, modifying, or

reversing existing law or establishing new law; and (2) in violation of Rule 11(b)(1), the claims are presented for an improper purpose: to defame, silence and harass.

Plaintiffs assert claims against Mr. Abudayyeh under the Anti-Terrorism Act ("ATA") for aiding and abetting, conspiracy and material support in relation to the October 7, 2023 attacks (hereinafter "October 7 attacks") and other attacks committed by Hamas. The allegations against Mr. Abudayyeh are so sparse and perfunctory that they very obviously come nowhere close to stating a claim, and no nonfrivolous argument can be made for a departure from settled law on any of the claims. Furthermore, the Amended Complaint names Mr. Abudayyeh for an impermissible reason, in violation of his First Amendment rights.

## LEGAL STANDARD

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). "Sanctions are appropriate: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (citation omitted).

"There are two prongs to the Rule 11(b)(2) and (b)(3) inquiry: whether the legal claims or factual contentions are objectively frivolous, and, if so, whether a reasonably competent attorney should have known they were frivolous." *Thompson v.*

*RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010). "Both inquiries measure attorney conduct under an objective reasonably competent attorney standard." *Id.* "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law." *Id.* (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed." *Thompson*, 610 F.3d at 665 (citations omitted).

"Once a court concludes that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous." *Id.* The court asks "what was known or reasonably knowable when the paper was 'present[ed] to the court.'" *Id.* (quoting Fed. R. Civ. P. 11(b)). "Measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed..." *Id.* "The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others." *Id.*

"Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper for an improper purpose. Improper purpose is often inferred from circumstantial evidence." *Id.* at 665. "A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims." *Id.* at 665-66. "A Rule

11(b)(2) or (b)(3) violation—bringing a legally or factually frivolous claim—is often probative of a Rule 11(b)(1) improper purpose violation." *Id.* at 664. If a filing violates Rule 11(b), the Court may impose "appropriate sanction[s]" on the attorney responsible, including attorney's fees and other expenses. Fed. R. Civ. P. 11(c)(1)-(4).

## ARGUMENT

### I.    The Claims Against Mr. Abudayyeh are Objectively Frivolous

Plaintiffs plead that they are family members of American citizens who were victims of Hamas's attack on October 7, 2023. Am. Compl., ¶ 1. Plaintiffs assert three separate causes of action under the Anti-Terrorist Act: Conspiracy Liability (18 U.S.C. § 2333(a) and (d)); Aiding and Abetting Liability (18 U.S.C. § 2333(a) and (d)); and Material Support Liability (18 U.S.C. § 2339B and § 2333(a)). *Id.*, ¶¶ 453-484. Plaintiffs' apparent theory of the case is that the Defendants aided and abetted the October 7 attacks and other attacks, not by providing any type of actual material support for the attacks, but by exercising their right to free speech and association.

Hatem Abudayyeh is the National Chair of U.S. Palestinian Network ("USPCN"), a Palestinian and Arab community-based organization that works to advance Palestinian rights. Plaintiffs do not allege that Mr. Abudayyeh is or was a member of, or affiliated with, Hamas. Nor do Plaintiffs allege that Mr. Abudayyeh participated in or had any advance knowledge of the October 7 attacks or any other attacks. Mr. Abudayyeh has only been named a defendant by virtue of his position in USPCN, yet Plaintiffs sue him in his individual capacity. Mr. Abudayyeh's name appears in only 3 of the 384 paragraphs that comprise the Amended Complaint's

"Factual Allegations". Am. Compl., ¶¶ 130, 406, 407. Plaintiffs utterly fail to allege any specific actions by Mr. Abudayyeh himself that could possibly render him liable under the ATA for aiding and abetting the attacks committed by Hamas, conspiring with Hamas, or providing material support to Hamas.

The only non-conclusory allegations related to Mr. Abudayyeh are that he: (1) was the first director of USPCN and is currently the National Chair; (2) "was raided by the FBI in 2010 for suspected terror financing"; and (3) "served as the spokesperson for convicted Palestinian terrorist Rasmea Odeh's Defense Committee." Am. Compl. ¶¶ 58, 130. These allegations have nothing to do with Hamas, cannot possibly show aiding and abetting Hamas, much less the October 7 attacks or any other attacks, and are not connected to any cause of action. No reasonably competent attorney could have concluded, based on these three irrelevant and inane factual allegations, that there was a "reasonable evidentiary basis" to claim that Mr. Abudayyeh provided knowing and substantial support to the Hamas attacks, committed an act of international terrorism in support of the Hamas attacks, nor conspired with Hamas to further the attacks. *Thompson*, 610 F.3d at 665. No reasonably competent attorney could have concluded that Plaintiffs' legal claims had "any reasonable chance of success" based on these paltry allegations, nor that there was any "reasonable argument" to change well-established caselaw in a way that expands the ATA to reach this conduct. *Id.*

