**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MAURICE SHNAIDER et al.,

      Plaintiffs,

v.                                    Case No. 8:24-cv-1067

AMERICAN MUSLIMS FOR
PALESTINE et al.,

      Defendants.

_____

**DEFENDANT UNITED STATES PALESTINIAN COMMUNITY**
**NETWORK'S MOTION FOR SANCTIONS UNDER RULE 11**
**OF THE FEDERAL RULES OF CIVIL PROCEDURE**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant United States Palestinian Community Network ("USPCN"), by

and through its undersigned counsel, and pursuant to Rule 11 of the Federal Rules of

Civil Procedure, hereby respectfully moves this Court for sanctions against Plaintiffs'

counsel and submits this incorporated memorandum of law in support of the motion.

**INTRODUCTION**

Defendant USPCN files this motion for sanctions against Plaintiffs' counsel at

The Berkman Law Office ("Plaintiffs' Counsel") because they violated their

obligations under Rule 11 for two independent, but related, reasons: (1) in violation

of Rule 11(b)(2) and 11(b)(3) they filed frivolous legal and factual claims against

USPCN in the Amended Complaint that are not grounded in existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law or for

establishing new law; and (2) in violation of Rule 11(b)(1), the claims against USPCN are being pursued for an improper purpose, to defame, silence, and harass.

Plaintiffs assert claims against USPCN under the Anti-Terrorism Act ("ATA") for aiding and abetting, conspiracy and material support in relation to the October 7, 2023 attacks (hereinafter "October 7 attacks") and other attacks committed by Hamas. The allegations against USPCN very obviously come nowhere close to stating a claim, and no nonfrivolous argument can be made for a departure from settled law on any of the claims. Furthermore, the Amended Complaint names USPCN for an impermissible reason, in violation of its First Amendment rights.

## LEGAL STANDARD

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). "Sanctions are appropriate: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (citation omitted).

"There are two prongs to the Rule 11(b)(2) and (b)(3) inquiry: whether the legal claims or factual contentions are objectively frivolous, and, if so, whether a reasonably competent attorney should have known they were frivolous." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010). "Both inquiries measure

2

attorney conduct under an objective reasonably competent attorney standard." *Id.* "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law." *Id.* (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed." *Thompson*, 610 F.3d at 665 (citations omitted).

"Once a court concludes that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous." *Id.* The court asks "what was known or reasonably knowable when the paper was 'present[ed] to the court.'" *Id.* "Measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed." *Id.* "The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others." *Id.*

"Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper for an improper purpose. Improper purpose is often inferred from circumstantial evidence." *Id.* at 665-66. "A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims. *Id.* "A Rule 11(b)(2) or (b)(3) violation—bringing a legally or factually frivolous claim—is often probative

of a Rule 11(b)(1) improper purpose violation." *Id.* at 664.

If a filing violates Rule 11(b), the Court may impose "an appropriate sanction" on the attorney responsible for the violation, which may include attorney's fees and other costs. *See* Fed. R. Civ. P. 11(c)(1)-(4).

## ARGUMENT

### I.    The Claims Against USPCN are Objectively Frivolous

Plaintiffs plead that they are family members of American citizens who were victims of Hamas's attack on October 7, 2023. Am. Compl., ¶ 1. Plaintiffs assert three separate causes of action under the Anti-Terrorist Act: Conspiracy Liability (18 U.S.C. § 2333(a) and (d)); Aiding and Abetting Liability (18 U.S.C. § 2333(a) and (d)); and Material Support Liability (18 U.S.C. § 2339B and § 2333(a)). *Id.*, ¶¶ 453-484. Plaintiffs' apparent theory of the case is that the Defendants aided and abetted the October 7 attacks and other attacks, not by providing any actual material support for the Hamas attacks, but by exercising their right to free speech and association.

Plaintiffs fail to allege any specific acts whatsoever by USPCN that could possibly render the organization liable for aiding and abetting the particular attacks that injured them, conspiring with Hamas to commit the attacks, or providing material support to Hamas in furtherance of the attacks. Plaintiffs offer no non-frivolous allegations to support their claim that USPCN provided knowing and substantial assistance to Hamas, and no evidence or non-frivolous allegations in support of their claim that USPCN conspired with Hamas. Plaintiffs' factual claims are supported by "no evidence or only patently frivolous evidence" and no

reasonably competent attorney could conclude that their legal claims against USPCN under the ATA have "any reasonable chance of success" nor present any "reasonable argument to change existing law" to stretch the ATA to reach USPCN's alleged conduct. *Thompson*, 610 F.3d at 665.

