UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAURICE SHNAIDER. *et al.*,

    Plaintiffs,

                           Case No. 8:24-cv-01067-MSS-SPF

v.
AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

    Defendants.

## CODEPINK'S OPPOSED MOTION TO DISMISS

Defendant, CODEPINK, through its undersigned counsel, and pursuant to Rule 12(b)(1), 12(b)(6) and Local Rule 3.01(c), respectfully moves to dismiss Plaintiffs' First Amended Complaint (FAC) with prejudice for failure to satisfy Article III standing and failure to state a claim upon which relief can be granted.

## INTRODUCTION

Plaintiffs are individuals and relatives who claim injuries from Hamas' October 7, 2023 attacks and subsequent violence in Israel. Plaintiffs allege that, in co-sponsoring rallies, conference panels, grassroots organizing efforts, and political advocacy in support of Palestine, CODEPINK has conspired, aided and abetted, and provided material support to Hamas' attacks.

To manufacture a connection between their injuries and CODEPINK, the FAC deploys piecemeal allegations that obscure and omit the crucial context driving CODEPINK's advocacy: ending the on-going military campaign against

Palestinians resulting in multiple international human rights violations, escalating to what amounts as genocide according to various international human rights bodies and legal institution.[1] The devastation is staggering. Over 60,000 Palestinians in Gaza have been slaughtered, entire bloodlines erased, and mass starvation at unprecedented highs.[2] Meanwhile, Palestinian land continues to be seized, occupied, and auctioned amidst the forcible displacement of Palestinians from their homes.[3] The atrocities committed against Palestinians, however, did not begin on October 7, 2023. For decades, the region has been subject to harrowing violence, including in the month-long Gaza War from December 2008 to January 2009, where over 1,300 Palestinians were killed.[4] It is with this backdrop, consistent with its organizational mission, that CODEPINK has exercised its fundamental right to speech in an effort to bring peace and alleviate suffering in Palestine and across the globe. Plaintiffs' entire FAC is a brazen attempt to denigrate political advocacy as terrorism. Despite their incendiary language, Plaintiffs ultimately only allege that CODEPINK engaged in lawful protected speech and assembly.

Plaintiffs have already amended their pleading and no facts exist that could make their complaint adequate, as Plaintiffs cannot change the law or conjure new

---

[1] *See e.g.* David Gritten & Imogen Foulkes, *Israel Has Committed Genocide in Gaza, UN Commission of Inquiry Says*, BBC, Sep. 16, 2025, https://www.bbc.com/news/articles/c8641wv0n4go.
[2] *Id.*
[3] *See e.g.* Yolande Knell & Toby Luckhurst, *Under Cover of War, Extremists Are Seizing Palestinian Land – They Hope Permanently*, BBC, Aug. 27, 2024,
https://www.bbc.com/news/articles/c624qr3mqrzo.
[4] United Nations Office for the Coordination of Humanitarian Affairs, *Eight Years after the 2008-2009 Hostilities in Gaza: Lack of Accountability Persists*, (Mar. 11, 2017),
https://www.ochaopt.org/content/eight-years-after-2008-2009-cast-lead-hostilities-gaza-lack-accountability-persists.

or different facts. Because Plaintiffs' allegations (1) fail to satisfy Article III standing traceability requirements, (2) fail to state a claim upon which relief can be granted, and (3) demonstrate a repeated failure to allege adequate facts and a clear intent to silence and intimidate protected speech and association under the First Amendment, Plaintiffs' FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiffs assert three causes of action under the Anti-Terrorism Act (ATA): Conspiracy Liability (18 U.S.C. § 2333(a) and (d)); Aiding and Abetting Liability (18 U.S.C. § 2333(a) and (d)); and Material Support Liability (18 U.S.C. § 2339B and § 2333(a)). FAC. ¶¶ 453-484. Plaintiffs' attempt to link their injuries sustained in Hamas' October 7, 2023 attacks with four types of allegations against CODEPINK's protected and lawful exercise of speech and association.

First, plaintiffs allege without any substantiation, that CODEPINK is "tie[d[ to," or "engaged with" different terrorist or government officials in the Middle East. FAC at ¶¶ 207-10. National Students for Justice in Palestine (NSJP) is, however, the only group for which the FAC alleges specific details of affiliation with CODEPINK—"coordinat[ing] closely on activities, events, and even shar[ing] office space and personnel." *Id.* Second, Plaintiffs allege that in 2009, "CODEPINK organized seven trips to Gaza" where they were "welcomed by Hamas," and a CODEPINK leader said she planned to deliver a letter penned by a Deputy Foreign Minister in Gaza to President Barack Obama about the circumstances in Gaza in 2009. *Id*. Third, CODEPINK allegedly sponsored a session in the "Palestine Program" track at the 2010 U.S. Social Forum Conference. *Id*. ¶ 189.

