# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

---------------------------------------------------------------------- X

MAURICE SHNAIDER, *et al.*,

                      Plaintiffs

           v.

AMERICAN MUSLIMS FOR PALESTINE, *et al.*

                 Defendants.

Case No:
8:24-cv-01067-MSS-SPF

---------------------------------------------------------------------- X

## PLAINTIFFS' OPPOSITION TO DEFENDANT TAHER HERZALLAH'S MOTION TO DISMISS

The Court should deny the Motion to Dismiss filed by Defendant Taher Herzallah ("Herzallah")[1]. Defendant's arguments distort Plaintiffs' allegations and disregard the First Amended Complaint's ("FAC") detailed narrative. Contrary to Herzallah's assertion that Plaintiffs have made only conclusory allegations, the FAC must be read as a whole *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). When read as a whole, the FAC sets out a coherent and plausible narrative: after Hamas's prior U.S. fronts were dismantled, Herzallah, as

---

[1] Plaintiffs maintain that Herzallah functions as a representative of NSJP/SJP chapters, as alleged in the FAC (FAC ¶¶ 59, 156). These groups deliberately conceal leadership, and the Court required service through identified representatives. Herzallah's denial reflects that secrecy. Plaintiffs did not "abandon" their theory but filed a renewed motion in line with the Court's directive. Plaintiffs sue Herzallah in his individual capacity, and the FAC pleads his role as AMP's Associate Director of Outreach and Community Organizing and campus liaison to NSJP and SJP chapters (FAC ¶ 59).

Associate Director of Outreach and Community Organizing of American Muslims for Palestine ("AMP"), acted as AMP's liaison to National Students for Justice in Palestine ("NSJP") and SJP chapters nationwide (FAC ¶¶ 59, 156) and knowingly sustained Hamas's networks, propaganda, and legitimacy in the U.S., strengthening the infrastructure that projected Hamas's violent campaign onto U.S. soil and culminated in the October 7 terrorist attacks. Plaintiffs sue Herzallah for his integral role in the coordinated enterprise.

Crucially, the FAC alleges his conduct before and after October 7. Before the attacks, Herzallah helped build and sustain the infrastructure Hamas relied on to project its violence beyond Israel (FAC ¶¶ 122, 193, 194, 198). After the attacks, he mobilized campus activity, including a December 2023 mosque speech urging students to "agitate to make Zionists feel very uncomfortable on campus" (FAC ¶ 124), and his presence at 2024 encampments (FAC ¶ 365), demonstrating his role in amplifying and operationalizing Hamas's atrocities. This conduct helped transform a localized massacre into international terrorism that achieved its intended coercive effect of intimidating civilians and influencing governments. If a terrorist bomb goes off in the forest and nobody hears it, it is not terrorism. October 7 and its aftermath became terrorism because Defendants supplied the machinery that made Hamas's violence resonate worldwide. The Motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs are survivors and family members of victims of Hamas's October 7, 2023 terrorist attacks and their aftermath (the "October 7 Attacks"). They bring this action under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), (d), to hold

Defendants civilly liable for knowingly aiding and abetting Hamas, providing material support, and conspiring in furtherance of acts of international terrorism.

The conspiracy traces back to the 1993 "Philadelphia meeting" of the Hamas-affiliated Palestine Committee, where Hamas leaders in the U.S. planned to oppose the Oslo Accords by mobilizing youth, infiltrating universities, and building support for Hamas (FAC ¶¶ 144-45). These early efforts planted the roots of AMP, NSJP, and the SJP chapters. Decades later, Herzallah helped bring those plans to fruition by transmitting Hamas's ideology into U.S. student movements.

After Hamas's earlier U.S. fronts, IAP/AMS and HLF, collapsed under the *Boim* litigation, AMP was formed in 2006 to carry forward the same ideology *See Boim v. Holy Land Found.*, 549 F.3d 685 (7th Cir. 2008). The FAC details leadership overlap and succession (FAC ¶¶ 114-22, 126-29).

