# COMPOSITE EXHIBIT A

# SL | **SLATER LEGAL** PLLC

Atlanta Office/Mailing Address
2296 Henderson Mill Rd. N.E. #116
Atlanta, GA 30345
Tel. (404) 458-7283

Tallahassee Office
113 S. Monroe Street
Tallahassee, FL 32301

September 25, 2025

Robert J. Tolchin                                      *Via Email and Certified Mail*
The Berkman Law Office, LLC
829 East 15th Street, Box 7
Brooklyn, New York 11230

> **Re:**   **Rule 11 Safe Harbor Letter**
> *Maurice Shnaider, et al., v. American Muslims for Palestine, et al.,*
> **Case No. 8:24-cv-1067 (M.D. Fla.)**

Mr. Tolchin,

I write to request that your law firm and Plaintiffs withdraw their objectively frivolous claims against Zarefah Baroud in the amended complaint that your law firm filed in the above-referenced matter.

In accordance with Rule 11(c), I am enclosing a copy of Ms. Baroud's draft Rule 11 motion for sanctions against Plaintiffs' counsel, which I plan to file on October 16, 2025 unless the meritless claims against Ms. Baroud are withdrawn before that date.

The attached motion and this letter are not exhaustive of the deficiencies in the lawsuit or any other matter that Ms. Baroud intends to or may raise in the litigation. All of Ms. Baroud's rights are expressly reserved, and the fact that an issue may not have been raised in the Rule 11 motion or this letter shall not constitute a waiver of her rights or defenses, including remedies under Rule 12, section 1927, or the Court's inherent power to sanction under federal common law.

While Ms. Baroud seeks sanctions against you as counsel, please ensure that your clients are also made aware of Ms. Baroud's intent to seek sanctions after the safe

harbor expires. We are hopeful that you will consider the arguments raised herein and withdraw your claims against Ms. Baroud within the safe-harbor period.

Should you wish to discuss this matter, please do not hesitate to contact me.

Sincerely,

Slater Legal PLLC

James Slater

Enclosure: Draft Motion

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAURICE SHNAIDER, *et al.*,

      Plaintiffs,

v.

AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

      Defendants.

Case No. 8:24-cv-01067-MSS-SPF

## <u>ZAREFAH BAROUD'S OPPOSED RULE 11 MOTION</u>

Pursuant to Rule 11, Defendant Zarefah Baroud moves for sanctions against Plaintiffs' counsel for his filing of a frivolous lawsuit. Plaintiff's counsel views this type of litigation as "sending a message,"[1] regardless of its merits. As it pertains to Ms. Baroud, the entire premise of this case is to send her a message—that she will be punished for her advocacy efforts surrounding Palestine and the fact that she is the daughter of a high-profile Palestinian-American journalist.[2] There is nothing more

---

[1] Jodi Rudoren, *Crusading for Israel in a Way Some Say is Misguided*, N.Y. TIMES (Jan. 23, 2015), www.nytimes.com/2015/01/24/world/middleeast/crusading-for-israel-in-a-way-some-say-is-misguided.html.

[2] According to Al Jazeera, Ms. Baroud's father "Ramzy Baroud is a journalist and the editor of The Palestine Chronicle and non-resident Senior Research Fellow at the Center for Islam and Global Affairs (CIGA). He also is the author of six books. His latest book, co-edited with Ilan Pappé, is 'Our Vision for Liberation: Engaged Palestinian Leaders and Intellectuals Speak out.'" *See* AL JAZEERA CENTER FOR STUDIES, www.studies.aljazeera.net/en/profile/ramzy-baroud; *see also* "Ramzy Baroud," WIKIPEDIA, https://en.wikipedia.org/wiki/Ramzy_Baroud (last visited Sept. 18, 2025).

here; the complaint is objectively frivolous and filed in bad faith. The Court should grant this motion and impose sanctions on Plaintiff's counsel.

## LEGAL STANDARD

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010); *see also Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir. 2001) (The goal of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.")

"Sanctions are appropriate: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (citation omitted).

A two-step inquiry is involved in the decision to impose Rule 11 sanctions, with the court asking "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir. 1998). Thus, the standard for gauging whether a claim is frivolous or meritless is an objective one, "[h]ence courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003) (citing *Donaldson v.*

*Clark,* 819 F.2d 1551, 1556 (11th Cir. 1987); *Thompson v. RelationServe Media, Inc.*,
610 F.3d 628, 665 (11th Cir. 2010) ("Both inquiries measure attorney conduct under
an objective reasonably competent attorney standard."(Tjoflat, J., concurring in
part).

"A legal claim is frivolous if no reasonably competent attorney could conclude
that it has any reasonable chance of success or is a reasonable argument to change
existing law." *Id.* (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th
Cir. 1996). "A factual claim is frivolous if no reasonably competent attorney could
conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only
patently frivolous evidence is offered to support factual contentions, sanctions can be
imposed." *Thompson*, 610 F.3d at 665 (citations omitted).

After concluding "that either the factual or legal contentions are frivolous, the
question becomes whether the attorney should have known they were frivolous." *Id.*
The court asks "what was known or reasonably knowable when the paper was
'present[ed] to the court.'" *Id.* (quoting Fed. R. Civ. P. 11(b)). "Measured objectively,
if a reasonable investigation would have revealed the error to a reasonably competent
attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed."
*Id.* "The reasonableness of the inquiry turns on the totality of the circumstances,
including, for example, the time available for investigation and whether the attorney
had to rely on the client, another member of the bar, or others." *Id.*

"Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a
paper for an improper purpose. Improper purpose is often inferred from

3

circumstantial evidence." *Id.* at 665-66. "A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims. *Id.* "A Rule 11(b)(2) or (b)(3) violation—bringing a legally or factually frivolous claim—is often probative of a Rule 11(b)(1) improper purpose violation." *Id.* at 664. If a filing violates Rule 11(b), the Court may impose "an appropriate sanction" on the attorney responsible for the violation. *See* Fed. R. Civ. P. 11(c)(1). The sanction may include an award of attorney's fees and other expenses directly resulting from the violation. *See* Fed. R. Civ. P. 11(c)(4).

## ARGUMENT

Plaintiffs are individuals and the relatives of individuals who allege harm resulting from Hamas' October 7, 2023 terrorist attack in Israel, and other subsequent terrorist attacks in Israel. *See* First Amended Complaint ("FAC") at ¶¶ 417–452. Plaintiffs allege Ms. Baroud "serves as the Digital Media Associate of AMP, producing propaganda for later dissemination among SJP chapters." *Id.* ¶ 55; *see also id.* ¶ 158 (also alleging that Ms. Baroud "assists National SJP with its social media activity"). They plead no other specific facts about Ms. Baroud (other than guilt by association by rendering allegations against her father, who is not a defendant here, *see id.* ¶ 55), or the contents of any "social media activity" or "propaganda." As to her association with her father, Plaintiffs allege that he is a scholar at a think tank that allegedly hosts conferences attended by Hamas and his

4

editorial publication is purportedly controlled by an entity that allegedly employed a Hamas operative. *See id.* ¶ 55.

Aside from these two paragraphs, Ms. Baroud is only mentioned four other times in the FAC, where she is lumped with the remaining defendants in conclusory fashion. *Id.* at ¶¶ 2, 8, 406, 407.

These factual claims constitute naked assertions, devoid of factual enhancement, and are frivolous. Not one specific fact is offered or alleged that could provide non-frivolous evidence to support Plaintiffs' factual claims, and sanctions are appropriate. *Thompson*, 610 F.3d at 665 (sanctions are proper "where no evidence or only patently frivolous evidence is offered to support factual contentions") (Tjoflat, J., concurring in part). Moreover, the fact that Plaintiffs focus primarily on Ms. Baroud's familial ties demonstrates that Plaintiffs' sued her for an improper purpose. *Id.* at 665–66 ("A 'motive to harass' can also be inferred from an attorney's filing of factually or legal frivolous claims."). Armed with these conclusory and improper allegations, Plaintiffs conclude that Ms. Baroud violated the Anti-Terrorism Act with respect to Hamas's attacks on October 7, 2023. Such claim is objectively frivolous.

