## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

-------------------------------------------------------------X

MAURICE SHNAIDER, *et al.*,

                Plaintiffs,

        v.

AMERICAN MUSLIMS FOR PALESTINE, *et al.*,

                Defendants.

Case No:
8:24-cv-01067-MSS-SPF

-------------------------------------------------------------X

## PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS BAROUD AND HERZALLAH'S RULE 11 MOTIONS[1]

> *For evil to flourish, it only requires good men to do nothing.*
>
> — *Simon Wiesenthal*

Plaintiffs' counsel makes no apology for "sending a message"—the very message Congress intended when it enacted the ATA: that those who coordinate with designated FTOs will be held to account in U.S. courts. Rule 11 cannot be twisted to silence that lawful message of accountability.

Defendants Zarefah Baroud and Taher Herzallah filed Rule 11 motions (ECF Nos. 94 & 95) that largely mirror their Rule 12(b)(6) motions (ECF Nos. 71 & 81), recycling the same "conclusory/speech" refrain and Halberstam/Taamneh

---

[1] Baroud's caption contains a typographical error, incorrectly stating "Zarefah Opposed Baroud's Rule 11 Motion." Plaintiffs, not Zarefah, oppose the motion.

arguments already addressed in Plaintiffs' Oppositions (ECF Nos. 91 & 92). Rule 11 is meant to deter frivolous filings; it is not a vehicle to relitigate the merits or punish advocacy. See *Donaldson v. Clark*, 819 F.2d 1551, 1556–57 (11th Cir. 1987) (en banc). Sanctions require an objectively frivolous filing—one no reasonably competent attorney could view as having any chance of success. *Thompson v. Relation Serve Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). These motions identify none; they merely repackage Rule 12 plausibility disputes, better addressed on the merits.

## LEGAL STANDARD UNDER RULE 11

Fed. R. Civ. P. Rule 11 imposes an objective reasonableness standard to deter baseless filings and promote efficiency. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). Sanctions apply only in limited circumstances: (1) no reasonable factual basis; (2) a legal theory with no chance of success or argument to modify existing law; or (3) filings made in bad faith for an improper purpose. *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016). Both factual and legal inquiries are judged by the "reasonably competent attorney" standard. *Thompson*, 610 F.3d at 665. Rule 11(b)(1) also prohibits filings made for an improper purpose, and any sanction must be "limited to what suffices to deter." Fed. R. Civ. P. 11(c)(4). Measured against these principles, Defendants identify no frivolous claim, false fact, or improper purpose—only plausibility disputes suited for Rule 12, not Rule 11 (see *Boim v. Quranic Literacy Inst.*, 127 F. Supp. 2d 1002 (N.D. Ill. 2001) (denying Rule 11 sanctions in ATA case)).

## ARGUMENT

### I.    Rule 11 Does Not Provide a Second Bite at the Rule 12(b)(6) Apple

Each motion simply rehashes Defendants' Rule 12(b)(6) arguments. Rule 11 addresses the conduct of filings, not pleading sufficiency. *Worldwide Primates*, 87 F.3d at 1254. The motions re-argue issues already raised in the motions to dismiss and should be denied.

### II.    Plaintiffs' ATA Claims Are Well-Founded in Fact and Law

Defendants' claim that the FAC rests on "conclusory" or "speech-based" allegations ignores both its structure and its substance. But the FAC sets forth a detailed and coherent account of a multi-decade, multi-defendant enterprise through which each Defendant, acting in coordination with others, helped sustain and operationalize Hamas's U.S. support network. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (pleadings must be read as a whole).

