## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

-------------------------------------------------------------X

MAURICE SHNAIDER, *et al.*,

               Plaintiffs,

        v.

AMERICAN MUSLIMS FOR PALESTINE, *et al.*,

               Defendants.

Case No:
8:24-cv-01067-MSS-SPF

-------------------------------------------------------------X

### PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS ODEH, ABUDAYYEH, AND USPCN'S RULE 11 MOTIONS

*Silence encourages the tormentor, never the tormented. Sometimes we must interfere.*

—*Elie Wiesel*

Congress enacted the Anti-Terrorism Act so victims can seek civil accountability for those who knowingly coordinate with designated Foreign Terrorist Organizations. Rule 11 cannot be used to silence such suits.

Defendants Magdi Odeh, Hatem Abudayyeh, and USPCN filed Rule 11 motions (ECF 82-84) that mirror their Rule 12(b)(6) motions (ECF 45-47), recycling the same "conclusory/advocacy" refrain and *Halberstam/Taamneh* points already answered in Plaintiffs' Omnibus Opposition (ECF 69). Rule 11 is a deterrent rule, not a vehicle to relitigate merits or punish zealous advocacy. See *Donaldson v. Clark*, 819 F.2d 1551, 1556-57 (11th Cir. 1987) (en banc). Sanctions

require an objectively frivolous filing—one no reasonably competent attorney could view as having any chance of success. *Thompson v. Relation Serve Media, Inc.,* 610 F.3d 628, 665 (11th Cir. 2010); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). These motions identify none; they simply repackage Rule 12 arguments and plausibility disputes, which concern the merits, not sanctions.

## LEGAL STANDARD UNDER RULE 11

Fed. R. Civ. P. Rule 11 imposes an objective reasonableness standard to deter baseless filings and promote efficiency. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). Sanctions apply only in limited circumstances: (1) no reasonable factual basis; (2) a legal theory with no chance of success or argument to modify existing law; or (3) filings made in bad faith for an improper purpose. *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016). Both factual and legal inquiries are judged by the "reasonably competent attorney" standard. *Thompson,* 610 F.3d at 665. Rule 11(b)(1) also prohibits filings made for an improper purpose, and any sanction must be "limited to what suffices to deter." Fed. R. Civ. P. 11(c)(4). Measured against these principles, Defendants identify no frivolous claim, false fact, or improper purpose—only plausibility disputes suited for Rule 12, not Rule 11 (see *Boim v. Quranic Literacy Inst.*, 127 F. Supp. 2d 1002 (N.D. Ill. 2001) (denying Rule 11 sanctions in ATA case)).

## ARGUMENT

### I.    Rule 11 Does Not Furnish a Second Bite at the Rule 12(b)(6) Apple

Each motion simply rehashes Defendants' Rule 12(b)(6) arguments. Rule 11 addresses the conduct of filings, not pleading sufficiency. *Worldwide Primates*, 87

F.3d at 1254. The motions re-argue issues already raised in the motions to dismiss and should be denied.

## II.    Plaintiffs' ATA Claims Are Well-Founded in Fact and Law

Defendants' claim that the FAC rests on "conclusory" or "inane" allegations disregards both its structure and its substance. The FAC sets forth a detailed and coherent narrative of a multi-decade, multi-defendant conspiracy through which each Defendant, acting in coordination with others, built, sustained, and operationalized Hamas's U.S. infrastructure. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (pleadings must be read as a whole).

The FAC alleges that USPCN, Abudayyeh, and Odeh did not act in isolation but as part of a single, continuous enterprise extending back to Hamas's 1993 Philadelphia meeting. There, Hamas's Palestine Committee—through its U.S. front organizations IAP, AMS, and HLF—devised a strategy to cultivate successors, infiltrate American universities, and indoctrinate youth. (FAC ¶¶ 144-45.) Defendants are alleged to have carried forward that strategy by founding AMP and USPCN, successor organizations to those terrorist fronts, and later by establishing NSJP as Hamas's student arm in the United States. The FAC thus pleads an interlocking pattern of continuity and coordination connecting Defendants to Hamas's campaign of terror culminating in the October 7 Attacks.

