UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAURICE SHNAIDER, *et al.*,

      Plaintiffs,

v.                                                   Case No. 8:24-cv-01067-MSS-SPF

AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

      Defendants.

## RAFEEQ JABER'S OPPOSED MOTION TO DISMISS

Pursuant to Rule 12(b)(6) and Local Rule 3.01(c), Defendant Rafeeq Jaber

moves to dismiss Plaintiffs' First Amended Complaint ("FAC") (Doc. 6). Because

Plaintiffs cannot state a claim that Mr. Jaber is liable under the Anti-Terrorism

Act (the "ATA"), the FAC should be dismissed with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are individuals and the relatives of individuals who allege harm

resulting from Hamas' October 7, 2023 terrorist attack in Israel, and other

subsequent terrorist attacks in Israel. *See* FAC at ¶¶ 417–452.  They allege that

Mr. Jaber is liable under the ATA for those Hamas's acts based on the following facts:

First, they allege Mr. Jaber is "a founder of [Defendant] USPCN," *see id.* ¶ 57; *see also id.* ¶ 130, and in 1996 was president of Islamic Association for Palestine, after that organization was taken over by American Muslim Society, *see id.* ¶ 107, until the organization was wound up in 2004 or 2005, *see id.* ¶ 130. Plaintiffs allege IAP was the "primary voice" for Hamas in the United States at the time. *See id.*

Second, they allege that Mr. Jaber "was a speaker at [Defendant] AMP's inaugural conference in 2006 and is a regular speaker at AMP conferences." *Id.* ¶ 57; *see also id.* ¶¶ 122, 154.

Third, they allege that Mr. Jaber is "terrorist-affiliated." *Id.* ¶ 193.

Last, aside from the above allegations, the only substantive allegations centered on Mr. Jaber are where he is lumped with the remaining defendants in conclusory fashion.[1] *Id.* at ¶¶ 2, 8, 406, 407. Plaintiffs allege that all defendants, including Mr. Jaber, must be "accountable … for their egregious acts in conspiring with, aiding and abetting, and providing material support to

---

[1] This is the hallmark of a shotgun pleading under *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015).

2

[Hamas]." *Id.* ¶ 2. They allege that "[i]ndividual defendants," including Mr.

Jaber, "have all conspired with Hamas's terrorist enterprise through their

establishment of or participation in activities with one or more of the

Defendants." *Id.* ¶ 8. Plaintiffs conclude that "Defendants AMP and AJP became

the successors of IAP/AMS and HLF following the *Boim* Judgment," and

subsequently sought to "infiltrate the minds of the young and easily influenced,"

facilitated by individual Defendants, including Mr. Jaber. *Id.* ¶ 406. Finally,

Plaintiffs allege that "the twelve individual defendants," including Mr. Jaber,

"are also part of the Hamas Conspiracy by virtue of their active involvement

with and support of Hamas." *Id.* ¶ 407.

## II.    MEMORANDUM OF LAW

### A. Legal Standard

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more

than labels and conclusions" or "a formulaic recitation of the elements of a cause

of action," but she "does not need detailed factual allegations." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a

complaint must contain "enough facts to state a claim to relief that is plausible on

its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015), which can allow

the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017).

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### B.  Overview of the Anti-Terrorism Act

The Anti-Terrorism Act ("ATA") creates a cause of action for U.S. nationals injured in their "person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). An injured person may also bring suit against "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with" a designated foreign terrorist organization that committed the act of international terrorism. *Id.* § 2333(d)(2). U.S. national plaintiffs must first establish themselves as "injured in his or her person, property, or business by reason of an act of international terrorism." *Id.* § 2333(a); *see also* 18 U.S.C. § 2331(1) (defining an act of "international terrorism" as used in

the statute).  To establish aiding and abetting liability under the ATA, plaintiffs must allege their injury arose "from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization," and that the alleged aider/abettor "knowingly provided substantial assistance" to that act. *Id.* § 2333(d); *see also Colon v. Twitter, Inc.*, 14 F.4th 1213, 1222 (11th Cir. 2021).

