UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAURICE SHNAIDER. *et al.*,

    Plaintiffs,

                               Case No. 8:24-cv-01067-MSS-SPF

v.
AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

    Defendants.

## CODEPINK'S OPPOSED MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant CODEPINK, through its undersigned counsel, and pursuant to Rule 11 and Local Rule 3.01(c), moves this Court for sanctions against Plaintiffs' counsel for violating Rule 11 by filing a patently frivolous lawsuit and subsequent filings for the improper purpose of silencing First Amendment activity.

### INTRODUCTION

Defendant files this motion for sanctions against The Berkman Law Office ("Plaintiffs' Counsel") for filing frivolous legal and factual claims that cannot survive under existing law per Rule 11(b)(2) and (b)(3). The First Amended Complaint (FAC) and subsequent filings with this Court accuse CODEPINK of aiding Hamas's October 7, 2023 terrorist attacks based entirely on protected speech: travelling to Gaza during a humanitarian crisis and agreeing to deliver a 2009 humanitarian letter to then-President Obama, sponsoring a 2010 conference

panel about Palestine, working with a student group to engage in advocacy activity, and co-organizing protests in 2024. No reasonable attorney could believe these allegations establish Anti-Terrorism Act (ATA) liability, and the subsequent claims are objectively frivolous because they: (1) rest on factual allegations Plaintiffs' own cited evidence contradicts; (2) lack Article III standing—alleging no traceable causal connection between CODEPINK's conduct and Plaintiffs' injuries; (3) target quintessential First Amendment-protected activity that binding Supreme Court precedent protects; and (4) fail every element of ATA liability— alleging no agreement with Hamas to commit terrorism, no substantial assistance to attacks, and no violent acts committed by CODEPINK.

Moreover, Plaintiff's Counsel filed these claims for improper purposes: to defame CODEPINK by falsely associating it with terrorism and to silence anti-war advocacy through costly litigation. Therefore, this Court should impose Rule 11 sanctions including full attorneys' fees and costs.

## STANDARDS OF REVIEW

### A. Rule 11 Sanctions Are Warranted When Attorneys File Frivolous Claims

Rule 11 aims "to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). Courts may impose sanctions when a party files a pleading that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

The Eleventh Circuit applies a two-prong test: "whether the legal claims or factual contentions are objectively frivolous, and, if so, whether a reasonably competent attorney should have known they were frivolous." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (Tjoflat, J., concurring in part). "A Rule 11(b)(2) or (b)(3) violation—bringing a legally or factually frivolous claim—is often probative of a Rule 11(b)(1) improper purpose violation." *Id.* at 664. Improper purpose may be inferred from filing objectively frivolous claims. *Id.* at 665-66 (citing *Carr v. Tillery*, 591 F.3d 909, 919–20 (7th Cir.2010)).

"Rule 11 sanctions are appropriate if the filing was unreasonable under the circumstances existing at the time of filing." *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989). A claim is factually frivolous when supported by "no evidence or only 'patently frivolous' evidence." *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299, 1317 (S.D. Fla. 2011) (citations omitted). "[T]he need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis." *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990).

## MEMORANDUM OF LAW

### I.    PLAINTIFFS SPECIFIC ALLEGATIONS AGAINST CODEPINK ARE FACTUALLY AND LEGALLY FRIVOLOUS

The 200-plus-page FAC contains only seven paragraphs with specific allegations against CODEPINK—all describing protected First Amendment speech occurring either over a decade before or months after the October 7, 2023 attacks. The FAC alleges five categories of conduct: (1) CODEPINK "supports NSJP in many of its violent endeavors" and "coordinate[s] closely" with NSJP,

sharing "office space and personnel," FAC ¶¶ 207-10; (2) CODEPINK "appears to be training university students in extreme protest tactics, such as civil disobedience and disrupting public speaking events" and "cohosts protests with NSJP leaders," *Id.*; (3) CODEPINK is "tie[d] to" or "engaged with" various alleged terrorist or government officials in the Middle East beyond Hamas, *Id.*; (4) In 2009, CODEPINK organized trips to Gaza where Hamas government officials assured that the humanitarian delegation's investigative group would not be harmed and, after a visit, its director planned to deliver a letter from Ahmed Yusef, former Deputy Foreign Minister in the then-Hamas government of Gaza, to President Obama about circumstances in Gaza, *Id.*; and (5) CODEPINK sponsored a session at a 2010 U.S. Social Forum Conference about Palestine, and organized or endorsed rallies in June 2024—a rally to protest against a "real estate auction event for land in Israel at [a] synagogue" in Los Angeles and a mobilization titled "National Mobilization: Surround the White House for Gaza." *Id.* ¶¶ 189, 382, 386. The national mobilization called for "an immediate ceasefire, an immediate end to the siege on Gaza, the freedom of all Palestinian prisoners, and an end to the occupation of Palestine." *Id.*

These allegations are objectively frivolous because they: (1) describe either innocuous organizational activity or quintessentially protected First Amendment speech (training in civil disobedience, organizing protests, humanitarian advocacy); (2) provide no factual substantiation (no identification of violent endeavors and no details about alleged how they endorsed designated terrorist groups' terroristic activity); (3) are temporally impossible (2009-2010 conduct

cannot have caused October 2023-January 2024 injuries; nor could June 2024 rallies); (4) are contradicted by Plaintiffs' own cited sources (the 2009 letter advocated peaceful diplomacy through international legal institutions, not terrorism); and (5) establish no connection whatsoever to Hamas's attacks.

