# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

----------------------------------------------------------------------- X

MAURICE SHNAIDER, *et al.*,

                Plaintiffs,

      v.

AMERICAN MUSLIMS FOR PALESTINE, *et al.*,

                Defendants.

Case No:
8:24-cv-01067-MSS-SPF

----------------------------------------------------------------------- X

## PLAINTIFFS' OPPOSITION TO DEFENDANT CODEPINK'S RULE 11 MOTION

Congress enacted the ATA so that victims of terrorism may seek civil accountability from those who knowingly coordinate with designated foreign terrorist organizations ("FTO"s). Fed. R. Civ. P. 11 cannot be used to silence such suits by invoking the First Amendment.

Defendant CodePink's Rule 11 motion (ECF 108) is a transparent attempt to relitigate its Rule 12(b)(6) motion (ECF 90). Rule 11 is a deterrent rule, not a substitute for testing pleading sufficiency or punishing advocacy. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). Sanctions require an objectively frivolous filing—one no reasonably competent attorney could view as having any chance of success. *Thompson v. Relation Serve Media, Inc.,* 610 F.3d 628, 665 (11th Cir. 2010); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th

Cir. 1996). Defendant's motion does not identify any false factual allegations, fabricated evidence, or objectively unreasonable legal positions. Instead, it repackages substantive disagreements already presented in its Rule 12 briefing and unilaterally labels them "frivolous." Rule 11 does not authorize sanctions on that basis.

Plaintiffs' FAC is grounded in detailed factual allegations, publicly available sources, and controlling authority under the ATA. Plaintiffs' opposition to CodePink's Motion to Dismiss (ECF 93) showed that these claims are plausible and supported by existing law. That alone forecloses Rule 11 sanctions.

## LEGAL STANDARD UNDER RULE 11

Rule 11 sets an objective "reasonableness under the circumstances" standard to deter baseless filings and promote efficiency. *Aetna Ins. Co. v. Meeker,* 953 F.2d 1328, 1331 (11th Cir.1992); *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). Sanctions apply only in narrow cases: (1) a pleading with no reasonable factual basis; (2) a legal theory with no chance of success; or (3) a filing made in bad faith for an improper purpose. *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016). Both legal and factual inquiries use an objective reasonable attorney standard. *Thompson*, 610 F.3d at 665. Any sanction must be limited to what suffices to deter. Fed. R. Civ. P. 11(c)(4).  The reasonable inquiry standard of Rule 11 does not preclude a plaintiff from establishing the merits of claims through discovery. *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987).

## ARGUMENT

CodePink's motion repeats its Rule 12(b)(6) arguments. Rule 11 addresses

objective frivolousness and improper purpose, not pleading sufficiency. *Worldwide Primates*, 87 F.3d at 1254. Defendant shows no frivolous claim, fabricated fact, or improper purpose—only disagreements over plausibility properly addressed under Rule 12. Allowing sanctions motions to proceed on this basis would improperly chill zealous advocacy, particularly in cases involving fact-intensive claims.

## I.    The FAC is Well-Grounded in Fact and Law

CodePink's assertion that the FAC contains "only seven paragraphs" of allegations against it misstates both the pleading and governing law. Pleadings are not evaluated by tallying defendant name mentions but by reading the complaint in its entirety to determine whether it plausibly alleges a defendant's participation in a broader course of unlawful conduct. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). CodePink's insistence that Plaintiffs must plead isolated, defendant-specific acts divorced from the broader conspiracy misstates conspiracy and aiding-and-abetting law. Courts do not parse allegations in isolation but assess whether the complaint as a whole supports a plausible inference of concerted action. *Tellabs*, 551 U.S. at 322–23.

When read as a whole, the FAC alleges detailed and interlocking facts demonstrating CodePink's participation in an alleged Hamas-aligned enterprise that emerged from Hamas's early U.S. strategy, evolved through successive organizational forms including NSJP as Hamas's student arm, and culminated in the October 7 Attacks and their aftermath, with CodePink functioning as part of the infrastructure that sustained, normalized, and amplified that enterprise.

