## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MAURICE SHNAIDER, et al.,**

     **Plaintiffs,**

**v.**                            **Case No: 8:24-cv-01067-MSS-SPF**

**AMERICAN MUSLIMS FOR
PALESTINE, et al.,**

     **Defendants.**
_____/

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Defendants Hatem Abudayyeh, Magdi Odeh, United States Palestinian Community Network, American Muslims for Palestine/Americans for Justice in Palestine Educational Foundation, Hatem Bazian, Osama Abuirshaid, Munjed Ahmed, Saleh Sarsour, Shakeel Sayed, Zafeh Baroud, Taher Herzallah, CodePink, and Rafeeq Jaber's Motions to Dismiss Plaintiffs' Amended Complaint, (Dkts. 45, 46, 47, 48, 50, 52, 54, 56, 58, 71, 81, 90, 99); Plaintiffs' Omnibus Response in Opposition to Defendants Hatem Bazian, Osama Abuirshaid, Munjed Ahmed, Saleh Sarsour, Shakeel Sayed, and American Muslims for Palestine, (Dkt. 68); Plaintiffs' Omnibus Response in Opposition to Hatem Abudayyeh, Magdi Odeh, and United States Palestinian Community Network, (Dkt. 69); Plaintiffs' Response in Opposition to Defendant Zarefah Baroud, (Dkt. 91); Plaintiffs' Response in Opposition to Defendant Taher Herzallah, (Dkt. 92); Plaintiffs'

Response in Opposition to Defendant CodePink, (Dkt. 93); and Plaintiffs' Response in Opposition to Defendant Rafeeq Jaber, (Dkt. 106). Defendants National Students for Justice in Palestine, Students for Justice in Palestine Chapters, Nerdeen Kiswani, and Abdullah Akl have yet to be served process.

Upon consideration of the Amended Complaint, the Motions to Dismiss filed, the Responses filed, and case law, the Court orders that Defendants' Motions to Dismiss the Complaint are **GRANTED**.

## I.    BACKGROUND

Plaintiffs filed their Amended Complaint (the "Complaint") on July 15, 2024. (Dkt. 6) The Court entered a Show Cause Order on July 29, 2024 directing the Plaintiffs to show cause why venue is proper in the Middle District of Florida. Plaintiffs filed a Response to the Show Cause Order, (Dkt 13), and on March 27, 2025, the Court discharged the Order and granted Plaintiffs 90 days to serve the defendants. Motions to Dismiss were filed by all Defendants who have been served. (Dkts, 45, 46, 47, 48, 50, 52, 54, 56, 58, 71, 81, 90, 99) Plaintiffs filed Responses in Opposition to all Motions to Dismiss. (Dkts. 68, 69, 91, 92, 93, 106) This action is now ripe for review.

Plaintiffs are individuals and the relatives of individuals who allege harm resulting from Hamas' October 7, 2023 terrorist attacks in Israel and other subsequent terrorist attacks in Israel. (Dkt. 6 at ¶¶ 417-452) Plaintiffs allege that all two hundred thirty-four[1] Defendants conspired with, aided and abetted, and provided material

---

[1] Counting the two hundred sixteen listed Students for Justice in Palestine chapters across universities mentioned in Exhibit 1 of the Amended Complaint, the Court counts two hundred thirty-four

support to Hamas. (Id. at ¶ 2) Plaintiffs assert three causes of action under the Anti-Terrorism Act (ATA), as amended by the Justice Against Sponsors of Terrorism Act (JASTA): Conspiracy Liability (18 U.S.C. § 2333(a) and (d)); Aiding and Abetting Liability (18 U.S.C. § 2333(a) and (d)); and Material Support Liability (18 U.S.C. § 2339B and § 2333(a)). (Dkt. 6 at ¶¶ 453-484) Plaintiffs attempt to link their injuries sustained in Hamas' October 7, 2023 attacks and subsequent attacks in Israel with Defendants' conduct.