There are only two paragraphs in the Amended Complaint that attempt to link Mr. Abudayyeh to Hamas, but the allegations in those two paragraphs are wholly

conclusory and without any non-frivolous supporting evidence. Am. Compl. at ¶¶ 406, 407. Paragraph 406 lists each of the individual defendants, including Mr. Abudayyeh, and, lumping them all together, alleges that they all "facilitated" the establishment of National SJP and SJP "to continue the same ongoing enterprise of IAP/AMS and HLF and AMP, but on a college level where they could infiltrate the minds of the young and easily influenced"; paragraph 407 lists all of the individual defendants, and again, lumping them all together, alleges that they "facilitated" "the joining of … National SJP and SJP into the Hamas Conspiracy." *Id.*

These factual claims constitute naked assertions, devoid of factual enhancement, and the only three specific facts alleged against Mr. Abudayyeh as evidence in support of this factual claim (addressed above) are frivolous and can offer no support whatsoever for this particular claim. Not one specific fact is offered or alleged that could provide non-frivolous evidence to support Plaintiffs' factual claims, and sanctions are appropriate. *Thompson*, 610 F.3d at 665 (sanctions are proper "where no evidence or only patently frivolous evidence is offered to support factual contentions").[1]

---

[1] Plaintiffs' response to Mr. Abudayyeh's motion to dismiss underscores the frivolousness of their claims. Plaintiffs assert, in support of their argument that the Amended Complaint plausibly alleges that Mr. Abudayyeh himself committed acts of international terrorism and/or aided and abetted terrorism, that the "FAC alleges that as USPCN's national chair, Abudayyeh oversaw networks that furnished personnel, facilities, and messaging campaigns that presented Hamas's atrocities as 'resistance' and mobilized support for them in the US, both in the years leading up to the October 7 Attacks and in their aftermath." ECF No. 69, at 12, 16-17. As factual support for this argument, Plaintiffs cite paragraphs 8, 56, 130 and 406-07 of the Amended Complaint. However, none of these paragraphs actually contain facts that support Plaintiffs' assertion. Paragraph 8 lumps all of the individual defendants together and states in conclusory fashion that they all conspired with Hamas through their establishment of or participation in activities with the organizational defendants; paragraph 58 simply states that Mr. Abudayyeh previously served as the director or USPCN and

Plaintiffs' aiding and abetting claim under the ATA is objectively frivolous because the factual allegations in the Amended Complaint could not possibly show that Mr. Abudayyeh provided knowing and substantial assistance to Hamas. Plaintiffs' conspiracy claim is likewise objectively frivolous because the Amended Complaint contains no factual allegations that could plausibly show Mr. Abudayyeh entered into an agreement with Hamas for the purpose of committing a terrorist act. Plaintiffs' claim for material support liability is just as frivolous because Plaintiffs cannot plausibly plead that Mr. Abudayyeh committed an act of terrorism, acted with a culpable state of mind, or proximately caused Plaintiffs' injuries. There is not one piece of non-frivolous evidence offered in support of Plaintiffs' bald assertions, and any reasonably competent attorney would have known that the legal claims presented have no "reasonable chance of success." *Id*.

## A.    The Aiding and Abetting Claim Against Mr. Abudayyeh is Frivolous

Section 2333(d) of the ATA imposes civil liability on a defendant "who aids and abets, by knowingly providing substantial assistance" to "an act of international terrorism" that is committed by a designated foreign terrorist organization ("FTO"). 18 U.S.C. § 2333(d)(2). To satisfy this standard, a plaintiff must allege that the defendant's conduct amounted to "conscious, voluntary, and culpable participation

---

currently serves as the national chair; paragraph 130 states that Mr. Abudayyeh was raided by the FBI in 2020 for suspected terror financing and served as the spokesperson for Rasmea Odeh's defense committee; and paragraphs 406-07 state in conclusory fashion that Mr. Abudayyeh, along with every other individual defendant, facilitated the establishment of National SJP and SJP "into the Hamas Conspiracy."

in another's wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023). Culpable participation in this context requires an "affirmative act," undertaken "with the intent of facilitating the offense's commission." *Id.* at 490 (internal quotation marks omitted). Aiding-and-abetting liability will not attach to "omissions, inactions, or nonfeasance." *Id.* at 489. Rather, a plaintiff must plausibly allege that the defendants "culpably associated themselves with the [relevant] attack, participated in it as something that they wished to bring about, or sought by their action to make it succeed." *Id.* at 490 (internal quotation marks omitted).

To state an ATA aiding-and-abetting claim, it is not enough for a plaintiff to allege that a defendant gave "assistance to [the FTO's] activities in general." *Id.* at 503; *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("Aiding and abetting requires more than the provision of material support to a terrorist organization") (internal quotation marks omitted). It is "not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter*, 598 U.S. at 495. Rather, the defendant must have specifically "aided and abetted the act of international terrorism that injured the plaintiffs." *Id.* at 497. In other words, Plaintiffs must plausibly allege that Defendants aided the *specific tort* that injured them; it is not enough to allege that they aided the tortfeasor more generally.