The only facts Plaintiffs allege against USPCN are that it: is a community organization founded in 2007 (Dkt. 6, ¶ 48); lists Magdi Odeh and Rafeeq Jaber on its incorporation documents (Dkt. 6, ¶ 130); "sponsored" one of "over 70 presentations, activities, and workshops" about justice for Palestinians at the 2010 U.S. Social Forum conference (Dkt. 6, ¶ 189); was listed as a "convening organization" at the People's Conference for Palestine in 2024, intended as an opportunity for Palestine solidarity activists to "strengthen our relationships, our strategies, our tactics, and our unity for the struggle ahead" (Dkt. 6, ¶ 201); "co-sponsored" a rally called "Hands Off Palestine" at the Israeli Consulate in 2022, where a student called for "a tremendous, organized effort for our people in Palestine" (Dkt. 6, ¶ 258); and was listed as an "endorser" of a 2024 protest called "National Mobilization: Surround the White House for Gaza" which called for "an immediate ceasefire, an immediate end to the siege on Gaza, the freedom of all Palestinian prisoners, and an end to the occupation of Palestine," and where unidentified people chanted something pro-Hamas (Dkt. 6, ¶ 382).

These specific factual allegations have nothing to do with the attacks that injured Plaintiffs, cannot possibly show aiding and abetting Hamas—much less the October 7 attacks or any other attacks—and are not connected to any cause of

action. No reasonably competent attorney could have concluded, based on these irrelevant and inane factual allegations, that there was a "reasonable evidentiary basis" to claim that USPCN provided knowing and substantial support to the Hamas attacks, committed an act of international terrorism in support of the Hamas attacks, nor conspired with Hamas to further the attacks. *Thompson*, 610 F.3d at 665. No reasonably competent attorney could have concluded that Plaintiffs' legal claims had "any reasonable chance of success" based on these paltry allegations, nor that there was any "reasonable argument" to change well-established caselaw in a way that expands the ATA to reach this conduct. *Id.*

The only other allegations against USPCN are "patently frivolous" claims that USPCN is an affiliate of FTOs. *See e.g.* Dkt. 6, ¶¶ 6, 48, 50, 98, 130, 131, 384, 406, 407. These claims are frivolous because they are presented as bald conclusions bereft of any evidentiary or factual support. *Thompson*, 610 F.3d at 665. Because not one specific fact is offered or alleged that could provide non-frivolous evidence to support Plaintiffs' factual claims that USPCN is 'affiliated' with terrorists, sanctions are appropriate. *Id.* (sanctions are proper "where no evidence or only patently frivolous evidence is offered to support factual contentions").[1]

---

[1] Plaintiffs' response to USPCN's motion to dismiss underscores the frivolousness of their claims. Plaintiffs assert, in support of their argument that the Amended Complaint plausibly alleges that USPCN committed acts of international terrorism and/or aided and abetted terrorism, that the "FAC alleges that as USPCN coordinated propaganda and student networks that glorified Hamas's violence and used it to intimidate and sway public opinion, both in the years leading up to the October 7 Attacks and in their aftermath." ECF No. 69, at 12, 16. As factual support for this argument, Plaintiffs cite ¶¶ 6, 50, 98, 130–31, 150, 184, 187, 189, 201, 258, 382, 384, and 406–07 of the Amended Complaint. However, none of these paragraphs actually contain facts that support Plaintiffs' assertion. Paragraphs 6, 50, 131, 184, and 406-7 offer only repetitive statements that

Plaintiffs' claim for aiding and abetting terrorism under the ATA is objectively frivolous because the factual allegations in the Amended Complaint fall so far short of establishing that USPCN provided knowing and substantial assistance to Hamas. The claim for conspiracy under the ATA is likewise frivolous because Plaintiffs have no non-frivolous evidence that could show USPCN entered into an agreement with Hamas for the purpose of committing a terrorist act. And Plaintiffs' claims for material support liability under the ATA are frivolous because the Amended Complaint does not plausibly argue that USPCN committed an act of terrorism, acted with a culpable state of mind, or proximately caused Plaintiffs' injuries. Because the Amended Complaint fails to set forth a viable basis for Plaintiffs' invoked causes of action, and because there is not one piece of non-frivolous evidence offered in support of these claims, any reasonably competent attorney would have known that they have no "reasonable chance of success." *Id.*

### A.    The Aiding and Abetting Claim Against USPCN is Frivolous

Section 2333(d) of the ATA imposes civil liability on a defendant "who aids and abets, by knowingly providing substantial assistance" to "an act of international terrorism" that is committed by a designated foreign terrorist organization ("FTO").