Fourth, Plaintiffs contend that CODEPINK organized or endorsed two rallies in June 2024: a rally to protest against a "real estate auction event for land in Israel at [a] synagogue" in Los Angeles and a mobilization titled "National Mobilization: Surround the White House for Gaza." *Id*. ¶¶ 382, 386. The national mobilization called for "an immediate ceasefire, an immediate end to the siege on Gaza, the freedom of all Palestinian prisoners, and an end to the occupation of Palestine." *Id*. Plaintiffs attribute alleged violent actions and pro-Hamas speech at each of these rallies to unidentified demonstrators, rather than CODEPINK. *Id*.

Lastly, apart from these seven paragraphs in the 484-paragraph amended complaint, all other allegations against CODEPINK are lumped against other defendants and use vague, conclusory language that lacks specificity.[5] For example, Plaintiffs contend, without any support, that the "Hamas organizational network in the United States includes and incorporates" all organizational Defendants. *Id*. ¶ 98. The FAC concludes that all Defendants facilitated an enterprise to "infiltrate the minds of the young and easily influenced." *Id.* 406.

## STANDARDS OF REVIEW

### A. Federal Rules of Civil Procedure 12(b)(1) Requires Plaintiffs to Demonstrate Article III Standing for a Federal Court to Exercise Subject Matter Jurisdiction

Article III limits federal jurisdiction to cases and controversies. Plaintiffs must show: (1) an injury in fact; (2) that is fairly traceable to the challenged conduct

---

[5] The Eleventh Circuit considers these the characteristics of a "a quintessential 'shotgun' pleading"—a complaint "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."*Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

of the defendant; and (3) likelihood of redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). Traceability fails when causation is "attenuated at best." *Allen v. Wright*, 468 U.S. 737, 757 (1984). At the pleading stage, plaintiffs must "allege facts demonstrating" each element, as courts apply the same regard for factual allegations as in Rule 12(b)(6) motions. *Spokeo*, 578 U.S. at 338, n.2.

### B. Federal Rules of Civil Procedure 12(b)(6) Requires Facts Sufficient to Make a Claim Plausible

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to state a plausible claim for relief that allows the court to draw a reasonable inference of defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More than "labels and conclusions" or "a formulaic recitation of the elements" are required, but detailed factual allegations are not. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise the right to relief above a speculative level, pushing claims "across the line from conceivable to plausible." *Id*. at 570. Indeed, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### MEMORANDUM OF LAW

### I.   PLAINTIFFS LACK ARTICLE III STANDING FOR FAILING TO ALLEGE FACTS THAT DEMONSTRATE TRACEABILITY

"[W]hether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III … is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiffs in this case lack Article III

standing to sue CODEPINK because their claimed injuries are entirely untraceable to CODEPINK's alleged conduct, thus they have not satisfied Article III's required element of traceability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

To satisfy the traceability element of Article III standing, a plaintiff must demonstrate sufficient causal connection between the defendant's conduct and the alleged injury. Eleventh Circuit courts consider: (1) whether the injury results from defendant's conduct rather than independent third-party action (unless the third-party is defendant's agent); (2) whether the plaintiff would have been injured "in precisely the same way" without defendant's misconduct; (3) temporal connection between defendant's conduct and plaintiff's injury; and (4) whether the defendant agreed with the primary wrongdoer to participate in the harmful scheme to aid and abet. *See Walters v. Fast AC, LLC*, 60 F.4th 642, 650-52 (11th Cir. 2023); *Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1192 (N.D. Ga. 2022); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271–72 (11th Cir. 2019); *Elend v. Basham, 471 F.3d 1199, 1204* (11th Cir. 2006); *Rice v. Chief Exam'r*, 2025 WL 1743708, at *3 (11th Cir. June 24, 2025); *In re Aliera Companies, Inc.*, 665 B.R. 468, 499 (Bankr. N.D. Ga. 2024).