From this foundation, NSJP emerged as Hamas's student arm in the U.S. The FAC alleges SJP chapters advanced Hamas's agenda, spreading propaganda and intimidating Jewish students for years prior to the October 7 Attacks (FAC ¶¶ 224-70). That alignment became unmistakable around October 7. Columbia SJP, for example, had lain dormant for months before suddenly reactivating on October 5, 2023—two days before the attacks—posting "We are back!!" (FAC ¶ 297). After the massacre, NSJP issued its "Day of Resistance Toolkit," directing SJP chapters to fall into lockstep with Hamas and glorify the atrocities (FAC ¶¶ 278-96).

SJP chapters complied, harassing and intimidating Jewish students, praising Hamas "martyrs," and aligning with Hamas's calls (FAC ¶¶ 298–333, 380–86).

Encampments formed nationwide, chanting "from the river to the sea" and "Intifada" (FAC ¶¶ 224, 288, 316, 326, 327, 343–73). Hamas praised these campus activities (FAC ¶¶ 374-79). These events triggered congressional investigations into AMP and NSJP/SJP chapters over Hamas ties (FAC ¶¶ 387-89).

Against this backdrop, Herzallah's role is clear. As AMP's Associate Director of Outreach and Community Organizing and liaison to SJP/NSJP (FAC ¶¶ 59, 156), he operationalized Hamas's blueprint on campuses—embedding its ideology into student networks—by channeling grants, materials, and organizational support, and did so for years (FAC ¶ 156).

The FAC pleads that he declared, "What if, as Muslims, we wanted to use violent means to resist occupation? Is that wrong?" (FAC ¶ 121).[2] He praised Hamas's "integral role in policy and society" and predicted Hamas "will play an integral role" in Palestinian history (FAC ¶ 123).[3] He stated that "Israelis have to be bombed" and that the State of Israel is an illegitimate creation (FAC ¶ 157). He was arrested as one of the "Irvine 11" (FAC ¶ 228). He also appeared with Hamas

---

[2] Defendant claims the hyperlink is broken, but the statement remains publicly available. https://canarymission.org/blog/Understanding_American_Muslims_for_Palestine_IfNotNow_Strategic_Partner (last visited Sept. 22, 2025).

[3] Defendant notes the Facebook link is unavailable, displaying: "This content isn't available right now…it's usually because the owner…changed who can see it or it's been deleted." The likely reason is that Herzallah's post openly praised Hamas's role (FAC ¶ 123). Its unavailability does not erase the statement pled and attributed to him. Moreover, the Islamic Center of San Diego promoted the virtual event where Herzallah spoke https://www.facebook.com/IslamicCenterSD/photos/4428002860543864 (last visited Sept. 22, 2025). The recording can be obtained in discovery, and temporary online unavailability is no basis to disregard these allegations at the pleading stage. See *Tellabs,* 551 U.S. at 322–23; *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012); *Ramirez v Paradies Shops, LLC*, 69 F.4th 1213 (11th Cir 2023).

affiliates at AMP conferences (FAC ¶¶ 122, 193)[4] and served as a panelist at the 2019 NSJP conference alongside known Hamas supporters (FAC ¶ 198).

Before October 7, Herzallah built campus networks and normalized violence as resistance; after October 7, his mosque speech urging students to "agitate to make Zionists feel very uncomfortable on campus" (FAC ¶ 124) and encampment activity (FAC ¶ 365) are but a few examples showing how he used that network to turn Hamas's atrocities into international terrorism.

The FAC also places Herzallah within the conspiracy alleged: he is named among the AMP and NSJP leaders who carried forward the IAP/AMS and HLF enterprise into its modern iteration (FAC ¶¶ 406–07) These allegations are not stray or conclusory. They form part of a continuous pattern of conduct that advanced Hamas's campaign of intimidation and coercion. Nor can Defendant escape liability by mischaracterizing the FAC's allegations about AMP's succession. Plaintiffs plead leadership overlap and organizational continuity, not conclusory labels.

Nor is the FAC a "shotgun pleading." Courts have consistently rejected that label where, as here, the complaint contains defendant-specific allegations *Merino v Ethicon Inc.*, 536 F Supp 3d 1271 (SD Fla 2021); *Restless Media GmbH v Johnson*, 704 F Supp 3d 1288 (SD Fla 2023). This case is distinguishable from *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). The FAC attributes specific roles and conduct while pleading the conspiracy's interconnected

---

[4] Defendant claims the conference "video" link is broken. It was never alleged to be a video, and the link functions. *See* https://www.meforum.org/campus-watch/american-muslims-for-palestine-web-of-hamas-19673 (last visited Sept. 22, 2025)

nature. Cross-references reflect coordinated roles among interlocking entities. The FAC traces that web from IAP/AMS and HLF to AMP and NSJP and identifies his role within it. Terrorism depends on each part of the network functioning together, and the FAC alleges Herzallah's role as one part of that network.