## A. The Anti-Terrorism Act.

The Anti-Terrorism Act ("ATA") creates a cause of action for U.S. nationals injured in their "person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). An injured person may also bring suit against "any person who aids and abets, by knowingly providing substantial assistance, or who

5

conspires with" a designated foreign terrorist organization that committed the act of
international terrorism. *Id.* § 2333(d)(2). U.S. national plaintiffs must first establish
themselves as "injured in his or her person, property, or business by reason of an act
of international terrorism." *Id.* § 2333(a); *see also* 18 U.S.C. § 2331(1) (defining an act
of "international terrorism" as used in the statute). To establish aiding and abetting
liability under the ATA, plaintiffs must allege their injury arose "from an act of
international terrorism committed, planned, or authorized by an organization that
had been designated as a foreign terrorist organization," and that the alleged
aider/abettor "knowingly provided substantial assistance" to that act. *Id.* § 2333(d);
*see also Colon v. Twitter, Inc.*, 14 F.4th 1213, 1222 (11th Cir. 2021).

A plaintiff must establish that the defendant who allegedly aided or abetted
took "some 'affirmative act' 'with the intent of facilitating the offense's
commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond
v. United States*, 572 U.S. 65, 71 (2014)). The plaintiffs also bear the burden to
establish that defendants were "generally aware of his role as part of an overall illegal
or tortious activity at the time that he provides the assistance." *Leisrael v. Educ. for a
Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). Plaintiffs must show
that each defendant must "knowingly and substantially assist[ed] the principal
violation." *Id.* Finally, plaintiffs must allege facts showing the relevant assistance to
be both substantial that it and significantly enhanced the terrorist organization's
ability to carry out those activities. *Taamneh*, 598 U.S. at 495 (finding insufficient the

6

claim that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it").

Here, Plaintiffs assert claims against Ms. Baroud for aiding and abetting, conspiracy, and material support liability. Because the claims are objectively meritless and filed for an improper purpose, they are sanctionable under Rule 11. Each claim is addressed in turn.

### B. Plaintiffs aiding and abetting claim is objectively frivolous.

To plausibly assert a claim for aiding and abetting liability under section 2333(d)(2), Plaintiffs must show "(1) that the defendant knowingly provided substantial assistance to a foreign terrorist organization, (2) that the foreign terrorist organization committed an act of international terrorism, and (3) that plaintiff was injured in their person, property, or business by the act of international terrorism." *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *21 (E.D. Va. Aug. 15, 2025) (citing § 2333(d)(2)) & (dismissing ATA claims against Ms. Baroud based on the same conduct alleged here).

While Plaintiffs fail to allege facts sufficient to meet at least the second two of those three requirements—that acts of international terrorism harmed them—, they do not allege a single act by Ms. Baroud that provided any assistance in those acts. *See Parizer*, 2025 WL 2382933, at *23 ("Plaintiffs' broad assertion that 'Defendants' support has been so systematic that Defendants aid and abet every wrongful act committed by Hamas and its affiliates'" does not "circumvent the necessity to sufficiently allege 'defendants actually aided and abetted each tort of that

7

enterprise,'" quoting *Taamneh*, 598 U.S. at 506). Indeed, the Supreme Court limits aiding and abetting liability under the ATA to "truly culpable conduct," meaning "conscious, voluntary, and culpable participation in another's wrongdoing." *Taamneh*, 598 U.S. at 490. Thus, a defendant must have aided and abetted a specific tortious act by knowingly providing substantial assistance to the principal wrongdoer. *See id.* at 494 (quoting *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)).

To demonstrate aiding and abetting liability, courts look to *Halberstam*'s "legal framework," *see Taamneh*, 598 U.S. at 485, which requires: "(1) a wrongful act by the primary actor causing injury; (2) the defendant's general awareness of their role in the illegal or tortious activity at the time they provided assistance; and (3) the defendant's knowing and substantial assistance to the principal violation." *Parizer*, 2025 WL 2382933, at *21 (citing *Halberstam*, 705 F.2d at 484). In addition, the *Halberstam* framework provides six more factors for consideration of whether assistance is "substantial," which are: "(1) the nature of the act assisted; (2) the amount of assistance; (3) the defendant's presence at the time of the act; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the duration of assistance." *Parizer*, 2025 WL 2382933, at *21 (citing *Halberstam*, 705 F.2d at 488). The importance of these factors, as explained by the Supreme court in *Taamneh*, is to help "capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify

attributing the principal wrongdoing to the aider and abettor." *Taamneh*, 598 U.S. at 504.

Here, the FAC is devoid of any nonconclusory allegations to support aiding and abetting liability as to Ms. Baroud. The sole allegations against Ms. Baroud—that she managed social media activities for AMP and has assisted National SJP with its unspecified social media activities—are insufficient to establish "knowing and substantial" assistance or "general awareness" of any role in any tortious activity.

<u>No Allegations of Knowing and Substantial Assistance</u>

First, Plaintiffs fail to demonstrate the requisite degree of mens rea for knowing and substantial assistance—that Ms. Baroud disseminated materials on social media "knowingly" and "with the intent of facilitating" the October 7 Hamas terrorist attacks. *Taamneh*, 598 U.S. at 490. The FAC is similarly devoid of any allegations that Ms. Baroud "sought by [her] action to make [the October 7 attacks] succeed." *Id.* at 498 (citation omitted). While the FAC references certain publications, including those that Plaintiffs contend "sum[] up the entire covert conspiracy that has transpired over the last 20 years," *see* FAC ¶ 206, nowhere does the FAC *specifically* connect any of these alleged statements or publications with Ms. Baroud other than broadly referencing her social-media role at AMP. And nowhere does the FAC explain how anyone, let alone Ms. Baroud, published these statements "with the intent of facilitating" the October 7 attacks. These bald assertions are

therefore factually and legally frivolous, because they are unsupported by any evidence whatsoever.

Because the FAC does not allege the requisite degree of mens rea, the Court need not consider the six *Halberstam* factors for whether the alleged assistance was also "substantial." Even so, none of the allegations in the FAC provide any factual support for the contention that Ms. Baroud specifically aided Hamas (for any duration), provided any assistance to Hamas, was present in either Israel or Palestine at the time of the October 7, 2023 attacks, has any relationship with Hamas, or what her state of mind was in connection to any aid or support to Hamas. Even if Plaintiffs could allege some relationship, there is no evidence of any "arm's-length relationship" with the organization. *See, e.g.*, *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1372–73 (S.D. Fla. 2024) (no arm's-length relationship with Hamas based on purchase of certain photographs from the organization for media purposes). Thus, under the *Halberstam* framework, Plaintiffs cannot demonstrate that Ms. Baroud provided any "knowing and substantial" assistance to Hamas, and thus their claim is objectively frivolous.

Second, the FAC does not allege a "concrete nexus between [these] services" and the October 7 attacks. *Taamneh*, 598 U.S. at 501. The FAC is devoid of facts showing that Ms. Baroud knew or understood that her social media role at a nonprofit organization in the United States was in any way used to support terrorism, nor does the FAC draw any "concrete nexus" between such activities and the October 7 attacks. Plaintiffs cannot hold Ms. Baroud liable under the ATA for

10

her speech alone, her association with an organization that operates lawfully and
entirely within the United States, nor for her family background or makeup. Even if
Plaintiffs could suggest some inadvertent support by Ms. Baroud, that is not enough
for ATA liability under section 2333(d). *See id.* at 489; *see also Wendy's Int'l, Inc. v. Nu-
Cape Constr., Inc.*, 164 F.R.D. 694, 699 (M.D. Fla. 1996) (when an attorney files a
pleading that "has no reasonable chance of success or files a pleading in bad faith for
an improper purpose, Rule 11 sanctions should be imposed."),

As another court recently determined that Ms. Baroud's social media activities
for AMP did not constitute ATA liability "for injuries stemming from the October 7,
2023 attack," as the plaintiffs there could not "plausibly allege that [she and other
defendants] aided and abetted Hamas in carrying out that attack." *Parizer*, 2025 WL
2382933, at *22. There, as here, Plaintiffs failed "to plead sufficient facts showing a
'definable nexus' between [Ms. Baroud's alleged] conduct and Hamas's October 7,
2023 attack or subsequent international law violations." *Id*. In *Parizer*, the court
found that even if those plaintiffs had alleged an "attenuated nexus," they had not
shown "intentional aid that substantially furthered the tort" or even prior knowledge
of the attack. *Id.* This Court should reach the same conclusion. Given that there is no
objective basis for Plaintiffs' allegations that Ms. Baroud aided and abetted Hamas in
carrying out the October 7 attacks, the Court should conclude that the complaint is
objectively frivolous.