The FAC traces that enterprise to Hamas's 1993 Philadelphia meeting, where the Hamas-affiliated Palestine Committee devised a long-term strategy to cultivate successors, infiltrate American universities, and build public legitimacy for Hamas. When Hamas's earlier U.S. fronts—IAP, AMS, and HLF—collapsed under criminal prosecutions and civil ATA litigation, their leadership and assets re-emerged through new successor entities, including AMP and, later, NSJP. The FAC details how Defendants Baroud and Herzallah acted within that same successor structure: Baroud, as AMP's Digital Media Associate, produced and disseminated propaganda and social-media content used by SJP chapters nationwide; Herzallah, as AMP's Associate Director of Outreach and Community

Organizing, served as AMP's liaison to NSJP and SJP chapters, coordinating mobilization that advanced Hamas's ideological and operational objectives.

Defendants' insistence that their names appear only briefly in the FAC misses the point. Courts evaluating ATA claims "do not parse allegations in isolation but view them collectively to determine whether the complaint as a whole supports a plausible inference of concerted action." *Tellabs*, 551 U.S. at 322–23; *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983). Viewed collectively, the FAC's allegations of overlapping leadership, shared resources, and coordinated messaging describe precisely the kind of concerted conduct that satisfies *Halberstam*'s six-factor framework. *See also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 698 (7th Cir. 2008) (en banc) (holding that providing infrastructure, legitimacy, and resources to Hamas constitutes material support).

Far from "conclusory," these allegations rest on public records, congressional findings, media reports, and Defendants' own statements—facts showing a continuous effort to normalize and amplify Hamas's messaging and intimidation on U.S. campuses. The FAC alleges both pre-October 7 and post-October 7 conduct: before the attacks, Defendants helped build the ideological and logistical infrastructure that projected Hamas's campaign of violence beyond Israel; after the attacks, they used that same network to glorify, justify, and operationalize Hamas's atrocities through coordinated student activity. That conduct falls squarely within the framework of civil aiding-and-abetting and conspiracy liability under 18 U.S.C. § 2333(a) and (d).

Rule 11 does not punish good-faith advocacy or novel legal theories. *Davis v. Carl*, 906 F.2d 533 (11th Cir. 1990). Plaintiffs' claims rest on the long-recognized principles of *Halberstam,* reaffirmed in *Twitter v. Taamneh*, 598 U.S. 471 (2023), which confirmed that ATA secondary liability turns on foreseeability and substantial assistance, not direct participation in the terrorist act itself.

Read as a whole, the FAC pleads detailed, defendant-specific conduct that plausibly supports aiding-and-abetting, conspiracy, and material-support liability under the ATA. Defendants' atomized and selective reading cannot overcome the complaint's factual depth or meet Rule 11's objective-reasonableness standard. The Rule 11 motions add nothing new; they merely re-package the same arguments already refuted in Plaintiffs' Oppositions to the Motions to Dismiss (see *Boim*, 127 F. Supp. 2d at 1006–07, denying Rule 11 sanctions in ATA case).

## III.  <u>No Improper Purpose</u>

Defendants' assertion that this case was filed to harass them or punish advocacy is unfounded. Rule 11(b)(1) addresses filings made for an improper purpose—not legitimate efforts to enforce federal law. The action targets coordinated conduct with a designated FTO, not protected political expression. The 200-plus page FAC is a detailed, evidence-based pleading documenting a coordinated enterprise supporting Hamas's objectives. Plaintiffs' counsel filed it in good faith, after extensive investigation, and in coordination with other ATA litigation arising from the October 7 Attacks and their aftermath.

**A. Counsel Acted in Good Faith.** Plaintiffs and their counsel fully support lawful, peaceful political expression. The FAC does not target speech; it targets

conduct—specifically, the knowing provision of material support to a designated FTO. Congress enacted 18 U.S.C. § 2333(a) and (d) to ensure that civil actors who coordinate with, or provide services to, terrorist groups face accountability. Filing such claims is not harassment; it is the precise mechanism Congress created to deter and expose terrorism support—an imperative made undeniable after October 7.