Defendants' insistence that each name appears only a few times misses the point entirely. Courts evaluating ATA claims "do not parse allegations in isolation but view them collectively to determine whether the complaint as a whole supports a plausible inference of concerted action." *Tellabs*, 551 U.S. at 322-23; *Halberstam v.*

*Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983). The FAC's allegations of shared leadership, overlapping entities, common personnel, and coordinated campaigns and infrastructure describe precisely the kind of concerted course of conduct that satisfies *Halberstam*'s six-factor framework. See also *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 698 (7th Cir. 2008) (en banc) (holding that providing infrastructure, legitimacy, and resources to Hamas constitutes "material support").

Far from "conclusory," these allegations rest on records, Congressional findings, and Defendants' own admissions. They detail a decades-long effort to sustain Hamas's operations through U.S.-based networks that provided personnel, facilities, and messaging to normalize and glorify terrorism. The Omnibus Opposition to the Motions to Dismiss (ECF No. 69) already addresses these facts and legal theories in depth, which Plaintiffs incorporate by reference. The Rule 11 motions add nothing new; they merely re-package the same "conclusory" refrain already refuted there.

Rule 11 does not punish complex or novel legal theories advanced in good faith. *Davis v. Carl*, 906 F2d 533 (11th Cir. 199). Plaintiffs' claims fall within the framework recognized in *Halberstam* and reaffirmed in *Twitter v. Taamneh*, 598 U.S. 471 (2023), which holds that ATA secondary liability turns on foreseeability and substantial assistance, not direct participation in the terrorist act itself.

Accordingly, when the FAC is read as a whole, it pleads detailed, defendant-specific conduct that plausibly supports aiding-and-abetting, conspiracy, and material-support liability under the ATA. Defendants' conclusory and atomized

reading of the FAC cannot satisfy Rule 11's objective-reasonableness standard (see *Boim*, 127 F. Supp. 2d at 1006–07, denying Rule 11 sanctions in ATA case).

### III.  <u>No Improper Purpose</u>

Defendants' "lawfare" claim fails: this suit targets coordinated conduct with a designated FTO, not protected speech, and Rule 11 is no bar to such claims. Defendants' assertion that this action was filed "to harass" or "defame" them is itself baseless and inconsistent with the record. The 200-plus-page FAC is a meticulous pleading that documents, in factual detail, the network of entities and individuals operating within the U.S. that have long advanced Hamas's objectives through mobilization and propaganda. Plaintiffs' counsel filed it in good faith after extensive investigation and in coordination with other ongoing ATA litigation arising from the October 7, 2023 attacks and their aftermath.

**A. Counsel Acted in Good Faith.** Plaintiffs and their counsel fully support lawful, peaceful political expression. The FAC does not target advocacy; it targets conduct that constitutes knowing provision of material support to a designated FTO. Congress expressly created § 2333(a) and (d) to hold civil actors accountable when they knowingly coordinate with, or provide services to, terrorist groups. Bringing such claims under the ATA is not harassment but the lawful mechanism Congress established to deter terrorism support—an imperative made undeniable after October 7.

**B. Allegations Are Relevant and Grounded.** Defendants mischaracterize contextually relevant allegations—such as prior roles, affiliations, and leadership positions—as improper or irrelevant. Each challenged fact (for example, Odeh's

founding roles, Abudayyeh's leadership of USPCN, and their coordination with AMP and NSJP) is directly relevant to the good-faith evidentiary basis for including them as defendants. These facts illustrate the long-standing structural relationship among U.S.-based organizations that grew out of Hamas's 1993 Philadelphia meeting of the "Palestine Committee." Their inclusion reflects a reasonable, fact-based investigation and cannot support Rule 11 sanctions.