A plaintiff must establish that the defendant who allegedly aided or abetted took "some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). The plaintiffs also bear the burden to establish that defendants were "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Leisrael v. Educ. for a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). Plaintiffs must show that each defendant must "knowingly and substantially assist[ed] the principal violation." *Id.* Finally, plaintiffs must allege facts showing the relevant assistance to be both substantial and that it significantly enhanced the terrorist organization's ability to carry out those activities. *Taamneh*, 598 U.S. at 495 (insufficient that a defendant assisted a "transcendent 'enterprise' separate from

and floating above all the actionable wrongs that constitute it").

### C. Plaintiffs' ATA Claims Against Mr. Jaber Fail

Plaintiffs seek to hold Mr. Jaber liable under the ATA for aiding and abetting, conspiracy, and material support. Each claim is addressed in turn.

#### 1. Plaintiffs cannot demonstrate aiding and abetting liability.

Mr. Jaber begins with Plaintiffs' second cause of action for aiding and abetting liability. To plausibly assert a claim for aiding and abetting liability under section 2333(d)(2), Plaintiffs must show "(1) that the defendant knowingly provided substantial assistance to a foreign terrorist organization, (2) that the foreign terrorist organization committed an act of international terrorism, and (3) that plaintiff was injured in their person, property, or business by the act of international terrorism." *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *21 (E.D. Va. Aug. 15, 2025) (citing § 2333(d)(2)); *see also id.* at *3 (dismissing ATA claims).

While Plaintiffs fail to allege facts sufficient to meet at least the second two of those three requirements—that acts of international terrorism harmed them—, they do not allege a single act by Mr. Jaber that provided any assistance in those acts. This failure proves fatal to Plaintiffs' ATA aiding and abetting claim. *See*

*Parizer*, 2025 WL 2382933, at *23 ("Plaintiffs' broad assertion that 'Defendants' support has been so systematic that Defendants aid and abet every wrongful act committed by Hamas and its affiliates'" does not "circumvent the necessity to sufficiently allege 'defendants actually aided and abetted each tort of that enterprise,'" quoting *Taamneh*, 598 U.S. at 506). Indeed, the Supreme Court limits aiding and abetting liability to "truly culpable conduct," meaning "conscious, voluntary, and culpable participation in another's wrongdoing." *Taamneh*, 598 U.S. at 490.  Thus, a defendant must have aided and abetted a *specific* tortious act by knowingly providing substantial assistance to the principal wrongdoer. *See id.* at 494 (quoting *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)).

To demonstrate aiding and abetting liability, courts look to *Halberstam*'s "legal framework," *see Taamneh*, 598 U.S. at 485, which requires: "(1) a wrongful act by the primary actor causing injury; (2) the defendant's general awareness of their role in the illegal or tortious activity at the time they provided assistance; and (3) the defendant's  knowing and substantial assistance to the principal violation." *Parizer*, 2025 WL 2382933, at *21 (citing *Halberstam*, 705 F.2d at 484). In addition, the *Halberstam* framework provides six more factors for consideration of whether assistance is "substantial," which are: "(1) the nature of the act

assisted; (2) the amount of assistance; (3) the defendant's presence at the time of the act; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the duration of assistance." *Parizer*, 2025 WL 2382933, at *21 (citing *Halberstam*, 705 F.2d at 488). The importance of these factors, as explained by the Supreme court in *Taamneh*, is to help "capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor." *Taamneh*, 598 U.S. at 504.

Here, the FAC is devoid of any nonconclusory allegations to support aiding and abetting liability as to Mr. Jaber. The sole allegations against Mr. Jaber are that he participated in several organizations in the past and attended conferences on Palestinians' rights. While Plaintiffs seek to connect Mr. Jaber to Hamas through his role in various organizations like IAP, AMS, and USPCN, nothing in the FAC demonstrates how those former roles or his appearance at conferences hosted by AMP establish "knowing and substantial" assistance or "general awareness" of any role in the October 7, 2023 Hamas attacks.