### A. The 2009 Trips to Gaza and Letter Delivery Allegation Exemplifies Counsel's Rule 11 Violation

The fourth allegation—that CODEPINK organized 2009 trips to Gaza where, after visiting, its director planned to deliver a letter to President Obama—is fatally deficient and exemplifies counsel's Rule 11 violation for three reasons.

First, the temporal remoteness is dispositive. Conduct occurring 14 years before an attack cannot support causation. See *Rice v. Chief Examiner*, 2025 WL 1743708, at *3 (11th Cir. June 24, 2025) (conduct "well after" injury-causing event defeats causation, the same logic extends to acts that occurred well before).

Second, a Google search of "CODEPINK in Gaza in 2009" reveals that the portrayal of these the trips as indicative of CODEPINK supporting Hamas' terroristic activity is factually inaccurate, as one of the top results is a UN Department of Public Information press release documenting that CODEPINK organized December 2009 trip as a delegation where over 1,300 participants—including a Pulitzer Prize-winning author, former European Parliament Vice President, 85-year-old Holocaust survivor, judges, and Members of Parliament—joined Palestinians in an explicitly non-violent demonstration to lift the blockade

preventing food, medicine, and reconstruction supplies from reaching those in need, with all participants signing a code of conduct committing to non-violence.[1]

Counsel's factual inaccuracy "could have been discovered by the most cursory investigation." *In re Kunstler*, 914 F.2d at 516. Indeed, counsel "should have known that [this allegation was] frivolous because 'even the most minimal investigation would have alerted' [counsel]" to the mission's humanitarian nature. *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 943 (11th Cir. 2022). The information was publicly available, documented by the United Nations, and discoverable within minutes.

Third, the letter Plaintiffs cite at FAC ¶ 210 n.127 refutes counsel's narrative that CODEPINK has endorsed or supported terroristic activity by Hamas. The letter, penned by Hamas Deputy Foreign Minister Ahmed Yousef, urged President Obama to visit Gaza, called for dialogue "on the basis of mutual respect and without preconditions," and committed to pursuing resolution through "the International Court of Justice, the United Nations General Assembly, and leading human rights organizations." *Id*. The letter explicitly advocated adherence to international law and peaceful diplomatic engagement—the antithesis of terrorism. Counsel cited this very letter, cherry-picking only Hamas' government official's authorship while omitting its peaceful, diplomatic content that reveals an immense difference from any terroristic activity that occurred over a decade later harming Plaintiffs. The allegations Plaintiffs put forth are not only "weak"

---

[1] *PRESS CONFERENCE ON HUMANITARIAN MATTERS IN GAZA STRIP*, UNITED NATIONS: THE QUESTION OF PALESTINE DEPARTMENT OF PUBLIC INFORMATION • NEWS AND MEDIA DIVISION (Dec. 17, 2009), https://www.un.org/unispal/document/auto-insert-198049/.

evidence—they provide evidence that contradicts their very allegation. Publicly available UN documentation and Plaintiffs' own cited source refute the allegation that CODEPINK engaged in anything but peaceful advocacy, exhibiting counsel's "deliberate indifference to obvious facts." *Baker*, 158 F.3d at 524.

## II.    CONSTITUTIONAL BARRIERS INDEPENDENTLY RENDER THESE CLAIMS FRIVOLOUS

Any reasonable pre-filing inquiry would reveal the U.S. Constitution bars these claims in two independent ways: Plaintiffs lack Article III standing, and the First Amendment prohibits imposing liability for the conduct alleged by Plaintiffs.

### A. *Plaintiffs Failed to Investigate Whether Facts Support Article III Standing*

Federal courts impose Rule 11 sanctions where plaintiffs file claims lacking standing without a reasonable pre-filing inquiry. *See O'Rourke v. Dominion Voting Systems Inc.*, 552 F. Supp. 3d 1168, 1199 (D. Colo. 2021) (finding Rule 11 violated "because there was no good faith basis for believing or asserting that Plaintiffs had standing"). Here, Plaintiffs' fail allege any facts establishing connection between CODEPINK's conduct and their injuries because they do not exist.