CodePink's assertion that the FAC lacks factual substantiation is belied by the allegations. The FAC details CodePink's sponsorship of SJP-organizing sessions at the 2010 U.S. Social Forum, its role in facilitating NSJP's formation, its documented engagement with Hamas officials in Gaza, its public endorsement of designated terrorist figures, its coordination with Hezbollah-affiliated actors, and its logistical overlap with NSJP. These are not labels or conclusions but concrete allegations drawn from CodePink's own activities and statements.

The FAC further alleges CodePink's post–October 7 conduct as part of the same enterprise, including its endorsement and organization of mass mobilizations at which Hamas slogans were chanted and violence occurred. These allegations are relevant not because Plaintiffs seek to impose liability for protest speech, but because they demonstrate continuity of coordination, radicalization, and operational alignment with Hamas-supporting entities. Plaintiffs' pleading theory—whatever CodePink's merits response—is grounded in existing Supreme Court and Eleventh Circuit precedent. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 26–28 (2010); *United States v. Jayyous*i, 657 F.3d 1085, 1102–03 (11th Cir. 2011).

Nor is there any merit to CodePink's claim of temporal impossibility. The FAC alleges a multi-decade conspiracy and enterprise that predates October 7, 2023, and continued through and after the attacks, providing the infrastructure and mobilization capacity that Hamas itself has acknowledged as supportive of its cause. Such support that foreseeably contributes to terrorist violence is actionable under the ATA even if specific acts occur before or after a particular attack.

Rule 11 does not require plaintiffs to establish a probability of success at filing; it requires a reasonable inquiry and a nonfrivolous legal theory. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (rejecting "probability" requirement at pleading stage).

At a minimum, these allegations are objectively reasonable and grounded in fact and law. Rule 11 does not authorize sanctions because a defendant disputes a plaintiff's interpretation of those facts or the legal conclusions drawn from them. CodePink's contentions sound in Rule 12 pleading sufficiency and causation; they do not establish objective frivolousness under Rule 11.

## 2009 Gaza Allegations Do Not Support Rule 11 Sanctions

CodePink contends that the FAC's allegations concerning its 2009 Gaza trips and the planned delivery of a letter from a Hamas official to President Obama are sanctionable because they are temporally remote, inaccurate, and incapable of supporting causation. Those arguments do not satisfy Rule 11's stringent standard.

CodePink's temporal remoteness argument goes to causation and proof, not Rule 11. Plaintiffs did not allege that a single 2009 trip independently caused the October 7 Attacks; they alleged a long-running enterprise in which the Gaza trips were one factual component. Rule 11 does not require Plaintiffs to prove causation or temporal proximity at the pleading stage.

CodePink's claim of factual inaccuracy rests entirely on its selective invocation of a United Nations press release describing the 2009 Gaza delegation as humanitarian and non-violent. That argument fails for Rule 11 purposes. Rule 11 does not require Plaintiffs to adopt Defendant's preferred narrative drawn from

a UN press release. UN materials are not adjudicative findings and do not foreclose contrary factual allegations. CodePink cannot convert a disputed factual narrative into a sanctions issue by citing a UN press release.

More importantly, Plaintiffs' allegations are supported by publicly available materials demonstrating that CodePink sought and obtained direct engagement with Hamas, a designated FTO, during the 2009 trips. Public video footage shows Hamas welcoming CodePink in Gaza. CodePink's own website stated that its delegation planned to meet with Hamas officials during those trips. Plaintiffs also identified a firsthand account from a trip participant describing meetings with Hamas officials, symbolic gestures of affiliation, and a level of coordination inconsistent with CodePink's portrayal of the trips as purely humanitarian. These sources independently confirm that Plaintiffs' counsel conducted a reasonable factual inquiry, defeating any claim of objective frivolousness.