## II.    LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560–64 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 545). In considering a motion to dismiss and evaluating the sufficiency of a

---

Defendants.

complaint, a court must accept the well-pleaded facts as true and construe them in the light most favorable to the plaintiff. <u>Quality Foods</u>, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. <u>Id.</u>

### III.    ANALYSIS

#### a. The Amended Complaint does not comport with the required pleading standard of Fed. R. Civ. P. 8.

As a preliminary matter, the Amended Complaint disregards the pleading requirement of Rule 8 of the Federal Rules of Civil Procedure. A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Plaintiffs, here, file a two hundred eighteen page Amended Complaint and do not address Count I against Defendants until page two hundred one. This is not a short and plain statement of the claim by any definition of the phrase. While Plaintiffs are given grace and discretion to decide what Rule 8 requires depending on the claim asserted, two hundred one pages of factual allegations and history for the Court and Defendants to sift through is improper. "A complaint is a mechanism to fairly, precisely, directly, soberly, and economically inform the defendants . . . of the nature and content of the claims." <u>Trump v. New York Times Co.</u>, 800 F. Supp. 3d 1297, 1299 (M.D. Fla. 2025). The Complaint fails under the required pleading standard.

The Complaint is also a quintessential shotgun pleading. "Shotgun pleadings violate Rule 8, which requires 'a short and plain statement of the claim showing that

the pleader is entitled to relief,' by fail[ing] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294–95 (11th Cir. 2018). The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (i) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (ii) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (iii) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief"; and (iv) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Here, the Complaint is a shotgun pleading for three reasons. First, it consists of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. Second, it improperly realleges all preceding paragraphs in each Count such that each Count contains irrelevant factual allegations and legal conclusions. See id. at 1321-22, 1324. Finally, the Complaint asserts three claims against two hundred thirty-four defendants without identifying which defendants are responsible for which allegations. See id. Even still, the Court will address the Defendants' Motions to Dismiss and determine whether the claims against Defendants properly state claims for relief.

5

### b. The Amended Complaint fails to state a claim for relief for all alleged Counts.

Defendants' Motions to Dismiss all assert Plaintiffs failed to state a claim upon which relief can be granted and move this Court to dismiss under Fed. R. Civ. P. 12(b)(6). Defendants do not seem to dispute in their Motions that Hamas is designated as a Foreign Terrorist Organization ("FTO"), Hamas was responsible for an attack on Israel on October 7, 2023, the attack was an act of international terrorism, and Plaintiffs were harmed in that act. With those facts deemed uncontested, each Count alleged by the Plaintiffs will be addressed in turn.

#### i.  Count II – Aiding and Abetting under the ATA[2]

The ATA permits liability against any person who aids and abets a person who commits an act of international terrorism. 18 U.S.C. § 2333(d)(2). In this context, aids and abets "refers to a conscious, voluntary, and culpable participation in another's wrongdoing," in which a person "knowingly provided substantial assistance" in the act of terrorism. Twitter, Inc. v. Taamneh, 598 U.S. 471, 493, 495 (2023). To prove this, a plaintiff should endeavor to plead  (1) "the party whom the defendant aids must perform a wrongful act that causes an injury," (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and (3) "the defendant must knowingly and substantially assist the principal violation." Id. at 486. The Supreme Court has indicated that this

---

[2] The Court begins with the Plaintiffs' second claim to follow the briefing structure of Defendants' Motions to Dismiss and Plaintiffs' Responses in Opposition.

framework, first articulated in <u>Halberstam v. Welch</u>, is helpful, albeit not inflexible, in determining whether a person may be liable for aiding and abetting terrorism. <u>Id.</u> at 497 (discussing <u>Halberstam v. Welch</u>, 705 F.2d 472 (D.C. Cir. 1983)). While the <u>Halberstam</u> framework should not be applied "too rigidly," the elements "rest on the same conceptual core that has animated aiding-and-abetting liability for centuries: that the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" <u>Id.</u> at 493.

"Under any theory, liability requires a connection between the alleged assistance and the specific act of international terrorism that injured plaintiffs." <u>Parizer v. AJP Educ. Found., Inc.</u>, No. 1:24-CV-724 (RDA/IDD), 2025 WL 2382933, at *22 (E.D. Va. Aug. 15, 2025). The lack of a "definable nexus between the assistance provided and the wrongful act—'at minimum—drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack.'" <u>Id.</u> (quoting <u>Taamneh</u>, 598 U.S. at 503).

Here, Plaintiffs fail to sufficiently plead the second or third elements of the <u>Halberstam</u> framework or any affirmative act by Defendants that could have aided in the October 7 attacks.