When Congress enacted Section 2333(d), it pointed to *Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983), as "provid[ing] the proper legal framework" for "civil aiding and abetting and conspiracy liability." Justice Against Sponsors of Terrorism

Act ("JASTA") § 2(a)(5), 130 Stat. 852. To state an aiding-and-abetting claim under the ATA, *Halberstam* requires: "(1) the party whom the defendant aids must perform a wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; [and] (3) the defendant . . . knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477.[2] Plaintiffs fail to satisfy elements two and three.

The Amended Complaint is devoid of non-conclusory allegations that Mr. Abudayyeh provided any aid whatsoever to Hamas, much less that he "consciously, voluntarily, and culpably" provided aid with the intent of facilitating Hamas's terrorist activities, much less the October 7 attacks. *Twitter*, 598 U.S. at 489-90, 505. The only allegations related to Mr. Abudayyeh beyond benign descriptions of Mr. Abudayyeh's role in USPCN (*see* Am. Compl. ¶¶ 58) are that he along with every other individual defendant: "facilitated" the establishment of defendants National SJP and SJP "to continue the same ongoing enterprise of IAP/AMS and HLF and AMP, but on a college level where they could infiltrate the minds of the young and easily influenced"; and "facilitated" "the joining of Defendants, National SJP and SJP into the Hamas Conspiracy." Am. Compl., ¶¶ 406, 407. These are exactly the type of "naked assertions devoid of further factual development" that must be

---

[2] While *Twitter* warned courts against "hew[ing] too tightly to the precise formulations *Halberstam* used," it did not invalidate that test. 598 U.S. at 493. Rather, the Court explained that "both JASTA and *Halberstam*'s elements and factors rest on the same conceptual core that has animated aiding-and-abetting liability for centuries: that the defendant consciously and culpably "participate[d]" in a wrongful act so as to help make it succeed." *Id*.

disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These bald assertions are therefore factually and legally frivolous, because they are unsupported by any evidence whatsoever. The Amended Complaint contains no allegations regarding any specific actions by Mr. Abudayyeh that could explain how he "facilitated" the "establishment" of National SJP or SJP or "facilitated" the "joining of National SJP or SJP into the Hamas Conspiracy," much less any allegations linking any such unspecified actions to Hamas, even less to the attacks that injured Plaintiffs.

Even if the Amended Complaint had factually alleged that Mr. Abudayyeh took some actions in relation to National SJP that somehow provided assistance to Hamas's terrorist activities, that would still not qualify as "knowing and substantial" assistance, and Plaintiffs' legal claim would still be utterly frivolous. First, the Amended Complaint does not allege the requisite *mens rea—i.e.*, that Mr. Abudayyeh did so "knowingly," "with the intent of facilitating" Hamas's terrorist attacks. *Twitter*, 598 U.S. at 490. The Amended Complaint is devoid of any facts indicating that Mr. Abudayyeh "wished" Hamas's terrorist operations "to succeed." *Id.* at 490. Second, the Amended Complaint does not allege a "concrete nexus between [these] services" and the October 7 attacks. *Id.* at 501. The Amended Complaint is utterly devoid of facts indicating that Mr. Abudayyeh knew or understood that his unspecified actions regarding National SJP (whatever those actions may have been) were, or even might be, used to support terrorism, nor does it draw any "concrete nexus" between his unspecified actions and the October 7 attacks. Even if the Amended Complaint had alleged that Mr. Abudayyeh inadvertently provided

10

support to Hamas through some specific actions, that would be insufficient to state a

claim under Section 2333(d). *Twitter*, 598 U.S. at 489, 499-500 (aiding-and-abetting

liability does not attach to inadvertent support); *id.* at 503 (general provision of aid to

an FTO insufficient to establish aiding and abetting); *Ofisi*, 77 F.4th at 675 (mere

provision of "material support" to FTO insufficient to state a claim).

In sum, even drawing every plausible inference in Plaintiffs' favor, the

Amended Complaint plainly fails to advance any non-frivolous basis for claiming

that Mr. Abudayyeh provided "knowing and substantial" assistance. Moreover,

applying the *Halberstam* test to Plaintiffs' allegations yields the same result:

1) "Nature of the act assisted". *Halberstam*, 705 F.2d at 488. This first factor

asks "whether the alleged aid . . . would be important to the nature of the injury-

causing act." *Honickman*, 6 F.4th at 500. Plaintiffs do not allege that Mr. Abudayyeh

committed any specific act that aided Hamas, let alone any specific act that was

important to or otherwise used in the October 7 attacks or any other attack.