---

USPCN is a co-founder of National SJP, with no factual support or elaboration; ¶ 98 contains the unsupported conclusion that USPCN is part of "the Hamas organizational network"; ¶¶ 130, 150, and 187 contain frivolous and unsupported descriptions of USPCN as "linked" or "affiliated" to various FTOs; ¶ 189 makes only the innocuous claim that USPCN was one of many organizations that sponsored a session at the U.S. Social Forum; ¶ 201 merely states that USPCN was one of the organizations that "conven[ed]" a conference about Palestine in May 2024; ¶ 258 merely claims that USPCN co-sponsored a protest at UCLA; ¶ 382 states that USPCN endorsed a protest in Washington, D.C.; and ¶ 384 states that USPCN "held a rally in Chicago".

18 U.S.C. § 2333(d)(2). To satisfy this standard, a plaintiff must allege that the defendant's conduct amounted to "conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023). Culpable participation in this context requires an "affirmative act," undertaken "with the intent of facilitating the offense's commission." *Id.* at 490 (internal quotation marks omitted). Aiding-and-abetting liability will not attach to "omissions, inactions, or nonfeasance." *Id.* at 489. Rather, a plaintiff must plausibly allege that the defendants "culpably associated themselves with the [relevant] attack, participated in it as something that they wished to bring about, or sought by their action to make it succeed." *Id.* at 490 (internal quotation marks omitted).

To state an ATA aiding-and-abetting claim, it is not enough for a plaintiff to allege that a defendant gave "assistance to [the FTO's] activities in general." *Id.* at 503; *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("Aiding and abetting requires more than the provision of material support to a terrorist organization.") (internal quotation marks omitted). It is "not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter*, 598 U.S. at 495. Rather, the defendant must have specifically "aided and abetted the act of international terrorism that injured the plaintiffs." *Id.* at 497. In other words, to plead aiding and abetting under the ATA, Plaintiffs must plausibly allege that Defendants aided the *specific tort* that injured them; it is not enough to allege that they aided the tortfeasor more generally.

8

When Congress enacted Section 2333(d), it pointed to *Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983), as "provid[ing] the proper legal framework" for "civil aiding and abetting and conspiracy liability." Justice Against Sponsors of Terrorism Act ("JASTA") § 2(a)(5), 130 Stat. 852. Thus, to state an aiding-and-abetting claim under the ATA, *Halberstam* requires a plaintiff to show that "(1) the party whom the defendant aids [performed] a wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; [and] (3) the defendant . . . knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477.[2] Plaintiffs fail to satisfy the second and third elements.

Plaintiffs have no coherent legal theory that could transform USPCN's general activism and advocacy on issues affecting the Palestinian people (*see e.g.*, Dkt. 6, ¶¶ 154, 189, 201, 258, 382, 384) into substantial assistance for the specific tort that injured them—in this case, Hamas's October 7 attack and subsequent violence in Gaza. Because Plaintiffs fail to allege any nexus whatsoever between speech and advocacy in the United States and Hamas's military operations in Gaza, their legal claims are frivolous and subject to sanction under Rule 11.

---

[2] While *Twitter* warned courts against "hew[ing] too tightly to the precise formulations *Halberstam* used," it did not invalidate that test. 598 U.S. at 493. Rather, the Court explained that "both JASTA and *Halberstam*'s elements and factors rest on the same conceptual core that has animated aiding-and-abetting liability for centuries: that the defendant consciously and culpably "participate[d]" in a wrongful act so as to help make it succeed." *Id*.

Where Plaintiffs' claim relies on generalized encouragement or assistance to Hamas's activities, without a direct nexus to the particular tort that injured Plaintiffs, they must meet the higher threshold of alleging "that defendants so systematically and pervasively assisted [Hamas] that defendants could be said to aid and abet every single" Hamas attack. *Twitter*, 598 U.S. at 501. Here, Plaintiffs have no non-frivolous basis for claiming that USPCN aided and abetted every single Hamas attack.

Plaintiffs also cannot possibly show, based on the allegations in the complaint, that USPCN provided "substantial" assistance under *Halberstam*'s six-factor test. 705 F.2d at 484-85.

1) <u>"Nature of the Act Assisted"</u>. *Halberstam*, 705 F.2d at 488. This first factor asks "whether the alleged aid . . . would be important to the nature of the injury-causing act." *Honickman*, 6 F.4th at 500. Plaintiffs identify no specific act by USPCN that aided Hamas, let alone the attacks that injured them.

2) <u>"[A]mount of assistance provided"</u>. *Id.*. USPCN is not alleged to have provided *any* specific form of quantifiable assistance to Hamas's attacks.