Here, Plaintiffs' injuries are not traceable to CODEPINK's conduct, but are "traceable only to the independent actions of" Hamas, an independent third-party that is not party to the lawsuit and not acting as CODEPINK's agent—the precise type of attenuation that the *Walters* courts warned against. *Walters,* 60 F.4th at 650–52. (finding no traceability was established where a third-party prevented a plaintiff from viewing allegedly deficient disclosures). Plaintiffs have not alleged any facts suggesting Hamas was acting as CODEPINK's agent in its attacks, nor

could they, so the exception articulated in *Walters* (which found traceability when third-party acts as defendant's alleged agent) could not be applied to the facts here. *Id.* Unlike the Secretary of State in *Raffensperger*, CODEPINK had absolutely no ability to direct, initiate, or mandate Hamas to engage in the attacks that caused Plaintiffs' injuries here, and Plaintiffs do even not allege they did. *Raffensperger,* 634 F. Supp. 3d at 1192 (when defendant directly initiates harmful process such as from mandatory statutory language, traceability is sufficiently alleged).

Like the plaintiffs in *City of South Miami v. Governor*, Plaintiffs here lack the "remotely plausible causal chain" linking their injuries to CODEPINK because the FAC fails to allege any facts that indicate Plaintiffs would not have been injured in precisely the same way had CODEPINK not held rallies, conferences, visited Gaza in 2009, or shared office space and personnel with NSJP. 65 F.4th 631, 642–45 (2023) (finding no causal chain where harm stemmed from local law enforcement's racial profiling, not state officials' actions); ¶¶ 207-10, 189, 382, 386. The causal chain here is that much more attenuated—a Governor or Attorney General could plausibly have some ability to impact the conduct of law enforcement, but CODEPINK has utterly no ability to compel or sway the strategic military operations or capacities of Hamas, nor does the FAC allege that it does.

The temporal disconnect fatal to traceability in *Rice* is particularly instructive and damaging to the Plaintiffs arguments here. *Rice*, 2025 WL 1743708 at *3, (finding no causation where regulatory agencies' failures occurred after injury-causing appraisal was already issued). Just as the *Rice* court found no traceability where defendant regulatory agencies' failures occurred "well after"

the injury-causing allegation, CODEPINK's alleged activities occurred either "well after" (seven months after) injuries sustained on October 7, 2023 (alleged rallies sponsored in June 2024) or well before it (trips to Gaza in 2009 and a conference panel in 2010). *Id.*; FAC ¶¶ 207-10, 189, 382, 386.

For aiding and abetting claims, traceability exists when a defendant allegedly agreed with the primary wrongdoer to participate in a scheme and that agreement's execution directly injured plaintiff (finding causation where defendant's "aggressive sales" in concert with insiders directly caused company's insolvency). *In re Aliera*, 665 B.R. at 498–99. The FAC does not allege any agreement—or facts that would give rise to an inference of one—between CODEPINK and Hamas to partake in a plot that harmed Plaintiffs. *Id.*

Plaintiffs have failed to allege any factual basis tracing CODEPINK's conduct to their injuries sustained in Israel on October 7, 2023 or thereafter. Instead, Plaintiffs' sole specific allegations against CODEPINK are geographically and temporally remote from the time and place where Plaintiffs actually sustained their injuries. Therefore, the FAC must be dismissed for lack of Article III standing.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ATA AS A MATTER OF LAW

Plaintiffs also fail to state a claim for relief under Rule 12(b)(6) because they have not alleged harm caused by CODEPINK's alleged conduct and cannot satisfy other necessary elements of their claims. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (emphasizing that plaintiffs must allege not only an injury, but also that the defendant caused the plaintiff's harm). In evaluating a 12(b)(6) motion, the

Eleventh Circuit employs a two-step process: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citations omitted). Courts may infer "obvious alternative explanation[s]" indicating lawful rather than unlawful conduct suggested by the plaintiff. *Id.* Additionally, complete absence of allegations regarding a required element should lead to dismissal. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683-84 (11th Cir. 2001) ("Since the complaint was completely silent on this required element—containing neither direct allegations nor facts from which [the element] could be inferred—'the district court correctly dismissed Roe's complaint.'"). After eliminating Plaintiffs' conclusory legal allegations, their specific factual allegations against CODEPINK fail to address required elements of their claims and are susceptible to obvious alternative explanations that negate liability. Thus, each count of the FAC fails to state a claim as a matter of law and should be dismissed.