Defendants' coordinated efforts legitimized, amplified, and operationalized October 7 and its aftermath to intimidate civilians, influence opinion, and pressure governments. The October 7 Attacks were inseparable from each Defendant's role: the violence became terrorism because it was publicized, amplified, legitimized, and mobilized through the networks they built. Herzallah was part of this network. Unlike the age-old paradox of whether a tree falling in the forest that nobody hears makes a noise, with terrorism the point is for people to hear it and be intimidated. The publicity is the sine qua non of terrorism. That coercive impact, achieved by all of the Defendants' amplification and mobilization, defines "international terrorism" under the ATA. Herzallah's position as AMP's Associate Director of Outreach and campus liaison to NSJP and SJP chapters was the crux of the machinery that transformed Hamas's violence into effective terrorism.[5]

## **LEGAL STANDARD**

A complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it

---

[5] Defendant's claim of a "delay in serving" should be rejected. The Court tolled the Rule 4(m) deadline and granted Plaintiffs an additional 90 days to serve. (Dkt. 14). Plaintiffs served Herzallah on September 8, 2025, within that period. The gap between May 2024 and September 2025 stemmed from court orders, including the July 2024 Show Cause Order (Dkt. 11) and the March 2025 order discharging it and extending time (Dkt. 14), not from lack of diligence. Defendant cannot attack the Court's management of its docket. Plaintiffs showed diligence through repeated motions, renewed applications, and eventual service. The Court's orders foreclose dismissal under Rule 4(m).

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The standard requires more than possibility but less than probability. Courts disregard legal conclusions, accept well-pleaded facts as true, construe them in the light most favorable to plaintiffs, and ask if they plausibly give rise to relief *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010); *Brooks v. Powell*, 800 F.3d 1295, 1300 (11th Cir. 2015). Allegations are assessed collectively, not in isolation *Tellabs,* 551 U.S. at 322–23.

## ARGUMENT

## I.   The FAC Plausibly Alleges That Defendant Herzallah Himself Committed Acts of International Terrorism

Plaintiffs sue Herzallah over his role in transforming Hamas's October 7 atrocities into terrorism within the meaning of the ATA. Hamas carried out the violence; Defendants made it terrorism.

The ATA provides a civil remedy to "[a]ny National of the US injured…by reason of an act of international terrorism." 18 USC. § 2333(a). Congress defined "international terrorism" broadly. 18 USC. § 2331(1). Liability attaches not only to those who physically commit murder, bombings, or kidnappings, but also to conduct that "involve[s] violent acts or acts dangerous to human life" and is intended to intimidate or coerce. § 2331(1)(A)–(B). Even non-violent activities coordinated with an FTO can be inseparable from its violent acts. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 26–27 (2010).

Terrorism is not defined solely by atrocities on the battlefield; it is equally

defined by the exploitation of those atrocities to achieve political goals. The October 7 Attacks were designed to terrorize Americans, Israelis, and Jews worldwide, coerce Israel, and shape international opinion. That transformation required networks and mobilization, which Herzallah helped provide. Without those networks, October 7 would be a bloody crime. With them, it became effective terrorism, achieving the coercive impact Congress intended the ATA to remedy. That coordination is not incidental. It was foreseeable and deliberate.

The FAC pleads that Herzallah served as AMP's Associate Director of Outreach and liaison to NSJP/SJP nationwide (FAC ¶¶ 59, 156, 228). He provided grants, materials, speakers, and organizational support to SJP chapters, embedding Hamas's ideology into campus structures (FAC ¶ 156). He endorsed violence ("Israelis have to be bombed" FAC ¶ 157), praised Hamas's "integral role" (FAC ¶ 123), urged students to "agitate" (FAC ¶ 124), and appeared with Hamas-linked individuals (FAC ¶¶ 122, 193, 198).