## No Allegations of General Awareness

Finally, the FAC fails to demonstrate Ms. Baroud's "general awareness" of her alleged role in Hamas's terrorist activities. Here, Plaintiffs must demonstrate more than an individual's general support for an organization, but that Ms. Baroud understood and was actually aware she was "assuming a role" in Hamas's terrorist activities. *See Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), aff'd, 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness: "Because actual awareness is required, the inquiry is not whether a defendant should have been aware of its role."); *Newman*, 758 F. Supp. 3d at 1367–68 (this "element requires an allegation that the [defendant] was 'aware that, by assisting the principal, it is itself assuming a role in terrorist activities,'" quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)).

For this element, Plaintiffs allege no more than Ms. Baroud's affiliation with an American nonprofit organization engaged in protected First Amendment activities and her father—who is mentioned more than her in the FAC and is not a defendant. But the ATA does not permit guilt-by-association liability, and the attempt to hold Ms. Baroud liable under this theory is frivolous. Plaintiffs fail to demonstrate how Ms. Baroud, who did not create or operate AMP or any other defendant-entity, had any "general awareness" of a role in Hamas rather than a

desire to advocate in support of Palestinians' rights. This claim is therefore objectively frivolous.

### C. Plaintiffs' conspiracy claim is objectively frivolous.

Section 2333(d) imposes liability on anyone "who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d). Conspiracy requires: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. (citation omitted). "The element of agreement is a key distinguishing factor" between claims for conspiracy and aiding and abetting. *Id.* Like above, the *Halberstam* framework and factors apply. *Taamneh*, 598 U.S. at 485.

Here, the FAC fails to plausibly allege "an agreement" to participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). To establish an "agreement," Plaintiffs must plausibly allege that the conspirators—that is Ms. Baroud and Hamas—were "pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022); *Newman*, 758 F. Supp. 3d at 1374 ("Although courts may 'infer an

13

agreement from indirect evidence in most civil conspiracy cases,' a complaint must

nonetheless allege that the coconspirators were 'pursuing the same object,'" quoting

*Halberstam*, 702 F.2d at 486–87). Plaintiffs fail to meet that threshold requirement, as

nowhere in the FAC do they allege in any nonconclusory manner the existence of

any agreement between Ms. Baroud and Hamas related to any alleged mutual

pursuit in the October 7 terrorist attacks.

When considering whether the Associated Press's payments to Hamas for

photographs and images of the October 7 attacks constituted the "pursu[it] of the

same object" under the ATA, the court in *Newman* looked to the Second Circuit's

decision in *Freeman v. HSBC Holdings PLC* to support its conclusion that plaintiffs had

not established conspiracy liability against the AP.  In *Freeman*, the plaintiffs alleged

that certain terrorist organizations were "actively engaged in planning and

perpetrating the murder and maiming of hundreds of Americans in Iraq." 57 F.4th

66, 80 (2d Cir.), *cert. denied*, — U.S. —, 144 S. Ct. 83 (2023). They asserted the

defendants provided terrorist affiliated banks the ability to unlawfully transfer funds

to the United States. *Id.* The Second Circuit concluded that the complaint was

devoid of any assertion that the defendants were in any way engaged in the planning

and murder of Americans in Iraq, nor did the terrorists agree to help the transfer of

money into the United States. *Id.* ("Nowhere in the Complaint, however, do

Plaintiffs plead that the Banks intended to kill or injure U.S. service members in

Iraq."). Thus, there was no "common pursuit" as required under the *Halberstam*

framework. *Id.* (quoting *Halberstam*, 705 F.2d at 481); *see also Bernhardt*, 47 F.4th at

14

873 ("Bernhardt's conspiracy claim [against HSBC] is inadequate" because "[t]he complaint states that HSBC was trying to make substantial profits by evading sanctions, whereas al-Qaeda sought to terrorize the U.S. into retreating from the world stage").

Taking guidance from *Newman* and *Freeman*, even if Plaintiffs could articulate some degree of relationship here between Ms. Baroud and Hamas (they cannot), there are simply no set of facts to support an allegation that Ms. Baroud was engaged in a common pursuit with Hamas to commit the October 7 terrorist attacks. Because there is no "reasonable chance of success" on this claim, the Court should conclude that it is objectively frivolous. *Thompson*, 610 F.3d at 665 (Tjoflat, J., concurring in part).

### D. Plaintiffs' material support claim is objectively frivolous.

Finally, Plaintiffs assert a direct liability claim against Ms. Baroud for material support of Hamas under 18 U.S.C. § 2339B and § 2333(a). To establish such liability under the ATA, Plaintiffs must demonstrate "(1) unlawful action, *i.e.* an 'act of international terrorism;' (2) the requisite mental state, and (3) causation." *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018). Nowhere in the FAC do Plaintiffs allege with supporting facts that Ms. Baroud committed an act of terrorism or provided material support to Hamas. Nor do they demonstrate the requisite scienter or causation for such act.

15

First, the FAC does not plead facts that could establish that Ms. Baroud committed "an act of international terrorism," as section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (i) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, *see* 18 U.S.C. § 2331(1)(A), and (ii) "appear to be intended" to achieve certain specified terrorist purposes, that is to "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B). To satisfy these requirements, Plaintiffs must demonstrate how *Ms. Baroud*'s conduct constitutes international terrorism. Instead, they allege the opposite, that Hamas, not Ms. Baroud, "committed, planned, and authorized activities that involved violence or acts dangerous to human life." FAC ¶ 456; *see also id.* ¶ 472 (alleging that "acts … committed, planned, and authorized" by *Hamas* were intended to achieve terrorist purposes). Armed with the singular allegation that Ms. Baroud managed AMP's social media activities, no "objective observer" could "conclude" that Ms. Baroud intended the October 7 terrorist attacks by virtue of unspecific social media activities. *See Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011); *Chiquita*, 284 F. Supp. 3d at 1305 ("Because § 2333(a) supports only primary liability, a successful ATA plaintiff must allege and prove that the defendant directly committed an "act of international terrorism" which caused the plaintiff's injuries.").

16

To be sure, even the publication of "information that may have been helpful to [Hamas] in achieving its organizational goals" cannot form the basis of a direct liability claim without facts that could show how broadcasting public information or news "would in all likelihood assist the organization in accomplishing its violent goals." *Kaplan v. Jazeera*, 2011 WL 2314783, at *4, 6 (S.D.N.Y. June 7, 2011); *see also Newman*, 758 F. Supp. 3d at 1376 (dismissing direct liability claim against the AP for purchasing images from Hamas). Construing the FAC in the most favorable light to Plaintiffs, their claims against Ms. Baroud, at best, are that she managed social media activities for AMP and National SJP. But even if those acts were helpful to Hamas, that is insufficient for direct liability under the ATA. Further, nothing in the FAC points to any specific posts or statements made by Ms. Baroud, and thus it is unclear how Plaintiffs could hold her liable for unspecified social media activities.