Defendants' reliance on a *New York Times* profile of Nitsana Darshan-Leitner from a decade ago cannot, as a matter of law or logic, establish an "improper purpose." Rule 11 looks to the filer's objective intent at the time of filing, not decade-old media commentary. See *Donaldson*, 819 F.2d at 1556. The "send a message" phrase Defendants highlight was lifted from a 2015 opinion piece that mischaracterized Shurat HaDin's deterrent-litigation model.[2] A journalist's decade-old phrasing has no bearing on the good-faith certification accompanying the 2024 pleading. The "message" in context has always meant lawful deterrence—ensuring that those who aid or abet terrorism face civil accountability—the precise deterrent purpose Congress embedded in the ATA itself. Indeed, the prospect of people facing damages judgments for conduct that causes damage is the foundation of American tort law, which is designed to inspire people not to engage in such conduct. A decade-old article cannot retroactively supply evidence of present intent or transform a well-founded complaint into harassment.

---

[2] The opinion piece cited is *Crusading for Israel in a Way Some Say Is Misguided*, N.Y. Times (Jan. 24, 2015). That same article appeared in earlier Rule 11 motions filed in this case by other Defendants (ECF Nos. 82–84) and appears to have inspired the present filings. The selective reuse of a decade-old, unrelated media piece confirms that this motion merely imitates those prior Rule 11 filings and was brought to harass, not to deter.

**B. Allegations Are Relevant and Grounded.** Defendants' contention that Plaintiffs sued them for their "advocacy" or "associations" misstates both the law and the FAC. The FAC pleads that Baroud, through her leadership role at AMP, managed and disseminated Hamas-aligned propaganda for use by SJP chapters, and that Herzallah, as AMP's campus liaison, coordinated campus operations through which Hamas's messaging was amplified and legitimized. These allegations concern coordinated conduct and organizational activity, not isolated speech.

Equally baseless is Baroud's claim that referencing her familial connections to individuals involved in Hamas-linked institutions was intended to harass. Those facts show continuity of personnel, relationships, and coordination—a recognized evidentiary basis for conspiracy and aiding-and-abetting liability under *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). Contextual allegations showing network continuity are proper and necessary to establish organizational linkage.

**C. Personal Attacks on Counsel Do Not Establish Improper Purpose.** Defendants' attacks on Plaintiffs' counsel—through references to a 2015 *New York Times* article and a selective quotation from Shurat HaDin's website—are irrelevant. Rule 11 addresses filings, not personalities. *Donaldson*, 819 F.2d at 1556. Defendants cite a press release in which Nitsana Darshan-Leitner stated,"[t]hese aren't innocent, peaceful college students; it is the same terrorist conspiracy that butchered thousands of innocent people, tortured and raped men, women and children. If we don't act urgently against these organizations, America will face the very real threat of its own October 7th." That statement does not malign

Defendants for their speech or equate protected expression with terrorism. It reflects a lawful call to expose and deter those coordinating with designated terrorist groups—the very deterrent purpose Congress embedded in the ATA. Rule 11 cannot be stretched to convert lawful deterrent litigation into a referendum on speech.

Nor does the absence of Ms. Darshan-Leitner's notice of appearance have any relevance.[3] She is not counsel of record, and her background or public statements have no bearing on whether this pleading was objectively reasonable when filed. Defendants' reliance on ad hominem attacks underscores that they cannot identify any frivolous or improper purpose. As one bereaved family member of an October 7 victim observed, *"The cries of joy, rising from all over America's campuses, on the very same day they butchered my son/daughter…where do they think it will all end?"*[4] That plea for accountability, not silence, underscores why this litigation exists and why labeling it "harassment" is unfounded.

## IV.   <u>The Aiding-and-Abetting Claim Is Objectively Reasonable</u>

Defendants' Rule 11 arguments on aiding and abetting simply re-package the same assertions raised in their Rule 12(b)(6) motions—mischaracterizing Plaintiffs' allegations as "conclusory" and claiming *Taamneh* forecloses liability absent intent to facilitate the October 7 Attacks themselves. Those arguments have already been

---

[3] The same "notice of appearance" argument appeared in the earlier Rule 11 motions. Its rote reuse here shows that this motion simply apes the earlier motions rather than presenting any independent basis for sanctions, underscoring its retaliatory purpose.