### C. Personal Attacks on Counsel Do Not Establish Improper Purpose.

Defendants further attack Plaintiffs' counsel personally, citing a *New York Times* profile of Nitsana Darshan-Leitner from a decade ago, selective excerpts from the Shurat HaDin website, and a routine 2019 FARA registration, as supposed evidence of bad faith. None bears any relevance to Rule 11. Personal attacks on counsel cannot substitute for the required showing of objective frivolousness. *Donaldson* F.2d at 1556 (11th Cir. 1987). Rule 11 addresses papers, not people. The *New York Times* piece—an opinion article published nearly ten years before this case—cannot reasonably support any inference of improper purpose. Rule 11 assesses counsel's objective intent when filing, not decade-old media commentary. The 2015 article was quoted out of context and mischaracterized Shurat HaDin's lawful deterrent-litigation model. The "send a message" phrase it invoked referred to lawful deterrence—the same purpose Congress embedded in the ATA—not to any improper motive. Website mission statements about combating terrorism and antisemitism are neither uncommon nor improper; they reflect a lawful deterrent objective that mirrors Congress's purpose in the ATA. Indeed, the effect of deterring people from doing things that cause damage to others is a fundamental

part of the American tort litigation system. Likewise, the 2019 FARA filing reflected ordinary statutory compliance confirming that counsel performed work for an Israeli client; it involved no political activity, foreign direction, or misconduct.[1]

Nor is it relevant that Ms. Darshan-Leitner has not filed a Notice of Appearance in this case. She is not acting as counsel of record, and her background, views, or advocacy have no bearing on whether the filings before this Court were objectively reasonable when made. Organizing pro bono litigation against terrorism is not harassment under Rule 11. Defendants' reliance on extraneous material only underscores that they have not shown the FAC was objectively frivolous when filed and misstates both the material and Rule 11's standard.

Defendants also argue that Plaintiffs' counsel has said litigation can "send a message." The message here is lawful deterrence— "never again" to coordinated support for terror. Vigorous advocacy is not sanctionable merely because it is forceful or politically charged. *Donaldson v. Clark*, 819 F.2d 1551. These personal insinuations fall far outside Rule 11's scope and underscore that Defendants' motions lack any substantive basis for sanctions.

Defendants' own citation underscores the point. Relying on a Shurat HaDin page, they quote a post-October 7 "Legal War Room" that "provide[s] needed

---

[1] If FARA compliance is to be discussed, Defendants' own conduct, as alleged in the FAC, presents the more serious concern. The FAC describes coordinated messaging and advocacy activities aligned with Hamas, a designated FTO and thus a "foreign principal" under 22 U.S.C. § 611(b). Entities engaged in coordinated political activity "at the order, request, or under the direction or control" of such a principal may themselves be required to register. See id. §§ 611(c)(1), 612(a). Plaintiffs' counsel complied with FARA; Defendants, based on the pleaded facts, appear to have disregarded it.

resources, and utilize[s] courtrooms around the world" to "confron[t] the haters who try to delegitimize Israel." That contemporaneous, court-focused response, joined by hundreds of lawyers worldwide, confirms that Plaintiffs' litigation posture is part of a legitimate, widely shared legal effort, not a frivolous outlier.

**D. Renewed Motion for Alternative Service Was Procedural.** Defendants' portrayal of Plaintiffs' *Renewed Motion for Alternative Service* (ECF No. 78) as "doxing" is baseless. The motion complied with the Court's directive and sought authorization either to serve opaque defendants through the Florida Secretary of State or, alternatively, to take a narrow and limited deposition of counsel who had appeared for those defendants in other related cases regarding service addresses. It requested no private data and reflected diligence, not intimidation or harassment. See *In re FTX Cryptocurrency Exch. Collapse Litig.,* 781 F Supp 3d 1324 (SD Fla 2025) (allowing limited discovery after motion challenging service). Rule 11 does not punish parties for reasonably trying to move a case forward.