<u>No Allegations of Knowing and Substantial Assistance</u>

Plaintiffs further fail to demonstrate Mr. Jaber's knowing and substantial assistance to Hamas.

First, Plaintiffs fail to demonstrate the requisite degree of mens rea for knowing and substantial assistance—that Mr. Jaber acted "knowingly" and "with the intent of facilitating" the October 7 Hamas terrorist attacks. *Taamneh*, 598 U.S. at 490. The FAC is similarly devoid of any allegations that Mr. Jaber "sought by [his] action to make [the October 7 attacks] succeed." *Id.* at 498 (citation omitted). While the FAC references certain activities and organizational affiliation, including those that Plaintiffs contend "sum[] up the entire covert conspiracy that has transpired over the last 20 years," *see* FAC ¶ 206, nowhere does the FAC connect any of these alleged activities "with the intent of facilitating" the October 7 attack specifically.

Because the FAC does not allege the requisite degree of mens rea, the Court need not consider the six *Halberstam* factors for whether the alleged assistance was also "substantial." Even so, none of the allegations in the FAC provide any factual support for the contention that Mr. Jaber specifically aided Hamas leading up to the October 7, 2023 attack, provided any assistance to Hamas in doing so, was present in either Israel or Palestine at the time of the

October 7, 2023 attack, has any relationship with Hamas, or what his state of

mind was in connection to any aid or support to Hamas. Even if Plaintiffs could

allege some relationship by tying Mr. Jaber to AMS, IAP, and other

organizations, there is no evidence of any "arm's-length relationship" with

Hamas; and even if there were, there is none to suggest such a relationship

leading up to the specific tortious acts alleged here. *See, e.g.*, *Newman v. Associated

Press*, 758 F. Supp. 3d 1357, 1372–73 (S.D. Fla. 2024) (no arm's-length relationship

with Hamas based on purchase of certain photographs from the organization for

media purposes). Thus, under the *Halberstam* framework, Plaintiffs cannot

demonstrate that Mr. Jaber provided any "knowing and substantial" assistance

to Hamas here.

        Second, the FAC does not allege a "concrete nexus between [these]

services" and the October 7 attacks. *Taamneh*, 598 U.S. at 501. The FAC is devoid

of facts showing that Mr. Jaber knew or understood that his alleged roles in

various organizations within the United States, or his attendance at conferences

on Palestinians' rights, were in any way used to support terrorism, nor does the

FAC draw any "concrete nexus" between such activities and the October 7

attacks. Plaintiffs cannot hold Mr. Jaber liable under the ATA without such

demonstration. Even if Plaintiffs could suggest some inadvertent support by Mr.
Jaber (the complaint explains none with respect to the attacks), that is not enough
for ATA liability under section 2333(d). *See id.* at 489.

Another court recently determined that similar conduct by AMP and its
staff did not constitute ATA liability "for injuries stemming from the October 7,
2023 attack," as the plaintiffs there could not "plausibly allege that [AMP and
other defendants] aided and abetted Hamas in carrying out that attack." *Parizer*,
2025 WL 2382933, at *22. There, as here, Plaintiffs failed "to plead sufficient facts
showing a 'definable nexus' between [the alleged] conduct and Hamas's October
7, 2023 attack or subsequent international law violations." *Id*. In *Parizer*, the court
found that even if those plaintiffs had alleged an "attenuated nexus," they had
not shown "intentional aid that substantially furthered the tort" or even prior
knowledge of the attack. *Id.* This Court should reach the same conclusion.

<u>No Allegations of General Awareness</u>

Finally, the FAC fails to demonstrate Mr. Jaber's "general awareness" of
his alleged role in Hamas's terrorist activities. Here, Plaintiffs must demonstrate
more than an individual's general support for an organization, but that Mr. Jaber
understood and was actually aware he was "assuming a role" in Hamas's

terrorist activities. *See Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), aff'd, 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness: "Because actual awareness is required, the inquiry is not whether a defendant should have been aware of its role."); *Newman*, 758 F. Supp. 3d at 1367–68 (this "element requires an allegation that the [defendant] was 'aware that, by assisting the principal, it is itself assuming a role in terrorist activities,'" quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)).