To satisfy Article III's traceability requirement, plaintiffs must demonstrate a "fairly traceable" causal connection between the defendant's alleged conduct and the plaintiff's injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A reasonable pre-filing inquiry requires investigating whether facts supporting this causal connection actually exist. Instead, Plaintiffs provide only frivolous allegations that demonstrate they failed to meet the reasonable inquiry standard to determine whether they had Article III standing to sue.

Hamas directly initiated the attacks, while Plaintiffs allege no command authority, attack planning, or execution role for CODEPINK. The FAC alleges no facts suggesting CODEPINK could direct, control, or influence Hamas's operational decisions. Plaintiffs do not assert facts that indicate CODEPINK formed any agreement with Hamas to assist their attacks, provided resources that Hamas used in the attacks, or took actions without which Plaintiffs would have escaped injury. This complete absence of factual allegations demonstrates that Plaintiffs filed without conducting the reasonable inquiry Rule 11 requires. As the *O'Rourke* court concluded: "This case never should have been filed because Plaintiffs never had a justiciable injury." 552 F. Supp. 3d at 1200.

The five categories of allegations (FAC ¶¶ 207-10, 189, 382, 386) demonstrate this failure. None involves financial transfers, operational resources, tactical support, weapons provision, fighter recruitment, or attack planning. All occurred either over a decade before (the 2009 trips to Gaza and 2010 conference, FAC ¶¶ 207-10, 189) or months after the attacks that cause plaintiffs injuries (June 2024 rallies, FAC ¶¶ 382, 386). All describe protected speech (rallies, civil disobedience, protests, humanitarian inquiries and diplomatic advocacy) or innocuous activity (sharing office space and personnel with NSJP, FAC ¶¶ 207-10). None establishes any causal connection to Hamas's operations or Plaintiffs' injuries.

Plaintiffs' Response to CODEPINK's Motion to Dismiss confirms the inadequacy of their investigation. To argue traceability, Plaintiffs claim CODEPINK's shared office space, personnel, and protest coordination with NSJP caused its "chapters [to] systematically advance Hamas's agenda"—then describe

only NSJP's actions. ECF No. 93, 9-10. After detailing only NSJP's conduct, CODEPINK appears in a single conclusory sentence claiming the shared coordination "places [CODEPINK] squarely inside the same operational network that transformed October 7 from a localized massacre into global terrorism." *Id.* This conclusory leap, unsupported by any factual investigation, relies on two colossal degrees of separation—CODEPINK, then NSJP, then Hamas' attacks— without alleging any non-frivolous causal mechanism. Even accepting all non-frivolous allegations as true, the factual gaps are insurmountable: (1) CODEPINK shared office space with NSJP; (2) this sharing allegedly led to unspecified NSJP actions; (3) these unspecified actions allegedly influenced Hamas to plan and execute attacks; (4) these attacks injured these specific Plaintiffs. Plaintiffs allege no facts supporting any link in this chain.

This is a zero-link causation problem, not a weak-link problem. *Walters v. Fast AC, LLC*, 60 F.4th 642, 650-52 (11th Cir. 2023) (no traceability where independent third party caused actual harm); *City of South Miami v. DeSantis*, 65 F.4th 631, 642– 45 (11th Cir. 2023) (no "remotely plausible causal chain" where harm stemmed from third parties' independent actions, not defendant's conduct). As the Supreme Court did in *Clapper v. Amnesty International USA*, this Court should "decline to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." 568 U.S. 398, 409 (2013).

Unable to plead actual causation, Plaintiffs substitute a speech-as-terrorism theory, claiming Defendants "supplied the machinery that made Hamas's violence echo worldwide" through protests that "amplify, justify, and mobilize around

Hamas's atrocities." ECF No. 93, 3-4. This theory also contains fatal gaps: Plaintiffs never allege how protests achieved any coercive effect, and the June 2024 protests occurred eight months after the October 2023-January 2024 attacks, producing temporal impossibility: the post-attack speech cannot cause injuries sustained before the speech occurred.

Caselaw Plaintiffs should have consulted demonstrates their theory's inadequacy. In *Rothstein v. UBS AG*, the court disagreed with the lower court's ruling, finding Article III traceability where UBS directly transferred hundreds of millions in cash to Iran, which explicitly funded Hamas and Hezbollah's operational capacity. 708 F.3d 82, 91-96 (2d Cir. 2013). Here, Plaintiffs allege no financial transfers, operational resources, or control over Hamas. If direct cash provided to terrorism's "central banker" scarcely satisfied traceability, the conduct alleged here—sharing office space and personnel with a student group (FAC ¶¶ 207-10), organizing humanitarian delegations advocating peaceful diplomacy (FAC ¶¶ 207-10), training students in civil disobedience (FAC ¶¶ 207-10), sponsoring conference panels (FAC ¶ 189), and coordinating rallies (FAC ¶¶ 189, 382, 386)—cannot meet that standard.