CodePink argues that the diplomatic tone and content of the 2009 Hamas letter negate Plaintiffs' allegations. That argument misstates the allegation. The FAC does not allege that the letter itself called for terrorism. It alleges that the letter was authored by a senior official of Hamas, a designated FTO, and that CodePink accepted the letter and planned to deliver it directly to the President of the United States. The Rule 11 relevance lies in CodePink's alleged role as a conduit for official communications from a Hamas official to U.S. leadership. Diplomatic language by Hamas does not negate the significance of that role. Terrorist organizations routinely employ humanitarian rhetoric to advance strategic objectives, and Rule 11 does not require Plaintiffs to ignore that reality.

Furthermore, the temporal distance does not render the allegations

sanctionable. Plaintiffs allege a long-running conspiracy and enterprise that developed over years, not an isolated act causing immediate harm. The 2009 letter is pleaded as one example of the relationship between CodePink and Hamas and as part of a pattern of activity brewing well before the attacks. Rule 11 does not require Plaintiffs to prove causation or temporal proximity at the pleading stage. *Rice v. Chief Examine*r, 2025 WL 1743708 (11th Cir. June 24, 2025), was a non-terrorism case involving post-injury regulatory non-action, not affirmative misconduct. It does not hold that earlier affirmative conduct showing the formation, development, or support of a conspiracy is legally irrelevant.

## II.    A.    CodePink's Standing Arguments Rehash its Rule 12 Motion

CodePink's standing argument fails under Rule 11 because Plaintiffs had an objectively reasonable basis to plead traceability at filing. Article III requires that a plaintiff's injury be fairly traceable to the defendant's conduct at the pleading stage. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). At the pleading stage, Plaintiffs are not required to allege that CodePink directed, controlled, or carried out Hamas's attacks to state a claim for secondary liability. *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284 (S.D. Fla. 2018).

Plaintiffs alleged that CodePink participated in a long-running enterprise that embedded Hamas's mobilization and intimidation machinery on U.S. campuses before, during, and after October 7. Those allegations were supported by citations to authority recognizing that plausibly alleged conspiratorial participation and knowing substantial assistance within a coordinated support network may satisfy traceability under the ATA, where such conduct foreseeably contributes to

terrorist violence. *Boim v. Holy Land Found.*, 549 F.3d 685 (7th Cir. 2008) (en banc);
*Owens v. BNP Paribas S.A.*, 897 F.3d 266 (D.C. Cir. 2018); *Atchley v. AstraZeneca UK
Ltd.*, 22 F.4th 204 (D.C. Cir. 2022).

CodePink's contention that traceability requires allegations of financial
transfers, weapons provision, or direct operational control is incorrect. Material
support and substantial assistance are not limited to cash or arms. Services,
personnel, coordination, and infrastructure may suffice under existing law. *Holder*,
561 U.S. 1 (2010). Plaintiffs' reliance on those principles is objectively reasonable.

The cases CodePink cites, including *Walters v. Fast AC, LLC*, 60 F.4th 642
(11th Cir. 2023), *City of South Miami v. DeSantis*, 65 F.4th 631 (11th Cir. 2023), and
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), address speculative standing
theories in regulatory or constitutional contexts, including claims of future or
attenuated injury, rather than claims arising from completed terrorist attacks
causing concrete injury. They do not involve allegations of conspiracy, aiding and
abetting, or terrorist enterprises operating through layered organizational
structures, and they do not render Plaintiffs' theory frivolous.

CodePink likewise mischaracterizes Plaintiffs' arguments by reframing them
as a "speech-as-terrorism" theory centered on protests. Plaintiffs did not allege that
protests caused their injuries. They alleged years of coordinated conduct that built
and sustained Hamas's U.S. support machinery, including structural coordination
and shared infrastructure. CodePink's focus on isolated events and selective
allegations underscores that this is a Rule 12 disagreement, not a Rule 11 violation.