### 1. General Awareness

First, Plaintiffs do not allege any general awareness of the October 7 attacks by any Defendant. Plaintiffs recite a multitude of specific incidents and/or statements by non-defendants and Defendants supporting Palestine and/or disagreeing with Israel's role in the ongoing conflict, the creation of Israel, U.S. support for Israel, Zionism,

and the like. While Plaintiffs may strongly disagree with these individuals and Defendants' views, Plaintiffs do not allege any conduct that indicates knowledge of the October 7 attacks prior to their onset.[3] Plaintiffs again fail to allege any non-conclusory awareness of subsequent actions and attacks by Hamas after October 7, to the extent those attacks harmed Plaintiffs. Disagreement with Israel and its actions and support for Palestine are not the same as awareness of a role in the attacks carried out by Hamas.

### 2. Knowing And Substantial Assistance

Second, Plaintiffs fail to allege knowing and substantial assistance. Plaintiffs in their Responses to the Motions to Dismiss suggest that knowledge of the specific act that harmed Plaintiffs is not required, see e.g., (Dkt. 68 at 13; Dkt. 91 at 11; Dkt. 92 at 10; Dkt. 93 at 17), but this is incorrect. The Supreme Court has clearly stated: "it is not enough, as [P]laintiffs contend, that a [D]efendant [has] given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." Taamneh, 598 U.S. at 495. Instead, Defendants must have knowingly provided substantial assistance to Hamas in the commission of the specific actionable wrong. Id. Plaintiffs fail to allege such assistance.

This prong of aiding and abetting is "designed to capture the defendants' state

---

[3] For example, Plaintiffs imply that Columbia Students for Justice in Palestine's Instagram Post on October 5, 2023, captioned, "We are back!! First general body meeting to be announced soon… Stay tuned," is an indication of knowledge of the October 7 attacks because they did not post for the preceding five months. (Dkt. 6 at ¶ 297) Notably, most college students are not on campus during the months of May-August and while unfortunate timing, there is no actual allegation that the students were aware of the attacks.

of mind with respect to their actions and the tortious conduct." <u>Taamneh</u>, 598 U.S. at 504. Plaintiffs fail to allege Defendants' state of mind. Plaintiffs make many conclusory allegations regarding Defendants "close integration" and "alliance with Hamas" such that they "shared the common goal of Hamas destroying the state of Israel," but these are conclusory allegations devoid of factual support. More so, concluding that some of the Defendants are a reincarnation of previous organizations found to materially support Hamas is not enough to show knowledge and substantial assistance in furthering the October 7 attacks.

Plaintiffs also allege that Defendants collectively "aided and abetted the commission of Hamas's acts" by the following:

> providing essential platforms, communications, and public relations within the United States, acting as a surrogate for Hamas, exerting political pressure, coercion, and influence on the United States government and, by extension, the State of Israel. Defendants aided and abetted the commission of Hamas's acts of terrorism by helping Hamas maintain its power, conceal its diversion of hundreds of millions of dollars in aid intended for Gazan civilians, and allow Hamas to perpetrate and continue their atrocities. Additionally, Defendants serve and continue to serve Hamas's agenda by encouraging and perpetrating the terrorizing of Jewish students on college campuses, promoting Jihad, supporting boycott initiatives, and advocating for the destruction of the State of Israel, thereby extending and strengthening Hamas's influence within the United States.

(Dkt. 6 at ¶ 476) Plaintiffs do not indicate which of the two hundred thirty-four Defendants are alleged to have engaged in this conduct. As discussed above, Plaintiffs also do not allege any awareness or knowledge of the October 7, 2023 attacks or subsequent attacks by Hamas. Plaintiffs, thus, are unable to allege substantial

assistance to help any specific attack succeed.[4] Because Plaintiffs have not alleged knowing assistance, the Court need not delve into whether Defendants provided substantial assistance.

### 3. Affirmative Act

Finally, even if the Court disregarded the Halberstam factors, Plaintiffs fail to plead any affirmative act by the Defendants that could point to Defendants' "intent of facilitating the offense's commission." Taamneh, 598 U.S. at 490. An affirmative act can include conduct such as "abetting, inducing, encouraging, soliciting, or advising the commission of the offense, such as through words of encouragement or driving the getaway car." Id. Any alleged encouraging statements made by protestors, other individuals, or Defendants that discussed October 7 were made after the attacks and thus could not have aided or abetted the commission of the specific offense. Plaintiffs allege no other affirmative act to satisfy the aiding and abetting standard.

As such, Plaintiffs' aiding and abetting claim under the ATA is due to be **DISMISSED**.