2) "[A]mount of assistance provided". *Halberstam*, 705 F.2d at 488. This factor

also weighs heavily against liability insofar as Mr. Abudayyeh is not alleged to have

committed any specific acts that assisted Hamas.

3) Whether Mr. Abudayyeh was present at the time of the principal tort. *Id.*

The Amended Complaint does not allege that Mr. Abudayyeh was present at the

place and time of the October 7 attacks or any other attack.

4) Mr. Abudayyeh's "relation to" Hamas. *Id.* This factor is designed to

ascertain whether the defendant occupied a "position of authority [that gives] greater

11

force to his power of suggestion." *Id.* at 484. The Amended Complaint does not allege any relationship whatsoever between Hamas and Mr. Abudayyeh, much less one that would give Mr. Abudayyeh any power of persuasion. *See Bernhardt*, 47 F.4th at 872 (plaintiff "does not allege a connection between the foreign banks and al-Qaeda sufficient to infer any relationship, much less a close one...").

5) <u>Mr. Abudayyeh's "state of mind"</u>. *Halberstam*, 705 F.2d at 488. This inquiry is designed to determine whether the defendant provided aid with the "intent and desire to make the [unlawful] venture succeed." *Id.*; *Twitter*, 598 U.S. at 496-97. The Amended Complaint is devoid of any allegation, conclusory or otherwise, that Mr. Abudayyeh furnished aid to Hamas with the intent of facilitating terrorist attacks.

6) <u>"[D]uration of the assistance given"</u>. *Id.* 488. This factor is irrelevant here because Plaintiffs have completely failed to allege any specific assistance to Hamas or any of its operations. S*ee Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (25-year banking relationship did not support aiding-and-abetting liability where complaint failed to allege assistance to FTO's terrorist operations).

The sheer dearth of factual support offered for the frivolous claim that Mr. Abudayyeh provided substantial assistance to Hamas's attacks in and around Gaza reveals the Amended Complaint's sanctionable character.

The Amended Complaint also fails to identify any non-frivolous evidence that could show the separate element that Mr. Abudayyeh was "generally aware of his role" in Hamas's activities. *Halberstam*, 705 F.2d at 477. To satisfy *Halberstam*'s general awareness requirement, it is not enough that the defendant understood that

they were generally supporting a terrorist organization; rather, the defendant must be
cognizant of "assuming a role in terrorist activities." *Weiss v. Nat'l Westminster Bank
PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), *aff'd* 993 F.3d 144 (2d Cir.
2021) ("Evidence that Defendant knowingly provided banking services to a terrorist
organization, without more, is insufficient to satisfy JASTA's scienter
requirement."). Moreover, the "inquiry is not whether a defendant should have been
aware of its role"—rather, the plaintiff must establish "actual awareness." *Bernhardt
v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022).

Here, there is "no evidence" offered in support of the claim that Mr.
Abudayyeh had any knowledge that his work for USPCN would assist any terrorist
activities by Hamas (or that it in fact did). *Thompson*, 610 F.3d at 665. The factual
claim that Mr. Abudayyeh somehow facilitated the establishment of National SJP
and SJP is itself without "reasonable evidentiary basis" and therefore sanctionable
under Rule 11. *Id.* Even at the Rule 12 stage, these frivolous claims bereft of
supporting evidence or factual allegations are "not entitled to the assumption of
truth." *See Franklin*, 738 F.3d at 1250-52; *Mamani*, 654 F.3d at 1152-56. As such,
Plaintiffs cannot satisfy the "generally aware" element. *Parizer v. AJP Educ. Found.,
Inc.*, 2025 LX 317998, at *72 (E.D. Va. Aug. 15, 2025) (dismissing similar ATA
aiding and abetting Hamas claim where "the allegations fall short of showing that
Defendants gave knowing and substantial assistance to Hamas's October 7, 2023
attack under the *Halberstam/ Taamneh* framework.")

**B.**     **The Conspiracy Claim Against Mr. Abudayyeh is Frivolous**

Section 2333(d) imposes liability where someone "conspires with the person

who committed" "an act of international terrorism." 18 U.S.C. § 2333(d). To plead

such a claim, Plaintiffs must allege "(1) an agreement between two or more persons;

(2) to participate in an unlawful act"; "(3) an injury caused by an unlawful overt act

performed by one of the parties to the agreement; (4) which overt act was done

pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477.