3) <u>Whether USPCN was present at the time of the principal tort</u>. *Id.*. Plaintiffs do not allege that USPCN was present during the Hamas attacks.

4) <u>USPCN's "relation to" Hamas</u>. *Id.*. The Amended Complaint offers only patently frivolous allegations of a current relationship between USPCN and Hamas. *See Bernhardt*, 47 F.4th at 872 (plaintiff "does not allege a connection between the foreign banks and al-Qaeda sufficient to infer any relationship").

5) <u>USPCN's "state of mind"</u>. *Halberstam*, 705 F.2d at 488. The Amended Complaint offers only patently frivolous allegations about the intention behind USPCN's speech and advocacy activity, and there is no evidence of any intent to support the attacks against Plaintiffs.

6) <u>"[D]uration of the assistance given"</u>. *Id.*, at 488. Plaintiffs allege no specific aid given by UPCN to Hamas or its attacks, nor any specific time period when such aid was rendered.

Where Plaintiffs cannot show a concrete nexus between their injuries and Defendants' conduct, cannot show "substantial" assistance, and cannot allege systemic, intentional, and pervasive assistance, their aiding and abetting charge is legally frivolous. *Thompson*, 610 F.3d 665. The sheer dearth of factual support offered for this frivolous charge reveals the Amended Complaint's sanctionable character.

The Amended Complaint also fails to identify any non-frivolous evidence that could show the separate element that USPCN was "generally aware of [its] role" in Hamas's activities. *Halberstam*, 705 F.2d at 477. To satisfy *Halberstam*'s general awareness requirement, it is not enough that the defendant understood that they were generally supporting a terrorist organization; rather, the defendant must be cognizant of "assuming a role in terrorist activities." *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), *aff'd* 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."). Moreover, the "inquiry is not whether a defendant should have been

11

aware of its role"—rather, the plaintiff must establish "actual awareness." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022).

Here, there is "no evidence" offered in support of the claim that USPCN had any knowledge that its work would assist any violent or terrorist activities by Hamas (or that it in fact did). *Thompson*, 610 F.3d at 665. The factual claim that USPCN is affiliated with Hamas and other FTOs is itself without "reasonable evidentiary basis" and therefore sanctionable under Rule 11. *Id.* Even at the Rule 12 stage, these frivolous claims bereft of supporting evidence or factual allegations are "not entitled to the assumption of truth." *See Franklin*, 738 F.3d at 1250-52; *Mamani*, 654 F.3d at 1152-56. Thus, Plaintiffs have failed to satisfy the "generally aware" element as well. *Parizer v. AJP Educ. Found., Inc.*, 2025 LX 317998, at *72 (E.D. Va. Aug. 15, 2025) (dismissing similar ATA aiding and abetting Hamas claim where "the allegations fall short of showing that Defendants gave knowing and substantial assistance to Hamas's October 7, 2023 attack under the *Halberstam/Taamneh* framework.")

### B.    The Conspiracy Claim Against USPCN is Frivolous

Section 2333(d) imposes liability on anyone "who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d). To state an ATA conspiracy claim, a plaintiff must allege "(1) an agreement between two or more persons; (2) to participate in an unlawful act"; "(3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477.

The Amended Complaint obviously fails to plausibly allege "an agreement" to participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). To establish an "agreement," Plaintiffs must plausibly allege that the conspirators—*i.e.,* USPCN and Hamas— were "pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022); *Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d Cir. 1987) ("[C]onspirators [must have] a unity of purpose or a common design and understanding."); *Newman v. AP*, 758 F. Supp. 3d 1357, 1374 (S.D. Fla. 2024). In the ATA context, the object of the conspiracy must be to commit an act of international terrorism. *See, e,g.*, *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) (ATA conspiracy claim required that the parties to "share[] the common goal of committing an act of international terrorism").[3]

Here, the Amended Complaint includes no non-frivolous evidence to show that USPCN conspired with Hamas—directly or indirectly—to commit an act of

---

[3] *See also Bernhardt v. Islamic Republic of Iran*, 2020 WL 6743066, at *7 (D.D.C. Nov. 16, 2020), *aff'd* 47 F.4th 856 (D.C. Cir. 2022) ("[T]o be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism.") (internal quotation marks omitted); *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) (ATA conspiracy claim required that the parties to "share[] the common goal of committing an act of international terrorism"); *Cain v. Twitter Inc.*, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (dismissing conspiracy claim where plaintiffs pled to allege an agreement "to commit terrorist attacks.").