### A. The Amended Complaint Does Not Plausibly Allege Aiding and Abetting Liability Under the ATA Against CODEPINK

Courts have articulated a clear standard for plaintiffs to plausibly assert aiding and abetting liability under § 2333(d)(2). In *Twitter, Inc. v. Taamneh*, the Supreme Court established that "the phrase 'aids and abets' in § 2333(d)(2) . . . refers to a conscious, voluntary, and culpable participation in another's wrongdoing," where a defendant must have assisted a specific tortious act by

"knowingly providing substantial assistance" to the principal wrongdoer. 598 U.S. 471, 493-94 (2023) (citing *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)). To establish this standard, the Supreme Court endorsed the *Halberstam* framework's elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Id.* at 477. CODEPINK does not dispute that an act of international terrorism injured Plaintiffs. The FAC fails, however, to allege facts sufficient to adequately plead any portion of the latter two elements. Because Plaintiffs do not allege that CODEPINK (1) had any general awareness of any role in Hamas' illegal tortious activity; (2) provided any assistance, substantial or otherwise, to Hamas in the attacks that harmed them; or (3) consciously, voluntarily, and culpably participated in the acts that harmed plaintiffs, they fail to plausibly assert an ATA aiding and abetting claim.

i. No Allegations of Required General Awareness

First, to satisfy the general awareness element in aiding and abetting claims under § 2333(d)(2), plaintiffs must demonstrate defendants possessed subjective awareness of their participatory role in terrorist activities. Courts have established that relevant factors in assessing general awareness include: (1) evidence that defendants understood they were assuming a role in the Foreign Terrorist Organization's (FTO) "violent or life-endangering activities," from "which the act that caused the plaintiff's injury was foreseeable," *Linde v. Arab Bank, PLC*, 882 F.3d

314, 329 (2d Cir. 2018) (citations omitted); *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1367–68 (S.D. Fla. 2024); *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 337 (E.D.N.Y. 2023) (2) actual awareness of participation, not what defendants should have known, *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (affirming subjective awareness requirement); and (3) specific factual allegations supporting reasonable inference of awareness beyond general support or abstract knowledge, *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy" scienter). The FAC fails to plead any facts that remotely allege these factors with regards to CODEPINK, and thus fails to plead the general awareness requirement.

Plaintiffs have failed to plausibly or specifically allege that CODEPINK was actually aware that it provided support to Hamas' life-endangering conduct that would foreseeably result in Plaintiffs injuries under the *Linde, Newman,* and *Zobay* standards. *Linde*, 882 F.3d at 329; *Newman*, 758 F. Supp. 3d at 1367–68; *Zobay,* 695 F. Supp. 3d at 337. The only specific allegation of any act CODEPINK undertook related to Hamas involves CODEPINK's leader, a peace advocate, allegedly planning to deliver a 2009 letter from Hamas' government to the U.S. Head of State requesting diplomatic relations during war and displacement in Gaza. FAC ¶ 210. This diplomatic communication wholly fails to plausibly allege any awareness by CODEPINK that would foreseeably result in life-endangering conduct over a decade later. Moreover, this alleged action occurred 14 years before the conduct that injured plaintiffs, a remoteness that makes any scintilla of foreseeability

collapse. Like the Associated Press' (AP) payment for photography services to a Hamas-linked photographer in *Newman* or the banking services provided *Weiss*, "obvious alternative explanation[s]" of CODEPINK's alleged contact suggest lawful rather than unlawful conduct. 758 F. Supp. 3d at 1369; 381 F. Supp. 3d at 223; *Am. Dental Ass'n*, 605 F.3d at 1290. Beyond an indisputably remote allegation, the FAC contains no specific allegations supporting any inference that CODEPINK possessed the requisite mens rea to play a role in, assist, or facilitate any activities undertaken by Hamas, much less those that harmed plaintiffs. The FAC thus fails to satisfy the scienter or general awareness requirement that CODEPINK played any role in the activities that caused plaintiffs' injuries.

<u>ii. No Allegations of Substantial Assistance to Principal Violation</u>

To satisfy the second element—demonstrating substantial assistance to the principal violation—plaintiffs must plausibly allege that defendants "knowingly and substantially assist[ed] the principal violation." *Newman*, 758 F. Supp. 3d at 1369 (citations omitted). A "concrete nexus" between defendant's alleged aid and specific attacks must also be found, as there is no liability where conduct is "arm's length, passive, and largely indifferent." *Id.* at 1370. It is not enough for a plaintiff to allege that a defendant gave "assistance to [the FTO's] activities in general." *Twitter*, 598 U.S. at 503. It is similarly "not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter*, 598 U.S. at 495. Rather, the defendant must have specifically "aided and abetted the act of international terrorism that injured the plaintiffs." *Id.* at 497. *Halberstam* provides six factors for

evaluating if assistance is substantial: (1) the nature of the act assisted; (2) the amount of assistance provided; (3) defendant's presence at the time of the act; (4) defendant's relation to the principal; (5) defendant's state of mind; and (6) duration of assistance. 705 F.2d at 488. The FAC is devoid of any non-conclusory allegations that CODEPINK gave any assistance to Hamas' attacks that harmed Plaintiffs, much less a concrete nexus, and thus fail to plausibly plead this required element.