As AMP's campus liaison, Herzallah was tied to NSJP's "Day of Resistance Toolkit" (FAC ¶¶ 278–96), Hamas's public praise of SJP/NSJP (FAC ¶¶ 374–79); and years of coordinated campus intimidation and messaging. (FAC ¶¶ 224–70, 343–73). His role formed part of a sustained campaign before, during, and after October 7 to transform Hamas's violence into effective terrorism.

Defendant's reliance on *Chiquita Brands*, *Stansell*, *Kaplan*, and *Newman* is misplaced. Those cases involved routine conduct; here the FAC alleges direct coordination within Hamas's U.S. network, including material support. Nor can he evade scienter: his liaison role, statements endorsing violence, ties to Hamas-

affiliates, and AMP's succession to IAP/HLF (*Boim*), make awareness plausible. See *United States v. Suarez*, 893 F.3d 1330 (11th Cir. 2018).

Finally, proximate cause under the ATA is shown by a direct relation or by showing substantial factor and foreseeability. *Newman* 758 F. Supp. 3d at 1380; *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223 (11th Cir. 2021). The FAC pleads both: a direct relationship between Herzallah's liaison work and the intimidation and mobilization that amplified the October 7 Attacks into terrorism, and that his conduct—supplying grants, materials, and speakers; embedding Hamas's propaganda into student networks; and exhorting agitation—was a substantial factor in magnifying the coercive effect (FAC ¶¶ 224-70, 278-96, 374-79). These consequences were not only foreseeable; they were the very objectives of his coordinated campaign. His embedding of Hamas's ideology on campuses, fostering intimidation, and operationalizing Hamas's messaging through NSJP/SJP ensured that the October 7 Attacks reverberated far beyond Israel and achieved its coercive effect on civilians and governments. Unlike *Owens*, 897 F.3d 266, involving remote financial services, Herzallah's conduct is closely connected to the October 7 Attacks and their effectiveness as terrorism.

Herzallah wasn't a neutral observer but an active participant who ensured Hamas's violence resonated as terrorism. The ATA doesn't limit liability to those wielding the weapons. Those who publicize, justify, and mobilize in coordination with terrorism commit acts that "***involve*** violent acts" under § 2331(1) (emphasis added). Such promoters help accomplish the "intimidat[ion] or coerc[ion] of a civilian population," and "influenc[ing] the policy of a government by intimidation

or coercion." 18 U.S.C. § 2331(1)(B)(i) and (ii). Plaintiffs' allegations plausibly state claims that Defendant himself committed acts of international terrorism.

## II.    Plaintiffs Plausibly Allege Aiding-and-Abetting Liability as to Herzallah

The ATA imposes liability on any person who "aids and abets, by knowingly providing substantial assistance" to acts of international terrorism. 18 U.S.C. § 2333(d)(2). The statute requires courts to evaluate such claims under the framework established in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), as adopted by the Supreme Court in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). To state a claim, Plaintiffs must allege (1) a principal committed an act of international terrorism, (2) the defendant was generally aware of his role in an unlawful enterprise from which terrorist acts were foreseeable, and (3) the defendant knowingly and substantially assisted the principal *Taamneh*, 598 U.S. at 495–97.

The FAC pleads all three elements as to Herzallah. First, Hamas, a designated FTO, committed the October 7 Attacks and subsequent acts of international terrorism that injured Plaintiffs. Second, Herzallah was generally aware of his role in Hamas's U.S.-based support network; awareness does not require knowledge of the specific October 7 Attacks and its aftermath, only recognition of participation in an enterprise where terrorist violence is a foreseeable outgrowth *Halberstam*, 705 F.2d at 472; *Taamneh*, 598 U.S. at 495. Plaintiffs allege AMP succeeded Hamas's dismantled U.S. mobilization fronts (IAP/AMS/HLF), and its leaders founded NSJP in 2010 to coordinate 200+ SJP chapters pursuing the Palestine Committee's university-infiltration strategy (FAC ¶¶ 114-21, 126-9, 131, 144-53, 194, 406-07). Within this infrastructure, Herzallah served as AMP's

liaison to SJP/NSJP, embedding Hamas's messaging across the nationwide student network (FAC ¶¶ 55, 158, 224-70). His responsibilities included supplying grants, materials, speakers, and support to propagate Hamas's ideology and embed its propaganda (FAC ¶¶ 59, 156). These allegations show far more than isolated speech: they plead Herzallah's central role in operationalizing Hamas's student arm in the U.S. and make plausible his general awareness that his activities were part of an enterprise in which terrorist violence was the foreseeable and intended outcome.