Indeed, when removing the conclusory allegation that Ms. Baroud managed social media activities, the only facts attributed to her in the FAC are her association with her father—a scholar at a think tank that allegedly hosts conferences attended by Hamas and whose editorial publication is purportedly controlled by an entity that allegedly employed a Hamas operative. *See* FAC ¶ 55. Congress did not create the ATA to hold individuals liable solely based on their nationality, family makeup, or DNA. While Plaintiffs' allegations about Ms. Baroud's association with her father are irrelevant, they help demonstrate the improper purpose of Plaintiffs' complaint and its objective frivolousness—the goal is to attack and silence Ms. Baroud for her association with her father and groups that support Palestinians' rights. *See Manhart*

*v. WESPAC Found., Inc.*, 2025 WL 2257408, at *15 (N.D. Ill. Aug. 7, 2025) (ordering sanctions under Rule 11 where the complaint was "rife with allegations that are irrelevant to Plaintiff's stated causes of action and which are only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet.").

Second, Plaintiffs fail to demonstrate the scienter requirement for material support, which requires that defendants are "knowing or intending that they are to be used in preparation for, or in carrying out," a violation of one or more of the terrorism-related crimes enumerated in the statute. 18 U.S.C. § 2339A. To satisfy section 2339A's scienter requirement, a plaintiff must prove "that the defendant acted with the specific knowledge or intent that its support would be used in preparation for, or in carrying out, one of the enumerated terrorism-related crimes." *Chiquita*, 284 F. Supp. 3d at 1309. The Supreme Court has read this provision stringently, requiring that a defendant act "under the direction of, or in coordination with" a group that it "knows to be" a terrorist organization. *Holder*, 561 U.S. at 26.

Here, the FAC is devoid of any nonconclusory allegation demonstrating that Ms. Baroud acted under the direction or in coordination with Hamas. Absent such factual support, Plaintiffs' claim must fail. *See Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) ("repeated conclusory statements in the complaint that [banks] 'conspired' with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda," failed to plead scienter), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *see also*

18

*Newman*, 758 F. Supp. 3d at 1378–80 (dismissing ATA material support claim because plaintiffs failed to plead the requisite scienter); *cf. Linde,* 384 F. Supp. 2d at 588 ("[P]laintiffs allege both that the Bank plays a central role in a well-publicized plan to reward terrorists killed and injured in Palestinian suicide attacks in Israel and that the Bank knows that the groups to which it provides services are engaged in terrorist activities.").

    Third, Plaintiffs have failed to plead the element of proximate cause necessary for a direct liability claim. *See* 18 U.S.C. § 2333(a) (redress to victims who demonstrate that they were injured "*by reason* of an act of international terrorism.") (emphasis supplied); *see also Newman*, 758 F. Supp. 3d at 1380 ("The Supreme Court has repeatedly held that when Congress uses the language 'by reason of,' it requires a showing of proximate cause," citing *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018)). There are two articulations of proximate cause under the ATA: the "direct relationship" approach between the injuries suffered and defendant's alleged acts; and the "substantial factor" approach, that the defendant's alleged acts were a substantial factor in the sequence of events leading to the injuries, and such injuries were reasonably foreseeable or anticipated as a result of the alleged conduct. *See Newman*, 758 F. Supp. 3d at 1380 (collecting cases). The Eleventh Circuit has not decided which approach should apply, *see Colon*, 14 F.4th at 1223, but sister courts have adopted the less burdensome "substantial factor" approach. *See Newman*, 758 F. Supp. 3d at 1380 (quoting *Chiquita*, 284 F. Supp. 3d at 1314).

19

Irrespective of which approach the Court applies here, Plaintiffs cannot satisfy the ATA's pleading requirements. Their vague and conclusory allegations against Ms. Baroud—that she participated in unspecified social media activities—cannot establish proximate cause for the alleged injuries to Plaintiffs as a result of Hamas's terrorist attacks on October 7, 2023. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting conclusory allegations that provision of "routine banking services" to customers affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or plaintiffs' injuries"); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018) (currency processed by BNPP for Sudan was not alleged to be sent to al Qaeda or necessary for Sudan to fund bombings, and therefore not a substantial factor); *see also id.* at 275 ("[W]hen a defendant is more than one step removed from a terrorist act or organization, plaintiffs suing under the ATA must allege some facts demonstrating a substantial connection between the defendant and terrorism."). Even if Ms. Baroud's social media activities in some way related to Hamas, which is not evident from the FAC, Plaintiffs would need to show that her activities were substantially connected to Hamas's undertaking of the October 7 attacks. They cannot; the claims are baseless. *Thompson*, 610 F.3d at 665

### E.  Plaintiffs' counsel should have been aware that the claims against Ms. Baroud were frivolous.

Because the FAC is devoid of any evidentiary basis to connect Ms. Baroud to Hamas, the October 7 attacks, or any attack—and instead only alleges that Ms. Baroud is the daughter of a prominent Palestinian-American journalist and has

advocated in support of Palestine—Ms. Baroud very obviously could not be held liable under the ATA, and Plaintiffs' counsel—who is "sending a message," *see* footnote 1, *supra*, lacked any good and legitimate reason to include Ms. Baroud as a defendant in the FAC. Moreover, Plaintiffs' counsel amended the original complaint to supplement his allegations and add Ms. Baroud as a defendant. This suggests that he put some consideration into the sufficiency of those allegations. Thus, it must be said that after a reasonable inquiry, Plaintiffs' counsel should have known that the claims against Ms. Baroud were not grounded in fact or law. *See, e.g.*, *Diaz*, 643 F. App'x at 923 (affirming Rule 11 sanctions where the defendant obviously could not be held liable based on the statute and the facts pleaded in the amended complaint); *Baker v. Alderman*, 158 F.3d 516, 527 (11th Cir. 1998) (affirming Rule 11 sanctions where, despite the plaintiff's lack of subjective bad faith, the action was frivolous and without foundation).

**F.  As explained above, this lawsuit was filed against Ms. Baroud for an improper purpose.**

Where, as here, a legal filing includes "factually or legally frivolous claims," "a 'motive to harass' can also be inferred." *Thompson*, 610 F.3d at 665–66 (Tjoflat, J., concurring in part). An improper purpose can also be "inferred from circumstantial evidence." *Id.* at 665. Plaintiffs' failure to allege any specific speech by Ms. Baroud—despite the sole allegation against her based on her social media activities for AMP—much less speech that exceeds the protections of the First Amendment, supports the conclusion that this lawsuit against her is an attack on free speech. *See Snyder v.*

*Phelps*, 562 U.S. 443 (2011); *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982). The

purpose here is to malign Ms. Baroud for her speech on Palestine by essentially

equating her with terrorists and linking her to support for international terrorism.

The fact that most of the allegations about Ms. Baroud are really about her father,

who is a prominent Palestinian journalist, underscores the improper purpose—a

warning to Palestinian-Americans and others that if you engage in speech that may

be disfavored, Plaintiff's counsel will "send[ ] a message," *see* footnote 1, *supra*, by

embroiling you in a federal lawsuit for support of foreign terrorism.[3] *See Manhart v.*

*WESPAC Found., Inc.*, 2025 WL 2257408, at *15 (ordering sanctions under Rule 11

where the complaint was "rife with allegations that are irrelevant to Plaintiff's stated

causes of action and which are only a hair's breadth away from calling Defendants

terrorists and placing the loss of innocent lives at their feet."); *see also Florida*

*Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985) (calling for

sanctions under Rule 11 where a litigant seeks an advantage by "attempt[ing] to tie

up" his opponents "in litigation by unsupported allegations"). The Court should

reach the same conclusion as the *Manhart* court. The allegations against Ms. Baroud

---

[3] Nitsana Darshan Leitner, founder and President of the Shurat HaDin Israel Law Center, is
identified as "of counsel" in this case, though she has not filed an appearance or sought
special admission to the Middle District. (Doc. 69 at 26). In a press release on her law firm
website about this case, she writes about defendants, including Ms. Baroud, that "[t]hese
aren't innocent, peaceful college student[s]: it is the same terrorist conspiracy that butchered
thousands of innocent people, tortured and raped men, women and children. If we don't act
urgently against these organizations, America will face the very real threat of its own
October 7th." *See* Shurat HaDin Israel Law Center, "Victims of Hamas Terror Launch
Multi-Million-Dollar Lawsuit Against 'Students for Justice in Palestine,"
https://israellawcenter.org/lawsuit-launched-against-sjp/ (last visited Sept. 18, 2025).

are nothing more than claiming that she is responsible for the "loss of innocent lives" by speaking about Palestine or being the daughter of a prominent journalist who does the same.