[4] https://israellawcenter.org/lawsuit-launched-against-sjp/ (last visited on October 21, 2025)

briefed and answered. Plaintiffs incorporate by reference their Oppositions to the Motions to Dismiss (ECF Nos. 91 & 92), which comprehensively address the *Halberstam* and *Taamneh* frameworks and demonstrate that the FAC pleads detailed, defendant-specific facts satisfying both. Rule 11 does not authorize parties to re-litigate merits issues through sanctions motions.

Even standing alone, Plaintiffs' aiding-and-abetting claims satisfy Rule 11's objective-reasonableness standard. The Supreme Court in *Taamneh* reaffirmed, rather than narrowed, *Halberstam*'s framework: liability attaches when a defendant is generally aware of its role in an unlawful venture where terrorism is foreseeable and knowingly provides substantial assistance. *Taamneh,* 598 U.S. at 495–97. The FAC alleges that both Baroud and Herzallah played integral roles within AMP— the successor to Hamas's dismantled U.S. fronts—and its student arm, NSJP, which coordinated hundreds of campus chapters that glorified and operationalized Hamas's violence. Read collectively, as *Tellabs* requires, 551 U.S. at 322–23, those allegations fit squarely within *Halberstam*'s paradigm: actors who knowingly sustain a terrorist group's infrastructure, legitimacy, and mobilization network substantially assist its campaign of coercion and intimidation. See *Boim v. Holy Land Foundation*, 549 F.3d 685, 698 (7th Cir. 2008) (en banc).

Defendants' reliance on *Parizer v. AJP Educational Foundation*, 2025 WL 2382933 (E.D. Va. Aug. 15, 2025), is misplaced. *Parizer* involved only October 7 plaintiffs who relied almost entirely on post-attack propaganda to connect defendants' conduct to their injuries. By contrast, this case involves Plaintiffs harmed both on and after October 7 and alleges that Defendants' pre- and post-

attack conduct substantially furthered Hamas's campaign against both groups. Moreover, the *Parizer* court granted plaintiffs leave to amend—confirming that such ATA theories are legally viable and warrant further factual development. Far from foreclosing these claims, *Parizer* underscores that they are being actively litigated in federal courts nationwide and are far from frivolous.

Measured against *Halberstam*, *Taamneh*, and Eleventh Circuit precedent, Plaintiffs' claims are well within the bounds of good-faith advocacy. They rest on a substantial factual record, rely on controlling law, and advance a reasonable interpretation of § 2333(d). Rule 11 protects such advocacy; it does not punish it.

## V.    The Conspiracy Claim Is Objectively Reasonable

Defendants' Rule 11 motions simply repackage their Rule 12 arguments. Plaintiffs' Oppositions (ECF Nos. 91 & 92), incorporated by reference, set forth the governing standards under *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022). Calling these claims "frivolous" ignores both the FAC's detailed factual record and settled law allowing conspiracies to be inferred from circumstantial evidence of shared objectives and coordinated conduct.

The FAC alleges far more than a bare "agreement." It describes a decades-long enterprise linking Hamas's Palestine Committee and its U.S. successors—IAP/AMS/HLF, AMP, USPCN, and NSJP—and identifies each moving Defendant's specific role within that network. Herzallah served as AMP's Associate Director of Outreach and liaison to NSJP/SJP chapters, mobilizing campus activity that amplified Hamas's coercive program before and after October

7. Baroud, as AMP's Digital Media Associate, produced and distributed propaganda for NSJP and SJP chapters that legitimized and operationalized Hamas's messaging across U.S. campuses. Together, they helped convert Hamas's October 7 violence into international terrorism under the ATA—acts intended to intimidate and civilians, influence public opinion, and pressure governments.