## IV.    <u>The Aiding-and-Abetting Claim Is Objectively Reasonable</u>

Defendants' Rule 11 arguments on aiding and abetting simply recycle the same assertions they raised in their Rule 12(b)(6) motions—labeling Plaintiffs' allegations "conclusory" and claiming *Twitter* forecloses liability absent intent to facilitate the October 7 Attacks themselves. Those arguments have already been briefed and answered. Plaintiffs therefore incorporate by reference their Omnibus Opposition to the Motions to Dismiss (ECF No. 69), which comprehensively addresses the *Taamneh* and *Halberstam* frameworks and demonstrates that the FAC pleads detailed, defendant-specific facts meeting both standards. Rule 11 does not

permit parties to relitigate merits arguments through sanctions motions.

Even viewed independently, Plaintiffs' theory meets Rule 11's objective-reasonableness threshold. *Taamneh* reaffirmed, not narrowed, *Halberstam*'s rule that aiding-and-abetting liability attaches when a defendant is generally aware of its role in an unlawful venture where terrorism is foreseeable and knowingly provides substantial assistance. *Taamneh*, 598 U.S. at 495-97. The FAC alleges that Defendants deliberately built and directed U.S. infrastructure to sustain Hamas's campaign of terror by leading successor organizations to adjudicated Hamas fronts and coordinating through NSJP as Hamas's U.S. student arm to ensure Hamas's violence achieved its terrorist purpose of intimidation and coercion.

When read as a whole, as *Tellabs* requires, the FAC describes a decades-long enterprise tracing back to Hamas's 1993 Philadelphia meeting, where the Palestine Committee planned to build successor groups and infiltrate U.S. universities (FAC ¶¶ 144-45). Defendants' effort to isolate a few paragraphs ignores that the allegations must be evaluated collectively. Courts applying *Halberstam* have found comparable allegations sufficient to withstand Rule 12 review. See, e.g., *Boim v. Holy Land Found.*, 549 F.3d 685, 698 (7th Cir. 2008) (en banc); *Kaplan v. Lebanese Canadian Bank*, 999 F.3d 842 (2d Cir. 2021); *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022). Reliance on *Taamneh* cannot turn a colorable, precedent-based ATA claim into a sanctionable one. The First Amendment protects independent expression, not coordinated activity with a designated FTO. *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).

Measured against these authorities, Plaintiffs' claims are well within the bounds of good-faith advocacy. They rest on a thorough factual investigation, rely on governing precedent, and advance a legally supportable interpretation of the ATA—the very conduct Rule 11 protects, not punishes.

### V. The Conspiracy Claim Is Objectively Reasonable

Similarly, Defendants' Rule 11 challenges to the conspiracy claim merely repackage their Rule 12 arguments. Plaintiffs' Omnibus Opposition (ECF No. 69), incorporated by reference, details the FAC's conspiracy allegations and the governing standards under *Halberstam* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Calling the claim "frivolous" ignores both the FAC's detailed factual record and established law allowing conspiracies to be inferred from circumstantial evidence of shared objectives and coordinated conduct.

The FAC alleges far more than a bare "agreement." It outlines a decades-long enterprise linking Defendants' organizations to Hamas's network, beginning with the 1993 Philadelphia meeting where Hamas's Palestine Committee planned its U.S. successors. Defendants then used AMP and USPCN to form and sustain NSJP as Hamas's U.S. student arm, spreading Hamas's messaging across campuses and ensuring that its violence—including the October 7 Attacks—advanced Hamas's goal of intimidation and coercion. Taken as true, these facts support an inference of agreement "to participate in an unlawful act" under *Halberstam* and *Twombly*. *See Atchley*, 22 F.4th at 220-21.

Defendants' insistence on "direct contact" with Hamas or agreement to the specific October 7 operation misstates § 2333(d)(2). The statute imposes liability on

anyone "who conspires with the person who committed" an act of international terrorism; it does not require face-to-face coordination or consensus on time, place, or manner. Courts routinely infer agreement from sustained cooperation within a shared enterprise that predictably advances terrorism. *Halberstam*, 705 F.2d at 481-82; *Atchley*, 22 F.4th at 220. Nor must Plaintiffs plead Defendants' own overt act at this stage; once a conspiracy forms, "all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy." *Halberstam*, 705 F.2d at 481; see *Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1276-77 (M.D. Ala. 1999).