For this element, Plaintiffs allege no more than Mr. Jaber's affiliation Palestinian and Muslim rights organizations and his attendance at conferences and panels on Palestinians' rights. Plaintiffs fail to demonstrate how Mr. Jaber had any "general awareness" of a role in Hamas rather than a desire to advocate in support of Palestinians' rights. And even if the FAC did demonstrate that, there is no plausible allegation of general awareness of any role in the alleged tortious conduct here.

Plaintiffs' claim for aiding and abetting warrants dismissal with prejudice.

### 2.  Plaintiffs cannot demonstrate conspiracy liability.

Just as Plaintiffs' aiding and abetting claim fails, so too does their conspiracy claim.

Section 2333(d) imposes liability on anyone "who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d). Conspiracy requires: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. (citation omitted). "The element of agreement is a key distinguishing factor" between claims for conspiracy and aiding and abetting. *Id.* Like above, the *Halberstam* framework and factors apply. *Taamneh*, 598 U.S. at 485.

Here, the FAC fails to plausibly allege "an agreement" to participate in an unlawful act. *Halberstam*, 705 F.2d at 477; *see also Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and

noting that "a conclusory allegation of agreement at some unidentified point
does not supply facts adequate to show illegality."). To establish an "agreement,"
Plaintiffs must plausibly allege that the conspirators—that is Mr. Jaber and
Hamas—were "pursuing the same objective." *Bernhardt v. Islamic Republic of Iran*,
47 F.4th 856, 873 (D.C. Cir. 2022); *Newman*, 758 F. Supp. 3d at 1374 ("Although
courts may 'infer an agreement from indirect evidence in most civil conspiracy
cases,' a complaint must nonetheless allege that the coconspirators were
'pursuing the same object,'" quoting *Halberstam*, 702 F.2d at 486–87). Plaintiffs fail
to meet that threshold requirement, as nowhere in the FAC do they allege in any
nonconclusory manner the existence of any agreement between Mr. Jaber and
Hamas related to any alleged mutual pursuit in the October 7 terrorist attacks.

When considering whether the Associated Press's payments to Hamas for
photographs and images of the October 7 attacks constituted the "pursu[it] of the
same object" under the ATA, the court in *Newman* looked to the Second Circuit's
decision in *Freeman v. HSBC Holdings PLC* to support its conclusion that plaintiffs
had not established conspiracy liability against the AP.  In *Freeman*, the plaintiffs
alleged that certain terrorist organizations were "actively engaged in planning
and perpetrating the murder and maiming of hundreds of Americans in Iraq." 57

F.4th 66, 80 (2d Cir.), *cert. denied*, — U.S. —, 144 S. Ct. 83 (2023). They asserted the defendants provided terrorist affiliated banks the ability to unlawfully transfer funds to the United States. *Id.* The Second Circuit concluded that the complaint was devoid of any assertion that the defendants were in any way engaged in the planning and murder of Americans in Iraq, nor did the terrorists agree to help the transfer of money into the United States. *Id.* ("Nowhere in the Complaint, however, do Plaintiffs plead that the Banks intended to kill or injure U.S. service members in Iraq."). Thus, there was no "common pursuit" as required under the *Halberstam* framework. *Id.* (quoting *Halberstam*, 705 F.2d at 481); *see also Bernhardt*, 47 F.4th at 873 ("Bernhardt's conspiracy claim [against HSBC] is inadequate" because "[t]he complaint states that HSBC was trying to make substantial profits by evading sanctions, whereas al-Qaeda sought to terrorize the U.S. into retreating from the world stage").