Plaintiffs' Response to CODEPINK's Motion to Dismiss continues to reveal an unreasonable inquiry into existing caselaw, asserting "[c]ourts have long recognized that pre-attack support that strengthens a terrorist organization's capabilities is traceable to later attacks," citing *Boim v. Holy Land Found.*, 549 F.3d 685, 693-94 (7th Cir. 2008) and *Owens v. BNP Paribas S.A.*, 897 F.3d 266, 275-76 (D.C. Cir. 2018). ECF No. 93, 9-10. Both cases involved direct financial support, not

expressive activity: Boim addressed donations to a designated FTO. The cited
pages discuss donor mental state—that "[t]o give money to an organization that
commits terrorist acts is not intentional misconduct unless one either knows that
the organization engages in such acts or is deliberately indifferent"—not whether
non-financial activities years before attacks satisfy traceability. 549 F.3d at 693-94.
*Owens* involved banks processing "hundreds of millions of dollars" for Sudanese
entities, asking whether these transactions were "a 'substantial factor' in the
sequence of events that led to [Plaintiffs'] injur[ies]." 897 F.3d at 275-76. Neither
case supports that organizing protests to end human rights violations, delivering
advocacy letters for peaceful diplomacy, or sharing office space with a student
group—14 years before or 6 months after—can be traced to those attacks.

When the plaintiffs in *O'Rourke* were confronted with binding authority that
contradicted their arguments, the court described the plaintiffs' "efforts to
distinguish between this case and the other dismissed lawsuits were either self-
contradictory...or nonsensical and precluded by...caselaw." *O'Rourke*, 552 F. Supp.
3d at 1200. The same is true here: Plaintiffs claim *Boim* and *Owens* support liability
for generalized pre-attack support, when those cases addressed only direct
financial donations—a distinction Plaintiffs ignore because it is fatal to their
theory. Plaintiffs' willingness to cite *Boim* and *Owens* for propositions those cases
do not support—and to advance a theory requiring time travel (June 2024 protests
causing October 2023-January 2024 injuries)—demonstrates the inadequacy of
their pre-filing inquiry. Reasonable investigation would have revealed both the
temporal impossibility and the inapplicability of their cited authority.

**B. The First Amendment Bars Liability for Independent Political Advocacy**

Even if standing existed, the First Amendment independently forecloses these claims. The Supreme Court in *Holder v. Humanitarian Law Project* explicitly protected "independent advocacy" not "directed to, coordinated with, or controlled by" terrorist organizations. 561 U.S. 1, 36 (2010). The FAC alleges no facts that CODEPINK's advocacy was directed by, coordinated with, or controlled by Hamas. Training students in civil disobedience (FAC ¶¶ 207-10), organizing protests demanding a ceasefire (FAC ¶¶ 189, 382, 386), sponsoring conference panels (FAC ¶ 189), and organizing humanitarian trips to Gaza in 2009 (FAC ¶¶ 207-10)—constitutes the independent political advocacy that *Holder* protects.

Recent decisions confirm First Amendment protections must apply to advocacy regarding Palestine. *American Association of University Professors v. Rubio*, 2025 WL 1235084, at *4 (D. Mass. Apr. 29, 2025) (recognizing that punishing statements supporting Palestine could violate First Amendment); *Stand With Us Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 2025 WL 2962665, at *6 (1st Cir. Oct. 21, 2025) (emphasizing how "[m]ost of the conduct about which plaintiffs complain is speech protected by the First Amendment" regarding protests for Gaza).

*NAACP v. Claiborne Hardware Co.* forecloses Plaintiffs' theory that organizers of protests can be held liable for independent acts of protesters. 458 U.S. 886 (1982). Organizers of protests cannot be liable for organizing protests where participants engage in violence unless the organizer "authorized, ratified, or directly threatened acts of violence." *Id.* at 908, 929. In *Claiborne*, the Supreme Court noted that the lower court held the NAACP liable on the theory that it "had the option

of repudiating [violent] acts or ratifying them. It never repudiated those acts, and therefore it is deemed by this Court to have affirmed them." *Id.* at 930. The Supreme Court firmly rejected this passive approach, holding that to "impose liability without a finding that the NAACP authorized—either actually or apparently—or ratified unlawful conduct would impermissibly burden the rights of political association that are protected by the First Amendment." *Id.* at 920. Plaintiffs advance an identical theory to the lower court in *Claiborne* that the Supreme Court held unconstitutional. Plaintiffs attribute alleged violent acts to unidentified demonstrators, not CODEPINK (FAC ¶¶ 189, 382, 386), yet in their response to CODEPINK's Motion to Dismiss Plaintiffs argue CODEPINK is liable because it organized the events and "cannot insulate itself by pretending those actions were 'unattributed,'" arguing that "failing to repudiate" amounts to "CODEPINK assum[ing] responsibility." *Id.* This is precisely the silence-as-ratification theory the Supreme Court rejected in *Claiborne.*

Plaintiffs allege no facts showing CODEPINK "specifically authorized" any violent acts, "actually or apparently" authorized them, or affirmatively ratified them. *Claiborne*, 458 U.S. at 920, 926. Plaintiffs do not identify who committed the alleged violent acts, making it impossible to show CODEPINK had "specific knowledge" of them, much less ratified them. *Id.* at 926. This theory necessarily rests on CODEPINK's alleged failure to repudiate acts by unidentified persons.