CodePink's criticism of Plaintiffs' reliance on *Boim* and *Owens* underscores

-8-

why sanctions are unwarranted. While those cases involved financial transactions, their reasoning addresses foreseeability and substantial assistance within a terrorist enterprise, not a categorical rule limiting traceability to cash transfers. Plaintiffs' citation to those cases reflects a reasonable interpretation of existing law, even if CodePink disputes its application. Rule 11 does not punish advocates for advancing legal theories supported by case law simply because a defendant disagrees.

Plaintiffs' standing theory was investigated, grounded in existing authority, and fully briefed in response to CodePink's Motion to Dismiss. Whether the Court ultimately agrees with that theory is a question for Rule 12, not Rule 11. CodePink's attempt to transform a pending merits dispute into sanctions should be rejected.

**B.    CodePink's First Amendment Arguments Rehash Merits Defense**. The FAC targets conduct, not protected viewpoints. It alleges the coordinated provision of services, personnel, infrastructure, and organizational support within Hamas's U.S. network. *Holder* draws a clear line between independent advocacy and coordinated support to a designated FTO, and the FAC plausibly alleges coordination and engagement. That is sufficient to defeat Rule 11 sanctions, even if CodePink disputes the merits.

Specifically, Plaintiffs allege the coordinated provision of services, personnel, infrastructure, and organizational support to Hamas and its U.S. student arm, NSJP. Coordinated communications and advocacy undertaken in furtherance of a terrorist organization are not protected by the First Amendment. *Holder*, 561 U.S. at 26–27, 39. The Eleventh Circuit has likewise upheld convictions for providing material support and related communications that further terrorist

objectives. *Jayyousi*, 657 F.3d 1085 (11th Cir. 2011).

The FAC alleges facts plausibly supporting such coordination, including CodePink's documented meetings with Hamas officials, acceptance and delivery of communications from Hamas leadership, shared office space with NSJP, sponsorship of the launch of NSJP, and years of coordinated activity embedding Hamas-aligned mobilization infrastructure on U.S. campuses. Those allegations render Plaintiffs' theory objectively reasonable and foreclose Rule 11 sanctions.

CodePink again cherry-picks isolated allegations, such as protests or civil disobedience, while ignoring the FAC's enterprise-wide allegations that must be read as a whole. Plaintiffs' theory is not that protests alone caused harm, but that CodePink helped build and sustain the machinery that amplified Hamas's violence and transformed it into terrorism with coercive impact, with protests alleged only as evidence of enterprise alignment.

The cases CodePink cites concerning advocacy for Palestine are inapposite. *American Association of University Professors v. Rubio* involved immigration and deportation actions challenged as viewpoint discrimination and retaliation against pro-Palestinian protest speech, not ATA liability or coordination with an FTO. *Stand With Us Center for Legal Justice v. MIT* addressed whether a university tolerated antisemitic protests, not whether an organization knowingly participated in a terrorist support network. Neither case involved allegations of coordinated support for an FTO, and neither renders Plaintiffs' claims frivolous.

CodePink's reliance on *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), is similarly misplaced. Plaintiffs do not seek to hold CodePink liable for

independent acts of violence by unidentified demonstrators, nor do they advance a "silence-as-ratification" theory rejected in *Claiborne*. Plaintiffs allege CodePink's own affirmative conduct, including organizing, coordinating, endorsing, and materially supporting a Hamas-aligned network that Hamas itself praised and relied upon. Allegations concerning protest violence are pleaded not as a basis for vicarious liability, but as contextual evidence of the nature, scope, and objectives of the coordinated enterprise in which CodePink is alleged to have participated. *Claiborne* addressed constitutional limits on imposing tort liability for the acts of others based on association or failure to repudiate; it does not insulate an organization from liability for its own knowing participation in, or material support of, an unlawful conspiracy or terrorist enterprise.