### ii. Count I – Conspiracy Liability under the ATA

Plaintiffs similarly fail to allege conspiracy liability. To plead a claim for conspiracy under the Anti-Terrorism-Act, Plaintiffs must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused

---

[4] To the extent some individuals' statements were threatening and antisemitic, see e.g., (Dkt. 6 at ¶ 286), while horrific, they still do not allege knowing, substantial assistance to Hamas in its attacks. It is also important to note there is also no indication that the cited paragraph is a quote said by any specifically identified Defendant.

by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." Newman v. Associated Press, 758 F. Supp. 3d 1357, 1373–74 (S.D. Fla. 2024) (quoting Halberstam, 705 F.2d at 477). Some courts have found a conspiracy claim where the alleged parties "pursued the same object, although by different means, one performing one part and another part." Halberstam, 705 F.2d at 480 (citing Davidson v. Simmons, 280 N.W.2d 645, 648-49 (Neb. 1979)).

Here, while Plaintiffs repeatedly state Defendants "knowingly conspired," "acted overtly," "entered into a conspiracy," "furthered the conspiracy," and "shared [Hamas'] objectives," Plaintiffs do not allege any sufficient factual support for these legal conclusions. (Dkt. 6 at ¶¶ 453-467) There are no allegations that Defendants and Hamas ever directly conspired or indirectly conspired. Plaintiffs plead no allegations of communication between Defendants and Hamas, or circumstantial evidence of communication. Nor are there any allegations of acts performed in furtherance of Hamas' terrorist scheme. Plaintiffs' allegations instead accuse Defendants of "continu[ing] the [] enterprise of sustaining Hamas in the United States and conspiracy with Hamas" primarily premised upon allegations that some of Defendants' board members formerly served on the boards of now defunct nonprofit organizations said to previously materially support Hamas. (Dkt. 6 at ¶ 406) These accusations are conclusory and among the courts that have recently been presented with this, or a similar, argument, none has found any Defendant to be an alter ego of the prior organizations or Hamas. See Gerwaski v. State ex rel. Bd. of Regents of the Nevada

System of Higher Educ., No. 2:24-CV-00985-APG-MDC, 2025 WL 1294107, at *5 (D. Nev. May 5, 2025); Parizer, 2025 WL 2382933, at *20; Manhart v. WESPAC Found., Inc., No. 24-CV-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025).

In sum, Plaintiffs do not state a claim for conspiracy. Plaintiffs' conspiracy liability claim under the ATA is due to be **DISMISSED**.

### iii.   Count III – Material Support under the ATA

While aiding and abetting and conspiracy are secondary liability claims under JASTA's secondary liability provision, 18 U.S.C. § 2333(d)(2), material support under 18 U.S.C. § 2339B is a direct liability claim. To establish a direct liability claim under the Anti-Terrorism Act, Plaintiffs must allege "(1) unlawful action, i.e. an act of international terrorism; (2) the requisite mental state; and (3) causation." Newman v. Associated Press, 801 F. Supp. 3d 1334, 1348 (S.D. Fla. 2025) [hereinafter Newman II] (alteration accepted) (citing In re Chiquita Brands Int'l, Inc., 284 F. Supp. 3d 1284, 1305 (S.D. Fla. 2018)). Plaintiffs fail to allege an act of international terrorism, as required by § 2333. Their allegations of Defendants' material support to an FTO under § 2339B are insufficient.

### 1.  Act of International Terrorism

Plaintiffs assert that providing material support to Hamas is by definition an act of international terrorism sufficient to satisfy the first element of direct liability under § 2333(a). See e.g., (Dkt. 68 at 20, Dkt. 92 at 18, Dkt. 106 at 18) The Court disagrees. See e.g., Newman, 758 F. Supp. 3d at 1376 ("[I]t is not enough to allege claims under §§ 2339A and B to automatically render them acts of international terrorism."). "The

12

provision of material support[5] to a designated terrorist organization in violation of §
2339B can certainly satisfy [] part of the statutory definition . . . [b]ut, to qualify as
international terrorism, a defendant's act must also involve violence or endanger
human life." Linde v. Arab Bank, PLC, 882 F.3d 314, 326 (2d Cir. 2018). To allege a
direct liability claim of international terrorism, Plaintiffs must separately allege a
violation of the criteria in § 2331(1). See Newman, 758 F. Supp. 3d at 1376 (collecting
cases).