The Amended Complaint obviously fails to plausibly allege "an agreement" to

participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S.

at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with

enough factual matter (taken as true) to suggest that an agreement was made," and

noting that "a conclusory allegation of agreement at some unidentified point does

not supply facts adequate to show illegality"). To establish an "agreement," Plaintiffs

must plausibly allege that the conspirators—*i.e.,* Mr. Abudayyeh and Hamas—were

"pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873

(D.C. Cir. 2022); *Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d

Cir. 1987) ("[C]onspirators [must have] a unity of purpose or a common design and

understanding."); *Newman v. AP*, 758 F. Supp. 3d 1357, 1374 (S.D. Fla. 2024). In the

ATA context, the object of the conspiracy must be to commit an act of international

terrorism. *See, e,g.*, *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9

14

(S.D.N.Y. Mar. 28, 2019) (ATA conspiracy claim required that the parties to "share[] the common goal of committing an act of international terrorism").[3]

Here, the Amended Complaint does not adequately allege that Mr. Abudayyeh conspired—directly or indirectly—with Hamas. It alleges no facts about any specific communications, agreements, or acts performed by Mr. Abudayyeh in furtherance of the "Hamas Conspiracy." The conclusory allegation of an agreement at some unidentified point in time would still not render plausible the inference that the October 7 attacks or any other attack were in furtherance of a conspiracy to which Mr. Abudayyeh had agreed. *See Newman*, 758 F. Supp. 3d at 1374-75 (dismissing ATA conspiracy claim because plaintiffs failed to plausibly allege any agreement to commit an act of international terrorism).

The Amended Complaint fails to plead an agreement for another reason: the ATA limits conspiracy liability to one "who conspires with the person who committed [the] act of international terrorism." 18 U.S.C. § 2333(d)(2). The plain text of the statute requires the defendant to have interacted with the group that caused a plaintiff's injuries. *See also Twitter*, 598 U.S. at 489-90 (conspiracy requires an "agreement with the primary wrongdoer to commit wrongful acts"); *Halberstam*,

---

[3] *See also Bernhardt v. Islamic Republic of Iran*, 2020 WL 6743066, at *7 (D.D.C. Nov. 16, 2020), *aff'd* 47 F.4th 856 (D.C. Cir. 2022) ("[T]o be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism.") (internal quotation marks omitted); *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) (ATA conspiracy claim required that the parties to "share[] the common goal of committing an act of international terrorism"); *Cain v. Twitter Inc.*, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (dismissing conspiracy claim where plaintiffs pled to allege an agreement "to commit terrorist attacks.").

705 F.2d at 481 (to infer existence of a conspiracy "courts must initially look to see if the alleged joint tortfeasors are . . . in contact with one another."). The Amended Complaint does not allege any contact at all between Mr. Abudayyeh and Hamas.

Where an attorney offers no facts or evidence whatsoever in support of a factual claim presented to the Court—in this case, that Defendants conspired with Hamas—the claim is frivolous and subject to sanction. *Thompson*, 610 F.3d at 665.

### C.    The Material Support Claim Against Mr. Abudayyeh is Frivolous

In addition to their secondary liability claims against Mr. Abudayyeh, Plaintiffs assert a direct liability claim under the ATA, which permits a civil cause of action for injury "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). As noted above, nowhere does the Amended Complaint allege that Mr. Abudayyeh himself committed an act of terrorism. Instead, Plaintiffs' theory is that Mr. Abudayyeh provided material support to Hamas in violation of 18 U.S.C. § 2339B, a criminal statute. Section 2339B makes it unlawful to "knowingly provide[] material support or resources to a foreign terrorist organization." Plaintiffs have not alleged that Mr. Abudayyeh committed "an act of international terrorism," nor have they alleged the requisite scienter for this provision, nor causation. Any reasonably competent attorney would have known that the legal claim presented here—that the facts alleged against Mr. Abudayyeh constitute material support for terrorism in violation of 18 U.S.C. § 2333(a)—has no "reasonable chance of success", and Plaintiffs' Counsel has not articulated any reasonable argument for changing existing law to reach Mr. Abudayyeh's conduct. *Thompson*, 610 F.3d at 665.

16

First, the Amended Complaint does not plead facts that would establish Mr. Abudayyeh committed "an act of international terrorism," as Section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (a) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, 18 U.S.C. § 2331(1)(A), and (b) "appear to be intended" to achieve certain specified terrorist purposes, *i.e.*, "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B). The statute is clear that it is the *defendant's* conduct—not that of the person or entity allegedly receiving material support—which must satisfy the definition of international terrorism. Plaintiffs do not allege that Mr. Abudayyeh himself committed any terrorist acts. *See* Am. Compl. ¶ 456 (alleging that Hamas – not Mr. Abudayyeh – "committed, planned, and authorized activities that involved violence or acts dangerous to human life"). They also do not allege that Mr. Abudayyeh's actions were "intended" to achieve one of the specified terrorist purposes under Section 2331(1)(B). *See id.* ¶ 472 (alleging that "acts … committed, planned, and authorized" by Hamas – not Mr. Abudayyeh – were intended to achieve terrorist purposes). The question is whether the factual allegations "would [] lead an objective observer to conclude" that Mr. Abudayyeh intended such an outcome. *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011). Plaintiffs' allegations against Mr. Abudayyeh are so perfunctory and conclusory that they cannot plausibly suggest to an objective observer that Mr.