international terrorism. It alleges no specific communications, agreements, or acts performed by USPCN that plausibly show agreement to the "Hamas Conspiracy." The conclusory allegation of contact at some unidentified point in the past does not render plausible the inference that USPCN agreed with Hamas to commit an act of international terrorism, as required to state a claim under the ATA. *See Newman*, 758 F. Supp. 3d at 1374-75. The conclusory assertion of an original purpose behind USPCN's founding does not render plausible an inference that either (1) the attacks that harmed Plaintiffs were in furtherance of a conspiracy USPCN had agreed to, nor that (2) USPCN's advocacy and speech in America was in furtherance of a conspiracy to commit the attacks. *See, e.g.*, *Lavi v. Unrwa USA Nat'l Comm., Inc.*, 2025 U.S. Dist. LEXIS 153757, at *9-24 (D. Del. Aug. 8, 2025) (dismissing similar aiding and abetting and conspiracy claims where Plaintiffs "overstate[d] the conclusions for which the factual allegations in the Complaint can plausibly provide support", failed to show a nexus between Defendant's aid and the October 7th attack, and failed to plausibly allege defendants had agreement with Hamas).

The Amended Complaint cannot show the required agreement for another reason: the ATA limits conspiracy liability to one "who conspires with the person who committed [the] act of international terrorism." 18 U.S.C. § 2333(d)(2) (emphasis added). The plain text of the statute requires the defendant to have directly interacted with the group that caused a plaintiff's injuries. *See also Twitter*, 598 U.S. at 489-90 (conspiracy requires an "agreement with the primary wrongdoer to commit wrongful acts"); *Halberstam*, 705 F.2d at 481 (to infer existence of a conspiracy

14

"courts must initially look to see if the alleged joint tortfeasors are . . . in contact with one another."). The Amended Complaint does not allege any direct interaction whatsoever—Plaintiffs allege no particular time, place, forum, nor content of any communications or contact between Hamas and USPCN.

Where an attorney has no facts or evidence whatsoever in support of a factual claim in a brief filed with the Court—in this case the claim that Defendants conspired with Hamas to carry out the attacks that harmed them—the claim is frivolous and subject to sanction. *Thompson*, 610 F.3d at 665.

### C.    The Material Support Claim Against USPCN is Frivolous

In addition to their secondary liability claims against USPCN, Plaintiffs assert a direct liability claim under the ATA, which permits a civil cause of action for injury "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). Plaintiffs' legal claim that USPCN provided material support to Hamas in violation of 18 U.S.C. § 2339B is equally frivolous. Section 2339B, a criminal statute, makes it unlawful to "knowingly provide[] material support or resources to a foreign terrorist organization." Plaintiffs have not alleged that USPCN committed "an act of international terrorism," nor have they alleged the requisite scienter for this provision, or causation. Any reasonably competent attorney would have known that the legal claim presented here—that the facts alleged against USPCN constitute material support for terrorism in violation of 18 U.S.C. § 2333(a)—has no "reasonable chance of success", and Plaintiffs' Counsel has not articulated any

reasonable argument for changing existing law to reach USPCN's conduct. *Thompson*, 610 F.3d at 665.

First, the Amended Complaint does not plead facts that could establish that USPCN committed "an act of international terrorism," as Section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (a) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, 18 U.S.C. § 2331(1)(A), and (b) "appear to be intended" to achieve certain specified terrorist purposes, *i.e.*, "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B). The statute is clear that it is the defendant's conduct alone which must satisfy the definition of international terrorism. Plaintiffs do not allege that USPCN committed any terrorist acts. *See* Am. Compl. ¶ 456 (alleging that Hamas–not USPCN–"committed, planned, and authorized activities that involved violence or acts dangerous to human life"). They also do not allege that USPCN's actions "appear to be intended" to achieve one of the specified terrorist purposes under Section 2331(1)(B). *See id.* ¶ 472. The question is whether the factual allegations "would [] lead an objective observer to conclude" that USPCN intended such an outcome. *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011). Plaintiffs' allegations against USPCN are so perfunctory and conclusory that they cannot plausibly suggest to an objective observer that USPCN intended to achieve terrorist goals. *See, e.g., Newman*, 758 F. Supp. 3d at 1375-78 (dismissing

16

ATA material support claim because plaintiffs failed to plausibly allege that the defendant committed an international act of terrorism).