Plaintiffs provide no intelligible way to construe CODEPINK's First Amendment activities (organizing protests, anti-war advocacy, or conference educational panels) as "substantial assistance" for the attacks that injured them. FAC ¶¶ 189, 210, 382, 386. There is no concrete nexus alleged between any specific allegation and the attacks that harmed plaintiffs. Conduct alleged by Plaintiffs indicates that CODEPINK was "largely indifferent" to Hamas' military operations or strategies central to the attacks. Plaintiffs themselves allege that CODEPINK endorsed a protest that called for "an immediate ceasefire" to bring peace to the region. *Id.*; *Newman*, 758 F. Supp. 3d at 1370 (quoting *Twitter*, 598 U.S. at 500).

Because no remotely concrete nexus has been established, application of the facts to the *Halberstam* factors is unnecessary. Nevertheless, a cursory application makes plain the utter failure of this claim under each factor:

The first factor "assesses whether the alleged aid would be important to the nature of the injury-causing act," but fails on its face because the FAC provides no specific, nonconclusory allegation of CODEPINK's assistance to the harmful act— no financial, practical, or strategic support is alleged. *Newman*, 758 F. Supp. 3d at 1371. Instead, the FAC alleges CODEPINK engaged in conduct that is protected

First Amendment activity—for which a court could not "justify attributing the principal wrongdoing to" a defendant. *Twitter*, 598 U.S. at 504.

The second factor requires "specific allegations regarding the amount of money and other assistance that went to terrorist groups." *Newman*, 758 F. Supp. 3d at 1372. This factor is similarly unalleged—no aid to Hamas' illegal activity, much less quantifiable aid, is specifically attributed to CODEPINK in the FAC.

The third factor, the defendant's presence at the time of the act, is understood "in a transactional sense" for organizations, including "involvement with the terrorist group before and leading up to the attack." *Id*. This factor is entirely void in the FAC, as all of CODEPINK's First Amendment activity that Plaintiffs attempt to allege supported the attack happened either over a decade before or seven months after the attack. FAC ¶ 189, 210, 382, 386.

The fourth factor assesses whether the defendant had a "position of authority [that gives] greater force to his power of suggestion." *Halberstam*, 705 F.2d at 488. This factor also fails because the FAC does not allege a single link between CODEPINK and Hamas in the last decade and a half, much less any ability by CODEPINK to influence it.

The fifth factor, the defendant's state of mind, evaluates whether assistance "evidences a deliberate long-term intention to participate in an ongoing illicit enterprise." *Newman*, 758 F. Supp. 3d at 1372. While the plaintiffs certainly allege that CODEPINK's exercise of First Amendment rights to advocate for an end to war and occupation satisfies the state of mind requirement, such advocacy is not an illegal enterprise and does not resemble any scienter to aid harmful activity.

The sixth factor considers whether "the length of such relationship aided terrorism" beyond conclusory allegations. *Id.* at 1373. In evaluating this factor, the *Siegel v. HSBC N. Am. Holdings, Inc.* court found that 25 years of banking services to an FTO "bespeaks a lengthy relationship but not necessarily of assistance in terrorism."933 F.3d 217, 225 (2d Cir. 2019). No "lengthy" relationship between CODEPINK and Hamas is alleged in the FAC, much less any specific assistance to any illegal activity that could be quantified in time. *Id.*

The complete failure to establish even a single *Halberstam* factor underscores the fundamental flaw in Plaintiffs' theory: conflating protected First Amendment advocacy with actionable assistance to terrorism. Far from demonstrating the "concrete nexus" required by law, Plaintiffs' allegations reveal advocacy that occurred years before or months after the relevant attacks, with no demonstrated connection to Hamas whatsoever. When every factor of the controlling legal framework points toward dismissal, the claim fails as a matter of law.

### iii. No Allegations of Conscious, Voluntary, or Culpable Participation

The third element of an aiding and abetting claim requires "conscious, voluntary, and culpable participation" in the underlying wrongful act, demanding more than mere awareness or passive conduct. *Twitter*, 598 U.S. at 493. This element serves as a critical safeguard against imposing liability on defendants who lack the requisite intent and active involvement in the specific harmful conduct. Aiding and abetting liability does not attach to "omissions, inactions, or nonfeasance," but instead requires a plaintiff to plausibly allege that defendants "culpably associated themselves with the [relevant] attack, participated in it as

something that they wished to bring about, or sought by their action to make it
succeed." *Id.* at 489-90. The defendant must have taken "some 'affirmative act'
'with the intent of facilitating the offense's commission.'" *Id.*(quotations omitted).