Third, Herzallah knowingly and substantially assisted Hamas's enterprise. Like the *Halberstam* bookkeeper, he sustained Hamas's U.S. student network without being present at the attacks. That suffices for "knowing and substantial assistance." Defendant seeks to recast the allegations as mere "speech" or "advocacy" divorced from terrorism. That misstates the FAC Herzallah did not simply attend conferences or post online; he served as AMP's campus liaison to NSJP and its chapters, channeling resources to embed Hamas's terrorism across campuses (FAC ¶¶ 59, 156, 228). The FAC further pleads AMP's succession and Hamas ties (FAC ¶¶ 114-22, 126-29), NSJP's creation to institutionalize Hamas's ideology across 200+ campuses (FAC ¶¶ 144-53, 194, 224-70), its Toolkit glorifying the atrocities (FAC ¶¶ 278-96), the ensuing harassment of Jewish students, praise of "martyrs," and encampments Hamas lauded (FAC ¶¶ 298–379). They were overt acts within the very channel Herzallah managed and the mechanism through which Hamas's intimidation infrastructure functioned in the U.S.

The *Halberstam* factors confirm liability: the nature of the act assisted— terrorist mass murder—is grave; the amount and quality of Herzallah's assistance—

sustained, coordinating assistance was substantial; presence in Israel is irrelevant as his AMP role ensured October 7 and its aftermath resonated here as terrorism; his relationship to the tortfeasor is direct, given AMP's succession to Hamas fronts and his role as liaison ensuring NSJP and SJP functioned as Hamas's student arm; his state of mind is plausibly alleged by praise of Hamas, calls for violence, and his liaison role; and his assistance spanned years.

Defendant argues the FAC pleads only "First Amendment activity." Not so. "Providing personnel, training, or services to an FTO" is not immunized by free-speech principles *Holder*, 561 U.S. at 26–27. Herzallah's role was not abstract opinion but a deliberate contribution of personnel and organizational support to Hamas's U.S. network. Defendant dismisses his statements as "political history," but the FAC quotes him calling Hamas "integral" to Palestinian society and future history (FAC ¶ 123). That is not detached analysis; it is open praise for a designated FTO. Defendant minimizes Herzallah's arrests and disruptions as mere "protest," but the FAC pleads that he explicitly called for violence, musing, "What if, as Muslims, we wanted to use violent means to resist occupation? Is that wrong?" (FAC ¶ 121), and declared that "Israelis have to be bombed" because the State of Israel is illegitimate (FAC ¶ 157). These are not abstract criticisms of a foreign military; they are endorsements of Hamas's violence. Defendant claims the Court cannot consider such statements without "full context," but no context is needed to grasp a call to bomb Israelis or celebrate attacks on the IDF as "the most beautiful site in my eyes" (FAC ¶ 157). Likewise, Herzallah's role as one of the "Irvine 11" (FAC ¶ 228) was not protected speech but criminal disruption for which he was

convicted. Combined with his role as AMP's campus liaison to NSJP and SJP chapters, through which he provided grants, materials, speakers, and organizational support to embed Hamas's propaganda and mobilize students (FAC ¶¶ 59, 156), these allegations are far more than conclusory or speech-based. They plead knowing and substantial assistance to Hamas's enterprise and show Herzallah's general awareness that such participation would foreseeably further terrorist violence. Plaintiffs do not sue Defendant for abstract advocacy, but for his operational role in embedding Hamas's propaganda in SJP/NSJP, mobilizing chapters to glorify atrocities, and turning campus networks into instruments of intimidation and coercion That conduct ensured Hamas's terrorism resonated in the U.S. and falls squarely within the ATA's prohibitions.

Defendants lean heavily on *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933 (E.D. Va. Aug. 15, 2025), but that case underscores why dismissal is unwarranted here. *Parizer* alleged only an aiding-and-abetting theory and was dismissed because the plaintiffs, all of whom were injured on October 7, relied almost exclusively on post-attack propaganda to connect defendants' conduct to their injuries. This case is fundamentally different in two respects.