## CONCLUSION

For all these reasons, the Court should require Plaintiffs' counsel to pay Ms. Baroud's reasonable attorneys' fees and costs incurred in responding to the operative FAC. *See* Fed. R. Civ. P. 11(c)(4). Because Plaintiffs' allegations fall short of the minimal standards imposed by Rule 11, an award of attorneys' fees and costs is appropriate.

## <u>Local Rule 3.01(g) Certificate</u>

I hereby certify that I conferred with counsel for Plaintiffs on the relief sought herein. Plaintiffs oppose Ms. Baroud's requested relief.

Dated: _____

                              Respectfully submitted,

                              */s/ DRAFT*_____
                              James M. Slater (FBN 111779)
                              Slater Legal PLLC
                              2296 Henderson Mill Rd. NE #116
                              Atlanta, Georgia 30345
                              Tel. (404) 458-7283
                              james@slater.legal

                              *Lead Counsel for Defendant Zarefah Baroud*

# SL | **SLATER LEGAL** PLLC

<u>Atlanta Office/Mailing Address</u>
2296 Henderson Mill Rd. N.E. #116
Atlanta, GA 30345
Tel. (404) 458-7283

<u>Tallahassee Office</u>
113 S. Monroe Street
Tallahassee, FL 32301

September 25, 2025

Robert J. Tolchin                                      *Via Email and Certified Mail*
The Berkman Law Office, LLC
829 East 15th Street, Box 7
Brooklyn, New York 11230

> **Re:**   **Rule 11 Safe Harbor Letter**
> ***Maurice Shnaider, et al., v. American Muslims for Palestine, et al.,***
> **Case No. 8:24-cv-1067 (M.D. Fla.)**

Mr. Tolchin,

I write to request that your law firm and Plaintiffs withdraw their objectively frivolous claims against Taher Herzallah in the amended complaint that your law firm filed in the above-referenced matter.

In accordance with Rule 11(c), I am enclosing a copy of Mr. Herzallah's draft Rule 11 motion for sanctions against Plaintiffs' counsel, which I plan to file on October 16, 2025 unless the meritless claims against Mr. Herzallah are withdrawn before that date.

The attached motion and this letter are not exhaustive of the deficiencies in the lawsuit or any other matter that Mr. Herzallah intends to or may raise in the litigation. All of Mr. Herzallah's rights are expressly reserved, and the fact that an issue may not have been raised in the Rule 11 motion or this letter shall not constitute a waiver of his rights or defenses, including remedies under Rule 12, section 1927, or the Court's inherent power to sanction under federal common law.

Page 2 of 2

---

      While Mr. Herzallah seeks sanctions against you as counsel, please ensure that your clients are also made aware of Mr. Herzallah's intent to seek sanctions after the safe harbor expires. We are hopeful that you will consider the arguments raised herein and withdraw your claims against Mr. Herzallah within the safe-harbor period.

      Should you wish to discuss this matter, please do not hesitate to contact me.

                Sincerely,

                Slater Legal PLLC

                James Slater

Enclosure: Draft Motion

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| MAURICE SHNAIDER, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>AMERICAN MUSLIMS FOR<br>PALESTINE, *et al.*,<br><br>     Defendants. | Case No. 8:24-cv-01067-MSS-SPF |

## **TAHER HERZALLAH'S OPPOSED RULE 11 MOTION**

Pursuant to Rule 11, Defendant Taher Herzallah moves for sanctions against Plaintiffs' counsel for his filing of a frivolous lawsuit. Plaintiff's counsel views this type of litigation as "sending a message,"[1] regardless of its merits. As it pertains to Mr. Herzallah, the entire premise of this case is to send him a message—that he will be punished for his advocacy efforts surrounding Palestine. There is nothing more here; the complaint is objectively frivolous and filed in bad faith. The Court should grant this motion and impose sanctions on Plaintiff's counsel.

---

[1] Jodi Rudoren, *Crusading for Israel in a Way Some Say is Misguided*, N.Y. TIMES (Jan. 23, 2015), www.nytimes.com/2015/01/24/world/middleeast/crusading-for-israel-in-a-way-some-say-is-misguided.html.

## LEGAL STANDARD

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010); *see also Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir. 2001) (The goal of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.")

"Sanctions are appropriate: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (citation omitted).

A two-step inquiry is involved in the decision to impose Rule 11 sanctions, with the court asking "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir. 1998). Thus, the standard for gauging whether a claim is frivolous or meritless is an objective one, "[h]ence courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003) (citing *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir. 1987); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) ("Both inquiries measure attorney conduct under

2

an objective reasonably competent attorney standard."(Tjoflat, J., concurring in part).

"A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law." *Id.* (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed." *Thompson*, 610 F.3d at 665 (citations omitted).

After concluding "that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous." *Id.* The court asks "what was known or reasonably knowable when the paper was 'present[ed] to the court.'" *Id.* (quoting Fed. R. Civ. P. 11(b)). "Measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed." *Id.* "The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others." *Id.*

"Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper for an improper purpose. Improper purpose is often inferred from circumstantial evidence." *Id.* at 665-66. "A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims. *Id.* "A Rule 11(b)(2)

3

or (b)(3) violation—bringing a legally or factually frivolous claim—is often probative

of a Rule 11(b)(1) improper purpose violation." *Id.* at 664.  If a filing violates Rule

11(b), the Court may impose "an appropriate sanction" on the attorney responsible

for the violation. *See* Fed. R. Civ. P. 11(c)(1). The sanction may include an award of

attorney's fees and other expenses directly resulting from the violation. *See* Fed. R.

Civ. P. 11(c)(4).

## ARGUMENT

Plaintiffs are individuals and the relatives of individuals who allege harm

resulting from Hamas' October 7, 2023 terrorist attack in Israel, and other

subsequent terrorist attacks in Israel. *See* First Amended Complaint ("FAC") at ¶¶

417–452.  Plaintiffs allege Mr. Herzallah "is the Associate Director of Outreach and

Community Organizing for AMP and serves as AMP's liaison to SJP and as a

liaison between SJP chapters across the country." *Id.* ¶ 59; *see also id.* ¶ 156

(describing that Mr. Herzallah helps campus groups "procure grants, materials and

speakers"). Otherwise, Plaintiffs allege that Mr. Herzallah has spoken at several

conferences and on panels, where he has discussed the Israeli-Palestinian conflict. *See*

*id.* ¶¶ 121–23.

Plaintiffs further allege that Mr. Herzallah "has called for violence against

Israel and was twice arrested for anti-Israel activity, including disrupting a U.S.

congressional hearing." *Id.* ¶¶ 156, 228.  That he has allegedly stated "Israelis have to

be bombed, they are a threat to the legitimacy of Palestine, and it is wrong to

4

maintain the State of Israel. It is an illegitimate creation born from colonialism and racism." *Id.* ¶ 157. And that he has celebrated attacks on the Israeli Defense Forces. *Id.* Finally, without any support, Plaintiffs accuse Mr. Herzallah of "hav[ing] terrorist affiliations or outwardly support Hamas's terrorist agenda." *Id.* ¶ 198.

These factual claims constitute naked assertions, devoid of factual enhancement, and are frivolous. Not one specific fact is offered or alleged that could provide non-frivolous evidence to support Plaintiffs' factual claims that Mr. Herzallah violated the Anti-Terrorism Act with respect to Hamas's attacks on October 7, 2023. Thus, sanctions are appropriate. *Thompson*, 610 F.3d at 665 (sanctions are proper "where no evidence or only patently frivolous evidence is offered to support factual contentions") (Tjoflat, J., concurring in part).