Defendants' insistence on a direct agreement with Hamas or a consensus on the specific October 7 operation misstates § 2333(d)(2). The statute imposes liability on anyone "who conspires with the person who committed" the terrorist act; it does not require face-to-face coordination or agreement on time, place, or manner. Courts routinely infer agreement from sustained cooperation within a shared enterprise that predictably advances terrorism. *Halberstam*, 705 F.2d at 481-82; *Atchley*, 22 F.4th at 220. Nor must each conspirator commit an overt act personally; once a conspiracy forms, "all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy." *Halberstam*, 705 F.2d at 481; *Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1276-77 (M.D. Ala. 1999).

Read as a whole—not by merely counting names or isolating summary paragraphs, *Tellabs,* 551 U.S. at 322–23—the FAC alleges concrete, defendant-specific acts within an interlocking structure whose shared objective was to amplify Hamas's campaign of intimidation and coercion. Those allegations easily satisfy Rule 11's objective-reasonableness standard.

The authorities Defendants cite—*Newman*, *Freeman*, and *Bernhardt*—are inapposite. Those cases involved defendants pursuing independent or neutral objectives divorced from any terrorist purpose. Here, Plaintiffs allege continuity,

overlapping leadership, and coordinated structure directed toward a shared goal that predictably advanced Hamas's violence. *Twitter*, 598 U.S. 471, reaffirmed *Halberstam*'s framework and left § 2333(d) conspiracy liability intact.

Rule 11 sanctions are applied to truly baseless filings—claims no reasonably competent attorney could view as having any chance of success. *Thompson*, 610 F.3d at 665. Given the FAC's detailed, corroborated, and defendant-specific allegations and the consistent application of *Halberstam*, *Twombly*, and *Atchley*, the conspiracy count against Baroud and Herzallah is objectively reasonable. Disputes over plausibility belong under Rule 12, not Rule 11.

## VI.    <u>The Material-Support Claim Is Objectively Reasonable</u>

Defendants' Rule 11 challenges to the material-support claim again simply repackage their Rule 12(b)(6) arguments. Plaintiffs' Oppositions to the Motions to Dismiss (ECF Nos. 91 & 92), incorporated by reference, already explain that the FAC plausibly alleges direct liability under 18 U.S.C. § 2333(a) based on knowing violations of § 2339B. Rule 11 does not authorize relitigating those merits issues.

Even viewed independently, the claim easily meets Rule 11's objective-reasonableness standard. The FAC alleges that Defendants knowingly provided "material support or resources" to Hamas by furnishing services, personnel, and infrastructure that advanced its campaign of intimidation and coercion. That conduct fits the statutory definition of "material support" in § 2339A(b)(1) and lies squarely within *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), which confirmed that coordinated activity with an FTO—propaganda, recruitment, or

operational assistance—is unprotected and unlawful. Plaintiffs allege purposeful coordination, not independent advocacy—the precise distinction *Holder* drew.

The FAC pleads specific conduct. Baroud, as AMP's Digital Media Associate, oversaw AMP's social-media operations, produced and amplified Hamas-aligned propaganda for NSJP, and coordinated online campaigns glorifying the October 7 atrocities as "resistance." Herzallah, as AMP's liaison to NSJP/SJP chapters, provided organizational support embedding Hamas's propaganda, praised Hamas's "integral role," and urged post-October 7 agitation. Courts hold that such coordinated propaganda, recruitment, and operational assistance constitute material support. See *United States v. Suarez*, 893 F.3d 1330 (11th Cir. 2018); *Boim* 549 F.3d at 698-702.

Scienter is likewise well-pled. Section 2339B requires only knowledge that Hamas is a designated FTO or engages in terrorism—not intent to cause a specific attack. The FAC alleges both defendants acted through AMP, a successor to IAP and HLF—entities judicially recognized as Hamas fronts—and did so in coordination with NSJP, which publicly declared itself "part of the movement" that includes Hamas. Those allegations more than plausibly establish knowledge that their services and resources supported a terrorist organization.