The FAC contains defendant-specific allegations identifying each moving Defendant's role in establishing, directing, and leveraging U.S. entities to advance Hamas's objectives. A complaint must be read as a whole, not by tallying names or isolating summary paragraphs. *Tellabs*, 551 U.S. at 322-23. On that view, the conspiracy allegations easily satisfy Rule 11's objective-reasonableness standard.

Defendants' cited authorities do not warrant sanctions. *Newman*, *Bernhardt*, and *Lavi* involved complaints devoid of context or shared objectives; here, Plaintiffs allege decades of continuity, overlapping leadership, and structural cooperation with Hamas-linked predecessors. *Taamneh*, 598 U.S. 471, reaffirmed *Halberstam*'s framework and left § 2333(d) conspiracy liability intact.

Rule 11 sanctions are reserved for truly baseless filings. A claim is "frivolous" only if no reasonably competent attorney could believe it has any chance of success. *Thompson*, 610 F.3d at 665. The conspiracy count rests on extensive, corroborated factual allegations and fits comfortably within *Halberstam*,

*Atchley*, and related ATA precedent. Disagreement about plausibility belongs in Rule 12, not Rule 11.

**VI.    The Material-Support Claim Is Objectively Reasonable**

Defendants' Rule 11 challenges to the material-support claim again simply repackage their Rule 12 arguments. Plaintiffs' Omnibus Opposition (ECF No. 69), incorporated by reference, already details how the FAC plausibly alleges direct liability under 18 U.S.C. § 2333(a) based on knowing violations of § 2339B. Rule 11 does not authorize relitigating those issues.

Even viewed independently, the claim easily meets Rule 11's objective-reasonableness standard. The FAC alleges that Defendants knowingly provided material support or resources to Hamas by furnishing personnel and infrastructure that advanced Hamas's campaign of intimidation and coercion. Such conduct fits the statutory definition of "material support" under § 2339A(b)(1) and lies squarely within the Supreme Court's holding in *Holder*, 561 U.S. 1, which confirmed that coordinated activity with a designated FTO is unprotected and unlawful. Plaintiffs allege purposeful coordination, not independent advocacy—precisely the distinction *Holder* drew.

Defendants' assertion that Plaintiffs fail to allege an "act of international terrorism" misreads § 2333(a). Liability attaches where a U.S. national is injured "by reason of an act of international terrorism," including the knowing provision of material support that foreseeably enables such violence. *Boim*, 549 F.3d at 698-99. The statute does not require a defendant personally to commit the violent act; aiding or furnishing infrastructure that predictably advances terrorism suffices.

The FAC also plausibly alleges that Defendants themselves engaged in acts of international terrorism as defined in § 2331(1). Terrorism is not limited to the physical atrocities but includes coordinated conduct intended to intimidate or coerce a civilian population or influence government policy. *Holder*, 561 U.S. at 26-27. Plaintiffs allege that USPCN, Abudayyeh, and Odeh each used U.S.-based networks to amplify, justify, and mobilize support for Hamas's October 7 Attacks—conduct intended to coerce and influence through intimidation. Such activity qualifies as "acts dangerous to human life" undertaken to intimidate or coerce within § 2331(1)(A)-(B). See *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329-30 (2d Cir. 2018); *United States v. Suarez*, 893 F.3d 1330 (11th Cir. 2018).

Causation is likewise well-grounded. The FAC alleges that Defendants' activities substantially enhanced Hamas's operational and psychological impact—the very mechanism that transforms violence into international terrorism. See *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1314 (S.D. Fla. 2018); *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018). Defendants' reliance on *Rothstein*, *Fields*, *Crosby*, and *Ofisi* is misplaced; those cases involved neutral financial services without coordination with an FTO. Here, Plaintiffs allege deliberate, coordinated provision of infrastructure and personnel—conduct far beyond passive commerce.