Taking guidance from *Newman* and *Freeman*, even if Plaintiffs could articulate some degree of relationship here between Mr. Jaber and Hamas (they cannot), there are simply no set of facts to support an allegation that Mr. Jaber was engaged in a common pursuit with Hamas to commit the October 7 terrorist attacks. Thus, the conspiracy claim should be dismissed with prejudice.

### 3.  Plaintiffs cannot demonstrate material support liability.

Finally, Plaintiffs assert a direct liability claim against Mr. Jaber for material support of Hamas under 18 U.S.C. § 2339B and § 2333(a). To establish such liability under the ATA, Plaintiffs must demonstrate "(1) unlawful action, *i.e.* an 'act of international terrorism;' (2) the requisite mental state, and (3) causation." *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018). Nowhere in the FAC do Plaintiffs allege with supporting facts that Mr. Jaber committed an act of terrorism or provided material support to Hamas. Nor do they demonstrate the requisite scienter or causation for such act. Each defect is addressed in turn.

<u>First</u>, the FAC does not plead facts that could establish that Mr. Jaber committed "an act of international terrorism," as section 2333(a) requires. Under the statute, a defendant's activities constitute "international terrorism" if they (i) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, *see* 18 U.S.C. § 2331(1)(A), <u>and</u> (ii) "appear to be intended" to achieve certain specified terrorist purposes, that is to "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction,

assassination, or kidnapping," *id.* § 2331(1)(B). To satisfy these requirements, Plaintiffs must demonstrate how *Mr. Jaber's* conduct constitutes international terrorism. Instead, they allege the opposite, that Hamas, not Mr. Jaber, "committed, planned, and authorized activities that involved violence or acts dangerous to human life." FAC ¶ 456; *see also id.* ¶ 472 (alleging that "acts … committed, planned, and authorized" by *Hamas* were intended to achieve terrorist purposes). Here, no "objective observer" could "conclude" that Mr. Jaber intended the October 7 terrorist attacks by virtue of attendance at Palestinians' rights conferences or involvement in organizations in the 1990s and early 2000s. *See Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011); *Chiquita*, 284 F. Supp. 3d at 1305 ("Because § 2333(a) supports only primary liability, a successful ATA plaintiff must allege and prove that the defendant directly committed an "act of international terrorism" which caused the plaintiff's injuries.").

To be sure, even the publication of "information that may have been helpful to [Hamas] in achieving its organizational goals" cannot form the basis of a direct liability claim without facts that could show how broadcasting public information or news "would in all likelihood assist the organization in

accomplishing its violent goals." *Kaplan v. Jazeera*, 2011 WL 2314783, at *4, 6

(S.D.N.Y. June 7, 2011); *see also Newman*, 758 F. Supp. 3d at 1376 (dismissing

direct liability claim against the AP for purchasing images from Hamas).

Construing the FAC in the most favorable light to Plaintiffs, their claims against

Mr. Jaber, at best, are that during the relevant time period[2] he participated in

conferences and events to discuss Palestinians' rights and criticism of Israeli

policy vis-à-vis Palestine and Gaza. But even if those acts were helpful to Hamas,

that is insufficient for direct liability under the ATA.

Second, Plaintiffs fail to demonstrate the scienter requirement for material

support, which requires that defendants are "knowing or intending that they are

to be used in preparation for, or in carrying out," a violation of one or more of

the terrorism-related crimes enumerated in the statute. 18 U.S.C. § 2339A. To

satisfy section 2339A's scienter requirement, a plaintiff must prove "that the

defendant acted with the specific knowledge or intent that its support would be

used in preparation for, or in carrying out, one of the enumerated terrorism-

related crimes." *Chiquita*, 284 F. Supp. 3d at 1309. The Supreme Court has read

---

[2] Plaintiffs allege that Mr. Jaber participated in IAP/AMS in the 1990s and early 2000s, and that he cofounded USPCN in or about 2007. Other than founding USPCN, Plaintiffs do not explain any role he has there. Instead, they allege that he participated in AMP's conventions and conferences. FAC ¶¶ 57, 122.

this provision stringently, requiring that a defendant act "under the direction of, or in coordination with" a group that it "knows to be" a terrorist organization. *Holder*, 561 U.S. at 26.