This theory violates both the associational rights and the right not to speak protected by the First Amendment. *Claiborne* emphasizes that organizations retain constitutional protection even when "some members of the group may have

13

participated in conduct or advocated doctrine that itself is not protected." *Id.* at 908. Plaintiffs' argument would make every protest organizer liable for every participant's conduct and would compel organizations to issue statements repudiating conduct they did not participate in or endorse. Any reasonable pre-filing inquiry would have revealed *Claiborne* bars Plaintiffs' theory.

### III. PLAINTIFFS' AIDING AND ABETTING CLAIM IS FRIVOLOUS BECAUSE PLAINTIFFS FAIL TO ALLEGE DEFENDANT PROVIDED SUBSTANTIAL ASSISTANCE TO ALLEGED WRONGDOING

To satisfy § 2333(d)(2) of the ATA, plaintiffs must allege defendant's conduct amounted to "conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023). Under *Halberstam v. Welch*—the framework Congress identified for ATA claims—plaintiffs must show: (1) the FTO that was aided "perform[ed] a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." 705 F.2d 472, 477 (D.C. Cir. 1983). While Hamas's attacks satisfy element one, plaintiffs fail elements two and three.

### A. Plaintiffs Fail to Allege CODEPINK Was "Generally Aware" of Its Role in Wrongdoing

The FAC includes no allegation that CODEPINK was "generally aware of [its] role" in Hamas terror activities. The scienter requirement demands more than constructive knowledge: "the inquiry is not whether a defendant should have been

aware"—plaintiff must establish "actual awareness." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022).

The FAC's allegation of pre-attack contact with Hamas—that CODEPINK's director agreed to deliver a 2009 letter from Hamas Deputy Foreign Minister Ahmed Yousef to President Obama (FAC ¶¶ 207-10)—affirmatively negates awareness of violent activities. As detailed above, the letter Plaintiffs themselves cite (FAC ¶ 210 n.127) explicitly urged dialogue "on the basis of mutual respect and without preconditions," and committed to resolving disputes through "the International Court of Justice, the United Nations General Assembly, and leading human rights organizations." Far from evidencing awareness that CODEPINK was assisting terrorism, this letter advocated adherence to international law and peaceful diplomatic engagement—the antithesis of violent activity. No reasonable attorney could characterize facilitating delivery of a letter advocating peaceful international arbitration or participating in UN-documented humanitarian delegations as evidence of subjective awareness that the facilitator was assisting terrorism that occurred 14 years later.

### B. Plaintiffs Fail to Allege That CODEPINK Provided Knowing and Substantial Assistance to Hamas

To satisfy the substantial assistance element, plaintiffs must plausibly allege that defendants "knowingly and substantially assist[ed] the principal violation" with a "concrete nexus" between the alleged aid and specific attacks. *Newman v. Associated Press*, 758 F. Supp. 3d 1353, 1369–70 (S.D. Fla. 2023). Courts have repeatedly rejected these near-exact allegations. *Parizer v. AJP Educational*

*Foundation* dismissed claims that defendants "fund and act as Hamas's public relations division" as "vague and conclusory," holding plaintiffs failed to "draw a sufficient connection" between domestic advocacy and Hamas's attacks. 2025 WL 2382933, at *18–23 (E.D. Va. Aug. 15, 2025). *Gerwaski v. Nevada* dismissed claims where "all defendants' conduct took place after" plaintiffs' injuries were sustained. 2025 WL 33334, at *15 (D. Nev. May 5, 2025). Plaintiffs allege no traditional substantial assistance whatsoever: no funds transferred to Hamas, no military infrastructure, no logistics coordinated. The three categories of alleged conduct bear no resemblance to substantial assistance under *Halberstam* or *Taamneh*:

First, in 2009—14 years before the attacks—CODEPINK organized trips to Gaza and agreed to deliver a letter advocating peaceful diplomacy to President Obama (FAC ¶¶ 207-10). The letter explicitly called for resolution through international legal institutions (FAC ¶ 210 n.127). Facilitating humanitarian advocacy for peaceful dispute resolution 14 years before attacks cannot constitute substantial assistance. Second, CODEPINK allegedly shares office space and personnel with NSJP, a student organization (FAC ¶¶ 207-10). Plaintiffs allege no facts about what this sharing entailed, what joint activities occurred, or how this arrangement aided Hamas's attacks. Sharing office space with a non-FTO is routine organizational collaboration, not substantial assistance to terrorism. Third, CODEPINK allegedly organized or endorsed protests in June 2024 demanding a ceasefire (FAC ¶¶ 189, 382, 386). These protests occurred at least six months after the October 2023-January 2024 attacks. Protests demanding cessation of military operations cannot have substantially assisted prior attacks.