CodePink's reliance on the First Amendment does not resolve the factual disputes alleged in the FAC and underscores the inconsistency in CodePink's own characterization of its conduct. CodePink portrays itself as a peaceful humanitarian organization to minimize the significance of its Gaza trips and engagement with Hamas officials. Yet the FAC alleges that CodePink operated as part of a Hamas-aligned enterprise and organized protests at which Hamas chants were made and violence occurred. CodePink cannot simultaneously invoke its asserted humanitarian identity to disclaim engagement with Hamas while invoking the First Amendment to foreclose consideration of those events as evidence of alignment and coordination with Hamas. Whether CodePink functioned as a humanitarian organization or as part of a Hamas-aligned enterprise, whether its conduct constituted coordinated support, and whether the violence was independent of its organizing are all contested factual issues. Invoking the First Amendment does not

entitle CodePink to have those issues resolved in its favor at the Rule 11 stage. These disputes are properly addressed under Rule 12, not in a motion for sanctions.

### III.  **CodePink's Aiding-and-Abetting Arguments Rehash Its Merits Defense**

Plaintiffs plausibly alleged aiding-and-abetting under *Taamneh/Halberstam* by pleading (i) Hamas's terrorist acts, (ii) CodePink's general awareness based on direct engagement and sustained integration with Hamas and NSJP, and (iii) knowing substantial assistance through infrastructure and mobilization support. That showing forecloses Rule 11 sanctions.

CodePink's assertion that the FAC fails to allege "general awareness" improperly demands proof rather than plausibility. Under *Halberstam* and *Twitter*, general awareness does not require advance knowledge of the timing or details of a specific attack; it requires awareness of participation in an unlawful enterprise from which violence was foreseeable. *Twitter*, 598 U.S. at 495–97; *Halberstam v. Welch*, 705 F.2d 472, 477–78 (D.C. Cir. 1983).

Plaintiffs allege that CodePink repeatedly engaged directly with Hamas officials and integrated itself into Hamas's U.S. support network by sponsoring the forum that launched NSJP as Hamas's student arm, sharing office space with NSJP, and coordinating activities over many years. The FAC situates these allegations within a continuous enterprise predating October 7 and extending through its aftermath.

CodePink's focus on the diplomatic language of a single 2009 letter does not negate awareness. Hamas was a designated FTO long before 2009, and a defendant need not endorse violence to be generally aware that it is assisting an unlawful enterprise. *Twitter* expressly rejects that level of specificity. 598 U.S. at 495-96.

CodePink's remaining arguments—that Plaintiffs failed to allege "traditional" assistance such as funds or weapons, or that certain conduct occurred before or after October 7—sound in Rule 12 merits disputes, not Rule 11 frivolousness. Courts have recognized that substantial assistance is not limited to cash or arms and may include services, coordination, infrastructure, and enterprise-building that foreseeably further terrorist activity. Whether Plaintiffs' allegations ultimately satisfy those standards is a merits question.

Decisions such as *Parizer* and *Gerwaski* reflect pleading limits and fact-specific rulings, not sanctionable conduct or bad faith. Their existence confirms that Plaintiffs' theory is being actively litigated, not punished under Rule 11. *Parizer* granted leave to amend, confirming that such ATA theories are litigated rather than sanctionable. That decision is now on appeal, and multiple state attorneys general have filed an amici curiae brief, underscoring that the scope and application of ATA liability remain a developing area of law. *Gerwaski* similarly reflects pleading limits, not Rule 11 bad faith.

## IV.    CodePink's Conspiracy Argument Rehashes its Merits Defense

Conspiracy under § 2333(d)(2) may be pled through circumstantial evidence and inferred from coordinated conduct and unity of purpose. *Halberstam*, 705 F.2d at 477. Plaintiffs alleged far more than parallel advocacy, including repeated meetings with Hamas officials, delivery of official communications, sponsorship of the 2010 forum that launched NSJP, and years of coordinated activity integrating Hamas's messaging and mobilization infrastructure in the U.S. Whether those allegations ultimately satisfy Rule 12 is a merits question, not a basis for sanctions.