Plaintiffs do not allege any acts by Defendants that meet the criteria in § 2331(1).
See Linde, 882 F.3d at 326; see also In re Chiquita Brands Int'l, Inc., 284 F. Supp. 3d
at 1307 ("Because § 2333(a) supports only primary liability, a successful ATA plaintiff
must allege and prove that the defendant directly committed an 'act of international
terrorism' which caused the plaintiff's injuries."). Plaintiffs assert that Hamas, not
Defendants, "committed, planned, and authorized" acts of international terrorism.
(Dkt. 6 at ¶¶ 456, 472)

Plaintiffs attempt to allege material support by Defendants through
"communication, platforms, and public relations" as "the U.S. student arms of
Hamas" that allegedly helped Hamas divert millions of dollars in aid toward its
terrorism. (Id. at ¶ 483) Plaintiffs fail to provide any facts that support the conclusions

---

[5] 18 U.S.C. § 2339A(b)(1) defines material support as "any property, tangible or intangible, or service,
including currency or monetary instruments or financial securities, financial services, lodging,
training, expert advice or assistance, safehouses, false documentation or identification,
communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more
individuals who may be or include oneself), and transportation, except medicine or religious
materials."

13

that Defendants' support for Palestinians transformed them into the "U.S. [] arms of Hamas" or that any money was given or diverted to Hamas. Nor do Plaintiffs allege material support sufficient to rise to an act of international terrorism.

The discernable allegations of Defendants' alleged financial support to Hamas are riddled with inferential leaps and devoid of factual support. See (Dkt. 6 at ¶ 136) ("AMP . . . has indirectly provided material support to Hamas by arranging to have payments sent to purported charitable organizations, which act as intermediaries. These organizations raise funds at the AMP conventions to send overseas for the ostensible purpose of 'ameliorating the suffering in Gaza.' Each of these organizations has close connections with Hamas and disburses funds through Hamas operatives."); see also (Dkt. 6 at ¶¶ 139-141, 305).

Plaintiffs cite to Holder v. Humanitarian Law Project to support their assertions, but their comparison is misguided. 561 U.S. 1 (2010). In Holder, the plaintiffs sued challenging the constitutionality of the statute criminalizing material support, § 2339B. The plaintiffs claimed that they hoped to provide support, legal training, monetary contributions, and other tangible aid to specific designated FTOs, compared to Defendants whose alleged material support is altogether conclusory. Id. at 10. In this case, Plaintiffs allege, for example, that the National Students for Justice in Palestine ("NJSP") Defendants disseminated the "Day of Resistance Toolkit," a document for American college students, created *after* the October 7, 2023 attacks. This document stated:

> Unity Intifada: The revolution is being waged across historic

> Palestine—not just cross-factional, but unifying our people in the name of resistance; All Palestinian factions in Gaza appear to be participating under unified command; *This is the first time since 1949 that a large-scale battle has been fought within '48 Palestine.* We as Palestinian students in exile are PART of this movement, not in solidarity with this movement. This is a moment of mobilization for all Palestinians. We must act as part of this movement. All of our efforts continue the work and resistance of Palestinians on the ground.

(Dkt. 6 at ¶¶ 288, 293) (emphasis in original). As the Eastern District of Virginia District Court stated, "[i]t is not a reasonable inference that this statement, coupled with the observation that '[a]ll Palestinian factions in Gaza appear to be participating under unified command,' to be an admission by NSJP that it is 'part of Hamas and works to further its evil ends.'" <u>Parizer</u>, 2025 WL 2382933, at *20. And even if that inference were reasonable, Plaintiffs fail to allege sufficient facts to support an allegation that Defendants knowingly committed an act of international terrorism. <u>See id.</u>

Further, the allegations that some Defendants are "acting as a surrogate for Hamas" or are "the alter ego and successor of [prior material support enterprises] and, since [their] founding, ha[ve] carried on the Hamas conspiracy in the United States,"(Dkt. 6 at ¶ 128), are conclusory and based mainly on allegations that they have overlapping board members. See <u>Parizer</u>, 2025 WL 2382933, at *20. Again, an inference that organizations with shared board members are each other's alter ego or successors is not reasonable absent factual support. <u>Id.</u>

### 2. Requisite Mental State and Causation

Even if the Plaintiffs were able to allege an act of international terrorism at the

hands of the Defendants, Plaintiffs do not sufficiently allege causation or the requisite mental state. 18 U.S.C. § 2339B requires a mental state of "knowingly." While the statute does not require intent to further the organization's terrorist activities, it does require any material support to be "coordinated with or under the direction of a designated foreign terrorist organization." Holder, 561 U.S. at 32. "Independent advocacy that might be viewed as promoting the group's legitimacy" is insufficient. Id. at 31-32.