17

Abudayyeh intended to achieve terrorist goals. *See, e.g., Newman*, 758 F. Supp. 3d at 1375-78 (dismissing ATA material support claim because plaintiffs failed to plausibly allege that the defendant committed an international act of terrorism).

Second, the Amended Complaint does not plead the required scienter. Plaintiffs must establish that Mr. Abudayyeh "knowingly provide[d] material support or resources to a foreign terrorist organization." The Supreme Court has read this provision stringently, requiring that a defendant act "under the direction of, or in coordination with" a group that it "knows to be" a terrorist organization. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 26 (2010). Indeed, Congress clearly anticipated that a claimant under this statute might bring an impermissible action arising from protected expressive conduct, as Plaintiffs do here, and included a carve out in the statute: "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339b(i). Independent, First Amendment-protected activities, which terrorist groups may paint to their constituencies as favorable to them, do not meet the scienter requirement of Section 2339B. *Humanitarian Law Project*, 561 U.S. at 36 ("Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups."). Here, the Amended Complaint is devoid of any non-conclusory factual allegations that suggest that Mr. Abudayyeh knowingly acted under the direction of, or in coordination with, Hamas. *See Iqbal*, 556 at 686 (conclusory allegations of intent without factual support are insufficient); *Owens v.*

18

*BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) ("repeated conclusory statements in the complaint that [banks] 'conspired' with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda," failed to plead scienter), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *Newman*, 758 F. Supp. 3d at 1378-80 (dismissing ATA material support claim because plaintiffs failed to plead the requisite scienter).

Third, Plaintiffs' material support claim fails because the Amended Complaint does not plausibly plead proximate cause, as federal courts have uniformly required under § 2333(a). *See, e.g.*, *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 677 (D.C. Cir. 2023); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019); *Fields v. Twitter, Inc.*, 881 F.3d 739, 748 (9th Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013). The Supreme Court and the Eleventh Circuit have not defined the precise contours of proximate cause for direct liability claims under the ATA. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223 (11th Cir. 2021) (noting that "federal courts have set out conflicting versions of proximate cause" in this context, without deciding the issue). Some courts have required "a direct relationship, rather than foreseeability," to establish proximate cause. *Fields*, 881 F.3d at 748. Others have held that a plaintiff must show the defendant's "acts were a substantial factor in the sequence of events that led to their injuries," and that their injuries were "reasonably foreseeable or anticipated as a natural consequence" of the defendant's conduct. *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *see also, e.g.*, *In re Chiquita Brands*

*Int'l*, 284 F. Supp. at 1314. Even under the latter, less demanding formulation, Plaintiffs fail to meet their pleading burden. Again, the vague and conclusory allegations against Mr. Abudayyeh unsupported by pleaded facts showing any specific actions that he took to support Hamas, much less the October 7 attacks, are not enough to establish proximate cause under the ATA. *See, e.g.*, *Ofisi*, 77 F.4th at 667 (no proximate cause where plaintiffs "failed to make any non-conclusory allegations that funds from [bank] were actually transferred to al-Qaeda and aided in the bombings or that the funds were necessary for Sudan to fund the attacks by al-Qaeda"); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting conclusory allegations that provision of "routine banking services" to customers affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or plaintiffs' injuries"); *Newman*, 758 F. Supp. 3d at 1380-81 (dismissing ATA material support claim because plaintiffs failed to plead proximate cause).

## II.   Plaintiffs' Counsel Should Have Been Aware that the Claims Against Mr. Abudayyeh Were Frivolous

Because the complaint is utterly devoid of any evidentiary basis to connect Mr. Abudayyeh to Hamas, the October 7 attacks, nor to any other attack, Mr. Abudayyeh very obviously could not be held liable under the ATA, and Plaintiffs' Counsel lacked any good and legitimate reason to include Mr. Abudayyeh as a defendant in the Amended Complaint. Moreover, the fact that Plaintiffs' Counsel amended the original complaint to supplement his allegations suggests that he put some consideration into the sufficiency of those allegations. It is therefore clear that

after a reasonable inquiry, Plaintiffs' Counsel should have known that the claims against Mr. Abudayyeh were not grounded in facts and law. *See, e.g., Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 923 (11th Cir. 2016) (affirming Rule 11 sanctions where the defendant obviously could not be held liable based on the statute and the facts pleaded in the amended complaint); *Baker v. Alderman*, 158 F.3d 516, 527 (11th Cir. 1998) (affirming Rule 11 sanctions where, despite the plaintiff's lack of subjective bad faith, the action was frivolous and without foundation).