Second, the Amended Complaint cannot establish the required scienter. Plaintiffs must establish that USPCN "knowingly provide[d] material support or resources to a foreign terrorist organization." The Supreme Court has read this provision stringently, requiring that a defendant act "under the direction of, or in coordination with" a group that it "knows to be" a terrorist organization. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 26 (2010). Indeed, Congress clearly anticipated that a claimant under this statute might bring an impermissible action arising from protected expressive conduct, as Plaintiffs appear to do here, and it included a carve out in the statute: "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339b(i). Independent, First Amendment-protected activities, which terrorist groups may paint to their constituencies as favorable to them, do not meet the scienter requirement of Section 2339B. *Humanitarian Law Project*, 561 U.S. at 36 ("Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups."). Here, the Amended Complaint is devoid of any non-conclusory factual allegations that could show that USPCN knowingly acted under the direction of, or in coordination with, Hamas. *See Iqbal*, 556 at 686 (conclusory allegations of intent without factual support are insufficient); *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017)

("repeated conclusory statements in the complaint that [banks] 'conspired' with
Sudan to provide financial services to al Qaeda, and that defendants knew the money
they processed for Sudan would end up with al Qaeda," failed to plead scienter),
*aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *Newman*, 758 F. Supp. 3d at 1378-80 (dismissing
ATA material support claim because plaintiffs failed to plead the requisite scienter).
Any alleged speech and advocacy by USPCN remains firmly protected by the First
Amendment, and cannot constitute a violation of the ATA's prohibition on material
support under § 2339B. As such, this legal claim is also frivolous.

Third, Plaintiffs' material support claim is frivolous because the Amended
Complaint does not plausibly show proximate cause, as federal courts have
uniformly required under § 2333(a). *See, e.g.*, *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667,
677 (D.C. Cir. 2023); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019); *Fields
v. Twitter, Inc.*, 881 F.3d 739, 748 (9th Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82,
95 (2d Cir. 2013). The Supreme Court and the Eleventh Circuit have not defined the
precise contours of proximate cause for direct liability claims under the ATA. *See
Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223 (11th Cir. 2021) (noting that "federal courts
have set out conflicting versions of proximate cause" in this context, without
deciding the issue). Some courts have required "a direct relationship, rather than
foreseeability," to establish proximate cause. *Fields*, 881 F.3d at 748. Others have
held that a plaintiff must show the defendant's "acts were a substantial factor in the
sequence of events that led to their injuries," and that their injuries were "reasonably
foreseeable or anticipated as a natural consequence" of the defendant's conduct.

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *see also, e.g.*, *In re Chiquita Brands Int'l*, 284 F. Supp. at 1314. Even under the latter, less demanding formulation, Plaintiffs fail to meet their pleading burden. Again, the vague and conclusory allegations against USPCN, unsupported by specific facts showing any actions to support Hamas, much less the October 7 attacks, are not enough to establish proximate cause under the ATA. *See, e.g.*, *Ofisi*, 77 F.4th at 667 (no proximate cause where plaintiffs "failed to make any non-conclusory allegations that funds from [bank] were actually transferred to al-Qaeda and aided in the bombings or that the funds were necessary for Sudan to fund the attacks by al-Qaeda"); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting conclusory allegations that provision of "routine banking services" to customers affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or plaintiffs' injuries"); *Newman*, 758 F. Supp. 3d at 1380-81 (dismissing ATA material support claim because plaintiffs failed to plead proximate cause). Again, the case law on this point is clear, and Plaintiffs' Counsel articulates no "reasonable argument" for changing settled law. *Thompson*, 610 F.3d 665.

## II.    Plaintiffs' Counsel Should Have Been Aware that the Claims Against USPCN Were Frivolous

Because the complaint is utterly devoid of any non-frivolous evidentiary basis to connect USPCN to Hamas, the October 7 attacks, nor to any other attack, USPCN very obviously cannot be held liable under the ATA, and Plaintiffs' Counsel lacked any good and legitimate reason to include USPCN as a defendant in the

Amended Complaint. Moreover, the fact that Plaintiffs' Counsel amended the original complaint to supplement his allegations suggests that he put some consideration into the sufficiency of those allegations. It is therefore clear that after a reasonable inquiry, Plaintiffs' Counsel should have known that these claims were not grounded in facts or law. *See, e.g., Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 923 (11th Cir. 2016) (affirming Rule 11 sanctions where the defendant obviously could not be held liable based on the statute and the facts pleaded in the amended complaint); *Baker v. Alderman*, 158 F.3d 516, 527 (11th Cir. 1998) (affirming Rule 11 sanctions where good faith claim was nonetheless frivolous and without basis).