Plaintiffs' allegations demonstrate the complete absence of conscious,
voluntary, and culpable participation by CODEPINK in Hamas' attacks. Every
specific allegation points only to CODEPINK's alleged participation in advocacy
for international peace, not violence. FAC ¶¶ 189, 210, 382, 386. Not a single act by
CODEPINK could be plausibly construed as an affirmative act designed to
"facilitate the offense's commission," as all of CODEPINK's (constitutionally
protected) activities occurred either over a decade before or seven months after the
attacks, and no prior knowledge of the attacks is alleged. The temporal disconnect
alone defeats any inference of intent to facilitate the specific harmful conduct.

Moreover, Plaintiffs fail to explain how CODEPINK's First Amendment
activities could facilitate the commission of the attack that caused their harm.
Instead, Plaintiff's allegations reveal advocacy for peace and calls for "an
immediate ceasefire"—conduct that is antithetical to facilitating violent attacks.
FAC ¶ 382. This is precisely the type of protected speech and lawful conduct that
cannot support aiding and abetting liability, as it lacks both the affirmative
character and the culpable intent required by *Twitter*.

As Plaintiffs have failed to allege CODEPINK's general awareness of any
role in Hamas' illegal activity that harmed them, much less any substantial
assistance, they have most certainly failed to allege conscious, voluntary, and
culpable participation in the underlying wrongful act. The FAC's allegations

reveal only constitutionally protected advocacy occurring at times wholly disconnected from the relevant attacks, with no plausible inference of intent to facilitate harm. Without affirmative acts undertaken with the purpose of advancing the specific terrorist attack, and with allegations that suggest the opposite intent—advocacy for peace rather than violence—the third element fails as completely as the first two elements of Plaintiffs' aiding and abetting claim.

### B. The Amended Complaint Does Not Plausibly Allege That CODEPINK Conspired with Hamas to Commit an Act of International Terrorism

To state a valid conspiracy claim, plaintiffs must satisfy four essential elements under the *Halberstam* framework: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." 705 F.2d at 477. Conspiracy liability under the ATA is limited to those "who conspire[] with the person who committed [the] act of international terrorism," requiring that parties "share[] the common goal of committing an act of international terrorism." 18 U.S.C. § 2333(d)(2); *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019). Under *Twombly*, "[s]tating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and "[a] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 556–57; *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Courts dismiss ATA conspiracy claims where plaintiffs fail to plead any

agreement "to commit terrorist attacks." *Cain v. Twitter Inc.* 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018).

Proper conspiracy pleadings in the Eleventh Circuit require specific facts showing an agreement and "an act taken in furtherance of that agreement," not generalized allegations. *Williams v. Fulton County School District*, 181 F. Supp. 3d 1089, 1151 (N.D. Ga. 2016) (conspiracy pleading requires acts in furtherance of an agreement, such as predetermining outcomes, destroying or withholding evidence, or instructing others not to speak up); *Kearson v. Southern Bell Telephone & Telegraph Company*, 763 F.2d 405, 407 (11th Cir. 1985) (dismissing "conclusory, vague, and general allegations of conspiracy"). Eleventh Circuit courts are skeptical of contradictory facts that undermine conspiracy claims, and deficient knowledge of isolated events defeats conspiracy claims absent compelling facts showing intent to join the conspiracy. See *Williams*, 181 F. Supp. 3d at 1151.

Because Plaintiffs' FAC wholly fails to include a single specific, nonconclusory allegation to plausibly plead an identifiable point of agreement and common goal between CODEPINK and Hamas to commit an act of international terrorism, their conspiracy claim must fail. This common goal requirement is meant to ensure that conspiracy liability attaches only where there is a genuine "agreement with the primary wrongdoer to commit wrongful acts," not merely parallel conduct or shared general sympathies. *Twitter*, 598 U.S. at 489-90. Thus, even if Plaintiffs plead overlapping sympathies for justice for Palestinians, this does not indicate agreement to commit wrongful acts.

18

Furthermore, while the *Halberstam* court explained that "courts must initially look to see if the alleged joint tortfeasors are . . . in contact with one another" to infer a conspiracy, this baseline inquiry is not sufficient to find conspiracy. 705 F.2d at 481. Thus, Plaintiffs cannot rely on solely alleging communication between CODEPINK and Hamas in 2009. FAC ¶ 210. The only specific allegation of agreement is with NSJP—that they share "office space and personnel" and coordinate protest activity. FAC ¶¶ 207-09. The statute, however, is explicit that the agreement must be with an actor "who committed [the] act of international terrorism," and the plaintiffs fails to allege any act of international terrorism committed by either NSJP or CODEPINK. 18 U.S.C. § 2333(d)(2).