First, Plaintiffs do not rely solely on aiding-and-abetting. The complaint asserts direct liability under § 2333(a), conspiracy under JASTA, and material-support liability under § 2339B. These claims rest on allegations that Defendants themselves committed acts of "international terrorism" within the meaning of § 2331(1) by producing and disseminating Hamas propaganda, coordinating campus mobilizations, and sustaining Hamas's U.S. infrastructure. The terrorism

that harmed Plaintiffs was not confined to Israel's borders. It became terrorism because Defendants gave it reach and coercive power, ensuring Hamas's atrocities were amplified and received as intimidation and coercion against civilians and governments.

Second, unlike *Parizer*, this case involves Plaintiffs harmed both on and after October 7. The October 7 Plaintiffs plausibly allege direct liability, as well as aiding and abetting, conspiracy, and material support, because Defendants' propaganda and mobilization apparatus, for years before, on, and after October 7, gave Hamas's atrocities their coercive impact, transforming mass murder into terrorism within a global campaign of intimidation. Plaintiffs injured after October 7 plausibly allege all four theories because Defendants' post-attack conduct, including dissemination of NSJP's "Day of Resistance" toolkit and coordination of campus mobilizations, directly furthered Hamas's continuing terrorism, including rocket fire, hostage-taking, intimidation of Jews worldwide, and campaigns aimed at coercing governments and international institutions.

That *Parizer* itself granted leave to amend is telling; the court recognized that more particularized allegations could sustain liability. Plaintiffs here go further, alleging direct liability, conspiracy, and material-support claims, and tying both October 7 Plaintiffs and post-October 7 Plaintiffs to their injuries.

These distinctions are dispositive. Where *Parizer* dismissed a narrow aiding-and-abetting theory for want of a nexus, Plaintiffs here allege Defendants themselves committed acts of international terrorism and that their post-attack conduct substantially furthered Hamas's campaign against both October 7 Plaintiffs

and post-October 7 Plaintiffs. Far from foreclosing these claims, *Parizer* confirms why dismissal is unwarranted here.

### III.    The FAC Plausibly Alleges Conspiracy

ATA § 2333(d)(2) imposes secondary liability on "any person who conspires with the person who committed" an act of international terrorism. Plaintiffs need only plausibly allege an agreement (formal or informal), an overt act, and injury *Halberstam* 705 F.2d at 477; *Twombly,* 550 U.S. at 556–57. An agreement may be proved by circumstantial evidence. Proof is not required that the defendant had knowledge of all the details of the conspiracy; the defendant need only have knowledge of the essential objective. *U.S. v. Tamargo,* 672 F.2d 887 (11th Cir 1982*).*

The FAC does so as to Herzallah: he serves as AMP's liaison, supplying resources to SJP chapters to spread Hamas's ideology and mobilize students (FAC ¶¶ 59, 156); he praised Hamas, endorsed violence against Israelis, and urged post-October 7 agitation (FAC ¶¶ 121-24, 157); and he appeared with Hamas-linked figures (FAC ¶¶ 122, 193, 198). These are overt acts advancing Hamas's conspiracy.

AMP's lineage as successor to IAP/AMS and HLF situates Herzallah's role within a conspiracy already judicially tied to Hamas (*Boim* 549 F.3d at 698–702), making it plausible he acted with knowledge of the conspiracy's essential objective. As *Holder* explains, support for an FTO's "social" or "advocacy" activities advances the organization as a whole, including its violent ends, because such support is fungible and legitimizing. *Holder,* 561 U.S. at 30-39.

The "agreement" element is plausibly pled through the infrastructure and

mission the FAC describes and into which Herzallah's role fits. NSJP was founded in 2010 by AMP and USPCN leaders as an umbrella for 200+ chapter to propagate the Palestine Committee's, and Hamas's, strategy in U.S. universities. The conspiracy's blueprint reaches back to the 1993 Philadelphia meeting of Hamas's Palestine Committee, where leaders discussed "infiltrat[ing] universities" and developing youth curricula to ensure a "next generation" hostile to peace; the FAC ties those objectives forward to the creation and operation of NSJP and the SJP chapter network (FAC ¶¶ 131, 144–50, 194, 406-07). NSJP's identifies itself as "the student movement" and "PART" of the movement that includes Hamas, and "call[s] for mass mobilization" (FAC ¶¶ 170, 199, 201-05, 220, 278–296, 301, 309, 321, 325, 393, 409). That is the hub that Herzallah's liaison role supported.