### A. The Anti-Terrorism Act.

The Anti-Terrorism Act ("ATA") creates a cause of action for U.S. nationals injured in their "person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). An injured person may also bring suit against "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with" a designated foreign terrorist organization that committed the act of international terrorism. *Id.* § 2333(d)(2). U.S. national plaintiffs must first establish themselves as "injured in his or her person, property, or business by reason of an act of international terrorism." *Id.* § 2333(a); *see also* 18 U.S.C. § 2331(1) (defining an act of "international terrorism" as used in the statute). To establish aiding and abetting

5

liability under the ATA, plaintiffs must allege their injury arose "from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization," and that the alleged aider/abettor "knowingly provided substantial assistance" to that act. *Id.* § 2333(d); *see also Colon v. Twitter, Inc.*, 14 F.4th 1213, 1222 (11th Cir. 2021).

A plaintiff must establish that the defendant who allegedly aided or abetted took "some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). The plaintiffs also bear the burden to establish that defendants were "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Leisrael v. Educ. for a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). Plaintiffs must show that each defendant must "knowingly and substantially assist[ed] the principal violation." *Id.* Finally, plaintiffs must allege facts showing the relevant assistance to be both substantial that it and significantly enhanced the terrorist organization's ability to carry out those activities. *Taamneh*, 598 U.S. at 495 (finding insufficient the claim that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it").

Here, Plaintiffs assert claims against Mr. Herzallah for aiding and abetting, conspiracy, and material support liability. Because the claims are objectively meritless and filed for an improper purpose, they are sanctionable under Rule 11. Each claim is addressed in turn.

6

**B.  Plaintiffs aiding and abetting claim is objectively frivolous.**

To plausibly assert a claim for aiding and abetting liability under section

2333(d)(2), Plaintiffs must show "(1) that the defendant knowingly provided

substantial assistance to a foreign terrorist organization, (2) that the foreign terrorist

organization committed an act of international terrorism, and (3) that plaintiff was

injured in their person, property, or business by the act of international terrorism."

*Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *21 (E.D. Va. Aug. 15, 2025)

(citing § 2333(d)(2)) & (dismissing ATA claims against Mr. Herzallah based on the

same conduct alleged here).

While Plaintiffs fail to allege facts sufficient to meet at least the second two of

those three requirements—that acts of international terrorism harmed them—, they

do not allege a single act by Mr. Herzallah that provided any assistance in those acts.

*See Parizer*, 2025 WL 2382933, at *23 ("Plaintiffs' broad assertion that 'Defendants'

support has been so systematic that Defendants aid and abet every wrongful act

committed by Hamas and its affiliates'" does not "circumvent the necessity to

sufficiently allege 'defendants actually aided and abetted each tort of that

enterprise,'" quoting *Taamneh*, 598 U.S. at 506). Indeed, the Supreme Court limits

aiding and abetting liability under the ATA to "truly culpable conduct," meaning

"conscious, voluntary, and culpable participation in another's wrongdoing."

*Taamneh*, 598 U.S. at 490.  Thus, a defendant must have aided and abetted a specific

tortious act by knowingly providing substantial assistance to the principal

7

wrongdoer. *See id.* at 494 (quoting *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)).

To demonstrate aiding and abetting liability, courts look to *Halberstam*'s "legal framework," *see Taamneh*, 598 U.S. at 485, which requires: "(1) a wrongful act by the primary actor causing injury; (2) the defendant's general awareness of their role in the illegal or tortious activity at the time they provided assistance; and (3) the defendant's knowing and substantial assistance to the principal violation." *Parizer*, 2025 WL 2382933, at \*21 (citing *Halberstam*, 705 F.2d at 484). In addition, the *Halberstam* framework provides six more factors for consideration of whether assistance is "substantial," which are: "(1) the nature of the act assisted; (2) the amount of assistance; (3) the defendant's presence at the time of the act; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the duration of assistance." *Parizer*, 2025 WL 2382933, at \*21 (citing *Halberstam*, 705 F.2d at 488). The importance of these factors, as explained by the Supreme court in *Taamneh*, is to help "capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor." *Taamneh*, 598 U.S. at 504.

Here, the FAC is devoid of any nonconclusory allegations to support aiding and abetting liability as to Mr. Herzallah. The sole allegations against Mr. Herzallah are that he was a campus liaison for Students for Justice in Palestine, attended and spoke at conferences and panels generally about Palestine, engaged in protest

8

concerning Israel, and has said negative things about the Israeli military. These are insufficient to establish "knowing and substantial" assistance or "general awareness" of any role in any tortious activity

<u>No Allegations of Knowing and Substantial Assistance</u>

First, Plaintiffs fail to demonstrate the requisite degree of mens rea for knowing and substantial assistance—that Mr. Herzallah disseminated materials on social media "knowingly" and "with the intent of facilitating" the October 7 Hamas terrorist attacks. *Taamneh*, 598 U.S. at 490. The FAC is similarly devoid of any allegations that Mr. Herzallah "sought by [his] action to make [the October 7 attacks] succeed." *Id.* at 498 (citation omitted). While the FAC references certain publications and activities, including those that Plaintiffs contend "sum[] up the entire covert conspiracy that has transpired over the last 20 years," *see* FAC ¶ 206, nowhere does the FAC *specifically* connect any of these alleged statements, publications, or activities with Mr. Herzallah other than broadly referencing his role for AMP, discussing his attendance at conferences where he is alleged to have made statements that are clearly protected speech, and a single Twitter post where Mr. Herzallah spoke critically and negatively of a foreign military. Nowhere does the FAC explain how anyone, let alone Mr. Herzallah, published or made these statements online or at conferences "with the intent of facilitating" the October 7 attacks specifically. Simply because Mr. Herzallah is alleged to have made critical statements about Israel, does not mean he is in league with Hamas or any terrorists.

9

These bald assertions are therefore factually and legally frivolous, because they are unsupported by any evidence whatsoever.

Because the FAC does not allege the requisite degree of mens rea, the Court need not consider the six *Halberstam* factors for whether the alleged assistance was also "substantial." Even so, none of the allegations in the FAC provide any factual support for the contention that Mr. Herzallah specifically aided Hamas (for any duration), provided any assistance to Hamas, was present in either Israel or Palestine at the time of the October 7, 2023 attacks, has any relationship with Hamas, or what his state of mind was in connection to any aid or support to Hamas. Even if Plaintiffs could allege some relationship, there is no evidence of any "arm's-length relationship" with the organization. *See, e.g.*, *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1372–73 (S.D. Fla. 2024) (no arm's-length relationship with Hamas based on purchase of certain photographs from the organization for media purposes). Thus, under the *Halberstam* framework, Plaintiffs cannot demonstrate that Mr. Herzallah provided any "knowing and substantial" assistance to Hamas. Indeed, the only statement in the FAC attributable to Mr. Herzallah that says anything about Hamas is a statement about how scholars and historians will need to grapple with its influence in the Israeli-Palestinian conflict: "Hamas plays an integral role in policy and society I think that is just the reality that we have to acknowledge. . . when the dust settles and when the history of Palestine is written in a hundred years, Hamas will play an integral role in that history." FAC ¶ 123. No possible reading of this statement could support Plaintiff's theory.

Second, the FAC does not allege a "concrete nexus between [these] services"
and the October 7 attacks. *Taamneh*, 598 U.S. at 501. The FAC is devoid of facts
showing that Mr. Herzallah knew or understood that his campus liaison role at a
nonprofit organization in the United States or attendance at conferences on
Palestinian rights were in any way used to support terrorism, nor does the FAC draw
any "concrete nexus" between such activities and the October 7 attacks. Plaintiffs
cannot hold Mr. Herzallah liable under the ATA for his speech or association with
an organization that operates lawfully and entirely within the United States, nor for
his protest or other protected activity. Even if Plaintiffs could suggest some
inadvertent support by Mr. Herzallah (they could not), that is not enough for ATA
liability under section 2333(d). *See id.* at 489; *see also Wendy's Int'l, Inc. v. Nu-Cape
Constr., Inc.*, 164 F.R.D. 694, 699 (M.D. Fla. 1996) (when an attorney files a pleading
that "has no reasonable chance of success or files a pleading in bad faith for an
improper purpose, Rule 11 sanctions should be imposed."),

As another court recently determined that Mr. Herzallah's activities for AMP
did not constitute ATA liability "for injuries stemming from the October 7, 2023
attack," as the plaintiffs there could not "plausibly allege that [he and other
defendants] aided and abetted Hamas in carrying out that attack." *Parizer*, 2025 WL
2382933, at *22. There, as here, Plaintiffs failed "to plead sufficient facts showing a
'definable nexus' between [Mr. Herzallah's alleged] conduct and Hamas's October 7,
2023 attack or subsequent international law violations." *Id*. In *Parizer*, the court
found that even if those plaintiffs had alleged an "attenuated nexus," they had not

11

shown "intentional aid that substantially furthered the tort" or even prior knowledge of the attack. *Id.* This Court should reach the same conclusion. Given that there is no objective basis for Plaintiffs' allegations that Mr. Herzallah aided and abetted Hamas in carrying out the October 7 attacks, the Court should conclude that the complaint is objectively frivolous.