Causation is likewise grounded in precedent. Defendants' propaganda and mobilization efforts were a substantial factor in ensuring Hamas's atrocities achieved their intended coercive effect—precisely the mechanism that transforms violence into "international terrorism." See *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1314 (S.D. Fla. 2018); *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 273

(D.C. Cir. 2018); *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223 (11th Cir. 2021). Plaintiffs need not trace every operational link; it is enough that they plausibly allege knowing provision of services and personnel in coordination with Hamas's U.S. student network—exactly what § 2339B forbids. See *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329-30 (2d Cir. 2018).

Measured against this body of law, Plaintiffs' material-support theory is plainly colorable and grounded in fact and law. A claim is "frivolous" only if "no reasonably competent attorney could conclude that it has any reasonable chance of success." *Thompson.*, 610 F.3d at 665. The FAC far exceeds that threshold. Defendants' disagreement over the scope of § 2333(a) and § 2339B raises a merits question for Rule 12—not a basis for sanctions under Rule 11.

## VII.   Plaintiffs' Counsel Had Ample Grounds to Bring These Claims

Defendants' claim that Plaintiffs' counsel should have been aware that the claims were frivolous is contradicted by the record. The FAC, more than 200 pages, is a detailed, well-sourced pleading tracing Hamas's U.S. support infrastructure from the 1993 "Philadelphia" strategy through successor entities (IAP/AMS/HLF/AMP/USPCN/NSJP) and alleging how Defendants operated within that network. NSJP's documented campus intimidation further corroborates plausibility. This easily satisfies Rule 11(b)(3)'s reasonable-inquiry standard.

Far from being frivolous, this suit aligns with a growing wave of post–October 7 ATA litigation, including amicus support from State Attorneys General. In addition, authorities at both the state and federal levels have opened inquiries into AMP/NSJP as cited in the FAC (e.g., Virginia Attorney General; New York

legislators; and the House Oversight and Senate HELP Committees).
Congressional and independent research reports cited in the FAC likewise identify
overlapping leadership, funding, and messaging structures linking Hamas-aligned
networks abroad with U.S. counterparts. (*See, e.g.,* testimony before the House
Ways and Means Committee by Dr. Jonathan Schanzer of FDD and JCPA's,
*Students for Justice in Palestine Unmasked* (2023)). Plaintiffs' counsel also considered
*The October 8 Film*, ([https://www.october8film.com/gallery/](https://www.october8film.com/gallery/)), which compiles
contemporaneous footage and communications illustrating coordinated
propaganda networks—further validating the FAC and informing counsel's Rule
11(b)(3) inquiry.

Plaintiffs had ample, non-frivolous grounds to include Baroud and Herzallah
in this case. Rule 11 does not require subpoenas or indictments—only a reasonable
pre-filing investigation—met here through public records, governmental inquiries,
and independent reports. In sum, the FAC's depth, ongoing investigations,
analogous litigation, and corroborating materials easily meet Rule 11's objective
reasonableness standard. Attempting to recast this record as "frivolous" only
underscores Defendants' misuse of Rule 11.

## VIII. <u>The Record Negates Any Finding of Improper Purpose</u>

As explained above (see Section III), Rule 11 does not prohibit lawful
deterrent litigation. The record further confirms that this action was filed in good
faith and for a proper purpose. Defendants offer no evidence that Plaintiffs filed this
action to harass or embarrass. Rule 11(b)(1) targets filings made "for any improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost

of litigation." The FAC is grounded in documented facts, public records, and government designations. It was filed in the aftermath of the October 7, 2023 Hamas massacres and amid an unprecedented wave of antisemitic campus mobilization, led by AMP, USPCN, NSJP, and their leadership networks.