Measured against this precedent, Plaintiffs' material-support theory is plainly colorable and grounded in fact and law. A claim is frivolous only if "no reasonably competent attorney could conclude that it has any reasonable chance of success." *Thompson*, 610 F.3d at 665. The FAC far exceeds that threshold.

Disagreement over how broadly § 2333(a) extends is a merits question for Rule 12, not a basis for sanctions under Rule 11.

## VII.  Plaintiffs' Counsel Had Ample Grounds to Bring These Claims

Defendants' claim that Plaintiffs' counsel "should have known" these claims were frivolous is contradicted by the record. The FAC spans more than 200 pages and comprehensively details Hamas's U.S. support infrastructure, tracing continuity of personnel and infrastructure coordination linking Hamas's Palestine Committee to its American successors—including AMP, USPCN, and NSJP. It sets out, in well-sourced factual detail, how Defendants implemented the 1993 "Philadelphia Plan" to cultivate U.S. organizations functioning as Hamas's propaganda and mobilization arms. NSJP's years-long record of campus intimidation and harassment of Jewish and Israeli students, and organized disruption of pro-Israel expression further underscores the plausibility of their role as part of this coordinated network. Those allegations, supported by public materials, congressional records, and official statements, easily satisfy Rule 11(b)(3)'s reasonable-inquiry standard.

Far from being "frivolous," this suit aligns with a growing body of litigation arising after October 7, 2023, including *Parizer v. AJP Educational Foundation, Inc.*, No. 1:24-cv-00724 (E.D. Va.); *Haggai v. Kiswani*, No. 1:25-cv-02400 (S.D.N.Y.); and *Weinberg v. Nat'l SJP*, No. 2:25-cv-03714 (C.D. Cal.). *Parizer* and *Haggai* are supported by amicus briefs from numerous State Attorneys General endorsing the plaintiffs' ATA theories.

Furthermore, the Virginia Attorney General opened an investigation into AMP (Oct. 2023). New York legislators urged Governor Hochul (Nov. 2023) to review NSJP's Hamas ties. The House Oversight Committee and Senate HELP Committee also launched inquiries into AMP and NSJP's role in organizing and funding pro-Hamas campus activity. *See, e.g.,* Letter from Chairman Comer to NSJP (May 29, 2024); Press Release, House Comm. on Oversight & Accountability (June 6, 2024); Press Release, Sen. Bill Cassidy (Mar. 14, 2025). These investigations show that federal and state authorities view the same factual nexus pleaded here as serious and deserving of official review.

Congressional and independent research reports cited in the FAC reach the same conclusions. In November 2023 testimony before the House Ways and Means Committee, Dr. Jonathan Schanzer of the Foundation for Defense of Democracies detailed the overlapping leadership, funding, and messaging structures linking Hamas-aligned networks abroad with their U.S. counterparts operating on university campuses. Likewise, a 2023 report by the Jerusalem Center for Public Affairs, *Students for Justice in Palestine Unmasked*, documented how SJP chapters—and their affiliated national and organizational leaders, including those named here—function as platforms for groups aligned with designated terrorist organizations. These findings, already cited in the FAC, further validate its allegations and confirm the objective reasonableness of Plaintiffs' investigation.

Plaintiffs had ample, non-frivolous grounds to include Defendants here. The FAC details how each Defendant, through leadership roles in AMP, USPCN, and the NSJP network, participated in the same Hamas-aligned infrastructure under

investigation elsewhere. Rule 11 does not require plaintiffs to await formal subpoenas or indictments before pleading a defendant's participation. What matters is whether a reasonable attorney, after investigation, could conclude that their conduct fell within the same organizational web examined by Congress, state attorneys general, and multiple courts. That standard is easily satisfied.