Here, the FAC is devoid of any nonconclusory allegation demonstrating that Mr. Jaber acted under the direction or in coordination with Hamas. Absent such factual support, Plaintiffs' claim must fail. *See Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017) ("repeated conclusory statements in the complaint that [banks] 'conspired' with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda," failed to plead scienter), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *see also Newman*, 758 F. Supp. 3d at 1378–80 (dismissing ATA material support claim because plaintiffs failed to plead the requisite scienter); *cf. Linde*, 384 F. Supp. 2d at 588 ("[P]laintiffs allege both that the Bank plays a central role in a well-publicized plan to reward terrorists killed and injured in Palestinian suicide attacks in Israel and that the Bank knows that the groups to which it provides services are engaged in terrorist activities.").

Third, Plaintiffs have failed to plead the element of proximate cause necessary for a direct liability claim. *See* 18 U.S.C. § 2333(a) (redress to victims

who demonstrate that they were injured "*by reason* of an act of international terrorism.") (emphasis supplied); *see also Newman*, 758 F. Supp. 3d at 1380 ("The Supreme Court has repeatedly held that when Congress uses the language 'by reason of,' it requires a showing of proximate cause," citing *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018)). There are two articulations of proximate cause under the ATA: the "direct relationship" approach between the injuries suffered and defendant's alleged acts; and the "substantial factor" approach, that the defendant's alleged acts were a substantial factor in the sequence of events leading to the injuries, and such injuries were reasonably foreseeable or anticipated as a result of the alleged conduct. *See Newman*, 758 F. Supp. 3d at 1380 (collecting cases). The Eleventh Circuit has not decided which approach should apply, *see Colon*, 14 F.4th at 1223, but sister courts have adopted the less burdensome "substantial factor" approach. *See Newman*, 758 F. Supp. 3d at 1380 (quoting *Chiquita*, 284 F. Supp. 3d at 1314).

Irrespective of which approach the Court applies here, Plaintiffs cannot satisfy the ATA's pleading requirements. Their vague and conclusory allegations against Mr. Jaber cannot establish proximate cause for the alleged injuries to Plaintiffs as a result of Hamas's terrorist attacks on October 7, 2023. *See, e.g., In re*

*Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting

conclusory allegations that provision of "routine banking services" to customers

affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or

plaintiffs' injuries"); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018)

(currency processed by BNPP for Sudan was not alleged to be sent to al Qaeda or

necessary for Sudan to fund bombings, and therefore not a substantial factor); *see

also id.* at 275 ("[W]hen a defendant is more than one step removed from a

terrorist act or organization, plaintiffs suing under the ATA must allege some

facts demonstrating a substantial connection between the defendant and

terrorism."). Even if Mr. Jaber's activities in some way related to Hamas,

Plaintiffs would need to show that his activities were substantially connected to

Hamas's undertaking of the October 7 attacks. They cannot.

For all these reasons, Plaintiff's direct liability claims against Mr. Jaber

should be dismissed with prejudice.

### D. Plaintiffs Seek to Silence Mr. Jaber's Protected Speech

Plaintiffs' focus on Mr. Jaber's participation at conferences about Palestine

and the Israeli-Palestinian conflict demonstrates that this lawsuit is nothing more

than an attack on speech that Plaintiffs disfavor. *See Snyder v. Phelps*, 562 U.S. 443

(2011); *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982). On this basis, the FAC

should be dismissed in its entirety.

## III.    CONCLUSION

For all these reasons, the FAC should be dismissed. Because amendment

would be futile, the FAC should be dismissed with prejudice.

### Local Rule 3.01(g) Certificate

I hereby certify that I conferred with counsel for Plaintiffs on the relief

sought herein. Plaintiffs oppose Mr. Jaber's requested relief.

Dated: November 20, 2025

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

*Lead Counsel for Defendant Rafeeq Jaber*