A cursory application of *Halberstam*'s six factors confirms the failure: (1) Nature of act assisted: No specific aid alleged—only protected First Amendment activity that cannot justify "attributing the principal wrongdoing" to Defendant. *Twitter*, 598 U.S. at 504; (2) Amount of assistance: No aid to Hamas's illegal activity, much less quantifiable aid, is alleged. *Newman*, 758 F. Supp. 3d at 1372.; (3) Presence at time of act: All alleged conduct occurred either over a decade before or seven months after the attacks. *Id.*; (4) Relation to principal: No connection between Defendant and Hamas alleged in 15 years, much less any influence. *Halberstam*, 705 F.2d at 488; (5) State of mind: Advocating to end war and occupation is not an illegal enterprise and evidences no intent to aid harmful activity. *Newman*, 758 F. Supp. 3d at 1372.; (6) Duration: No "lengthy" relationship alleged; even 25 years of banking services to an FTO "bespeaks a lengthy relationship but not necessarily of assistance in terrorism." *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019). The complete failure to establish even a single *Halberstam* factor underscores Plaintiffs' fundamental flaw: conflating protected First Amendment advocacy with actionable assistance to terrorism. Plaintiffs provide no intelligible way to construe organizing protests, diplomatic and humanitarian advocacy, or educational panels as "substantial assistance" for attacks. Far from demonstrating a "concrete nexus," Plaintiffs' allegations reveal advocacy occurring years before or months after the relevant attacks, with no demonstrated connection to Hamas's attacks whatsoever.

## IV.    THE CONSPIRACY CLAIM FAILS BECAUSE SHARED POLITICAL ADVOCACY DOES NOT SUGGEST AGREEMENT TO COMMIT TERRORISM

To plead civil conspiracy under the ATA, plaintiffs must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. Hamas's attacks satisfy element three, but plaintiffs fail elements one, two, and four. While plaintiffs need not allege formal contracts , they must allege facts making an agreement to commit terrorism—not merely shared political advocacy—plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

No facts suggest agreement to terrorism as the objective of any agreement. The 2009 letter CODEPINK agreed to deliver (FAC ¶¶ 207-10; FAC ¶ 210 n.127) explicitly advocated peaceful resolution through international legal institutions. Sharing office space and personnel with NSJP (FAC ¶¶ 207-10) do not make plausible an agreement with Hamas to execute any criminal objective. The June 2024 protests demanding changes to Israel's military policy (FAC ¶¶ 189, 382, 386) occurred seven months after the attacks and cannot plausibly suggest agreement to facilitate attacks that already occurred. As the *Parizer*—involving the same attacks against plaintiffs and overlapping defendants—court found: conspiracy allegations based on acting as "Hamas's public relations division" are "vague and conclusory." 2025 WL 2382933, at *18-23. The court additionally held: "Plaintiffs have not alleged facts sufficient to support a plausible inference that these Defendants agreed to advance Hamas's terrorist objectives rather than their own independent political goals." *Id*. at *21.

Plaintiffs allege no agreement between CODEPINK and Hamas, the entity that committed the October 7 attacks. Instead, they allege only that Defendants shared "office space and personnel" with NSJP—a third party that Plaintiffs themselves do not accuse of committing the terrorist act causing their injuries. Any reasonably competent attorney would recognize that § 2333(d)(2) requires an agreement with the wrongdoer. Section 2333(d)(2) plainly states that "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires *with the person who committed such an act of international terrorism.*" (emphasis added). The Eleventh Circuit has imposed Rule 11 sanctions for precisely this type of statutory misapplication. *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 923 (11th Cir. 2016) (affirming sanctions where "defendant obviously could not be held liable based on the statute and the facts pleaded").

## V.   THE PLAINTIFFS' MATERIAL SUPPORT CLAIM FAILS BECAUSE THE FAC ALLEGES NO VIOLENT ACTS

To establish direct ATA liability, plaintiffs must "allege and prove that the [defendant] directly committed an 'act of international terrorism' which caused the plaintiff's injuries." *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018). Plaintiffs' frivolous allegations fail each element of this claim.