CodePink's reliance on *Parizer* for the conspiracy claim is misplaced. *Parizer* was not a conspiracy decision and turned on post-October 7 conduct. It does not hold that enterprise-based conspiracy allegations grounded in pre-attack coordination are foreclosed, much less sanctionable. CodePink's assertion that Plaintiffs failed to allege agreement misstates the FAC, which alleges coordination with Hamas directly and through NSJP, the Hamas-aligned student arm at the center of this case. At minimum, Plaintiffs' conspiracy theory is grounded in existing law and supported by pleaded facts. Rule 11 does not authorize sanctions simply because Defendant disputes whether those facts plausibly establish an agreement.

## V.   CodePink's Material Support Arguments Rehash its Merits Defense

CodePink argues that Plaintiffs' material-support claim is frivolous because CodePink did not itself commit violent acts. This argument repackages CodePink's Rule 12 merits defense and does not satisfy Rule 11's objective-frivolousness standard. Plaintiffs' theory that non-violent conduct coordinated with an FTO can constitute material support is grounded in statute and Supreme Court precedent. *Holder*, 561 U.S. at 26-27. Plaintiffs also advanced a non-frivolous theory that CodePink's own coordinated conduct "involve[d]" acts dangerous to human life by amplifying and operationalizing Hamas's violence to achieve coercive impact under § 2331(1), a theory grounded in the ATA's text even if disputed.

The ATA does not limit liability to those who physically carry out attacks. "Material support" includes services and personnel, and liability attaches where such support furthers a terrorist campaign. 18 U.S.C. § 2339B(a)(1). Plaintiffs

alleged that CodePink coordinated with Hamas officials, helped launch and sustain NSJP as Hamas's U.S. student arm, and provided infrastructure and amplification that transformed Hamas's violence into effective terrorism. Disagreement with those allegations is a merits issue for Rule 12, not a basis for sanctions.

CodePink's reliance on cases involving arm's-length services does not render Plaintiffs' theory frivolous. Disagreement over how § 2331, § 2333, and § 2339B apply to coordinated non-violent conduct is precisely the type of legal dispute Rule 11 does not punish. Because Plaintiffs' theory reflects a reasonable application and good-faith development of existing law, Rule 11 sanctions are not warranted.

## VI.    No Improper Purpose

CodePink's accusation that Plaintiffs acted with an improper purpose fails. Rule 11(b)(1) targets filings brought to harass, delay, or needlessly increase costs. It does not punish plaintiffs for asserting grave allegations supported by publicly available facts under a statute expressly designed to reach such conduct.

**A. Plaintiffs Did Not Defame CodePink.** CodePink's claim that the FAC defames it by associating it with terrorist organizations is demonstrably false. Plaintiffs did not invent inflammatory labels or rely on rhetoric. They pleaded facts showing CodePink's documented engagements with designated terrorist organizations and affiliated regimes, including public endorsement of PFLP terrorist Khalida Jarrar, meetings with Hezbollah-aligned actors, and direct engagement with Iranian leadership. These allegations are supported by CodePink's own statements, videos, and publications. Pleading those facts under the ATA is not defamation. It is what Congress authorized plaintiffs to do.

-15-

Defendant's reliance on *Manhart v. WESPAC Foundation, Inc.*, 2025 WL
2257408 (N.D. Ill. Aug. 7, 2025), is misplaced. The court in *Manhart* issued
sanctions because the plaintiff pursued a state-law false imprisonment claim that
failed as a matter of law and continued to do so after repeated Rule 11 warnings
explaining that the alleged conduct could not satisfy the elements of the tort. This
case, by contrast, arises under the ATA and advances statutory claims Congress
expressly authorized under JASTA, grounded in publicly documented facts and a
nonfrivolous application of developing ATA precedent. Unlike *Manhart*, which
involved a legally untenable tort theory, this case presents fact-intensive questions
of enterprise participation, coordination, and material support that are properly
tested under Rule 12, not Rule 11.