Here, Plaintiffs do not allege any speech or actions by Defendants that were coordinated with Hamas. They instead allege conclusively that Defendants' advocacy for Palestine is synonymous with providing material support for Hamas because Defendants and Hamas share the same goal of a free Palestine. This is exactly what the material support statute forbids. "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." 18 U.S.C. § 2339B(h).

Finally, Plaintiffs are unable to show that Defendants' conduct was a proximate cause of Plaintiffs injuries as required under the ATA. 18 U.S.C. § 2333(a) ([a]ny national of the United States injured . . . *by reason of* an act of international terrorism . . . may sue therefor in any appropriate district court of the United States") (emphasis added). Federal courts have "conflicting versions of proximate cause," and the Eleventh Circuit has not yet ruled on the issue. Colon v. Twitter, Inc., 14 F.4th 1213, 1223 (11th Cir. 2021). Courts differ between a "direct relationship" approach and a

16

"substantial factor" approach that requires injuries to be "reasonably foreseeable or anticipated." See, e.g., Fields v. Twitter, Inc., 881 F.3d 739, 744 (9th Cir. 2018)) ("[A] plaintiff must show at least some direct relationship between the injuries that he or she suffered and the defendant's acts."); Owens v. BNP Paribas, S.A., 897 F.3d 266 (D.C. Cir. 2018) (requiring plaintiffs to allege proximate cause by showing (1) the defendants acts were a "substantial factor" in the events that led to the injuries and (2) the injuries were "reasonably foreseeable or anticipated as a natural consequence").

Without Eleventh Circuit authority on the correct standard for proximate cause and assuming arguendo that the Eleventh Circuit would adopt the lower standard, Plaintiffs are unable to allege Defendants' acts were a substantial factor in causing Plaintiffs' injuries. Plaintiffs do not allege any facts that show Defendants' conduct had even a minimal influence in the attacks on October 7. Plaintiffs assert that Defendants legitimized the October 7 attacks through social media and protests, (Dkt. 6 at ¶¶ 409, 411, 414, 415), but there are no facts explaining the legitimization or "who supposedly viewed [Defendant's posts and demonstrations] and was radicalized by them or thereafter went on to support Hamas." Newman II, 801 F. Supp.3d at 1351-52 (citing Kaplan v. Jazeera, No. 10 CIV. 5298, 2011 WL 2314783, at *7 (S.D.N.Y. June 7, 2011)) ("Plaintiffs [did] not allege[] any facts suggesting that Defendant's broadcasts were used by Hezbollah to better target their rockets" nor did they offer "facts suggesting that Hezbollah viewed Defendant's broadcasts (rather than another network's broadcasts or no broadcasts at all.)")); see also In re Terrorist Attacks on September 11, 2001, 714 F.3d 118, 123-24 (2d Cir. 2013); Ofisi v. BNP Paribas, S.A.,

77 F.4th 667, 678-79 (D.C. Cir. 2023). In sum, Plaintiffs fail to allege proximate cause under any standard.

Since Plaintiffs fail to allege an act of international terrorism, requisite mental state, or causation, Plaintiffs' material support liability claim under the ATA is due to be **DISMISSED**.

## IV.    CONCLUSION

Plaintiffs' Complaint does not comport with the required pleading standard, and Plaintiffs' Complaint fails to state a claim for any of the three alleged counts.

Accordingly, it is hereby **ORDERED** as follows:

1.    Defendants' Motions to Dismiss are **GRANTED**.

2.    The operative Complaint, (Dkt. 6), is **DISMISSED**.

3.    The Court **TAKES UNDER ADVISEMENT** the currently pending Motions for Sanctions, (Dkts. 82, 83, 84, 94, 95, 108) and **DIRECTS** any outstanding Motions for Sanctions to be filed, if the Motion was served at least 21 days before this Order to account for the safe harbor provision in Fed. R. Civ. P 11(c)(2). See Huggins v. Lueder, Larkin & Hunter, LLC, 39 F.4th 1342 (11th Cir. 2022).

**DONE** and **ORDERED** in Tampa, Florida this 24th day of February 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of record
Any unrepresented parties

18