## III. This Lawsuit Names Mr. Abudayyeh in Bad Faith and for Improper Reasons Related to His First Amendment Activities

Where, as here, a legal filing includes "factually or legally frivolous claims", "a 'motive to harass' can also be inferred." *Thompson*, 610 F.3d at 665-6. An improper purpose can also be "inferred from circumstantial evidence." *Id.* at 665. Plaintiffs' Counsel's improper motive of harassment is readily discernible here. First, the Amended Complaint was filed for the purpose of spuriously defaming and maligning Mr. Abudayyeh as linked to terrorism and terrorist attacks. Second, the Amended Complaint was filed for the purpose of dissuading Palestine solidarity organizers from public speech and advocacy by burdening them with expensive litigation costs. These are not "good faith" purposes for which to bring a frivolous lawsuit, and the Amended Complaint is in violation of Rule 11(b)(1).

### A. The Improper Purpose of Defamation and Stigmatization

The Amended Complaint only alleges three specific, non-conclusory facts against Mr. Abudayyeh: that he (1) was the first director of USPCN and is now the

21

National Chair; (2) "was raided by the FBI in 2010 for suspected terror financing"; and (3) "served as the spokesperson for convicted Palestinian terrorist Rasmea Odeh's Defense Committee." Am. Compl. ¶¶ 58, 130. While none of these facts provide even an iota of support for the legal claims or factual conclusions in the Amended Complaint, two of them are directly scandalous and evince the improper motive of harassment and embarrassment. The fact that Mr. Abudayyeh was the target of a search warrant—not even an indictment—*fifteen years ago* is utterly irrelevant to the pled causes of action and is only included for the purpose of improperly tarring Mr. Abudayyeh as a "terror financi[er]". The allegation that Mr. Abudayyeh was a spokesperson in defense of Rasmea Odeh—who was never convicted of terrorism in any U.S. court—is also irrelevant to Plaintiffs' legal claims.

The Amended Complaint does not even *attempt* to connect these spurious allegations to any element of their causes of action; Plaintiffs' counsel makes no attempt to connect Rasmea Odeh to Hamas's attacks, nor to connect the fruitless 2010 search warrant to any particular FTO or Hamas attack. *See e.g. Manhart v. Wespac Found. Inc.*, Case No. 24-cv-08209, 2025 U.S. Dist. LEXIS 152019, at *34 (N.D. Ill. Aug. 7, 2025) (ordering sanctions for improper purpose of harassment where "the SAC is rife with allegations that are irrelevant to Plaintiff's stated causes of action and which are only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet."). These allegations are sprinkled into the complaint for the sole purpose of character defamation, to portray Mr. Abudayyeh as generally associated with 'terrorism'. *See, e.g. Elhanafi v. Fox Televison*

*Stations, Inc.,* 2012 WL 6569341, *2 (Sup. Ct. Kings County, December 17, 2012) (plausible defamation where the public "might infer that plaintiffs are terrorists and/or terrorist sympathizers/abettors" due to Fox News story); *Sirer v. Aksoy,* 2023 WL 3166453, *2 (S.D. Fla., May 1, 2023) (finding defamation where "[d]efendant falsely stated that Plaintiff was a member of the Fethullah Terrorist Organization").

### B.    The Improper Purpose of Harassment and Silencing

Second, the Amended Complaint was filed for the improper purpose of harassing Defendant activist groups and individuals, including Mr. Abudayyeh, by tying them up in costly litigation in order to deplete their resources for speech and advocacy. *See e.g. Manhart*, 2025 U.S. Dist. LEXIS 152019, *35; *Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985) (calling for sanctions under Rule 11 where a litigant seeks an advantage by "attempt[ing] to tie up" his opponents "in litigation by unsupported allegations"). All of Defendants' alleged conduct is squarely protected by the First Amendment, and Plaintiffs' attempt to penalize that conduct through spurious lawfare suits is an impermissible abuse of this Court.

Plaintiffs' counsel Robert Tolchin has publicly advocated this precise strategy—"the idea of litigation as sending a message" regardless of whether it is legally successful.[4] In this case, the threatening message Mr. Tolchin hopes to send is

---

[4] Jodi Rudoren, "Crusading for Israel in a Way Some Say is Misguided," The New York Times (January 23, 2015). <https://www.nytimes.com/2015/01/24/world/middleeast/crusading-for-israel-in-a-way-some-say-is-misguided.html?unlocked_article_code=1.f08.3MF6.m49nGGt6xqW9&smid=nytcore-ios-share&referringSource=articleShare>.

clear: advocate for Palestinians or criticize Israel, and you will be dragged into costly
federal litigation and accused of supporting terrorism.