## III.    This Lawsuit Names USPCN in Bad Faith and for Improper Reasons Related to Its First Amendment Activities

Where, as here, a legal filing includes "factually or legally frivolous claims", "a 'motive to harass' can also be inferred." *Thompson*, 610 F.3d at 665-6. An improper purpose can also be "inferred from circumstantial evidence." *Id.* at 665. Opposing counsel's improper motive of harassment is readily discernible here. First, the Amended Complaint was filed for the purpose of spuriously defaming and maligning USPCN as an "affiliate" of terrorists. Second, the Amended Complaint was filed for the purpose of dissuading Palestine solidarity activists from public speech and advocacy by burdening them with litigation costs. These are improper purposes for bringing a lawsuit, and the Amended Complaint violates Rule 11(b)(1).

### A.    The Improper Purpose of Defamation and Stigmatization

While the few specific facts Plaintiffs' Counsel is able to muster against
USPCN show only innocent speech and association (*see* Dkt. 6, ¶ 154, 189, 201, 258,
382, 384), Plaintiffs' Counsel has nonetheless filled the Amended Complaint with
bald repetitions of the utterly frivolous, baseless, and sanctionable assertion that
USPCN is "affiliated" with terrorists. *See e.g.* Dkt. 6, ¶¶ 48, 50, 130, 154, 184, 407.
This dangerous accusation is defamatory, scandalous, and evidences the improper
motive of harassment and defamation. In their 452 paragraphs of pleadings,
Plaintiffs fail to allege a single specific fact that could provide support for their
assertion that USPCN had contact with Hamas—nor any other FTO—much less
that it engaged in "association" or "affiliation" with FTOs.

Where Plaintiffs' Counsel has chosen to make this frivolous, defamatory
accusation ad nauseum, without a single piece of evidence to support the claim, his
improper motive of harassment and defamation is readily apparent. *See e.g. Manhart
v. Wespac Found. Inc.*, Case No. 24-cv-08209, 2025 U.S. Dist. LEXIS 152019, at *34
(N.D. Ill. Aug. 7, 2025) (ordering sanctions for improper purpose of harassment
where "the SAC is rife with allegations that are irrelevant to Plaintiff's stated causes
of action and which are only a hair's breadth away from calling Defendants terrorists
and placing the loss of innocent lives at their feet."). These allegations are solely
included for the purpose of character defamation and to portray USPCN as being
generally associated with 'terrorism'. *See, e.g. Elhanafi v. Fox Televison Stations, Inc.*,
2012 WL 6569341, *2 (Sup. Ct. Kings County, December 17, 2012) (finding possible
defamation where the public "might infer that plaintiffs are terrorists and/or terrorist

sympathizers/abettors" based on Fox News story); *Sirer v. Aksoy,* 2023 WL 3166453, *2 (S.D. Fla., May 1, 2023) (finding defamation where "[d]efendant falsely stated that Plaintiff was a member of the Fethullah Terrorist Organization").

### B.    The Improper Purpose of Harassment and Silencing

Second, the Amended Complaint was filed for the improper purpose of harassing Defendant activist groups and individuals, including USPCN, by tying them up in costly litigation in order to deplete their resources for speech and advocacy. *See e.g. Manhart*, 2025 U.S. Dist. LEXIS 152019, *35; *Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985) (calling for sanctions under Rule 11 where a litigant seeks an advantage by "attempt[ing] to tie up" his opponents "in litigation by unsupported allegations"). All of Defendants' alleged conduct is squarely protected by the First Amendment, and Plaintiffs' attempt to penalize that conduct through spurious lawfare suits is an impermissible abuse of this Court.

Plaintiffs' counsel Robert Tolchin has publicly advocated this precise tactic— "the idea of litigation as sending a message" regardless of whether it is legally successful.[4] In this case, the threatening message Mr. Tolchin hopes to send is clear: advocate for Palestinians or criticize Israel, and you will be dragged into costly federal litigation and accused of supporting or affiliating with terrorists.

---

[4] Jodi Rudoren, "Crusading for Israel in a Way Some Say is Misguided," The New York Times (January 23, 2015). <https://www.nytimes.com/2015/01/24/world/middleeast/crusading-for-israel-in-a-way-some-say-is-misguided.html?unlocked_article_code=1.f08.3MF6.m49nGGt6xqW9&smid=nytcore-ios-share&referringSource=articleShare>.