The Plaintiffs' conspiracy allegations crumble under both the Supreme Court's and Eleventh Circuit's exacting standards. The FAC is devoid of any factual allegations describing what acts CODEPINK agreed to perform in furtherance of any conspiracy—a fatal omission that renders the conspiracy claim legally deficient. Unlike the specific plans *Williams* emphasized, Plaintiffs allege nothing: no meeting between CODEPINK and Hamas within a decade of the attacks that injured plaintiffs, no discussion of roles, no commitment by CODEPINK to facilitate any attacks, and no concrete steps taken by CODEPINK in furtherance of any alleged agreement.

### C. The Amended Complaint Does Not Plausibly Allege Material Support in Violation of The Anti-Terrorism Act

Plaintiffs have accused CODEPINK of materially supporting Hamas' attacks in violation of the ATA, but fail to plead a single element required to prove this claim.

To establish liability for material support of terrorism, plaintiffs must satisfy a three-pronged test that carefully balances national security concerns with constitutional protections. Courts require plaintiffs to demonstrate that the defendant committed "(1) unlawful action, i.e. an 'act of international terrorism;' (2) the requisite mental state, and (3) causation." *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018). For material support claims specifically, Congress emphasized that defendants' rights must be safeguarded, as "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment." 18 U.S.C. § 2339B(i). Beyond failing to allege any fact that would satisfy an element of material support, the FAC's specific allegations against CODEPINK fall into the exact safe harbor Congress presciently established to avoid anti-First Amendment claims such as this one.

i. No Allegations of CODEPINK's Direct Commission of International Terrorism

Plaintiffs fail to "allege and prove that the [CODEPINK] directly committed an 'act of international terrorism' which caused the plaintiff's injuries." *Chiquita*, 284 F. Supp. 3d at 1305. A defendant's activities amount to "international terrorism" only if they both "(i) involve violent acts or acts dangerous to human life" in violation of U.S. criminal law and "(ii) appear to be intended" to achieve specific terrorist purposes, namely "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping." 18 U.S.C. § 2331(1)(A)-(B). Plaintiffs have alleged that only Hamas "committed,

planned, and authorized" terrorist activities and do not allege any activity
coordinated by CODEPINK. FAC ¶¶ 456, 472. Instead, Plaintiffs' allegations
against CODEPINK squarely target protected First Amendment activities, such as
co-sponsoring protests or advocating for political causes. Plaintiffs cannot satisfy
this element, as no "observer [could] conclude" that such advocacy constitutes
international terrorism. *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar.
31, 2011); FAC ¶¶ 189, 210, 382, 386. Even viewed in the light most favorable to
Plaintiffs, claims that CODEPINK's advocacy aligns with Hamas' goals are
insufficient to establish direct liability, as publication of information that may have
been helpful to terrorist organizations cannot establish direct liability without
showing publication "would in all likelihood assist the organization in
accomplishing its violent goals." *Kaplan v. Jazeera*, 2011 WL 2314783, at *4, 6
(S.D.N.Y. June 7, 2011); see also *Newman*, 758 F. Supp. 3d at 1376 (dismissing direct
liability claim against AP for buying images from Hamas).

### ii. No Allegations of Specific Knowledge Required for Material Support

Plaintiffs additionally fail to plead the scienter requirement for material
support claims, which demands that CODEPINK acted with specific knowledge
or intent that their support would facilitate Hamas' tortious acts. Under 18 U.S.C.
§ 2339A, plaintiffs must prove defendants "know[] or intend[] that they are to be
used in preparation for, or in carrying out" violations of enumerated terrorism-
related crimes. Plaintiffs have not plead any nonconclusory allegations regarding
CODEPINK's mens rea in its alleged advocacy activities. *Owens v. BNP Paribas
S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) (finding insufficient "repeated conclusory

statements in the complaint that [banks] 'conspired' with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda", aff'd, 897 F.3d 266 (D.C. Cir. 2018); see also *Newman*, 758 F. Supp. 3d at 1378–80. Moreover, the allegations against CODEPINK clearly evidence the very type of "independent advocacy" and activities "not directed to, coordinated with, or controlled by" an FTO, that are explicitly protected by the statute to ensure advocacy remains firmly protected by the First Amendment. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 36 (2010).