Defendant invokes *Freeman*, *Newman*, and *Bernhardt* which involved independent or neutral objectives; here the shared object is intimidation and coercion aligned with Hamas. *See Freeman*, 57 F.4th at 80; *Newman*, 758 F. Supp. 3d at 1374; *Bernhardt*, 47 F.4th 856. The FAC pleads NSJP as Hamas's U.S. student arm, its public alignment with Hamas, and Herzallah's job to channel material support and messaging to mobilize, radicalize, and intimidate. That conduct aligned with Hamas's coercive program well before, during, and after October 7.

Herzallah's statements and conduct, such as praising Hamas's "integral role" (FAC ¶ 123), calling for Israelis to be "bombed" (FAC ¶ 157), and urging students to "agitate" after October 7 (FAC ¶ 124), underscore knowledge and participation. Plaintiffs have alleged far more than "criticism" of Israel; they have alleged Herzallah's role in operationalizing Hamas's student arm in the U.S.

Under *Halberstam*, it is sufficient that he joined the shared objective of advancing Hamas's program of intimidation and coercion that culminated in and was amplified by the October 7 Attacks. By funneling resources and disseminating propaganda that framed October 7 as legitimate "resistance," he magnified their coercive effect. By agreeing to generate and distribute that messaging in his capacity as campus liaison, Herzallah ensured that the October 7 Attacks were experienced and understood as "terrorism"—acts intended to intimidate and coerce civilians—both in the U.S. and abroad. That is a pleaded unity of purpose, not parallel conduct *Freeman*, 57 F.4th at 80; *Newman*, 758 F. Supp. 3d at 1374

This is not conclusory. The FAC pleads who formed NSJP (AMP and USPCN leaders), when (2010), for what purpose (national hub coordinating 200+ SJP chapters), why (to carry forward the Palestine Committee's university-infiltration plan), and how Herzallah fits (AMP's liaison supplying support and resources to SJP chapters)—facts that, taken as true, plausibly allege an agreement.

The FAC also pleads overt acts and injury: embedding Hamas's messaging over several years across campuses, mobilizing students, generating intimidation and coercion that define international terrorism under the ATA, and the post-October 7 escalation via the toolkit and coordinated campus actions (FAC ¶¶ 224-96, 374-79). Coupled with NSJP's self-identification as part of "our movement" with Hamas and with Herzallah's defined role resourcing and amplifying the content used by SJP/NSJP, those are overt acts furthering the common scheme *Halberstam*, 705 F.2d at 477.

## IV.    The FAC Plausibly Alleges Material Support in Violation of the ATA

ATA § 2333(a) provides a civil remedy to "[a]ny national of the U.S. injured…by reason of an act of international terrorism." 18 U.S.C. § 2333(a). That requirement is satisfied where a defendant violates § 2339B by "knowingly provid[ing] material support or resources to" an FTO. § 2339B(a)(1). "Material support" includes "any service [or] personnel." § 2339A(b)(1).

The FAC alleges that Herzallah, as AMP's liaison to NSJP/SJP chapters, provided services and personnel by supplying grants, materials, speakers, and organizational support to SJP chapters to embed Hamas's propaganda, glorify violence, and mobilize students (FAC ¶¶ 59, 156-57, 224–70, 278–96, 374–79). He praised Hamas's "integral role" (FAC ¶ 123), declared "Israelis have to be bombed" (FAC ¶ 157), and urged post–October 7 agitation (FAC ¶ 124). These are not abstract discussions of policy or history, but operational contributions of services to Hamas's U.S. student arm, in direct coordination with a designated FTO. Courts hold that propaganda, recruitment, and operational assistance are "material support." *Suarez*, 893 F.3d 1330 (11th Cir. 2018); *Boim* 549 F.3d at 698-702.