No Allegations of General Awareness

Finally, the FAC fails to demonstrate Mr. Herzallah's "general awareness" of her alleged role in Hamas's terrorist activities. Here, Plaintiffs must demonstrate more than an individual's general support for an organization, but that Mr. Herzallah understood and was actually aware he was "assuming a role" in Hamas's terrorist activities. *See Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), aff'd, 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness: "Because actual awareness is required, the inquiry is not whether a defendant should have been aware of its role."); *Newman*, 758 F. Supp. 3d at 1367–68 (this "element requires an allegation that the [defendant] was 'aware that, by assisting the principal, it is itself assuming a role in terrorist activities,'" quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)).

For this element, Plaintiffs allege no more than Mr. Herzallah's affiliation with an American nonprofit organization engaged in protected First Amendment

activities and his speech at conferences and panels on Palestinians' rights. Plaintiffs fail to demonstrate how Mr. Herzallah, who did not create or operate AMP or any other defendant-entity, had any "general awareness" of a role in Hamas rather than a desire to advocate in support of Palestinians' rights.

This claim is therefore objectively frivolous.

### C. Plaintiffs' conspiracy claim is objectively frivolous.

Section 2333(d) imposes liability on anyone "who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d). Conspiracy requires: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. (citation omitted). "The element of agreement is a key distinguishing factor" between claims for conspiracy and aiding and abetting. *Id.* Like above, the *Halberstam* framework and factors apply. *Taamneh*, 598 U.S. at 485.

Here, the FAC fails to plausibly allege "an agreement" to participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). To establish an "agreement," Plaintiffs

13

must plausibly allege that the conspirators—that is Mr. Herzallah and Hamas—were
"pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873
(D.C. Cir. 2022); *Newman*, 758 F. Supp. 3d at 1374 ("Although courts may 'infer an
agreement from indirect evidence in most civil conspiracy cases,' a complaint must
nonetheless allege that the coconspirators were 'pursuing the same object,'" quoting
*Halberstam*, 702 F.2d at 486–87). Plaintiffs fail to meet that threshold requirement, as
nowhere in the FAC do they allege in any nonconclusory manner the existence of
any agreement between Mr. Herzallah and Hamas related to any alleged mutual
pursuit in the October 7 terrorist attacks.

When considering whether the Associated Press's payments to Hamas for
photographs and images of the October 7 attacks constituted the "pursu[it] of the
same object" under the ATA, the court in *Newman* looked to the Second Circuit's
decision in *Freeman v. HSBC Holdings PLC* to support its conclusion that plaintiffs had
not established conspiracy liability against the AP.  In *Freeman*, the plaintiffs alleged
that certain terrorist organizations were "actively engaged in planning and
perpetrating the murder and maiming of hundreds of Americans in Iraq." 57 F.4th
66, 80 (2d Cir.), *cert. denied*, — U.S. —, 144 S. Ct. 83 (2023). They asserted the
defendants provided terrorist affiliated banks the ability to unlawfully transfer funds
to the United States. *Id.* The Second Circuit concluded that the complaint was
devoid of any assertion that the defendants were in any way engaged in the planning
and murder of Americans in Iraq, nor did the terrorists agree to help the transfer of
money into the United States. *Id.* ("Nowhere in the Complaint, however, do

Plaintiffs plead that the Banks intended to kill or injure U.S. service members in
Iraq."). Thus, there was no "common pursuit" as required under the *Halberstam*
framework. *Id.* (quoting *Halberstam*, 705 F.2d at 481); *see also Bernhardt*, 47 F.4th at
873 ("Bernhardt's conspiracy claim [against HSBC] is inadequate" because "[t]he
complaint states that HSBC was trying to make substantial profits by evading
sanctions, whereas al-Qaeda sought to terrorize the U.S. into retreating from the
world stage").

Taking guidance from *Newman* and *Freeman*, even if Plaintiffs could articulate
some degree of relationship here between Mr. Herzallah and Hamas (they cannot),
there are simply no set of facts to support an allegation that Mr. Herzallah was
engaged in a common pursuit with Hamas to commit the October 7 terrorist attacks.
Because there is no "reasonable chance of success" on this claim, the Court should
conclude that it is objectively frivolous. *Thompson*, 610 F.3d at 665 (Tjoflat, J.,
concurring in part).

### D. Plaintiffs' material support claim is objectively frivolous.

Finally, Plaintiffs assert a direct liability claim against Mr. Herzallah for
material support of Hamas under 18 U.S.C. § 2339B and § 2333(a). To establish such
liability under the ATA, Plaintiffs must demonstrate "(1) unlawful action, *i.e.* an 'act
of international terrorism;' (2) the requisite mental state, and (3) causation." *In re
Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018). Nowhere in
the FAC do Plaintiffs allege with supporting facts that Mr. Herzallah committed an

15

act of terrorism or provided material support to Hamas. Nor do they demonstrate the requisite scienter or causation for such act.

First, the FAC does not plead facts that could establish that Mr. Herzallah committed "an act of international terrorism," as section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (i) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, *see* 18 U.S.C. § 2331(1)(A), and (ii) "appear to be intended" to achieve certain specified terrorist purposes, that is to "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B). To satisfy these requirements, Plaintiffs must demonstrate how *Mr. Herzallah's* conduct constitutes international terrorism. Instead, they allege the opposite, that Hamas, not Mr. Herzallah, "committed, planned, and authorized activities that involved violence or acts dangerous to human life." FAC ¶ 456; *see also id.* ¶ 472 (alleging that "acts … committed, planned, and authorized" by *Hamas* were intended to achieve terrorist purposes). Armed with the allegations that Mr. Herzallah served as a liaison between AMP and SJP and attended various conferences where he is alleged to have criticized Israel, Zionist ideology, and supported Palestinian self-determination, no "objective observer" could "conclude" that Mr. Herzallah intended the October 7 terrorist attacks by virtue of unspecific activities and attendance and speech at panels on topics squarely protected by the First Amendment.. *See Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar.

16

31, 2011); *Chiquita*, 284 F. Supp. 3d at 1305 ("Because § 2333(a) supports only primary liability, a successful ATA plaintiff must allege and prove that the defendant directly committed an "act of international terrorism" which caused the plaintiff's injuries.").

To be sure, even the publication of "information that may have been helpful to [Hamas] in achieving its organizational goals" cannot form the basis of a direct liability claim without facts that could show how broadcasting public information or news "would in all likelihood assist the organization in accomplishing its violent goals." *Kaplan v. Jazeera*, 2011 WL 2314783, at *4, 6 (S.D.N.Y. June 7, 2011); *see also Newman*, 758 F. Supp. 3d at 1376 (dismissing direct liability claim against the AP for purchasing images from Hamas). Construing the FAC in the most favorable light to Plaintiffs, their claims against Mr. Herzallah, at best, are that he coordinated on-campus conferences and events to discuss Palestinians' rights and criticism of Israeli policy vis-à-vis Palestine and Gaza. But even if those acts were helpful to Hamas, that is insufficient for direct liability under the ATA.