Furthermore, public records after October 7 corroborate the FAC's allegations against Baroud and Herzallah. On October 7, 2023, AMP, where Baroud serves as Digital Media Associate, issued a statement titled *"Israeli Violence Is the Root Cause of Violence and Unrest in the Region"* calling on "collective efforts" in Washington, DC to influence U.S. policy and mobilize supporters nationwide."[5] That message, consistent with AMP's documented role producing coordinated media and activism guides,[6] was disseminated across AMP's official platforms in the days following the attacks, providing coordinated mobilization and branded social-media content under the *"Free Palestine"* banner. Baroud's position within AMP's communications arm and the organization's immediate mobilization confirm her participation in a coordinated digital campaign designed to intimidate, influence public opinion, and pressure government policy—core elements of "international terrorism" under 18 U.S.C. § 2331(1).

Similarly, Herzallah remained publicly engaged in AMP's mobilization following the attacks. In the days after October 7, 2023, he appeared in recorded interviews discussing the "resistance" and urging nationwide mobilization in

---

[5] https://www.ampalestine.org/media/media-room/statements/israeli-violence-root-cause-violence-and-unrest-region (last visited on October 21, 2025)

[6] https://ngo-monitor.org/ngos/american-muslims-for-palestine-amp/, https://www.ampalestine.org/media/media-room/statements/israeli-violence-root-cause-violence-and-unrest-region (last visited on October 21, 2025)

solidarity with Hamas. For example, in one widely circulated post-attack video titled *"The Palestinian War on America – featuring Taher Herzallah,"* Herzallah claimed the "liberation struggle requires sacrifice which everyone is prepared to make."[7] His leadership role, consistent with AMP's broader post-October 7 outreach and coordination with NSJP networks, underscores that Plaintiffs' allegations concern organized mobilization, not isolated personal expression.

Defendants' reliance on *Manhart v. WESPAC Foundation, Inc.*, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025), is misplaced. *Manhart* involved a state tort suit arising from a protest blockade and was sanctioned because it used litigation as a political weapon, unsupported by statute or evidence. This case, by contrast, arises under the ATA and pleads precisely what Congress authorized under JASTA: a decades-long, interlocking system linking AMP, USPCN, and NSJP to Hamas's propaganda and mobilization infrastructure—an enterprise in which Defendants participated, culminating in the October 7 Attacks. Those allegations rest on public records and institutional continuity, not on rhetoric or ideology. *Manhart* targeted expressive protest in a state tort claim for false imprisonment; this case targets coordinated material and organizational support within a terrorist network. Filing a fact-based ATA claim on such evidence is not improper—it fulfills the statute's deterrent purpose. See *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018).

---

[7]    https://www.facebook.com/CanaryMission/videos/watch-share-the-palestinian-war-on-america-featuring-reprashida-taher-herzallah-/2222699358222285/ (last visited on October 21, 2025)

Defendants' invocation of a public press statement by Nitsana Darshan-Leitner, describing the underlying enterprise as "the same terrorist conspiracy that butchered thousands of innocent people," cannot transform a lawful pleading into an impermissible degree of malignment. That statement is protected political expression under the First Amendment. *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913-15 (1982). It reflects a policy view consistent with Congress's deterrent purpose in the ATA, not a personal attack on Defendants' speech.

Taken together, the contemporaneous record and public statements negate any suggestion that this case was filed for an improper purpose. The claims rest on verifiable, publicly sourced facts and pursue the ATA's lawful deterrent mission—not to harass, but to enforce the statute as Congress intended.

## IX.  Defendants Are Not Entitled to Attorneys' Fees or Costs

Defendants' request for attorneys' fees and costs under Rule 11(c)(4) fail. Rule 11's purpose is deterrence of baseless filings—not punishment of good-faith advocacy. Sanctions and fee awards are warranted only where a filing is objectively frivolous—a standard Defendants do not even attempt to meet. See *Thompson,* 610 F.3d at 665; *Worldwide Primates*, 87 F.3d at 1254; *Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003).