These parallel cases, amicus filings, and official investigations collectively confirm that Plaintiffs' claims are objectively reasonable and well-grounded in law and fact. Rule 11 is not a weapon to silence litigation on matters of first impression under the ATA. *Donaldson*, 819 F.2d 1551. A claim is frivolous only if "no reasonably competent attorney could conclude that it has any reasonable chance of success." *Thompson.*, 610 F.3d at 665. Given the depth of the FAC, the concurrent federal and state proceedings, the growing body of analogous litigation, and independent reports, this lawsuit plainly meets the objective-reasonableness standard. Defendants' effort to turn Rule 11 into a vehicle for personal attacks and political rhetoric underscores their own misuse of the rule—not any misconduct by Plaintiffs' counsel.

## VIII. The Record Negates Any Finding of Improper Purpose

Defendants offer no evidence that Plaintiffs filed this action to harass or embarrass. Rule 11(b)(1) targets filings made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The FAC is grounded in documented facts, public records, and government designations. It was filed in the aftermath of the October 7, 2023 Hamas massacres—the deadliest assault on the Jewish people since the Holocaust—and

amid an unprecedented wave of antisemitic mobilization on U.S. campuses, fueled and organized through AMP, USPCN, NSJP, and their leadership networks.

Public records since October 7, 2023 corroborate the FAC's allegations of ongoing coordination among these Defendants. USPCN, led by Defendants Abudayyeh and Odeh, has remained publicly active through its national leadership and coordinated campaigns. On October 7, 2023, USPCN issued a public statement justifying the "unified Palestinian Resistance," quoting Abudayyeh as asserting that the attacks "should be understood as a legitimate response."[2] Days later, USPCN published an October 14, 2023 post cataloging nationwide mobilizations it organized or promoted in multiple U.S. cities, reflecting coordination across the organization's chapters."[3] That messaging was followed by continued coordination into 2024, including an April 26, 2024 statement titled *"Support the Student Revolutionaries Fighting for a Free Palestine,"* which noted that USPCN "works closely with and unequivocally supports SJP" and called on supporters "everywhere in the U.S. to join USPCN and support the encampments."[4]

These contemporaneous and publicly documented activities confirm that Plaintiffs' inclusion of these Defendants is based on objective evidence of ongoing organizational conduct and leadership, not speculation or harassment. Filing a

---

[2] USPCN Statement on Unified Palestinian Resistance, https:// uspcn.org/2023/10/14/ uspcn-statement-unified-palestinian-resistance-attacking-israeli-military-outposts-and-illegal-settlements-in-response-to-months-of-israeli-assaults-on-palestinian-civilians/

[3] U.S. Palestinian Cmty. Network, *Protests Around the Country This Weekend!* (Oct. 14, 2023), https://uspcn.org/2023/10/14/protests-around-the-country-this-weekend/

[4] U.S. Palestinian Cmty. Network, *Support the Student Revolutionaries Fighting for a Free Palestine* (Apr. 26, 2024), https://uspcn.org/2024/04/26/uspcn-statement-support-the-student-revolutionaries-fighting-for-a-free-palestine/

colorable ATA claim against U.S. entities and individuals allegedly coordinating with a designated FTO is not improper; it is exactly what Congress intended JASTA to allow. See *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018).

## IX.    Defendants Are Not Entitled to Attorneys' Fees or Costs

Defendants' request for fees under Rule 11(c)(4) is meritless. Rule 11 deters baseless filings; it does not punish good-faith advocacy or litigation on evolving issues. Sanctions, including fee awards, are improper where a pleading presents a plausible legal theory supported by a reasonable factual basis. *See Thompson*, 610 F.3d at 665; *Worldwide*, 87 F.3d at 1254; *TAHFS v. Proctor*, 316 F.3d 584 (6th Cir. 2003). Here, the FAC relies on extensive public records, government findings, and congressional materials regarding Hamas's U.S. support network through AMP, USPCN, and NSJP—allegations consistent with other post-October 7 ATA actions. Given the developing jurisprudence under § 2333(d) after *Twitter v. Taamneh*, 598 U.S. 471 (2023), this case presents unsettled but legitimate issues— far from sanctionable conduct.