First, the statute requires conduct that: (a) "involve[s] violent acts or acts dangerous to human life" violating U.S. criminal law, and (b) "appear[s] to be intended" to "intimidate or coerce a civilian population" or "influence the policy of a government by intimidation or coercion." 18 U.S.C. § 2331(1)(A)–(B). Plaintiffs allege only that Hamas "committed, planned, and authorized" the October 7

attacks—not that CODEPINK did. FAC ¶¶ 456, 472. Instead, they target
Defendant's protected advocacy: delivering a 2009 letter advocating for non-
violent diplomatic negotiations about an international humanitarian crisis (FAC
¶¶ 207-10; FAC ¶ 210 n.127); sharing office space and personnel with a student
organization (FAC ¶¶ 207-10); and organizing rallies to change Israel policy (FAC
¶¶ 189, 382, 386). No objective observer could conclude these activities constitute
"violent acts" or efforts to intimidate or coerce government policy. See *Stansell v.
BGP, Inc.,* 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011). Even sharing
"information that may have been helpful to [a terrorist organization] in achieving
its organizational goals" cannot support direct liability without facts showing how
the conduct "would in all likelihood assist the organization in accomplishing its
violent goals." *Kaplan v. Jazeera*, 2011 WL 2314783, at *4, 6 (S.D.N.Y. June 7, 2011).

Second, using these same allegations, Plaintiffs fail to demonstrate the
scienter requirement, which demands proof "that the defendant acted with the
specific knowledge or intent that its support would be used in preparation for, or
in carrying out, one of the enumerated terrorism-related crimes." *Chiquita*, 284 F.
Supp. 3d at 1309; 18 U.S.C. § 2339A. The Supreme Court requires that a defendant
act "under the direction of, or in coordination with" a group it "knows to be" a
terrorist organization. *Holder*, 561 at 26. The FAC contains only frivolous
allegations that Defendant acted with or under Hamas's direction to achieve a
terrorism-related crime. Plaintiffs compounded their frivolous arguments by
citing inapplicable cases, asserting that "courts recognize such conduct as
'material support,'" citing *United States v. Suarez*, 893 F.3d 1330 (11th Cir. 2018);

ECF No. 93, 19. In *Suarez*, the defendant "coordinated directly with individuals whom he believed to be members of ISIS to acquire a bomb," "provided the money and materials for the bomb," and "accepted the bomb while reiterating his plan to detonate it on a crowded beach." *Id.* at 1335. Plaintiffs also cite *Boim*, which involved fundraising directly for Hamas fronts. 549 F.3d at 693-94. The comparison is ludicrous on its face: advocating for humanitarian policy and sharing organizational work with a student group bears no resemblance to coordinating bomb plots and fundraising for terrorist fronts, and any reasonable attorney would recognize this distinction.

Third, Plaintiffs fail to plead proximate cause required here. *See* 18 U.S.C. § 2333(a) (requiring injury "by reason of an act of international terrorism"). Courts apply either: (1) a "direct relationship" test between the injuries and defendant's acts, or (2) or require that a defendant's acts were a "substantial factor" in the sequence of events leading to reasonably foreseeable injuries. *Newman*, 758 F. Supp. 3d at 1380 (S.D. Fla. 2024). Under either test, none of the allegations lodged against CODEPINK establish proximate cause for the October 2023-January 2024 attacks that injured plaintiffs. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting "routine banking services" as too remote). Plaintiffs allege no facts connecting CODEPINK's conduct to the October 2023-January 2024  attacks because no such facts exist; and the claims are thus patently frivolous. Congress' intended First Amendment carve-out protects the very rights Plaintiffs ask this Court to sanction: "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First

Amendment." 18 U.S.C. § 2339B(i). The FAC is devoid of non-conclusory factual allegations showing CODEPINK materially supported terrorism, as all alleged conduct consists of protected advocacy or otherwise innocuous activity.

## VI.    CIRCUMSTANTIAL EVIDENCE MAKES CLEAR PLAINITIFFS' IMPROPER PURPOSE

"A 'motive to harass' can be inferred from an attorney's filing of factually or legally frivolous claims." *Thompson*, 610 F.3d at 665-66. Multiple circumstances show improper purpose here: (1) frivolous claims lacking factual or legal support; (2) defamatory allegations falsely associating CODEPINK with terrorism; (3) targeting protected First Amendment activity; (4) naming advocacy organizations to chill speech; (5) persisting after amendment despite clear deficiencies; and (6) filing claims failing every required element under controlling law.

### A.  First Improper Purpose: Defaming CODEPINK by Associating them with Terroristic activity

While the few specific facts alleged show only innocuous speech and association (FAC ¶¶ 189, 210, 382, 386), Plaintiffs' Counsel filled the FAC with baseless assertions that CODEPINK is "Hamas-loving" and accusations of affiliation with other Middle Eastern terrorists with no substantiation. FAC ¶¶ 207-10, 406. This dangerous, defamatory accusation evidences improper motive designed to silence the activity of an anti-war non-profit.