**B. <u>Plaintiffs Did Not Seek to Chill Protected Speech</u>.** CodePink's assertion
that this case targets protected advocacy merely repackages its Rule 12 arguments
and cannot support Rule 11 sanctions. Plaintiffs do not seek to punish CodePink
for expressing political views. They allege coordinated conduct, provision of
services, personnel, and infrastructure to a terrorist enterprise and its U.S. arm. The
knowing provision of such support is not protected by the First Amendment. *Holder*,
561 U.S. at 26–27.

The cases Defendant cites—*Trump v. Clinton*, 640 F. Supp. 3d 1321, 1334
(S.D. Fla. 2022); *Rhodes v. MacDonald*, 670 F. Supp. 2d 1363, 1378 (M.D. Ga.
2009)—sanctioned litigation where there was no viable legal theory combined with
overt political diatribe. This case bears no resemblance. Plaintiffs are victims of the
October 7 terrorist attacks, and Defendant was named only after due diligence

identifying its alleged role in a coordinated Hamas-aligned enterprise. Plaintiffs invoke a federal statute enacted to deter terrorism support, plead defendant-specific conduct, and seek relief Congress expressly authorized.

Disagreement with Plaintiffs' theory does not render an ATA action sanctionable. Rule 11 does not immunize organizations from accountability simply because they label themselves advocacy groups.

## VII. <u>Plaintiffs' Counsel Had Ample Grounds to Bring These Claims</u>

CodePink's assertion that this action was filed for an improper purpose is refuted by the record. The FAC is the product of extensive factual investigation and legal analysis addressing Hamas's U.S. support infrastructure. Plaintiffs did not target CodePink for its political views or advocacy. They sued CodePink because publicly available evidence plausibly places it within the same interlocking organizational network as NSJP and the U.S. Hamas infrastructure.

Far from being frivolous or retaliatory, Plaintiffs' claims align with a growing body of post–October 7 ATA litigation nationwide. Courts across the country are actively adjudicating similar theories involving Hamas-aligned U.S. networks. Furthermore, since the October 7 Attacks, federal and state authorities have opened inquiries into Hamas-linked U.S. organizations and their campus operations, including investigations and oversight letters concerning NSJP. Congressional committees and state attorneys general have publicly identified the same organizational relationships, leadership overlaps, and mobilization patterns alleged in the FAC. These cases and investigations confirm that these ATA theories are legally cognizable, objectively reasonable, and far from sanctionable.

Nor does CodePink establish any intent to harass. Rule 11(b)(1) targets filings brought to embarrass, delay, or burden without legal basis. Plaintiffs brought a statutory ATA action Congress expressly authorized under JASTA, supported by over 200 pages of documented facts, publicly available sources, and governing law. Defendant's disagreement with liability does not warrant Rule 11 sanctions where a pleading reflects a reasonable, good-faith inquiry. *Donaldson*, 819 F.2d at 1556.

## VIII. <u>Defendant is Not Entitled to Attorneys' Fees or Costs</u>

Rule 11 is not a fee-shifting statute, and sanctions, including fee awards, are appropriate only where a filing is objectively frivolous or brought for an improper purpose. *Worldwide Primates*, 87 F.3d at 1254; *Thompson*, 610 F.3d at 665. Because the FAC rests on a reasonable factual investigation and advances non-frivolous ATA theories currently being litigated nationwide, CodePink's disagreement with Plaintiffs' claims cannot support sanctions or fees. *Donaldson*, 819 F.2d at 1556.

## IX. <u>Rule 11 Cannot be Used to Chill Good-Faith or Novel ATA Advocacy</u>

Rule 11 was never intended to suppress good-faith efforts to develop the law in emerging areas such as ATA liability. Sanctions must be applied with particular care when the challenged pleading involves a creative, though reasonable, argument for the extension or modification of existing law. *Gilmore v Day,* 125 F Supp 2d 468 (MD Ala 2000); *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (purpose of Rule 11 is not to deter novel legal arguments or cases of first impression). Courts must avoid turning Rule 11 into a weapon against legitimate advocacy, especially where, as here, the factual and legal landscape is still developing in the aftermath of the October 7 Attacks.