Significantly, Mr. Tolchin's firm, the Berkman Law Office, previously
registered under the Foreign Agents Registration Act as an agent of the Israeli law
firm Shurat HaDin[5], which "work[s] with government agencies and the IDF" to
"initiat[e] Court actions against biased media platforms, develo[p] ideas and
targets… provid[e] needed resources, and utiliz[e] courtrooms around the world" to
"confron[t] the haters who try to delegitimize Israel."[6] Shurat HaDin's website states
that its president, Nitsana Darshan-Leitner, is representing Plaintiffs in this very
lawsuit, alongside Mr. Tolchin.[7] Curiously, while Ms. Darshan-Leitner has neither
entered an appearance in this case nor requested leave to appear, she is listed as "of
counsel" on Plaintiffs' opposition to Defendants' Motions to Dismiss. ECF No. 69,
p. 26. Ms. Darshan-Leitner has emphatically endorsed the impermissible purpose of
using litigation to silence or intimidate critics of Israel, regardless of the strength of
the legal claim.[8] Plaintiffs' counsel pursues this improper motive even further in their
recent request to depose lawyers who have represented Palestine solidarity activists—

---

[5] "Registration Statement Pursuance to the Foreign Agents Registration Act of 1938, as amended"
(June 22, 2019) <https://efile.fara.gov/docs/6703-Registration-Statement-20190722-1.pdf>.
[6] Shurat HaDin Israel Law Center, "Shurat HaDin Launches a Legal War Room" (October 23,
2023). <https://israellawcenter.org/legal_actions/shurat-hadin-launches-a-legal-war-room/>.
[7] Shurat HaDin Israel Law Center, "Victims of Hamas Terror Launch Multi-Million-Dollar Lawsuit
Against 'Students for Justice in Palestine' (SJP)" (May 3, 2024).
<https://israellawcenter.org/lawsuit-launched-against-sjp/>.
[8] Rudoren, *supra* n. 3. (For example, Darshan-Leitner is quoted as saying "what happens in the end
doesn't affect your mission", and as pursuing legal claims that "she does not expect to see
prosecuted but hopes will deter Palestinians from pursuing parallel claims against Israelis").

seeking the court's permission to demand the identities and addresses of these activists under penalty of perjury. ECF No. 78, pp. 5, 8. This request highlights counsel's improper political motive of harassment—abusing the legal process to 'dox' individuals and organizations while harassing attorneys who represent Israel's "haters". This "lawfare" strategy is the quintessential impermissible, abusive purpose, and the Amended Complaint is a glaring violation of Rule 11(b)(1).

## IV.    Mr. Abudayyeh Should Be Awarded Reasonable Attorneys' Fees and Costs

The Court should require Plaintiffs' Counsel to pay Mr. Abudayyeh's reasonable attorneys' fees and costs incurred in responding to the Amended Complaint. Fed. R. Civ. P. 11(c)(4). Courts in this circuit have issued similar sanctions where frivolous and harassing litigation caused the other party to incur attorneys' fees and costs. *See, e.g., Diaz*, 643 F. App'x at 923; *Wissner v. DeWitt Law Firm, P.A.*, 2019 U.S. Dist. LEXIS at *10-13 (M.D. Fla. Dec. 4, 2019); *J A P Logistics, Inc. v. MT 2005 Integradores Y Consultores, S.A.*, 2020 U.S. Dist. LEXIS 83666, at *17-18 (S.D. Fla. May 11, 2020). Because Plaintiffs' allegations fall short of the minimal standards imposed by Rule 11, an award of attorneys' fees and costs is appropriate.

## CONCLUSION

For the reasons stated above, Mr. Abudayyeh respectfully asks this Court to find that Plaintiffs' Counsel violated Rule 11 and to order Plaintiffs' Counsel to pay Mr. Abudayyeh's reasonable attorneys' fees and costs incurred in defending against Plaintiffs' Amended Complaint.

Dated: September 18, 2025                     Respectfully submitted,

                                             */s/ Ben H. Elson*
                                             Ben H. Elson (*pro hac vice*)
                                             PEOPLE'S LAW OFFICE
                                             1180 N. Milwaukee Ave.
                                             Chicago, IL 60642
                                             Tel: (773) 235-0070 Ext. 116
                                             Email: ben@peopleslawoffice.com
                                             *Lead Counsel for Defendant Hatem
                                             Abudayyeh*

                                             Collin Poirot (*pro hac vice*)
                                             2603 Oak Lawn Ave.
                                             Dallas, TX 75219
                                             Tel: (214) 392-2281
                                             Email: cpoirot.law@gmail.com
                                             *Counsel for Defendant Hatem Abudayyeh*

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that he conferred with the opposing party by email

and the parties were unable to agree on a resolution of all or part of the motion.


Dated: September 18, 2025                    Respectfully submitted,

*/s/ Ben H. Elson*
Ben H. Elson (*pro hac vice*)
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
Tel: (773) 235-0070 Ext. 116
Email: ben@peopleslawoffice.com
*\*Lead Counsel for Defendant Hatem
Abudayyeh*

Collin Poirot (*pro hac vice*)
2603 Oak Lawn Ave.
Dallas, TX 75219
Tel: (214) 392-2281
Email: cpoirot.law@gmail.com
*Counsel for Defendant Hatem Abudayyeh*