Significantly, Mr. Tolchin's firm, the Berkman Law Office, previously registered under the Foreign Agents Registration Act as an agent of the Israeli law firm Shurat HaDin[5], which "work[s] with government agencies and the IDF" to "initiat[e] Court actions against biased media platforms, develo[p] ideas and targets… provid[e] needed resources, and utiliz[e] courtrooms around the world" to "confron[t] the haters who try to delegitimize Israel."[6] Shurat HaDin's website states that its president, Nitsana Darshan-Leitner, is representing Plaintiffs in this very lawsuit, alongside Mr. Tolchin.[7] Curiously, while Ms. Darshan-Leitner has neither entered an appearance in this case nor requested leave to appear, she is listed as "of counsel" on Plaintiffs' opposition to Defendants' Motions to Dismiss. ECF No. 69, p. 26. Ms. Darshan-Leitner has emphatically endorsed the impermissible purpose of using litigation to silence or intimidate critics of Israel, regardless of the strength of the legal claim.[8] Plaintiffs' counsel pursues this improper motive even further in their recent request to depose lawyers who have represented Palestine solidarity activists— seeking the court's permission to demand the identities and addresses of these activists under penalty of perjury. ECF No. 78, pp. 5, 8. This request highlights

---

[5] "Registration Statement Pursuance to the Foreign Agents Registration Act of 1938, as amended" (June 22, 2019) <https://efile.fara.gov/docs/6703-Registration-Statement-20190722-1.pdf>.
[6] Shurat HaDin Israel Law Center, "Shurat HaDin Launches a Legal War Room" (October 23, 2023). <https://israellawcenter.org/legal_actions/shurat-hadin-launches-a-legal-war-room/>.
[7] Shurat HaDin Israel Law Center, "Victims of Hamas Terror Launch Multi-Million-Dollar Lawsuit Against 'Students for Justice in Palestine' (SJP)" (May 3, 2024). <https://israellawcenter.org/lawsuit-launched-against-sjp/>.
[8] Rudoren, *supra* n. 3. (For example, Darshan-Leitner is quoted as saying "what happens in the end doesn't affect your mission", and as pursuing legal claims that "she does not expect to see prosecuted but hopes will deter Palestinians from pursuing parallel claims against Israelis").

counsel's improper political motive of harassment—abusing the legal process to 'dox' individuals and organizations while harassing attorneys who represent Israel's "haters". This "lawfare" strategy is the quintessential impermissible, abusive purpose, and the Amended Complaint is a glaring violation of Rule 11(b)(1).

## IV.    USPCN Should Be Awarded Reasonable Attorneys' Fees and Costs

The Court should require Plaintiffs' Counsel to pay USPCN's reasonable attorneys' fees and costs incurred in responding to the Amended Complaint. Fed. R. Civ. P. 11(c)(4). Courts in this circuit have issued similar sanctions where frivolous and harassing litigation caused the other party to incur attorneys' fees and costs in responding. *See*, *e.g.*, *Diaz*, 643 F. App'x at 923; *Wissner v. DeWitt Law Firm, P.A.*, 2019 U.S. Dist. LEXIS at *10-13 (M.D. Fla. Dec. 4, 2019); *J A P Logistics, Inc. v. MT 2005 Integradores Y Consultores, S.A.*, 2020 U.S. Dist. LEXIS 83666, at *17-18 (S.D. Fla. May 11, 2020). Because Plaintiffs' allegations against USPCN fall short of the minimal standards imposed by Rule 11, an award of attorneys' fees and costs is appropriate under Rule 11.

## CONCLUSION

For the reasons stated above, USPCN respectfully asks this Court to find that Plaintiffs' Counsel violated Rule 11 and to order Plaintiffs' Counsel to pay USPCN's reasonable attorneys' fees and costs incurred in defending against Plaintiffs' Amended Complaint.

Dated: September 18, 2025

Respectfully submitted,

*/s/ Ben H. Elson*
Ben H. Elson (*pro hac vice*)
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
Tel: (773) 235-0070 Ext. 116
Email: ben@peopleslawoffice.com
*Lead Counsel for Defendant United States
Palestinian Community Network*

Collin Poirot (*pro hac vice*)
2603 Oak Lawn Ave.
Dallas, TX 75219
Tel: (214) 392-2281
Email: cpoirot.law@gmail.com
*Counsel for Defendant United States
Palestinian Community Network*

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that he conferred with the opposing party by email

and the parties were unable to agree on a resolution of all or part of the motion.

Dated: September 18, 2025                      Respectfully submitted,

*/s/ Ben H. Elson*
Ben H. Elson (*pro hac vice*)
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
Tel: (773) 235-0070 Ext. 116
Email: ben@peopleslawoffice.com
*Lead Counsel for Defendant United States Palestinian Community Network*

Collin Poirot (*pro hac vice*)
2603 Oak Lawn Ave.
Dallas, TX 75219
Tel: (214) 392-2281
Email: cpoirot.law@gmail.com
*Counsel for Defendant United States Palestinian Community Network*