### iii. No Allegations of Proximate Causation for Material Support

The final element requires plaintiffs to establish proximate cause between CODEPINK's alleged material support and the plaintiffs' injuries, as mandated by the statutory language requiring injury "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). The Supreme Court has held that "when Congress uses the language 'by reason of,' it requires a showing of proximate cause." *Newman*, 758 F. Supp. 3d at 1380 (citations omitted). While federal courts have articulated different approaches to proximate cause—some requiring "a direct relationship" between injuries and defendant's acts, others adopting a "substantial factor" test requiring defendant's acts were substantial factors in the sequence of events and that injuries were reasonably foreseeable—all approaches demand a nexus between defendant's conduct and plaintiff's harm. *Id.*

Under either the substantial factor or direct relationship test, the allegations against CODEPINK fail because courts reject proximate cause where defendants are "more than one step removed from a terrorist act or organization" without

"some facts demonstrating a substantial connection between the defendant and terrorism," *Owens*, 897 F.3d at 275. The requirement is particularly stringent in cases involving routine services or general advocacy, demonstrated by consistent dismissals of claims "routine banking service" providers or similar attenuated connections. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013).

## III. PLAINTIFFS' CLAIMS INFRINGE UPON CODEPINK'S FIRST AMENDMENT RIGHTS TO SPEECH, ASSOCIATION, AND ADVOCACY IN SUPPORT OF PALESTINIANS

The First Amendment to the United States Constitution provides robust protection for speech advocating against genocide, occupation, and war—even when such advocacy is labeled as "terrorism" by those who oppose the message. Plaintiffs' attempt to impose liability on CODEPINK based on its participation in conferences and coordination of protests supporting Palestinian rights represents precisely the kind of viewpoint discrimination that the First Amendment prohibits. This Court must dismiss the FAC as it seeks to penalize constitutionally protected political expression and association.

Plaintiffs fundamentally mischaracterize protected political advocacy as culpable conduct. *Holder*, 561 U.S. at 24 (distinguishing between prohibited material support and protected "independent advocacy," holding that individuals remain free to engage in advocacy "in support of a terrorist group" so long as it constitutes independent speech rather than coordination with designated organizations.) Here, Plaintiffs allege only independent advocacy—participation in conferences and coordination of protests—which falls squarely within this category. FAC ¶¶ 189, 210, 382, 386.

The Supreme Court has consistently held that the government cannot impose liability solely on political activism. The Court in *NAACP v. Claiborne Hardware Co.* protected civil rights activists who organized boycotts and protests, even when some participants engaged in violence, because the "right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." 458 U.S. 886, 908 (1982) (protecting organized boycott of white-owned businesses despite some instances of violence by participants). This precedent applies here: Even if some individuals or organizations opposing Israeli military actions have engaged in violence, CODEPINK cannot be held liable for independent advocacy simply because it shares opposition to genocide. The Court in *Claiborne Hardware* emphasized that an "effort to change the social, political, and economic structure … cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts." *Id.* at 933.

In *Snyder v. Phelps*, the Supreme Court protected even deeply offensive speech at military funerals, holding that speech on matters of public concern receives heightened protection regardless of how offensive others find the message. 562 U.S. 443, 458 (2011) ("Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community'"). Opposing military interventions and advocacy against human rights violations unquestionably constitute speech on matters of public concern. The District of Massachusetts recently recognized this in *American Association of University Professors v. Rubio*, which stated that punishing statements

in support of Palestine or against Israel could amount to a First Amendment violation. 2025 WL 1235084, *4 (D. Mass. Apr. 29, 2025).

This Court is being asked to endorse an attack on the fundamental rights it exists to defend. Imposing civil liability for political advocacy would silence legitimate criticism of international human rights violations with chilling effects extending far beyond this case. To safeguard the freedoms enshrined in our Constitution, this Court must dismiss the FAC in its entirety.

## CONCLUSION

Because the FAC fails to satisfy Article III standing, fails to state a claim, and asks this Court to undermine the First Amendment, amendment to the FAC would be futile and the FAC should be dismissed with prejudice.

## LOCAL RULE CERTIFICATE

I hereby certify that I conferred with counsel for Plaintiffs on the relief sought herein. Plaintiffs oppose CODEPINK's requested relief.

Dated: September 25, 2025

/s/ David Piña
David Pina (FBN 1030971)
1799 NW 500 N.W. 28th Street
PO Box 420304
Miami, Florida 33142
Tel. 786-445-0227
davidpinaesq@gmail.com

*Lead Counsel for Defendant*
*CODEPINK*