Defendant argues no "objective observer" could conclude Herzallah intended the October 7 Attacks because the allegations concern criticism of Israel, Zionism, or support for Palestinian self-determination. That misstates the FAC. Section 2339B requires only that a defendant know Hamas is a designated FTO or engages in terrorism, not that he intend a specific attack. The FAC pleads that Herzallah knowingly served as AMP's liaison to SJP and NSJP—the very organizations Hamas publicly thanked after October 7 for glorifying its violence (FAC ¶¶ 374–79)—and that he did so as an employee of AMP, the acknowledged

offshoot of IAP and HLF, entities adjudicated to be Hamas enterprises in Boim.
He provided personnel and services to sustain Hamas's propaganda arm in the U.S.
Those allegations are far more than general criticism of Israeli policy; they
constitute material support to a designated FTO. Nor is scienter lacking: Herzallah
repeatedly praised Hamas's "integral role" in Palestinian society (FAC ¶ 123),
openly called for violent "resistance" (FAC ¶¶ 121, 157), and embedded Hamas's
ideology into SJP/NSJP infrastructure (FAC ¶¶ 59, 156, 224–70). His leadership
role at AMP, the successor to Hamas's dismantled U.S. fronts, further confirms his
awareness that he was materially supporting Hamas.

Finally, proximate cause is satisfied under either articulation recognized in
ATA cases. There is a direct relationship between Herzallah's services—embedding
Hamas propaganda in U.S. campuses, mobilizing SJP chapters, and glorifying the
October 7 massacre—and the intimidation, harassment, and coercion that
amplified those atrocities as terrorism. At minimum, his conduct was a substantial
factor in ensuring Hamas's atrocities achieved their intended coercive effect, and
the resulting harms were foreseeable. See *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223
(11th Cir. 2021); *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018).

Plaintiffs need not trace every operational step between Herzallah's conduct
and the October 7 Attacks. It is enough that the FAC plausibly alleges he knowingly
provided services in coordination with Hamas's U.S. student infrastructure,
materially supporting its campaign of intimidation and coercion. That is precisely
what § 2339B forbids.

## V.    Plaintiffs' Claims Target Unprotected Conduct, Not Protected Speech

Defendant reframes this as an attempt to punish disfavored speech about Palestine and the Israeli–Palestinian conflict. Plaintiffs do not challenge Herzallah's abstract advocacy or political expression. They challenge his knowing provision of services and personnel to Hamas's U.S. infrastructure, conduct that falls squarely within the prohibitions of the ATA. The Supreme Court has made clear that "providing personnel, training, or services to an FTO" is not immunized by invoking free speech principles *Holder*, 561 U.S. at 26–27, 39; see *Jayyousi*, 657 F.3d at 1102–03 (11th Cir. 2011); *Mehanna*, 735 F.3d at 45.

Herzallah was not sued for his political views or abstract advocacy. He was sued for his conduct in providing services and organizational support to Hamas's U.S. infrastructure through AMP, NSJP, and SJP chapters. Those activities— coordinating resources, embedding propaganda, and mobilizing student networks to glorify Hamas's violence—are not "speech Plaintiffs disfavor," but material support to a designated FTO. *Snyder* and *Claiborne* involved independent advocacy, unlike the coordinated provision of propaganda and services to a terrorist organization. Plaintiffs are not trying to punish dissent. They are seeking accountability for Herzallah's knowing contribution to Hamas's U.S. mobilization network, the very machinery that turned the October 7 Terrorist Attacks from a set of atrocities into effective terrorism.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Moving Defendant's motion and allow this case to proceed under the ATA.

Dated:  Brooklyn, New York
         October 3, 2025

                              Yours,

                              THE BERKMAN LAW OFFICE, LLC
                              *Attorneys for Plaintiffs*

                              by:    /s/ Robert J. Tolchin
                                     Robert J. Tolchin
                              829 East 15th Street, Box 7
                              Brooklyn, New York 11230
                              718-855-3627

Of Counsel:

NITSANA DARSHAN-LEITNER & CO.
Nitsana Darshan-Leitner, *Israeli Attorney for Plaintiffs*
10 Hata'as Street, Ramat Gan, 52512 Israel
Israeli #: 011-972-523-837-020 | U.S.: (212) 591-0073

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Motion filed through the ECF system is expected to be sent electronically to the registered participants as identified on the court's docket.

/s/Robert J. Tolchin
Robert J. Tolchin