Second, Plaintiffs fail to demonstrate the scienter requirement for material support, which requires that defendants are "knowing or intending that they are to be used in preparation for, or in carrying out," a violation of one or more of the terrorism-related crimes enumerated in the statute. 18 U.S.C. § 2339A. To satisfy section 2339A's scienter requirement, a plaintiff must prove "that the defendant acted with the specific knowledge or intent that its support would be used in

17

preparation for, or in carrying out, one of the enumerated terrorism-related crimes."
*Chiquita*, 284 F. Supp. 3d at 1309. The Supreme Court has read this provision stringently, requiring that a defendant act "under the direction of, or in coordination with" a group that it "knows to be" a terrorist organization. *Holder*, 561 U.S. at 26.

Here, the FAC is devoid of any nonconclusory allegation demonstrating that Mr. Herzallah acted under the direction or in coordination with Hamas. Absent such factual support, Plaintiffs' claim must fail. *See Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) ("repeated conclusory statements in the complaint that [banks] 'conspired' with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda," failed to plead scienter), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *see also Newman*, 758 F. Supp. 3d at 1378–80 (dismissing ATA material support claim because plaintiffs failed to plead the requisite scienter); *cf. Linde,* 384 F. Supp. 2d at 588 ("[P]laintiffs allege both that the Bank plays a central role in a well-publicized plan to reward terrorists killed and injured in Palestinian suicide attacks in Israel and that the Bank knows that the groups to which it provides services are engaged in terrorist activities.").

Third, Plaintiffs have failed to plead the element of proximate cause necessary for a direct liability claim. *See* 18 U.S.C. § 2333(a) (redress to victims who demonstrate that they were injured "*by reason* of an act of international terrorism.") (emphasis supplied); *see also Newman*, 758 F. Supp. 3d at 1380 ("The Supreme Court has repeatedly held that when Congress uses the language 'by reason of,' it requires a

18

showing of proximate cause," citing *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391

(7th Cir. 2018)). There are two articulations of proximate cause under the ATA: the

"direct relationship" approach between the injuries suffered and defendant's alleged

acts; and the "substantial factor" approach, that the defendant's alleged acts were a

substantial factor in the sequence of events leading to the injuries, and such injuries

were reasonably foreseeable or anticipated as a result of the alleged conduct. *See*

*Newman*, 758 F. Supp. 3d at 1380 (collecting cases). The Eleventh Circuit has not

decided which approach should apply, *see Colon*, 14 F.4th at 1223, but sister courts

have adopted the less burdensome "substantial factor" approach. *See Newman*, 758 F.

Supp. 3d at 1380 (quoting *Chiquita*, 284 F. Supp. 3d at 1314).

Irrespective of which approach the Court applies here, Plaintiffs cannot satisfy

the ATA's pleading requirements. Their vague and conclusory allegations against

Mr. Herzallah cannot establish proximate cause for the alleged injuries to Plaintiffs

as a result of Hamas's terrorist attacks on October 7, 2023. *See, e.g.*, *In re Terrorist*

*Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting conclusory

allegations that provision of "routine banking services" to customers affiliated with

al-Qaeda "proximately caused the September 11, 2001 attacks or plaintiffs' injuries");

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018) (currency processed

by BNPP for Sudan was not alleged to be sent to al Qaeda or necessary for Sudan to

fund bombings, and therefore not a substantial factor); *see also id.* at 275 ("[W]hen a

defendant is more than one step removed from a terrorist act or organization,

plaintiffs suing under the ATA must allege some facts demonstrating a substantial

19

connection between the defendant and terrorism."). Even if Mr. Herzallah's activities in some way related to Hamas, which is not evident from the FAC other than his statements about how scholars or historians may perceive or grapple with its role in Gaza, Plaintiffs would need to show that his activities were substantially connected to Hamas's undertaking of the October 7 attacks. They cannot; the claims are baseless. *Thompson*, 610 F.3d at 665

### E. Plaintiffs' counsel should have been aware that the claims against Mr. Herzallah were frivolous.

Because the FAC is devoid of any evidentiary basis to connect Mr. Herzallah to Hamas, the October 7 attacks, or any attack—and instead only alleges that Mr. Herzallah spoke critically about the Israeli-Palestinian conflict—Mr. Herzallah very obviously could not be held liable under the ATA, and Plaintiffs' counsel—who is "sending a message," *see* footnote 1, *supra*, lacked any good and legitimate reason to include Mr. Herzallah as a defendant in the FAC. Moreover, Plaintiffs' counsel amended the original complaint to supplement his allegations. This suggests that he put some consideration into the sufficiency of those allegations. Thus, it must be said that after a reasonable inquiry, Plaintiffs' counsel should have known that the claims against Mr. Herzallh were not grounded in fact or law. *See, e.g.*, *Diaz*, 643 F. App'x at 923 (affirming Rule 11 sanctions where the defendant obviously could not be held liable based on the statute and the facts pleaded in the amended complaint); *Baker v. Alderman*, 158 F.3d 516, 527 (11th Cir. 1998) (affirming Rule 11 sanctions where,

despite the plaintiff's lack of subjective bad faith, the action was frivolous and without foundation).

### F.  As explained above, this lawsuit was filed against Mr. Herzallah for an improper purpose.

Where, as here, a legal filing includes "factually or legally frivolous claims," "a 'motive to harass' can also be inferred." *Thompson*, 610 F.3d at 665–66 (Tjoflat, J., concurring in part). An improper purpose can also be "inferred from circumstantial evidence." *Id.* at 665. Plaintiffs' failure to allege anything more than Mr. Herzallah's critical statements about Israel and the role of Hamas in Gaza, or any speech or conduct that exceeds the protections of the First Amendment, supports the conclusion that this lawsuit against him is an attack on free speech. *See Snyder v. Phelps*, 562 U.S. 443 (2011); *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982). The purpose here is to malign Mr. Herzallah for his speech on Palestine by essentially equating him with terrorists and linking him to support for international terrorism. The claims against Mr. Herzallah are a warning to Palestinian-Americans like Mr. Herzallah and others that if you engage in speech that may be disfavored, Plaintiff's counsel will "send[ ] a message," *see* footnote 1, *supra*, by embroiling you in a federal lawsuit for support of foreign terrorism.[2] *See Manhart v. WESPAC Found., Inc.*, 2025

---

[2] Nitsana Darshan Leitner, founder and President of the Shurat HaDin Israel Law Center, is identified as "of counsel" in this case, though she has not filed an appearance or sought special admission to the Middle District. (Doc. 69 at 26). In a press release on her law firm website about this case, she writes about defendants, including Mr. Herzallah, that "[t]hese aren't innocent, peaceful college student[s]: it is the same terrorist conspiracy that butchered thousands of innocent people, tortured and raped men, women and children. If we don't act urgently against these organizations, America will face the very real threat of its own

WL 2257408, at *15 (N.D. Ill. Aug. 7, 2025) (ordering sanctions under Rule 11 where the complaint was "rife with allegations that are irrelevant to Plaintiff's stated causes of action and which are only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet."); *see also Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985) (calling for sanctions under Rule 11 where a litigant seeks an advantage by "attempt[ing] to tie up" his opponents "in litigation by unsupported allegations"). The Court should reach the same conclusion as the *Manhart* court. The allegations against Mr. Herzallah are nothing more than claiming that he is responsible for the "loss of innocent lives" by speaking about Palestine.

## CONCLUSION

For all these reasons, the Court should require Plaintiffs' counsel to pay Mr. Herzallah's reasonable attorneys' fees and costs incurred in responding to the operative FAC. *See* Fed. R. Civ. P. 11(c)(4). Because Plaintiffs' allegations fall short of the minimal standards imposed by Rule 11, an award of attorneys' fees and costs is appropriate.

## Local Rule 3.01(g) Certificate

I hereby certify that I conferred with counsel for Plaintiffs on the relief sought herein. Plaintiffs oppose Mr. Herzallah's relief.

---

October 7th." *See* Shurat HaDin Israel Law Center, "Victims of Hamas Terror Launch Multi-Million-Dollar Lawsuit Against 'Students for Justice in Palestine," https://israellawcenter.org/lawsuit-launched-against-sjp/ (last visited Sept. 18, 2025).

Dated: _____

Respectfully submitted,

*/s/ DRAFT* _____
James M. Slater (FBN 111779)
Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

*Lead Counsel for Defendant Taher Herzallah*