The FAC draws from extensive public records, congressional materials, litigation, and government investigations documenting Hamas's U.S. support infrastructure. These authorities confirm Plaintiffs' claims are consistent with a well-developing factual record and statutory framework under § 2333(d). Following

*Twitter*, 598 U.S. 471, courts continue to delineate liability under the ATA. Given this still-developing jurisprudence and the unique post–October 7 context, Plaintiffs' claims fall squarely within legitimate advocacy and do not approach the "objectively frivolous" threshold required for sanctions or fee-shifting.

Even assuming Defendants dispute Plaintiffs' interpretation of the ATA, Rule 11 sanctions are not warranted merely because a legal theory is ultimately rejected. *Donaldson*, 819 F.2d at 1556. Because Defendants identify no objectively unreasonable conduct, their request for attorneys' fees and costs should be denied.

## X.    <u>Rule 11 Cannot be Used to Chill Good-Faith or Novel ATA Advocacy</u>

Rule 11 was never intended to suppress legitimate efforts to develop the law in emerging areas such as ATA liability. Sanctions must be imposed sparingly and only where a filing is objectively frivolous, not where counsel advances a reasonable interpretation or extension of precedent**.** *See Gilmore v. Day*, 125 F. Supp. 2d 468 (M.D. Ala. 2000).

Plaintiffs' claims rest on extensive public documentation, parallel ATA litigation, and governmental inquiries into Hamas-linked networks operating in the U.S. The Supreme Court's decision in *Twitter*, 598 U.S. 471, reaffirmed *Halberstam*, 705 F.2d 472, and confirmed that liability under § 2333(d) continues to evolve through case-by-case factual development. Plaintiffs' counsel acted squarely within that framework.

*Boim* denied Rule 11 sanctions in a Hamas-related ATA case, confirming that good-faith deterrent litigation under § 2333 is protected advocacy. 127 F. Supp. 2d at 1006–07. Congress later enacted JASTA, broadening ATA liability by

codifying aiding-and-abetting and conspiracy under § 2333(d), reaffirming that such civil actions are exactly what Congress intended to encourage. Sanctioning these efforts would contradict Rule 11's purpose and chill the very enforcement the ATA and JASTA were designed to promote. Plaintiffs and their counsel acted in good faith, consistent with statutory purpose, and supported by a strong factual record and current authority.

Imposing sanctions here would contradict Rule 11's deterrent purpose and chill the private enforcement Congress intended § 2333 to encourage. The motions merely repackage Rule 12(b)(6) arguments and identify no objectively frivolous conduct; they should be denied. Pursuant to Fed. R. Civ. P. 11(c)(2) and *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998), Plaintiffs request their reasonable expenses incurred in opposing these unwarranted motions.

## CONCLUSION

Defendants' Rule 11 motions recycle Rule 12(b)(6) arguments and identify no objectively frivolous filing or improper purpose. Rule 11 addresses counsel's certification and conduct; it is not a vehicle to re-argue plausibility or punish lawful advocacy. The FAC reflects a reasonable pre-filing inquiry and colorable claims under 18 U.S.C. § 2333(a) and (d). On this record, sanctions, fees, or costs would not be warranted. For these reasons, Plaintiffs respectfully request that the Court deny the Rule 11 motions of Defendants Zarefah Baroud and Taher Herzallah, and decline to award any sanctions, attorneys' fees, or costs.

Dated:      Brooklyn, New York
             October 27, 2025

Yours,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for Plaintiffs*

by:    /s/ Robert J. Tolchin
       Robert J. Tolchin

829 East 15th Street, Box 7
Brooklyn, New York 11230
718-855-3627

Of Counsel:

NITSANA DARSHAN-LEITNER & CO.

Nitsana Darshan-Leitner

*Israeli Attorney for Plaintiffs*

10 Hata'as Street, Ramat Gan, 52512 Israel

Israeli #: 011-972-523-837-020

US #: (212) 591-0073

## **CERTIFICATE OF SERVICE**

I hereby certify that this Motion filed through the ECF system is expected to be sent electronically to the registered participants as identified on the court's docket.


/s/Robert J. Tolchin
Robert J. Tolchin