Even if Defendants disagree with Plaintiffs' interpretation of the ATA, disagreement on the merits is not a basis for Rule 11 fees. See *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc) ("Rule 11 sanctions are not warranted merely because a legal theory is ultimately rejected."). Plaintiffs have conducted this litigation professionally.

Accordingly, because Plaintiffs' claims are supported by an extensive factual record and by multiple parallel proceedings across the country, Defendants cannot

meet the "objective frivolousness" standard required for fee-shifting. Their request

for attorneys' fees and costs should therefore be denied in its entirety.

## X.    Rule 11 Cannot be Used to Chill Good-Faith or Novel ATA Advocacy

Rule 11 was never intended to suppress legitimate efforts to develop the law

in emerging areas such as ATA liability. Sanctions must be imposed sparingly and

only where a filing is objectively frivolous, not where counsel advances a reasonable

interpretation or extension of precedent**.** *See Gilmore v. Day*, 125 F. Supp. 2d 468

(M.D. Ala. 2000).

Plaintiffs' claims rest on extensive factual research, parallel litigation, and a

growing body of public investigations into Hamas-linked entities operating in the

U.S. In *Twitter*, 598 U.S. 471, the Supreme Court reaffirmed *Halberstam*, 705 F.2d

472, and left ample room for courts to continue refining the contours of ATA

liability. Plaintiffs' counsel acted squarely within that evolving legal framework.

*Boim* denied Rule 11 sanctions in a Hamas-related ATA case, confirming

that good-faith deterrent litigation under § 2333 is protected advocacy. 127 F. Supp.

2d at 1006–07. Congress later enacted JASTA, broadening ATA liability by

codifying aiding-and-abetting and conspiracy under § 2333(d), reaffirming that such

civil actions are exactly what Congress intended to encourage. Sanctioning these

efforts would contradict Rule 11's purpose and chill the very enforcement the ATA

and JASTA were designed to promote. Plaintiffs and their counsel acted in good

faith, consistent with statutory purpose, and supported by a strong factual record

and current authority.

Imposing sanctions here would contradict Rule 11's deterrent purpose and chill the private enforcement Congress intended § 2333 to encourage. The motions merely repackage Rule 12(b)(6) arguments and identify no objectively frivolous conduct; they should be denied. Pursuant to Fed. R. Civ. P. 11(c)(2) and *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998), Plaintiffs request their reasonable expenses incurred in opposing these unwarranted motions.

## <u>CONCLUSION</u>

Defendants' Rule 11 motions recycle Rule 12(b)(6) arguments and identify no objectively frivolous filing or improper purpose. Rule 11 addresses counsel's certification and conduct; it is not a vehicle to re-argue plausibility or punish lawful advocacy. The FAC reflects a reasonable pre-filing inquiry and colorable claims under 18 U.S.C. § 2333(a) and (d). On this record, sanctions, fees, or costs would not be warranted. For these reasons, Plaintiffs respectfully request that the Court deny the Rule 11 motions of Defendants Magdi Odeh, Hatem Abudayyeh, and USPCN, and decline to impose any sanctions, fees, or costs on Plaintiffs.

Dated:      Brooklyn, New York
            October 27, 2025

                        Yours,

                        THE BERKMAN LAW OFFICE, LLC
                        *Attorneys for Plaintiffs*

                        by:    /s/ Robert J. Tolchin
                               Robert J. Tolchin

                        829 East 15th Street, Box 7
                        Brooklyn, New York 11230
                        718-855-3627

Of Counsel:

NITSANA DARSHAN-LEITNER & CO.

Nitsana Darshan-Leitner

*Israeli Attorney for Plaintiffs*

10 Hata'as Street, Ramat Gan, 52512 Israel

Israeli #: 011-972-523-837-020

US #: (212) 591-0073

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Motion filed through the ECF system is expected to be sent electronically to the registered participants as identified on the court's docket.

/s/Robert J. Tolchin
Robert J. Tolchin