The most analogous case is *Manhart v. WESPAC Found., Inc.*, No. 24-CV-08209, 2025 WL 2257408, at *15-16 (N.D. Ill. Aug. 7, 2025). The *Manhart* court found "Plaintiff's improper purpose is evident from the [Second Amended Complaint which] is rife with allegations that are irrelevant to Plaintiff's stated causes of

action and which are only a hair's breadth away from calling Defendants terrorists.
… Among other things, the SAC alleges that Defendants engaged in a 'propaganda
offensive' on behalf of Hamas, and that at least some Defendants acted 'as Hamas's
propaganda arm in the United States.'" The court concluded that "Defendants sent
Plaintiff multiple draft Rule 11 motions explaining the flaws in Plaintiff's legal
theories. Instead of taking heed, Plaintiff doubled down on arguments that a
reasonable inquiry into the law would have revealed were baseless. That,
combined with the inflammatory allegations in this case, evince Plaintiff's intent
to harass rather than a genuine desire to vindicate any violated rights." *Id.*

Like in *Manhart*, Plaintiffs' counsel has doubled down on allegations falsely
associating CODEPINK with terrorism despite complete absence of factual
support. Courts recognize that falsely accusing someone of terrorism is
defamatory per se. *See Elhanafi v. Fox Televison Stations, Inc.*, 37 Misc. 3d 1232(A),
966 N.Y.S.2d 345 (Sup. Ct. 2012) ("The Court finds that there are triable issues of
fact whether the subject news story to the average viewer is reasonably susceptible
to defamatory meaning and implies that plaintiffs are terrorists."); *See also Sirer v.
Aksoy*, No. 21-CV-22280, 2023 WL 3166453, at *2 (S.D. Fla. May 1, 2023) (where
"Defendant falsely stated that Plaintiff was a member of the Fethullah Terrorist
Organization ("FETÖ"), a group that has been designated as a terrorist
organization in Turkey. … Defendant briefly took down the YouTube video
containing these *defamatory remarks.*") (emphasis added).

### B. Second Improper Purpose: Harassing and Silencing Protected First Amendment Activity

The FAC was filed to harass CODEPINK by tying them up in costly litigation to deplete resources for speech and advocacy, a tactic that has been recognized as sanctionable. *Fla. Com. Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985) (emphasizing that "attempts to tie up" a defendant "in litigation by unsupported allegations" means that "courts should invoke appropriate sanctions under Rule 11."). All of CODEPINK's alleged conduct is squarely protected by the First Amendment, and plaintiffs' attempt to penalize that conduct through frivolous lawfare is impermissible.  Courts sanction political weaponization of litigation. *Trump v. Clinton* imposed Rule 11 sanctions where "choice of defendants, combined with the lack of any viable legal theories of liability, reflect an intention to injure rather than to redress legal harm." 640 F. Supp. 3d 1321, 1334 (S.D. Fla. 2022). *Rhodes v. MacDonald* also sanctioned counsel where "absolute absence of any legitimate legal argument, combined with political diatribe ... demonstrates that [the attorney's] purpose is to advance a political agenda." 670 F. Supp. 2d 1363, 1378 (M.D. Ga. 2009). This lawsuit targets CODEPINK for its Palestinian rights advocacy and opposition to military violence, sending a chilling message: advocate for Palestinians, face terrorism accusations and costly litigation.

## VII.   ATTORNEY'S FEES AND COSTS ARE APPROPRIATE SANCTIONS

Rule 11 authorizes courts to impose "an appropriate sanction" including attorney's fees and costs. Fed. R. Civ. P. 11(c)(1)-(4). Courts in this circuit impose such sanctions for frivolous and harassing litigation. *Diaz*, 643 F. App'x at 923; *Pelletier v. Zweifel*, 987 F.2d 716, 718 (11th Cir. 1993) ("[Plaintiffs] are not entitled to

'free' violations of Rule 11"). CODEPINK has been forced to expend substantial resources defending against baseless claims brought for improper purposes. The Court should impose sanctions sufficient to: (1) compensate CODEPINK for costs imposed by this abusive litigation; (2) deter future similar conduct; (3) make clear that weaponizing litigation to suppress protected speech will not be condoned; and (4) preserve the integrity of the judicial process.

## CONCLUSION

Plaintiffs advance no colorable legal theory, failed minimal inquiry, asserted temporally impossible theories, mischaracterized precedent, and transformed protected speech into terrorism support, and because of it, CODEPINK has been forced to defend baseless terrorism charges. This Court should impose Rule 11 sanctions including full fees and costs.

## LOCAL RULE CERTIFICATE

The undersigned certifies that he conferred with the opposing party via email and the parties were unable to agree on a resolution of all or part of the motion.

Dated: January 6, 2026

<div style="margin-left: 40%;">

/s/ *David Piña*
 David Pina (FBN 1030971)
1799 NW 500 N.W. 28th Street
PO Box 420304
Miami, Florida 33142
Tel. 786-445-0227
davidpinaesq@gmail.com

*Lead Counsel for Defendant*
*CODEPINK*

</div>