Recent Supreme Court decisions underscore that ATA doctrines must be applied flexibly and in a manner consistent with Congress's deterrent purpose. *Twitter* reaffirmed that aiding-and-abetting principles are applied "to impose liability on those who consciously and culpably participated," and cautioned that "substantial assistance" does not lend itself to crisp, bright-line rules. 598 U.S. 471, 505-06 (2023). *Twitter* also emphasized that, while *Halberstam* supplies a framework, courts should apply it in light of modern terrorist networks and the ATA's purposes. And in *Fuld v. Palestine Liberation Org.,* the Court reaffirmed Congress's intent that antiterrorism laws be applied to halt, deter, and disrupt international terrorism and recognized a strong federal interest in permitting American victims of international terror to pursue justice in domestic in U.S. courts. 606 U.S. 1 (2025).

Plaintiffs' claims rest on extensive factual research, parallel litigation, and a growing body of public investigations into Hamas-linked entities operating in the U.S. The Supreme Court in *Twitter*, 598 U.S. 471, reaffirmed *Halberstam*, 705 F.2d 472, and left ample room for courts to continue refining the contours of ATA liability. Plaintiffs' counsel acted squarely within that evolving legal framework.

To sanction such advocacy would contravene Rule 11's deterrent purpose and would chill the very type of civil enforcement Congress designed § 2333 to promote. The ATA depends on private plaintiffs, who are victims of terrorism, to expose and disrupt terrorist support networks. Allowing defendants to wield Rule 11 motions, cloaked in First Amendment rhetoric, to intimidate plaintiffs and their counsel would discourage victims from seeking redress and risk insulating alleged

supporters of terrorism from judicial scrutiny. Plaintiffs and their counsel brought this case in good faith, consistent with statutory purpose, and supported by a robust factual record and contemporaneous authority.

When a Rule 11 motion is denied, the Court may award the opposing party its reasonable expenses incurred in responding. *Fed. R. Civ. P.* 11(c)(2). Because Defendant's motion duplicates its Rule 12(b)(6) arguments, identifies no objectively frivolous filing, and seeks to chill Plaintiffs' litigation through intimidation, Plaintiffs respectfully request reasonable fees, limited to deterrence.

## CONCLUSION

Filed in the wake of the October 7, 2023 Hamas massacres—the most devastating assault on the Jewish people since the Holocaust—and amid an unprecedented surge of antisemitic agitation on U.S. campuses tied to NSJP's organizing, the FAC presents detailed, well-researched allegations supported by public reports, congressional findings, and parallel ATA litigation nationwide. Plaintiffs' claims are firmly grounded in law and fact, and they advance an important statutory purpose: ensuring that those who knowingly assist designated FTOs are held accountable in U.S. courts.

Rule 11 is not a tool for political disagreement or intimidation of victims' counsel. Plaintiffs' counsel acted reasonably and in good faith. Because CodePink has shown neither objective frivolousness nor improper purpose, Plaintiffs respectfully request that the Court deny the Rule 11 motion of Defendant CodePink and decline to impose any sanctions, fees, or costs.

Dated:       Brooklyn, New York
             January 19, 2026

                              Yours,

                              THE BERKMAN LAW OFFICE, LLC
                              *Attorneys for Plaintiffs*

                              by:    /s/ Robert J. Tolchin
                                     Robert J. Tolchin

                              829 East 15th Street, Box 7
                              Brooklyn, New York 11230
                              718-855-3627

Of Counsel:

NITSANA DARSHAN-LEITNER & CO.

Nitsana Darshan-Leitner

*Israeli Attorney for Plaintiffs*

10 Hata'as Street, Ramat Gan, 52512 Israel

Israeli #: 011-972-523-837-020

US #: (212) 591-0073

## **CERTIFICATE OF SERVICE**

I hereby certify that this Motion filed through the ECF system is expected to
be sent electronically to the registered participants as identified on the court's
docket.

/s/Robert J. Tolchin
Robert J. Tolchin